# EXHIBIT ONE
# STATE COURT COMPLAINT

Electronically Filed
4/1/2021 6:24 PM
Steven D. Grierson
CLERK OF THE COURT

1

**COMP**
WRIGHT, FINLAY & ZAK, LLP

2
Darren T. Brenner, Esq.
Nevada Bar No. 8386

3
Christina V. Miller, Esq.
Nevada Bar No. 12448

4
Lindsay D. Robbins, Esq.
Nevada Bar No. 13474

5
7785 W. Sahara Ave., Suite 200
Las Vegas, NV 89117

6
(702) 637-2345; Fax: (702) 946-1345

7
lrobbins@wrightlegal.net

8
*Attorneys for Plaintiff, CitiMortgage, Inc.*

CASE NO: A-21-832211-C
Department 29

9

10

**EIGHTH JUDICIAL DISTRICT COURT**
**CLARK COUNTY, NEVADA**

11

| | |
|---|---|
| CITIMORTGAGE, INC., | Case No.: |
| Plaintiff, | Dept. No.: |
| vs. | **COMPLAINT** |
| FIDELITY NATIONAL TITLE GROUP, INC.; FIDELITY NATIONAL TITLE INSURANCE COMPANY; FIDELITY NATIONAL TITLE AGENCY OF NEVADA, INC.; DOE INDIVIDUALS I through X; and ROE CORPORATIONS XI through XX, inclusive | **ARBITRATION EXEMPT: ACTION FOR DECLARATORY RELIEF** |
| Defendants. | |

12

13

14

15

16

17

18

19

20

Plaintiff Citimortgage, Inc. ("Citimortgage"), by and through its attorneys of record,

21

Darren T. Brenner, Christina V. Miller, Esq. and Lindsay D. Robbins, Esq., of the law firm of

22

23

Wright, Finlay & Zak, LLP, submits this Complaint against Fidelity National Title Group, Inc.

24

("Fidelity"), Fidelity National Title Insurance Company, Inc. ("Fidelity National"), Fidelity

25

National Title Agency of Nevada, Inc. ("Fidelity Nevada"), Doe Individuals I through X

26

("Does"), and Roe Corporations XI through XX, inclusive ("Roes") (collectively,

27

28

"Defendants"), for breach of their obligations to defend and indemnify Citimortgage under a title insurance policy issued to insure a deed of trust on real property located in Nevada.

Title insurers, like Fidelity National, have known since the early 1990s that homeowners associations in some states, including Nevada, impose liens that can attain superpriority over senior mortgages and deeds of trust. They should. Title insurers are the experts on title, and lenders, like Citimortgage, rely on them to be the experts and pay them handsomely for this expertise and protection.

Even more significantly, Fidelity and its affiliated title insurers, like Fidelity National, have acknowledged the coverage that Citimortgage claims is due and owing in their manuals explaining the endorsements issued with their policies and internal memoranda describing coverage. These interpretations of the policies are consistent with the trade usage describing the endorsements at issue in this case as providing coverage to an insured lender for losses caused by the enforcement of an association's superpriority lien.

Fidelity and Fidelity National's coverage position is directly at odds with (1) its public representations in their endorsement guides, (2) its internal memoranda, and (3) the trade usage it helped develop describing the scope of coverage.

### *Parties*

1.    Plaintiff Citimortgage is a New York corporation with its principal place of business in Missouri.

2.    Defendant Fidelity is a Delaware corporation with its principal place of business in Florida. Fidelity is a wholly owned subsidiary of FNTG Holdings, LLC, a Delaware limited liability company. FNTG Holdings is a 100% wholly owned subsidiary of Fidelity National

Financial, Inc., a Delaware corporation that is publicly traded on the New York Stock Exchange under the ticker symbol "FNF".

3.    Defendant Fidelity National is a Florida corporation with its principal place of business in Florida.  On information and belief, Fidelity National is a wholly owned subsidiary of Fidelity.

4.    Defendant Fidelity Nevada is a Nevada corporation with its principal place of business in Clark County, Nevada.  On information and belief, Fidelity Nevada is a wholly owned subsidiary of Fidelity or another company owned or affiliated with Fidelity.

5.    Citimortgage does not know the true names, capacities or bases of liability of fictitious defendants sued as Does I through X and Roe Corporations XI through XX, inclusive (collectively "fictitious Defendants").  Each fictitiously named defendant is in some way liable to Citimortgage.  Citimortgage will amend this Complaint to reflect the true names of said defendants when the same have been ascertained.

6.    This matter is exempt from Arbitration as Citimortgage has requested a declaration that the Policy provided coverage for all losses or damages, up to the Amount of Insurance, sustained by Citimortgage as a result of the HOA's foreclosure sale.

7.    This Court has personal jurisdiction over Defendants Fidelity National and Fidelity Nevada because they have engaged in the business of issuing title insurance policies insuring deeds of trust on land located in the State of Nevada and therefore have sufficient contacts with the State to have availed themselves of the State's jurisdiction.

8.    This Court has personal jurisdiction over Fidelity because it has purposefully availed itself of this forum by intentionally directing its subsidiaries to tortiously deny coverage under the insurance policies described below and by making or facilitating the coverage

decisions of Fidelity National and its other affiliates regarding claims upon policies affecting insured interests on real property located in Nevada.

9.      Venue is appropriate in this Court because this judicial district is where a substantial part of the events giving rise to Citimortgage's claims took place, it is the principal place of business of Defendant Fidelity Nevada, and it is the location of the property subject to the insured deed of trust that is at the core of this lawsuit.

### *Nature of Title Insurance*

10.     A title insurance policy is a contract whereby the insurer is paid one sum in consideration for agreeing to indemnify the insured up to a specified amount against loss caused by encumbrances upon or defects in the title to real property in which the insured has an interest.

11.     Lenders such as Citimortgage often seek to obtain title insurance policies in connection with loans they advance that are secured by interests in real property.  The title insurance policy generally protects the lender against risks associated with loss of title or practical use of the property, subject to the policy's terms, exclusions, and conditions.

12.     As a title insurance underwriter, Fidelity National authorized certain entities and individuals in Nevada to issue title insurance policies on its behalf.  Fidelity National frequently used its captive issuing agent, Fidelity Nevada, to issue policies.

13.     This lawsuit concerns the issuance of a title insurance policy in favor of Citimortgage and its predecessors in interest.

14.     Citimortgage is the insured entity under the policy.

15.     The large majority of insurance policies issued by Fidelity National's issuing agents are written using standardized language drafted and promulgated by the American Land Title Association ("ALTA") and the California Land Title Association ("CLTA").   These

standard forms are used by multiple title insurers, which publish guides concerning the coverage (and exceptions thereto) provided by the standard policy. The standard ALTA policy form has been revised from time to time, including changes in 1992, 2006, and 2012.

16.    ALTA also has promulgated a "short-form" policy. The short-form policy contains references to the common standardized endorsement forms and other provisions typically included as part of a "full" policy. Thus, a title insurance issuer can use ALTA's short-form policy to issue a policy to a lender that incorporates by reference the standard forms referenced in the full policy as those forms existed on the date the policy is issued.

17.    ALTA has drafted and maintained a number of standardized endorsement forms that can be included with the standard policy to modify the scope of coverage available. CLTA also has drafted and maintained standardized forms that Defendants have used from time to time.

18.    A 2013 endorsement manual written by Chicago Title Insurance Company – a company owned by Fidelity – states that "endorsements will provide additional coverage for matters which would ordinarily be excluded by the Exclusions From Coverage, or excepted from coverage shown in Schedule B of" a title insurance policy.[1]

19.    This is consistent with trade usage of the term "endorsement" among title insurers and their insureds.

20.    Lenders commonly request that title insurers include ALTA Endorsement Form 9 ("Form 9"), or its CLTA equivalent, CLTA Endorsement Form 100 ("Form 100").[2] These "comprehensive" endorsements provide a range of guarantees to the insured relating to the

---

[1] A true and correct copy of Chicago Title's 2013 Endorsement Manual is attached as **Exhibit 1**.
[2] ALTA revised the standard forms in 2006, adding the suffix -06 to identify the new forms. As relevant here, Form 9 and Form 9-06 are materially identical, and this Complaint refers to them interchangeably.

existence of covenants, conditions, or restrictions affecting or governing the property which could cause damage to the insured lender's interest at the time the policy is issued or in the future.

21.     Fidelity and Fidelity National have issued public endorsing guides explaining that Form 100 "[p]rovides comprehensive coverage for [an] insured ALTA lender against loss by reason of present *or future* [covenants, conditions and restrictions] violations".[3]

22.     Lenders also commonly request specific endorsements that provide protection against the risk associated with a condominium association or homeowners association's having a lien for unpaid assessments that can take priority over the lender's security interest.  These endorsements are often written on (1) ALTA Endorsement Form 4 ("Form 4") or its CLTA equivalent, CLTA Endorsement Form 115.1 ("Form 115.1"); or (2) ALTA Endorsement Form 5 ("Form 5") or its CLTA equivalent, CLTA Endorsement Form 115.2 ("Form 115.2").[4] These endorsements "[p]rovide[] coverage for an insured ALTA lender against loss concerning violations of CC&Rs [and/or] homeowners association charges and assessments."[5]

23.     Fidelity exerts control over its subsidiaries, including Fidelity National, by determining the terms and conditions upon which they will insure title to real property, dictating policies and procedures that govern how they will evaluate claims, and directing them to deny certain categories of claims.

24.     Fidelity's Claims Department is based out of two locations in Omaha, Nebraska and Jacksonville, Florida.   The Claims Department processes claims submitted under title

---

[3] A true and correct copy of Fidelity's Endorsement Guide is attached as **Exhibit 2** (emphasis added).
[4] ALTA revised the standard forms in 2006, adding the suffix -06 to identify the new forms. As relevant here, Form 4 and Form 4-06 and Form 5 and Form 5-06 are materially identical, and this Complaint refers to them interchangeably.
[5] Ex. 2.

insurance policies underwritten by all of Fidelity's wholly owned subsidiaries, including Fidelity National. To promote consistent coverage positions among its subsidiaries, Fidelity provides its Claims Department with instructions and other claims handling guidance, including directives as to which position the subsidiaries should take as to coverage on a claim.

### Defendants Issued Policies Understood to Cover Nevada Superpriority Liens

25.    In 1982, the Uniform Law Commission promulgated the Uniform Common Interest Ownership Act ("UCIOA"). UCIOA provided a number of standardized terms governing the formation of common interest associations, including condominium associations and homeowners associations ("HOA" or "HOAs").

26.    As relevant here, UCIOA provided that HOAs' covenants, conditions, and restrictions included a "superpriority" lien for unpaid assessments, which came into existence when the HOA was formed (*i.e.*, when its declaration of covenants, conditions, and restrictions was recorded), and would take priority over a subsequently recorded mortgage or deed of trust even if no assessments were due at the time the mortgage or deed of trust was recorded.

27.    In 1991, the Nevada Legislature adopted the 1982 version of UCIOA, codifying it in Chapter 116 of the Nevada Revised Statutes.

28.    Chapter 116 includes NRS 116.3116, which, at the time of the events relevant to this suit, stated in relevant part:

> 1.   The association has a lien on a unit for any construction penalty that is imposed against the unit's owner pursuant to NRS 116.310305, any assessment levied against that unit or any fines imposed against the unit's owner from the time the construction penalty, assessment or fine becomes due. . . .
>
> 2.   A lien under this section is prior to all other liens and encumbrances on a unit except:
> . . .
> (b) A first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent . . . ;
> . . .

The lien is also prior to all security interests described in paragraph (b) to the extent of any charges incurred by the association on a unit pursuant to NRS 116.310312 and to the extent of the assessments for common expenses based on the periodic budget adopted by the association pursuant to NRS 116.3115 which would have become due in the absence of acceleration during the 9 months immediately preceding institution of an action to enforce the lien . . . .

. . .

4. Recording of the declaration constitutes record notice and perfection of the lien. No further recordation of any claim of lien for assessment under this section is required.

29.    Under NRS 116.3116, from the time an HOA's covenants, conditions, and restrictions are recorded, the properties governed by the HOA are encumbered by a lien that secures all assessments. Chapter 116 does not require that an HOA record a separate lien before the lien is foreclosed.

30.    As part of its adoption of UCIOA, the Nevada Legislature also enacted NRS 116.1104:

Except as expressly provided in this chapter, [NRS 116's] provisions may not be varied by agreement, and rights conferred by it may not be waived. Except as otherwise provided in paragraph (b) of subsection 2 of NRS 116.12075, a declarant may not act under a power of attorney, or use any other device, to evade the limitations or prohibitions of this chapter or the declaration.

31.    The Nevada Legislature also enacted NRS 116.1206(1):

Any provision contained in a declaration, bylaw or other governing document of a common-interest community that violates the provisions of this chapter shall be deemed to conform with those provisions by operation of law, and any such declaration, bylaw or other governing document is not required to be amended to conform to those provisions.

32.    Defendants and other title insurers were aware of Nevada's adoption of NRS 116, including its provision of a "superpriority" lien in an HOA's covenants, conditions, and restrictions.

33.    Defendants and other title insurers believed they could be liable for an insured's losses caused by the enforcement of an HOA's superpriority lien if the policy at issue contained

an endorsement on Form 9, Form 9-06 or Form 100, or an endorsement on Form 4, Form 4-06, Form 5-06, Form 115.1, or Form 115.2.

34.    In a bulletin dated December 12, 1991, non-party Stewart Title Guarantee Company ("Stewart Title") sent its issuing agents in eleven States (including Nevada) a bulletin indicating that Form 9 and Form 4 would provide coverage for losses caused by HOAs' superpriority liens.  Stewart Title provided specific instructions to its agents to delete paragraph 2 of Form 9 before including either endorsement with a title insurance policy.[6]

35.    In July 1993, Stewart Title issued a bulletin to its issuing agents in twelve States (including Nevada) indicating that "future assessments (usually six months) have priority over a prior mortgage," and that if the issuing agents were issuing Form 9 with their policies, they should add the following exception to Form 9: "The Policy and any endorsements to the Policy do not insure against loss because of condominium assessments not yet due and payable".[7]

36.    Stewart Title's bulletins are available to the public on the Internet.  Fidelity's bulletins, underwriting manuals, and pre-2013 endorsement manuals are not.

37.    On information and belief, between 1991 and 2014, Fidelity and Fidelity National provided instructions to their issuing agents similar to the bulletins discussed in Paragraphs 34 and 35 to modify Form 9 or Form 100 before issuing any policy in Nevada for a property governed by an HOA.

38.    In a 2007 Underwriting Manual, non-party LandAmerica Financial Group, Inc., whose assets were later acquired by Fidelity, quoted Paragraph 1(a) of Form 9 and provided the following underwriting guidelines for issuing a policy with Form 9:[8]

---

[6] A true and correct copy of Stewart Title's 1991 Bulletin is attached as **Exhibit 3.**
[7] A true and correct copy of Stewart Title's 1993 Bulletin is attached as **Exhibit 4.**
[8] A true and correct copy of LandAmerica's Underwriting Manual is attached as **Exhibit 5**.

1.  Any incorrectness in the assurance that, at Date of Policy:

    a)   There are no covenants, conditions or restrictions under which the lien of the mortgage referred to in Schedule A can be divested, subordinated or extinguished, or its validity, priority or enforceability impaired.

To give this coverage, the underwriter must review all covenants, conditions and restriction listed in the title report to determine if there is language which could result in forfeiture, reversion or other impairment. Note that other impairment is added to traditional forfeiture or reversion. This includes a provision permitting a home owners or civic association to levy an assessment, secured by a lien with priority over the insured deed of trust. Under the Property Owners Association Act, 55-508, et seq., some owners associations can levy for limited purposes, with limited super-priority.

39.    On information and belief, between 1991 and the present, Fidelity and Fidelity National have published underwriting manuals containing language similar to the text quoted in Paragraph 38 indicating that

40.    Paragraph 1(a) of Form 9 and Form 100 provides coverage for losses due to "provision[s] [in recorded covenants, conditions and restrictions] permitting a homeowners or civic association to levy an assessment, secured by a lien with priority over the insured deed of trust."

41.    From 1991 until the present, Fidelity and Fidelity National have provided endorsement manuals for their issuing agents explaining the scope of coverage provided by an endorsement on Form 9, Form 9-06, or Form 100, or an endorsement on Form 4, Form 4-06, Form 5-06, Form 115.1, or Form 115.2.

42.    On information and belief, Fidelity and Fidelity National's pre-2012 endorsement manuals informed their issuing agents that an endorsement on Form 9, Form 9-06 or Form 100, or an endorsement on Form 4, Form 4-06, Form 5-06, Form 115.1, or Form 115.2, would provide coverage to an insured that suffered loss or damage due to an HOA's lien for assessments that became delinquent after the date of policy.

43. In 2012, ALTA and CLTA promulgated significantly revised versions of Form 9 and Form 100, respectively. As a result, Fidelity and Fidelity National's post-2012 endorsement manuals do not directly address the language used in prior versions of Form 9 and Form 100 and the coverage those prior versions provided for loss or damage caused by the existence or enforcement of an HOA's superpriority lien.

44. Even after the amendments to Form 9 and Form 100, however, Fidelity has promulgated endorsement manuals indicating that the operative language in earlier versions of the forms would provide coverage to an insured for losses or damages suffered as a result of the enforcement of an association's superpriority lien.

45. In the 2013 Endorsement Manual that Fidelity provided for the use of all of its affiliate underwriters and their agents, Fidelity explained that certain language from Form 9 and Form 100 should not be used in policies where "FUTURE violation might result in the loss of priority or enforceability of the lien of the Insured Mortgage," indicating Fidelity's belief that the language created coverage for the insured.[9]

46. Contemporary trade usage describing the terms and scope of an endorsement on Form 9, Form 9-06 or Form 100, or an endorsement on Form 4, Form 4-06, Form 5-06, Form 115.1, or Form 115.2, indicates that those endorsements provide coverage for an insured lender in the event that covenants, conditions, and restrictions of record at the date of the policy allow an HOA's lien to take priority over the insured mortgage or deed of trust. *See, e.g.*, Barlow Burke, LAW OF TITLE INSURANCE § 10.05[B] (3d ed., 2002 Supp.) (in describing Form 9: "A second type of endorsement of interest to an insured lender is one covering the loss of lien priority because of the enforcement of a private covenant applicable to the title. … The priority

---

[9] A true and correct copy of Fidelity's 2013 Endorsement Manual is attached as **Exhibit 6.**

of these covenants, restrictions, and conditions is particularly important to mortgage lenders with loan policies because their supporting documents, also recorded, typically include the power to compel the payment of amounts for the maintenance and repair of the common facilities in a large subdivision.  Often the exercise of these maintenance and repair functions is put in the hands of a subdivision homeowner's association.  It also typically holds a lien to compel the payment of these amounts, and that lien also has priority over later recorded mortgage."); *id.* ("Future violations [of covenants, conditions, and restrictions] are also insured against, but only to the extent that the violations occur between the policy date and the acquisition of title in any foreclosure action, provided the violation causes the insured to be insecure or results in loss or damage to the title acquired by the insured in satisfaction of the secured debt, as where the insured takes a deed in lieu of foreclosure." (citing Form 9 ¶¶ 1(a), 2)).

47.     Defendants all represented to the public and to Citimortgage and Citimortgage's predecessors that an endorsement on Form 9, Form 9-06 or Form 100, or an endorsement on Form 4, Form 4-06, Form 115.1, or Form 5-06, Form 115.1, or Form 115.2, provided coverage against losses caused by an association's superpriority lien.

48.     Despite having actual knowledge of the possibility that Citimortgage could lose its security interest in properties that were governed by HOAs, at no time did Defendants inform Citimortgage or its predecessors-in-interest of the danger of losing their security interests in such properties.

///

///

///

*The Nevada Supreme Court Interprets NRS 116.3116*

49.    In *SFR Investments Pool 1, LLC v. U.S. Bank, N.A.*, 130 Nev. 742 (2014), the Nevada Supreme Court confirmed that a portion of the lien included in a Nevada HOA's covenants, conditions, and restrictions has superpriority over a recorded first deed of trust.

50.    The Court further held that NRS 116.1104 rendered inoperative clauses in HOAs' covenants, conditions, and restrictions that purported to allow senior deeds of trust to survive an HOA's foreclosure of the superpriority lien provided in its covenants, conditions, and restrictions.

51.    *SFR Investments* confirmed that the proper foreclosure of an HOA's superpriority lien extinguishes a recorded senior deed of trust on the same property.

52.    Following *SFR Investments*, Stewart Title issued a bulletin to its agents in Nevada indicating that "in lieu of issuing a[] [Form 9] for a lender's policy," its agents should "issue the ALTA 9.10."[10] Additionally, the underwriters were also instructed that "in lieu of issuing an [ALTA Form 4] for a lender's policy" to issue the ALTA 4.1 instead."[11]

53.    On information and belief, Fidelity and Fidelity National sent similar bulletins to their agents following *SFR Investments*, indicating their belief that Form 9 and Form 100 provided coverage for losses caused by superpriority liens.

54.    In *K&P Homes v. Christiana Trust*, 133 Nev. 364 (2017), the Nevada Supreme Court held that *SFR Investments* "did not create new law or overrule existing precedent; rather, that decision declared what NRS 116.3116 has required since the statute's inception" in 1991.

---

[10] A true and correct copy of Stewart Title's 2014 Bulletin is attached as **Exhibit 7**.
[11] *Id.*

55.     Under controlling Nevada law, the covenants, conditions, and restrictions at issue here have provided the foreclosing HOAs with liens that could attain priority over a senior deed of trust since 1991.

### *Facts Specific to this Case*

56.     On September 21, 2006, Fidelity National and Fidelity Nevada issued a title insurance policy numbered 27-042-92 3589421 (the "Suk Policy") in favor of Countrywide Home Loans, Inc. ("CHL") and its successors and/or assigns, insuring the validity of a deed of trust (the "Suk Deed of Trust") securing a mortgage loan with property located at 830 Carnegie Street, Apartment 1514, Henderson, Nevada 89052 (the "Suk Property").

57.     By issuing the Suk Policy, Fidelity National and Fidelity Nevada entered into a contractual relationship with CHL and its successors and assigns to insure that the Suk Deed of Trust was superior to competing liens, including the HOA's lien.

58.     The Suk Policy is written on a standard ALTA 1992 Loan Policy form and includes an endorsement on Form 4 and Form 100.  A true and correct copy of the Suk Policy is attached as **Exhibit 8**.

59.     The Suk Property is subject to the Declaration of Covenants, Conditions, and Restrictions ("Horizon Hills CC&Rs") for Horizon Hills HOA ("Horizon Hills"), which were recorded as of the day the Suk Policy was issued.

60.     Pursuant to the Horizon Hills CC&Rs and NRS 116.3116, as of the date the Suk Policy was issued, Horizon Hills had a superpriority lien against the Suk Property for any assessments that became due.

61.     Thus, as of the date the Suk Policy was issued, there existed covenants, conditions, and restrictions under which the Suk Deed of Trust could be "cut off, subordinated, or otherwise impaired", as well as provisions allowing for future violations on the land of the

Horizon Hills CC&Rs to result in the invalidity, loss of priority, or unenforceability of the lien of the Suk Deed of Trust.

62.    At the time they issued the Suk Policy, Fidelity National and Fidelity Nevada were aware of the Horizon Hills CC&Rs, Horizon Hills' lien for unpaid assessments, and the fact that the lien could take priority over the Suk Deed of Trust.

63.    At the time they issued the Suk Policy, Fidelity National and Fidelity Nevada were aware that CHL and its successors and assigns were relying on the industry's general understanding of the coverage afforded by Form 4 and Form 100 to protect against the risk of an HOA's superpriority lien.

64.    On or about June 13, 2012, a trustee's deed was recorded indicating that Horizon Hills had foreclosed on its assessment lien against the Suk Property and acquired title to the Suk Property at the foreclosure sale.

65.    On or about November 10, 2015, Horizon Hills filed a complaint in the Eighth Judicial District Court for Clark County, asserting claims against Citimortgage, seeking a judgment establishing that the Suk Deed of Trust insured by the Suk Policy had been extinguished.

66.    At all relevant times, Citimortgage was the beneficiary of the Suk Deed of Trust.

67.    Citimortgage is the insured under the Suk Policy.

68.    On or about March 25, 2015, Citimortgage's agent submitted a claim to Fidelity National for coverage under the Suk Policy.

69.    Emily Gordon, Claims Counsel and AVP for Fidelity, sent Citimortgage's agent a letter stating that Fidelity National was denying Citimortgage's claim for defense and

indemnification in full, notwithstanding Defendants' knowledge that their own documents and interpretative guidance indicated that coverage was due under the Suk Policy.

70.    Neither Citimortgage nor any of its predecessors-in-interest regarding the Suk Deed of Trust created, suffered, assumed, or agreed to the creation or enforcement of the Horizon Hills superpriority lien.

71.    Fidelity National did not suffer any prejudice from the timing of Citimortgage's submission of the title claim for the Suk Policy, as Fidelity National, at Fidelity's direction, routinely and consistently denied claims submitted before an HOA's foreclosure on its superpriority lien and refused to take action to prevent the foreclosure.

72.    Citimortgage has suffered losses or damages as a result of the priority of the lien for charges and assessments at Date of Policy in favor of Horizon Hills, which are insured losses under the Suk Policy.

73.    Citimortgage has suffered losses or damages as a result of the existence of covenants, conditions, and restrictions under which the Suk Deed of Trust could be "cut off, subordinated, or otherwise impaired", which are insured losses under the Suk Policy.

74.    Citimortgage has suffered losses or damages as a result of "future" (*i.e.*, post-Date of Policy) violations on the land of the Horizon Hills CC&Rs, which occurred prior to Citimortgage's acquisition of title to the Suk Property and resulted in the invalidity, loss of priority, or unenforceability of the lien of the Suk Deed of Trust, which are insured losses under the Suk Policy.

## FIRST CAUSE OF ACTION
### (Declaratory Judgment – All Defendants)

75.    The allegations in Paragraphs 1 through 73 above are expressly incorporated by reference.

76.     This Court has the power and authority to declare Citimortgage, Fidelity, Fidelity National, and Fidelity Nevada's rights and legal relations in connection with the Suk Policy pursuant to NRS 30.040.

77.     An actual controversy has arisen between Citimortgage, on the one hand, and Fidelity, Fidelity National, and Fidelity Nevada, on the other, as to whether the Suk Policy provides coverage to Citimortgage for losses caused by Horizon Hill's foreclosure of its purportedly senior lien.

78.     The Suk Policy includes an endorsement on Form 100, under which Fidelity National and Fidelity Nevada insured Citimortgage:

against loss or damage which the insured shall sustain by reason of:

1.      The existence of any of the following:

a.      Covenants, conditions, or restrictions under which the lien of the mortgage referred to in Schedule A can be cut off, subordinated, or otherwise impaired;

…

2(a).   Any future violation on the land of any covenants, conditions or restrictions occurring prior to the acquisition of title to the estate or interest referred to in Schedule A by the insured, provided such violation results in impairment or loss of the lien of the mortgage referred to in Schedule A, or results in impairment or loss of the title to the estate or interest referred to in Schedule A if the insured shall acquire such title in satisfaction of the indebtedness secured by the insured mortgage;

79.     Additionally, the Suk Policy contains an endorsement issued on Form 4, under which the Fidelity National and Fidelity Nevada insured Citimortgage:

against loss or damage sustained by reason of:

. . .

4.      The priority of any lien for charges and assessments at Date of Policy provided for in the condominium statutes and condominium documents over the lien of any insured mortgage identified in Schedule A.

80.    The Horizon Hills CC&Rs are a document identified in Schedule B of the Suk Policy.

81.    The Horizon Hills CC&Rs gave Horizon Hills a superpriority lien as of the date of issuance of the Suk Policy.

82.    The foreclosure of the superpriority portion of the lien imposed by the Horizon Hills CC&Rs would "cut off" and "impair[]" the Suk Deed of Trust.

83.    Thus, as of the Date of Policy, there existed "[c]ovenants, conditions, or restrictions under which the [Suk Deed of Trust] c[ould] be cut off, subordinated, or otherwise impaired[.]"

84.    After the Date of Policy, the borrower for the loan secured by the Suk Deed of Trust violated her covenant to pay HOA assessments to Horizon Hills.

85.    The borrower's post-policy violation of her payment covenant thus constituted a "future violation[] on the land of [the Horizon Hills CC&Rs] covenants, conditions or restrictions," which occurred "prior to the acquisition of title to the" Property by Citimortgage.

86.    For these reasons, under Paragraphs 1(a) and 2(a) of Form 100, the Suk Policy provides coverage for all losses and damages sustained by Citimortgage as a result of the Horizon Hills's foreclosure sale.

87.     The borrower's delinquent assessments were secured by the continuing lien provided by the Horizon Hills CC&Rs, which was in effect at the time the Suk Policy was issued.

88.    The Suk Policy identifies the Horizon Hills CC&Rs in Schedule B.

89.    Citimortgage has suffered "loss or damage" due to the "priority" of the Horizon Hills "lien for charges and assessments," as that lien existed on the date the Suk Policy was issued.

90.    For these reasons, Paragraph 4 of Form 4 provides coverage for all losses and damages sustained by Citimortgage as a result of the Horizon Hills foreclosure sale.

91.    The Suk Policy requires Fidelity National and Fidelity Nevada to "pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured."

92.    Citimortgage has incurred costs, attorneys' fees, and expenses in the defense of the insured Suk Deed of Trust, as insured.

93.    Citimortgage has complied with its material contractual obligations under the Suk Policy.

94.    When the Suk Policy was issued, it was the intent of Citimortgage's predecessor in interest and Defendants that Form 100 and Form 4 would provide coverage for losses or damages sustained as a result of the enforcement of the lien granted to Horizon Hills in the Horizon Hills CC&Rs.

95.    Contemporary trade usage describing the terms and scope of the coverage provided by Form 100 and Form 4 indicates those endorsements provide coverage for an insured lender for losses and damages sustained as a result of covenants, conditions, and restrictions.

96.    Nonetheless, at the direction of Fidelity, Fidelity National denied coverage for the claim submitted for the Suk Policy.

97. Citimortgage is entitled to a declaration that the Suk Policy provides coverage for all losses or damages sustained by Citimortgage as a result of the Horizon Hills foreclosure sale.

98. Citimortgage was required to retain counsel to prosecute this action and is entitled to recover its corresponding attorneys' fees.

## SECOND CAUSE OF ACTION
### (Breach of Contract – Fidelity and Fidelity National)

99. The allegations in Paragraphs 1 through 97 above are expressly incorporated by reference.

100. Citimortgage is the insured under the Suk Policy.

101. As described above, the Suk Policy provided coverage against loss or damage suffered by Citimortgage as a result of Horizon Hills's enforcement of the superpriority lien rights created by the Horizon Hills CC&Rs, which were in existence at the time Suk Policy was issued.

102. The Suk Policy gave rise to a duty to defend Citimortgage in any litigation arising from a challenge to the validity or priority of the Suk Deed of Trust and to either cure the defects on title or indemnify Citimortgage for any losses it sustained as a result of the loss of priority or extinguishment of the Suk Deed of Trust.

103. Citimortgage has complied with its material contractual obligations under the Suk Policy.

104. Citimortgage has suffered an insured loss or damages under the Suk Policy.

105. By denying Citimortgage's requests for coverage, Fidelity and Fidelity National breached the Suk Policy by refusing to provide a defense to the litigation associated with the

Suk Deed of Trust and by refusing to promise to indemnify Citimortgage for its covered losses or attempt to cure the defect.

106.     Fidelity and Fidelity National's breaches of the Suk Policy have proximately resulted in general and special damages to Citimortgage, including attorneys' fees and litigation expenses, which Citimortgage has incurred and will continue to incur.

107.     As a result of Fidelity and Fidelity National's breaches of the Suk Policy, Citimortgage was required to retain counsel to prosecute this action and is entitled to recover its corresponding attorneys' fees.

## THIRD CAUSE OF ACTION
### (Tortious Bad Faith / Breach of the Covenant of Good Faith and Fair Dealing – All Defendants)

108.     The allegations in Paragraphs 1 through 106 above are expressly incorporated by reference.

109.     All Defendants owed Citimortgage a duty to act in good faith and in a manner consistent with fair dealing in their considerations of Citimortgage's claim under the Suk Policy, including a duty of candor and to avoid denials of claims without reasonable basis.

110.     All Defendants knew that industry materials and expert commentators routinely described the "comprehensive" Form 100 endorsement as providing coverage for an insured that suffered a loss as a result of the enforcement of a superpriority lien provided for in an HOA's covenants, conditions, and restrictions at the time the policy was issued.

111.     All Defendants knew that their own underwriting manuals, bulletins, and endorsement guides indicated that Form 4 provided coverage to an insured that suffered a loss as a result of the enforcement of a superpriority lien provided for in an HOA's covenants, conditions, and restrictions at the time the policy was issued.

112.    In light of the foregoing, and on information and belief, Fidelity National underwrote the Suk Policy with the belief that the Suk Policy would provide coverage if the Suk Deed of Trust were impaired or extinguished by the enforcement of the Horizon Hills lien.

113.    On information and belief, Fidelity Nevada knew or had reason to know that Citimortgage's predecessor in interest purchased the Suk Policy with the expectation that such coverage would be provided.

114.    On information and belief, Fidelity Nevada knew or had reason to know that Citimortgage's predecessor's expectation was reasonable in light of the trade usage and industry standards regarding Form 100 and Form 4.

115.    All Defendants acted with malice, fraud, and/or oppression by allowing Citimortgage to obtain a title insurance policy that included an endorsement known and described as providing coverage against the enforcement of an HOA's superpriority lien, then denying coverage for losses arising from the HOA's enforcement of its superpriority lien despite internal documents, guidelines, and bulletins indicating that coverage was due.

116.    Defendants intentionally breached their duties and acted in bad faith by denying Citimortgage's claim for coverage under the Suk Policy.

117.    Citimortgage has suffered damages as a result of Defendants' bad faith and breach of their duty of good faith and fair dealing.

118.    As a result of Defendants' bad faith, Citimortgage was required to retain counsel to prosecute this action and is entitled to recover its corresponding attorneys' fees.

### FOURTH CAUSE OF ACTION
**(Deceptive Trade Practices (NRS 41.600 and NRS 598.0915) – All Defendants)**

119.    The allegations in Paragraphs 1 through 117 above are expressly incorporated by reference.

120.    All Defendants exchanged memoranda, bulletins, underwriting guides, and other communications indicating that Form 100 and Form 4 would provide coverage if an insured mortgage lien was impaired or otherwise affected by the enforcement of an HOA's superpriority lien.

121.    All Defendants knew that public descriptions of Form 100 and Form 4 indicated that coverage would be available if an insured mortgage lien was impaired or otherwise affected by the enforcement of an HOA's superpriority lien.

122.    Fidelity Nevada decided which endorsements should be issued with the Suk Policy.

123.    Fidelity Nevada knew that the Suk Property was subject to CC&Rs granting a superpriority lien to Horizon Hills.

124.    The Suk Policy contains endorsement language plainly intended to provide coverage in the event the Suk Deed of Trust lost priority or was otherwise impaired by operation of the Horizon Hills CC&Rs.

125.    Citimortgage's predecessor relied to its detriment upon Defendants' knowing misrepresentations regarding the characteristics and scope of coverage provided by the Suk Policy with endorsements on Form 100 and Form 4 by originating the mortgage loan in reliance on those misrepresentations.

126.    Citimortgage relied to its detriment by acquiring a mortgage loan originated by a third party that met certain standards designed to ensure priority of the associated security interest through the existence of a title insurance policy containing endorsements on Form 100 and Form 4.

127.   All Defendants received valuable consideration in exchange for providing the Suk Policy to Citimortgage or its predecessors.

128.   Defendants committed consumer fraud as that term is defined in NRS 598.0915(5), (15) and NRS 41.600(2)(e) by misrepresenting the quality and characteristics of the Suk Policy and making false representations in the transaction.

129.   Citimortgage has suffered damages as a result of Defendants' consumer fraud.

130.   As a result of Defendants' deceptive practices, Citimortgage was required to retain counsel to prosecute this action and is entitled to recover its corresponding attorneys' fees.

### FIFTH CAUSE OF ACTION
### (Violation of NRS 686A.310 – Fidelity and Fidelity National)

131.   The allegations in Paragraphs 1 through 129 above are expressly incorporated by reference.

132.   Fidelity and Fidelity National exchanged memoranda, bulletins, underwriting guides, and other communications indicating that endorsements on Form 100 and Form 4 would provide coverage if an insured mortgage lien was impaired or otherwise affected by the enforcement of an HOA's superpriority lien.

133.   Fidelity and Fidelity National knew that public descriptions of Form 100 and Form 4 indicated that coverage would be available if an insured mortgage lien was impaired or otherwise affected by the enforcement of an HOA's superpriority lien.

134.   Fidelity and Fidelity National, directly and through their issuing agents, represented to Citimortgage and its predecessors in interest that Form 100 and Form 4 provided coverage in the event that the Suk Deed of Trust lost priority or was otherwise impaired by operation of the Horizon Hills CC&Rs.

135.    Citimortgage and its predecessors relied to their detriment upon Fidelity and Fidelity National's knowing misrepresentations regarding the characteristics and scope of coverage provided by the Suk Policy with endorsements on Form 100 and Form 4 by originating or acquiring the mortgage loans secured by the Suk Deed of Trust in reliance on those misrepresentations.

136.    By representing that Form 100 and Form 4 provided coverage in the event the Suk Deed of Trust lost priority or was otherwise impaired by operation of the Horizon Hills CC&Rs, and then denying coverage for losses related to the Horizon Hills foreclosure sale, Fidelity and Fidelity National breached NRS 686A.310(1)(a).

137.    Fidelity and Fidelity National's liability under the Suk Policy for the extinguishment of the Suk Deed of Trust was "reasonably clear," as shown by Fidelity and Fidelity National's internal memoranda, bulletins, underwriting guides, and other communications.  By failing "to effectuate [a] prompt, fair, and equitable settlement[]" of Citimortgage's claim under the Suk Policy, Fidelity and Fidelity National violated NRS 686A.310(1)(e).

138.    By compelling Citimortgage "to institute litigation to recover amounts due under" the Suk Policy, Fidelity and Fidelity National violated NRS 686A.310(1)(f).

139.    In light of Fidelity and Fidelity National's internal documents and representations that Form 100 and Form 4 provided coverage if an insured lien was impaired or otherwise affected by the enforcement of an HOA's superpriority lien, Fidelity and Fidelity National's violations of NRS 686A.310 arising for their denial of coverage under the Suk Policy for that exact scenario have been oppressive, willful, and malicious.

140.    As a result of Fidelity and Fidelity National's deceptive practices, Citimortgage was required to retain counsel to prosecute this action and is entitled to recover its corresponding attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, premises considered, Citimortgage requests that this Court grant judgment in its favor and against the Defendants, and award Citimortgage:

A.    a declaration establishing that the Suk Policy provided coverage for all losses or damages sustained by Citimortgage as a result of the Horizon Hills foreclosure sale;

B.    compensatory damages;

C.    punitive damages;

D.    attorneys' fees;

E.    costs; and

F.    other relief deemed to be just.

CITIMORTGAGE DEMANDS TRIAL BY STRUCK JURY.

DATED this 1st day of April, 2021.

WRIGHT, FINLAY & ZAK, LLP

*/s/ Darren T. Brenner*
Darren T. Brenner, Esq.
Nevada Bar No. 8386
Lindsay D. Robbins, Esq.
Nevada Bar No. 13474
7785 W. Sahara Ave., Suite 200
Las Vegas, NV 89117
*Attorneys for Plaintiff*

# EXHIBIT 1

# EXHIBIT 1



**CHICAGO TITLE**
NATIONAL COMMERCIAL SERVICES

National Commercial Services

# ENDORSEMENT GUIDE



© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF



**ENDORSEMENTS**

Generally, endorsements will provide additional coverage for matters which would ordinarily be excluded by the Exclusions From Coverage, or excepted from coverage shown in Schedule B of the policy either by the regional general exceptions, if applicable, or by specific exceptions. A majority of the endorsements are not general in nature, but are specific as to items for which the insured desires coverage. Some are specifically designed for owner's policies and others for loan policies. Some endorsements are not available in all circumstances.

The issuance of any endorsement is conditioned upon the circumstances surrounding the property involved, and upon the fulfillment of the underwriting criteria established by Chicago Title Insurance Company is subject to the terms and conditions of the policy to which they are attached. The following descriptions do not define the complete coverage of the endorsements, which can only be determined by reading the same. This list is provided as a convenience in located the endorsement which may fit a particular set of facts. This list does not include all endorsements that may be filed in California, but rather includes the standard ALTA endorsements.

**All information is provided as a courtesy and is deemed reliable but not guaranteed. Please contact your local Sales Executive to learn more. **

**ALTA/CLTA ENDORSEMENT CONVERSION CHART AS OF 04-02-13**

| ALTA | CLTA | Description | Adoption (Rev.) |
|------|------|-------------|-----------------|
| 1-06 | --- | Street Assessments | 6-17-06 |
| 2-06 | 125-06 | Truth in Lending | 6-17-06 |
| 3-06 | 123.1-06 | Zoning – Unimproved Land | 6-17-06 |
| 3.1-06 | 123.2-06 | Zoning – Improved Land | (10-22-09) |
| 3.2-06 | 123.3-06 | Zoning – Land Under Development (OP or LP) | 04-02-12 (Tech. Correction 12-3-12) |
| 4-06 | 115.1-06 | Condominium | (02-03-10) |
| 4.1-06 | 115.3-06 | Condominium (for NV & HI not CA) | (10-16-08) |
| 5-06 | 115.2-06 | Planned Unit Development | (02-03-10) |
| 5.1-06 | 115.4-06 | Planned Unit Development (for NV & HI not CA) | (10-16-08) |
| 6-06 | 111.5-06 | Variable rate | (10-16-08) |
| 6.2-06 | 111.8-06 | Variable Rate - Negative Amortization | (10-16-08) |
| 7-06 | 116.5-06 | Manufactured Housing Unit | 6-17-06 |
| 7.1-06 | 116.5. 1-06 | Manufactured Housing Unit-Conversion; Loan | 6-17-06 |
| 7.2-06 | 116.5. 2-06 | Manufactured Housing Unit-Conversion; Owner's | 6-17-06 |
| 8.1-06 | 110.9-06 | Environmental Protection Lien | 6-17-06 |
| 8.2-06 | 110.9.1-06 | Commercial Environmental Protection Lien | 10-16-08 |
| 9-06 | 100.2-06 | Restrictions, Encroachments & Minerals-Loan | (04-02-12) |
| 9.1-06 | 100.9-06 | Covenants, Conditions and Restrictions (Owner's Policy - Unimproved Land) | (04-02-12) |
| 9.2-06 | 100.10-06 | Covenants, Conditions and Restrictions (Owner's Policy - Improved Land) | (04-02-12) |
| 9.3-06 | 100.2.1-06 | Covenants, Conditions and Restrictions-Loan | (04-02-12) |
| 9.4-06 | 100.2.2-06 | Restrictions, Encroachments, Minerals-Future Improvements re Minerals Extraction– OP-Unimproved Land | Withdrawn 04-02-12) |
| 9.5-06 | 100.2.3-06 | Restrictions, Encroachments, Minerals –Future Improvements re Minerals Extraction- OP– Improved Land | (Withdrawn 04-02-12) |
| **9.6-06** | **(100.2.6-06)** | **Private Rights - Loan** | **04-02-13** |
| 9.7-06 | (100.2.7-06) | Restrictions, Encroachments, Minerals – Land under Development-Loan | 04-02-12 |
| 9.8-06 | (100.2.8-06) | Covenants, Conditions and Restrictions-Land under Development-Owners | 04-02-12 (Tech. Correction 12-3-12) |
| **9.9-06** | **100.2.9-06** | **Private Rights – Owner's** | **(04-02-13)** |
| **9.10-06** | **100.2.10-06** | **Restrictions, Encroachments, Minerals – Current Violations - Loan** | **(04-02-13)** |
| 10-06 | 104.12-06 | Assignment of Mortgage | (02-03-10) |
| 10.1-06 | 104.13-06 | Assignment and Date Down | (02-03-10) |
| 11-06 | 110.11-06 | Mortgage Modification | 6-17-06 |
| 11.1-06 | 110.11.1-06 | Mortgage Modification with Subordination | 10-22-09 |
| **12-06** | **117-06** | **Aggregation - Loan** | **(04-02-12)** |
| **12.1-06** | **117.1-06** | **Aggregation – State Limits – Loan** | **04-02-13** |
| 13-06 | 119.5-06 | Leasehold – Owner's | 04-02-12 |
| 13.1-06 | 119.6-06 | Leasehold – Loan | 04-02-12 |
| 14-06 | 111.14-06 | Future Advance-Priority [Note: Version A gives ML Coverage: Version B Does Not] | (02-03-11) |
| 14.1-06 | 111.14.1-06 | Future Advance-Knowledge [See Note for ALTA 14] | (02-03-11) |
| 14.2-06 | 111.14.2-06 | Future Advance-Letter of Credit [See Note for ALTA 14] | (02-03-11) |
| 14.3-06 | 111.14.3 -06 | Future Advance-Reverse Mortgage [See Note for ALTA 14] | (02-03-11) (Tech. Correction 12-3-12) |
| 15-06 | 127-06 | Non-imputation-Full Equity Transfer [Owner's Policy Only] | 6-17-06 |
| 15.1-06 | 127.1-06 | Non-imputation-Additional Insured [Owner's Policy Only] | 6-17-06 |
| 15.2-06 | 127.2-06 | Non-imputation-Partial Equity Transfer [Owner's Policy Only] | 6-17-06 |
| 16-06 | 128-06 | Mezzanine Financing [Owner's Policy Only] | 6-17-06 |
| 17-06 | 103.11-06 | Access and Entry | 6-17-06 |
| 17.1-06 | 103.12-06 | Indirect Access and Entry | 6-17-06 |
| 17.2-06 | 103.13-06 | Utility Access | 10-16-08 |
| 18-06 | 129-06 | Single Tax Parcel | 6-17-06 |
| 18.1-06 | 129.1-06 | Multiple Tax Parcels | 6-17-06 |
| 19-06 | 116.4.1-06 | Contiguity-Multiple Parcels | 6-17-06 |
| 19.1-06 | 116.4-06 | Contiguity-Single Parcel | 6-17-06 |
| 20-06 | 130-06 | First Loss-(Multiple Parcels) Transaction [Loan Policy Only] | 6-17-06 |
| 21-06 | 131-06 | Creditors' Rights (Decertification effective 03-08-10) | 6-17-06 |
| 22-06 | 116.01-06 | Location | 6-17-06 |

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

| 22.1-06 | 116.02-06 | Location & Map | 6-17-06 |
|---|---|---|---|
| 23-06 | 114.3-06 | Co-Insurance – Single Policy (01-01-08) | 10-16-08 |
| 24-06 | 133-06 | Doing Business | 10-16-08 |
| 25-06 | 116.1-06 | Same as Survey | 10-16-08 |
| 25.1-06 | 116.1.2-06 | Same as Portion of Survey | 10-16-08 |
| 26-06 | 116.8-06 | Subdivision | 10-16-08 |
| 27-06 | 132-06 | Usury | 10-16-08 |
| 28-06 | 103.1-06 | Easement – Damage or Enforced Removal | 02-03-10 |
| 28.1-06 | 103.14-06 | Encroachments-Boundaries and Easements | 04-02-12 |
| **28.2-06** | **103.15-06** | **Encroachments-Boundaries and Easements – Described Improvements** | **04-02-13** |
| 29-06 | 134-06 | Interest Rate SWAP-Direct Obligation | 02-03-10 |
| 29.1-06 | 134.1-06 | Interest Rate SWAP-Additional Interest | 02-03-10 |
| 29.2-06 | 134.2-06 | Interest Rate SWAP-Direct Obligation – Defined Amount | 08-01-11 |
| 29.3-06 | 134.3-06 | Interest Rate SWAP-Additional Interest – Defined Amount | 08-01-11 |
| 30-06 | 135-06 | Shared Appreciation Mortgage | 07-26-10 |
| 30.1-06 | 135.1-06 | Commercial Participation Interest | 08-01-12 |
| 31-06 | 136-06 | Severable Improvements | 02-03-11 |
| 32-06 | 137-06 | Construction Loan – Loss of Priority | 02-03-11 |
| **32.1-06** | **137.1-06** | **Construction Loan – Loss of Priority – Direct Payment** | **(04-02-13)** |
| **32.2-06** | **137.2-06** | **Construction Loan – Loss of Priority – Insured's Direct Payment** | **(04-02-13)** |
| 33-06 | 138-06 | Disbursement Endorsement | 02-03-11 |
| 34-06 | 139-06 | Identified Risk Coverage | 08-01-11 |
| 35-06 | 140-06 | Minerals and Other Subsurface Substances – Buildings-OP or LP | 04-02-12 |
| 35.1-06 | 140.1-06 | Minerals and Other Subsurface Substances-Described Improvements –OP or LP | 04-02-12 |
| 35.2-06 | 140.2-06 | Minerals and Other Subsurface Substances-Improvements- OP or LP_ | 04-02-12 |
| 35.3-06 | 140.3-06 | Minerals and Other Subsurface Substances-Land Under Development-OP or LP | 04-02-12 |
| 36-06 | 141-06 | Energy Project-Leasehold/Easement-OP | 04-02-12 |
| 36.1-06 | 141.1-06 | Energy Project-Leasehold/Easement-LP | 04-02-12 |
| 36.2-06 | 141.2-06 | Energy Project-Leasehold-OP | 04-02-12 |
| 36.3-06 | 141.3-06 | Energy Project-Leasehold-LP | 04-02-12 |
| 36.4-06 | 141.4-06 | Energy Project- CC and Rs- Land Under Development-OP | 04-02-12 |
| 36.5-06 | 141.5-06 | Energy Project- CC and Rs- Land Under Development-LP | 04-02-12 |
| 36.6-06 | 141.6-06 | Energy Project-Encroachments- LP or OP | 04-02-12 |
| **37-06** | **104.6-06** | **Assignment of Rents or Leases** | **12-03-12** |
| **39-06** | **142-06** | **Policy Authentication** | **04-02-13** |
| JR 1 | | ALTA Res. Limited Cov.  Jr. Loan Policy | 08-01-12 |
| JR 2 | | ALTA Res. Limited Cov.  Jr. Loan Policy | 08-01-12 |

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**STREET ASSESSMENTS**
**ALTA ENDORSEMENT - FORM 1-06 (06-17-06)**

The repair and maintenance of public streets is either contracted for by a governmental body or done directly by government employees. The property owners adjoining the streets or in the generally benefited area are usually assessed the costs of the work on some basis. The governmental body is almost universally given a lien to secure the payment of this assessment.

This endorsement is concerned with the priority of that lien if the improvements are either in process or completed at the Date of Policy. If this lien is prior to the lien of the Insured Mortgage and the assessments are not paid by the borrower, the lender will have to pay them in order to stop a tax foreclosure. This endorsement covers the loss or damage which the lender may sustain by having to pay the assessments which have gained priority over the Insured Mortgage.

This endorsement is not filed in California.

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

The Company insures against loss or damage sustained by the Insured by reason of the lack of priority of the lien of the Insured Mortgage over the lien of any assessments for street improvements under construction or completed at Date of Policy.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness Clause Optional]

DATED:

Chicago Title Insurance Company

BY:_____
      AUTHORIZED SIGNATORY

ALTA Endorsement Form 1-06
(Street Assessments) (6/17/06)
© American Land Title Association

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**TRUTH-IN-LENDING**
**ALTA 2-06 (06-17-06)**

This endorsement is for loan policies only. It provides insurance against some losses the Insured may suffer if the borrower exercises a right of rescission under Regulation Z of the Federal Truth in Lending Act.

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

The Company insures against loss or damage sustained by the Insured by reason of:

any final judgment of a court of competent jurisdiction that either the lien of the Insured Mortgage has been terminated or the Title of an Insured, who has acquired all or any part of the Land by foreclosure, trustee's sale, conveyance in lieu of foreclosure, or other legal manner, which discharges the lien of the Insured Mortgage, has been defeated by a valid exercise of the right of rescission conferred by the Federal Truth-in-Lending Act and that the right or rights of rescission existed because neither the credit transaction evidenced by the Insured Mortgage nor the right of rescission was exempted or excepted by the provisions of Regulation Z (12 CFR 226).

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness Optional]

DATED:

Chicago Title Insurance Company

BY:_____
        AUTHORIZED SIGNATORY

ALTA Endorsement Form 2-06
(Truth in Lending) (6/17/06)
© American Land Title Association

**ZONING**
**ALTA 3-06 (06-17-06), 3.1-06 (10-22-09) and 3.2-06 (04-02-12)**

These forms are used to provide certain zoning coverage. They do not provide unlimited zoning insurance.

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1.      The Company insures against loss or damage sustained by the Insured in the event that, at Date of Policy,

a.      According to applicable zoning ordinances and amendments, the Land is not classified Zone *[FILL IN];*

b.      The following use or uses are not allowed under that classification:

*[FILL IN]*

2.      There shall be no liability under this endorsement based on

a.      Lack of compliance with any conditions, restrictions, or requirements contained in the zoning ordinances and amendments, including but not limited to the failure to secure necessary consents or authorizations as a prerequisite to the use or uses.  This paragraph 2.a. does not modify or limit the coverage provided in Covered Risk 5.

b.      The invalidity of the zoning ordinances and amendments until after a final decree of a court of competent jurisdiction adjudicating the invalidity, the effect of which is to prohibit the use or uses.

c.      The refusal of any person to purchase, lease or lend money on the estate or interest covered by this policy.

This endorsement is issued as part of the policy.  Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements to it.

[Witness Optional]

DATED:

Chicago Title Insurance Company

BY:_____
      AUTHORIZED SIGNATORY

ALTA Endorsement Form 3-06
(Zoning – Unimproved Land) (6/17/06)
©American Land Title Association

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1.   The Company insures against loss or damage sustained by the Insured in the event that, at Date of Policy,

a.      according to applicable zoning ordinances and amendments, the Land is not classified Zone FILL IN;

b.      the following use or uses are not allowed under that classification:
FILL IN

c.      There shall be no liability under paragraph 1.b. if the use or uses are not allowed as the result of any lack of compliance with any conditions, restrictions, or requirements contained in the zoning ordinances and amendments, including but not limited to the failure to secure necessary consents or authorizations as a prerequisite to the use or uses. This paragraph 1.c. does not modify or limit the coverage provided in Covered Risk 5.

2.   The Company further insures against loss or damage sustained by the Insured by reason of a final decree of a court of competent jurisdiction either prohibiting the use of the Land, with any existing structure, as specified in paragraph 1.b. or requiring the removal or alteration of the structure, because, at Date of Policy, the zoning ordinances and amendments have been violated with respect to any of the following matters:

a.      Area, width, or depth of the Land as a building site for the structure

b.      Floor space area of the structure

c.      Setback of the structure from the property lines of the Land

d.      Height of the structure, or

e.      Number of parking spaces.

3.   There shall be no liability under this endorsement based on:

a.      the invalidity of the zoning ordinances and amendments until after a final decree of a court of competent jurisdiction adjudicating the invalidity, the effect of which is to prohibit the use or uses;

b.      the refusal of any person to purchase, lease or lend money on the Title covered by this policy.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements to it.
[Witness Optional]

DATED:
Chicago Title Insurance Company
BY:_____
AUTHORIZED SIGNATORY

ALTA Endorsement Form 3.1-06
(Zoning-Completed Structure) (rev. 10/22/09)
©American Land Title Association

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1. For purposes of this endorsement:
   a. "Improvement" means a building, structure, road, walkway, driveway, curb, subsurface utility or  water well existing at Date of Policy or to be built or constructed according to the Plans that is or  will be located on the Land, but excluding crops, landscaping, lawns, shrubbery, or trees.

   b. "Plans" means those site and elevation plans made by [*name of architect or engineer*] dated_____,  last revised_____, designated as [*name of project*] consisting of_____sheets.

2. The Company insures against loss or damage sustained by the Insured in the event that, at Date of  Policy
   a. according to applicable zoning ordinances and amendments, the Land is not classified Zone _____;

   b. the following use or uses are not allowed under that classification:

   c. There shall be no liability under paragraph 2.b. if the use or uses are not allowed as the result of  any lack of compliance with any condition, restriction, or requirement contained in the zoning  ordinances and amendments, including but not limited to the failure to secure necessary consents  or authorizations as a prerequisite to the use or uses.  This paragraph 2.c. does not modify or limit  the coverage provided in Covered Risk 5.

3. The Company further insures against loss or damage sustained by the Insured by reason of a final  decree of a court of competent jurisdiction either prohibiting the use of the Land, with any existing  Improvement, as specified in paragraph 2.b. or requiring the removal or alteration of the Improvement,  because of a violation of the zoning ordinances and amendments in effect at  Date of Policy with  respect to any of the following matters:
   a.        Area, width, or depth of the Land as a building site for the Improvement

   b.        Floor space area of the Improvement

   c.        Setback of the Improvement from the property lines of the Land

   d.        Height of the Improvement, or

   e.        Number of parking spaces.

4. There shall be no liability under this endorsement based on:
   a. the invalidity of the zoning ordinances and amendments until after a final decree of a court of  competent jurisdiction adjudicating the invalidity, the effect of which is to prohibit the use or uses;

   b. the refusal of any person to purchase, lease or lend money on the Title covered by this policy.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and  provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of  Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of  this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of  the policy and of any prior endorsements.
[Witness Optional]

DATED:
Chicago Title Insurance Company
BY:_____
        AUTHORIZED SIGNATORY

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

ALTA Endorsement Form 3.1-06
(Zoning-Completed Structure) (rev. 10/22/09)
©American Land Title Association

**CONDOMINIUM**

**ALTA 4-06 (02-03-10) and 4.1-06 (10-16-08)**

These endorsements provide affirmative insurance to mortgage lenders loaning on the security of condominium units. There are seven matters selected for insurance in these endorsements.  The ALTA 4.1-06 differs from the ALTA 4-06 only in hat there is no insurance of priority over future assessments in paragraph 4 of the endorsement.  The ALTA 4.1-06 may be used with either an Owner's or Lender's Policy.

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

The Company insures against loss or damage sustained by the Insured by reason of:

1.    The failure of the unit identified in Schedule A and its common elements to be part of a condominium within the meaning of the condominium statutes of the jurisdiction in which the unit and its common elements are located.

2.    The failure of the documents required by the condominium statutes to comply with the requirements of the statutes to the extent that such failure affects the Title to the unit and its common elements.

3.    Present violations of any restrictive covenants that restrict the use of the unit and its common elements and that are contained in the condominium documents or the forfeiture or reversion of Title by reason of any provision contained in the restrictive covenants. As used in this paragraph 3, the words "restrictive covenants" do not refer to or include any covenant, condition, or restriction (a) relating to obligations of any type to perform maintenance, repair, or remediation on the Land, or (b) pertaining to environmental protection of any kind or nature, including hazardous or toxic matters, conditions, or substances, except to the extent that a notice of a violation or alleged violation affecting the Land has been recorded in the Public Records at Date of Policy and is not excepted in Schedule B.

4.    The priority of any lien for charges and assessments provided for in the condominium statutes and condominium documents at Date of Policy over the lien of any Insured Mortgage identified in Schedule A.

5.    The failure of the unit and its common elements to be entitled by law to be assessed for real property taxes as a separate parcel.

6.    Any obligation to remove any improvements that exist at Date of Policy because of any present encroachments or because of any future unintentional encroachment of the common elements upon any unit or of any unit upon the common elements or another unit.

7.    The failure of the Title by reason of a right of first refusal to purchase the unit and its common elements that was exercised or could have been exercised at Date of Policy.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]
DATED:
Chicago Title Insurance Company
BY:_____
        AUTHORIZED SIGNATORY

ALTA Endorsement Form 4-06
(Condominium) (Rev. 02/03/10)
©American Land Title Association

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

The Company insures against loss or damage sustained by the Insured by reason of:

1.     The failure of the unit identified in Schedule A and its common elements to be part of a condominium within the meaning of the condominium statutes of the jurisdiction in which the unit and its common elements are located.

2.     The failure of the documents required by the condominium statutes to comply with the requirements of the statutes to the extent that such failure affects the Title to the unit and its common elements.

3.     Present violations of any restrictive covenants that restrict the use of the unit and its common elements and that are contained in the condominium documents or the forfeiture or reversion of Title by reason of any provision contained in the restrictive covenants.  As used in this paragraph 3, the words "restrictive covenants" do not refer to or include any covenant, condition, or restriction (a) relating to obligations of any type to perform maintenance, repair, or remediation on the Land, or (b) pertaining to environmental protection of any kind or nature, including hazardous or toxic matters, conditions, or substances, except to the extent that a notice of a violation or alleged violation affecting the Land has been recorded in the Public Records at Date of Policy and is not excepted in Schedule B.

4.     Any charges or assessments provided for in the condominium statutes and condominium documents due and unpaid at Date of Policy.

5.     The failure of the unit and its common elements to be entitled by law to be assessed for real property taxes as a separate parcel.

6.     Any obligation to remove any improvements that exist at Date of Policy because of any present encroachments or because of any future unintentional encroachment of the common elements upon any unit or of any unit upon the common elements or another unit.

7.     The failure of the Title by reason of a right of first refusal to purchase the unit and its common elements which was exercised or could have been exercised at Date of Policy.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]
DATED:
Chicago Title Insurance Company
BY:_____
    AUTHORIZED SIGNATORY

ALTA Endorsement Form 4.1-06
(Condominium) (Rev. 10/16/08)
©American Land Title Association

**PLANNED UNIT DEVELOPMENT**
**ALTA 5-06 (02-03-10) and 5.1-06 (10-16-08)**

These endorsements provide affirmative coverage for lenders loaning on the security of units in a Planned Unit Development, or PUD. Affirmative coverage is provided against loss caused by violation of restrictions or by the existence of certain kinds of restrictions. In addition, both cover loss from enforced removal of buildings by reason of encroachments and from failure of Title, as defined by the policies, caused by the exercise of any right of first refusal. The ALTA 5-06 insures against loss from lack of priority of the mortgage lien over the lien for homeowners' association assessments. The ALTA 5.1-06 differs in that there is no insurance of priority over future assessments in Paragraph 2 of the 5.1-06; instead it only covers unpaid assessments at date of policy.    The ALTA 5.1-06 may be used with either an Owner's or Lender's Policy.

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

The Company insures against loss or damage sustained by the Insured by reason of:

1.      Present violations of any restrictive covenants referred to in Schedule B that restrict the use of the Land or the forfeiture or reversion of Title by reason of any provision contained in the restrictive covenants. As used in this paragraph 1, the words "restrictive covenants" do not refer to or include any covenant, condition or restriction (a) relating to obligations of any type to perform maintenance, repair or remediation on the Land, or (b) pertaining to environmental protection of any kind or nature, including hazardous or toxic matters, conditions, or substances, except to the extent that a notice of a violation or alleged violation affecting the Land has been recorded in the Public Records at Date of Policy and is not excepted in Schedule B.

2.      The priority of any lien for charges and assessments in favor of any association of homeowners which are provided for in any document at Date of Policy referred to in Schedule B over the lien of any Insured Mortgage identified in Schedule A.

3.      The enforced removal of any existing structure on the Land (other than a boundary wall or fence) because it encroaches onto adjoining land or onto any easements.

4.      The failure of the Title by reason of a right of first refusal to purchase the Land which was exercised or could have been exercised at Date of Policy.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

Chicago Title Insurance Company

BY:_____ _____

ALTA Endorsement Form 5-06
(Planned Unit Development) (Rev. 02/03/10)
© American Land Title Association

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

The Company insures against loss or damage sustained by the Insured by reason of:

1.    Present violations of any restrictive covenants referred to in Schedule B that restrict the use of the Land or the forfeiture or reversion of Title by reason of any provision contained in the restrictive covenants. As used in this paragraph 1, the words "restrictive covenants" do not refer to or include any covenant, condition, or restriction (a) relating to obligations of any type to perform maintenance, repair, or remediation on the Land, or (b) pertaining to environmental protection of any kind or nature, including hazardous or toxic matters, conditions, or substances, except to the extent that a notice of a violation or alleged violation affecting the Land has been recorded in the Public Records at Date of Policy and is not excepted in Schedule B.

2.    Any charges or assessments in favor of any association of homeowners, which are provided for in any document referred to in Schedule B, due and unpaid at Date of Policy.

3.    The enforced removal of any existing structure on the Land (other than a boundary wall or fence) because it encroaches onto adjoining land or onto any easements.

4.    The failure of the Title by reason of a right of first refusal to purchase the Land that was exercised or could have been exercised at Date of Policy.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

Chicago Title Insurance Company

BY:_____ _____

ALTA Endorsement Form 5.1-06
(Planned Unit Development) (Rev. 10/16/08)
©American Land Title Association

**VARIABLE RATE MORTGAGE**
**ALTA 6-06 (10-16-08), and 6.2-06 (10-16-08)**

These endorsements were created to insure the validity and priority of the mortgage liens securing loans with variable interest rates. The ALTA 6-06 is the basic variable interest rate endorsement. The ALTA 6.1 is not filed in California and is designed for use where lenders face regulatory requirements which must be followed in order to make such loans. The ALTA 6.2-06 was created to insure the validity and priority of mortgage liens as security for interest at variable rates and as security for additional principal created by the negative amortization of unpaid interest.

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

The Company insures against loss or damage sustained by the Insured by reason of:

1.      The invalidity or unenforceability of the lien of the Insured Mortgage resulting from its provisions that provide for changes in the rate of interest.

2.      Loss of priority of the lien of the Insured Mortgage as security for the unpaid principal balance of the loan, together with interest as changed in accordance with the provisions of the Insured Mortgage, which loss of priority is caused by the changes in the rate of interest.

"Changes in the rate of interest", as used in this endorsement, shall mean only those changes in the rate of interest calculated pursuant to the formula provided in the documents secured by the Insured Mortgage at Date of Policy.

This endorsement does not insure against loss or damage based upon:

        1.      usury, or

        2.      any consumer credit protection or truth in lending law.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]
DATED:
Chicago Title Insurance Company
BY:_____
        AUTHORIZED SIGNATORY

ALTA Endorsement Form 6-06
(Variable Rate) (Rev. 10/16/08)
©American Land Title Association

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**For use with 1992 policies or older**

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

The Company insures the owner of the indebtedness secured by the insured mortgage against loss or damage sustained by reason of:

1.    The invalidity or unenforceability of the lien of the insured mortgage resulting from the provisions therein which provide for changes in the rate of interest.

2.    Loss of priority of the lien of the insured mortgage as security for the unpaid principal balance of the loan, together with interest as changed in accordance with the provisions of the insured mortgage, which loss of priority is caused by the changes in the rate of interest.

"Changes in the rate of interest", as used in this endorsement, shall mean only those changes in the rate of interest calculated pursuant to the formula provided in the insured mortgage at Date of Policy.

This endorsement does not insure against loss or damage by reason of the failure of the insured to comply with the following statutes or regulations concerning variable rate mortgages:

This endorsement does not insure against loss or damage based upon (a) usury, or (b) any consumer credit protection or truth in lending law.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy or
(iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]
DATED:
Chicago Title Insurance Company
BY:_____
        AUTHORIZED SIGNATORY

ALTA Endorsement - Form 6.1
(Variable Rate Mortgage) (1/17/04)
©American Land Title Association

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

The Company insures against loss or damage sustained by the Insured by reason of:

1.      The invalidity or unenforceability of the lien of the Insured Mortgage resulting from its provisions that provide for (a) interest on interest, (b) changes in the rate of interest, or (c) the addition of unpaid interest to the principal balance of the loan.

2.      Loss of priority of the lien of the Insured Mortgage as security for the principal balance of the loan, including any unpaid interest which was added to principal in accordance with the provisions of the Insured Mortgage, interest on interest, or interest as changed in accordance with the provisions of the Insured Mortgage, which loss of priority is caused by (a) changes in the rate of interest, (b) interest on interest, or (c) increases in the unpaid principal balance of the loan resulting from the addition of unpaid interest.

"Changes in the rate of interest", as used in this endorsement shall mean only those changes in the rate of interest calculated pursuant to the formula provided in the loan documents secured by the Insured Mortgage at Date of Policy.

This endorsement does not insure against loss or damage based upon:

1.      usury, or

2.      any consumer credit protection or truth in lending law.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]
DATED:
Chicago Title Insurance Company
BY:_____
        AUTHORIZED SIGNATORY

ALTA Endorsement Form 6.2-06
(Variable Rate, Negative Amortization) (Rev. 10/16/08)
©American Land Title Association

**MANUFACTURED HOUSING**
**ALTA 7-06 (06-17-06), 7.1-06 (06-17-06) and 7.2-06 (06-17-06)**

These endorsements clarify whether or not a manufactured housing unit ("MHU") located on the Land is covered by the insurance policy. The ALTA 7-06 adds the MHU to the definition of Land. In addition the ALTA 7.1-06 and the ALTA 7.2-06 insure against loss or damage if the MHU is not located on the subject premises, if there are UCC type liens filed against the MHU and if the MHU does not constitute real property under state law. The ALTA 7.1-06, which is the form to be used with a Loan Policy, also insures that the Insured Mortgage can be enforced in a single foreclosure action against both the MHU and the Land.

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

The term "Land" includes the manufactured housing unit located on the land described in Schedule A at Date of Policy.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]
DATED:
Chicago Title Insurance Company
BY:_____
        AUTHORIZED SIGNATORY

ALTA Endorsement Form 7-06
(Manufactured Housing Unit) (6/17/06)
©American Land Title Association

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1.    The term "Land" as defined in this policy includes the manufactured housing unit located on the land described in Schedule A at Date of Policy.

2.    Unless excepted in Schedule B, the Company insures against loss or damage sustained by the Insured if, at Date of Policy,

   (a)    A manufactured housing unit is not located on the land described in Schedule A.

   (b)    The manufactured housing unit located on the land is not real property under the law of the state where the Land described in Schedule A is located.

   (c)    The owner of the Land is not the owner of the manufactured housing unit.

   (d)    Any lien is attached to the manufactured housing unit as personal property, including

      (i)    a federal, state, or other governmental tax lien,

      (ii)    UCC security interest,

      (iii)    a motor vehicular lien,

      (iv)    other personal property lien.

   (e)    The lien of the Insured Mortgage is not enforceable against the Land.

   (f)    The lien of the Insured Mortgage is not enforceable in a single foreclosure procedure.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]
DATED:
Chicago Title Insurance Company
BY:_____
        AUTHORIZED SIGNATORY

ALTA Endorsement Form 7.1-06
(Manufactured Housing – Conversion; Loan) (6/17/06)
©American Land Title Association

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company


1. The term "Land" as defined in this policy includes the manufactured housing unit located on the land described in Schedule A at Date of Policy.

2. Unless excepted in Schedule B, the Company insures against loss or damage, sustained by the Insured if, at Date of Policy

   (a) A manufactured housing unit is not located on the Land described in Schedule A.

   (b) The manufactured housing unit located on the Land is not real property under the law of the state where the Land described in Schedule A is located.

   (c) The Insured is not the owner of the manufactured housing unit.

   (d) Any lien is attached to the manufactured housing unit as personal property, including

      (i) a federal, state, or other governmental tax lien,

      (ii) UCC security interest,

      (iii) a motor vehicular lien,

      (iv) other personal property lien.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.


[Witness clause optional]
DATED:
Chicago Title Insurance Company
BY:_____
    AUTHORIZED SIGNATORY


ALTA Endorsement Form 7.2-06
(Manufactured Housing – Conversion; Owners) (6/17/06)
©American Land Title Association

**ENVIRONMENTAL PROTECTION LIEN COMMERCIAL ENVIRONMENTAL LIEN**
**ALTA 8.1-06 (06-17-06) and 8.2-06 (10-16-08)**

These endorsements provide affirmative insurance that the lien of the Insured Mortgage has priority over unrecorded or unfiled environmental protection liens.

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

The insurance afforded by this endorsement is only effective if the Land is used or is to be used primarily for residential purposes.

The Company insures against loss or damage sustained by the Insured by reason of lack of priority of the lien of the Insured Mortgage over

(a)     any environmental protection lien that, at Date of Policy, is recorded in those records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge, or is filed in the records of the clerk of the United States district court for the district in which the Land is located, except as set forth in Schedule B; or

(b)     any environmental protection lien provided by any state statute in effect at Date of Policy, except environmental protection liens provided by the following state statutes:

FILL IN

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]
DATED:
Chicago Title Insurance Company
BY:_____
        AUTHORIZED SIGNATORY

ALTA Endorsement Form 8.1-06
(Environmental Protection Lien) (6/17/06)
©American Land Title Association

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company


      The Company insures against loss or damage sustained by the Insured by reason of an environmental protection lien that, at Date of Policy, is recorded in the Public Records or filed in the records of the clerk of the United States district court for the district in which the Land is located, unless the environmental protection lien is set forth as an exception in Schedule B.

      This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.


[Witness clause optional]
DATED:
Chicago Title Insurance Company
BY:_____
    AUTHORIZED SIGNATORY


ALTA Endorsement Form 8.2-06
(Commercial Environmental Lien) (10/16/08)
©American Land Title Association

**ALTA 9**
**SERIES 9**
**ALTA  9-06 to 9.10-06**
**[ALTA 9.4-06 AND 9.5-06 WITHDRAWN EFFECTIVE 4/2/2012]**

It is common for institutional lenders to require certain additional title insurance coverages for loans secured by first mortgages on improved real property when these mortgages are to be sold on the secondary market. The original ALTA Form 9 was designed to provide those coverages in a single, inclusive form. It afforded the lender various protections with respect to private property restrictions, building setback lines, encroachments and excepted minerals. Forms for use with owner's policies were subsequently adopted also.

In 2012 and 2013 ALTA completely revised all of the endorsements in the series, withdrawing the 9.4-06 and 9.5-06 and adding 5 new forms- the 9.6-06, 9.7-06,  9.8-06, 9.9-06 and 9.10-06.

# ALTA 9 Series Summary
### Actual Endorsement Availability Depends Upon Case by Case Title Insurer's Underwriting Analysis

| | Coverage Requested | Loan Policy | Owners Policy |
|---|---|---|---|
| **A L T A  9  S E R I E S** | Restrictions, Encroachments, Minerals | **Use:** **ALTA 9-06[1]** for existing improvements, **ALTA 9.7-06[1]** for Land under Development, and **ALTA 9.10-06[1]** where a possibility of forfeiture exists but there is no current violation. | To get this coverage for: <u>vacant land</u> combine - ALTA **9.1-06[1], ALTA 28.1-06[2]** and ALTA **35.1-06**. <u>improved land</u> - combine ALTA **9.2-06[1]**, ALTA **28.1-06[2]** and ALTA **35.1-06**. |
| | Covenants, Conditions & Restrictions | **Use:** **ALTA 9.3-06[1]** (It has the same coverage as Section 3 of the ALTA 9-06, so the ALTA 9-06 is more inclusive with its encroachment and mineral coverages in Section 4). | **Use:** **ALTA 9.1-06[1]** for unimproved land, **ALTA 9.2-06[1]** available for improved Land, or **ALTA 9.8[2]** for Land Under Development |
| | Private Rights | **Use:** **ALTA 9.6-06** (A private charge or assessment, option, right of first refusal or right of prior approval). | **Use:** **ALTA 9.9-06 06** (An option, right of first refusal or right of prior approval). |

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1.  The insurance provided by this endorsement is subject to the exclusions in Section 5 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

2.  For the purposes of this endorsement only:

    a.  "Covenant" means a covenant, condition, limitation or restriction in a document or instrument in effect at Date of Policy.

    b.  "Improvement" means an improvement, including any lawn, shrubbery, or trees, affixed to either the Land or adjoining land at Date of Policy that by law constitutes real property.

3.  The Company insures against loss or damage sustained by the Insured by reason of:

    a.  A violation of a Covenant that:

        i.    divests, subordinates, or extinguishes the lien of the Insured Mortgage,
        ii.   results in the invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage, or
        iii.  causes a loss of the Insured's Title acquired in satisfaction or partial satisfaction of the Indebtedness;

    b.  A violation on the Land at Date of Policy of an enforceable Covenant, unless an exception in Schedule B of the policy identifies the violation;

    c.  Enforced removal of an Improvement located on the Land as a result of a violation, at Date of Policy, of a building setback line shown on a plat of subdivision recorded or filed in the Public Records, unless an exception in Schedule B of the policy identifies the violation; or

    d.  A notice of a violation, recorded in the Public Records at Date of Policy, of an enforceable Covenant relating to environmental protection describing any part of the Land and referring to that Covenant, but only to the extent of the violation of the Covenant referred to in that notice, unless an exception in Schedule B of the policy identifies the notice of the violation.

4.  The Company insures against loss or damage sustained by reason of:

    a.  An encroachment of:

        i.   an Improvement located on the Land, at Date of Policy, onto adjoining land or onto that portion of the Land subject to an easement; or

        ii.  an Improvement located on adjoining land onto the Land at Date of Policy,

unless an exception in Schedule B of the policy identifies the encroachment otherwise insured against in Sections 4.a.i. or 4.a.ii.;

    b.  A final court order or judgment requiring the removal from any land adjoining the Land of an encroachment identified in Schedule B; or

    c.  Damage to an Improvement located on the Land, at Date of Policy:

        i.   that is located on or encroaches onto that portion of the Land subject to an easement excepted in Schedule B, which damage results from the exercise of the right to maintain the easement for the purpose for which it was granted or reserved; or

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

> ii.    resulting from the future exercise of a right to use the surface of the Land for the extraction or development of minerals or any other subsurface substances excepted from the description of the Land or excepted in Schedule B.

5.  This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from:

    a.  any Covenant contained in an instrument creating a lease;

    b.  any Covenant relating to obligations of any type to perform maintenance, repair, or remediation on the Land;

    c.  except as provided in Section 3.d, any Covenant relating to environmental protection of any kind or nature, including hazardous or toxic matters, conditions, or substances;

    d.  contamination, explosion, fire, fracturing, vibration, earthquake or subsidence; or

    e.  negligence by a person or an Entity exercising a right to extract or develop minerals or other subsurface substances.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements

[Witness clause optional]
DATED:
Chicago Title Insurance Company
BY:_____
    AUTHORIZED SIGNATORY

ALTA Endorsement Form 9-06
(Restrictions, Encroachments, Minerals-Loan Policy) (Rev. 4/2/12)
©American Land Title Association

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1.      The insurance provided by this endorsement is subject to the exclusions in Section 4 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

2.      For the purposes of this endorsement only, "Covenant" means a covenant, condition, limitation or restriction in a document or instrument in effect at Date of Policy.

3.      The Company insures against loss or damage sustained by the Insured by reason of:

    a.    A violation on the Land at Date of Policy of an enforceable Covenant, unless an exception in Schedule B of the policy identifies the violation; or

    b.    A notice of a violation, recorded in the Public Records at Date of Policy, of an enforceable Covenant relating to environmental protection describing any part of the Land and referring to that Covenant, but only to the extent of the violation of the Covenant referred to in that notice, unless an exception in Schedule B of the policy identifies the notice of the violation.

4.      This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from:

    a.    any Covenant contained in an instrument creating a lease;

    b.    any Covenant relating to obligations of any type to perform maintenance, repair, or remediation on the Land; or

    c.    except as provided in Section 3.b, any Covenant relating to environmental protection of any kind or nature, including hazardous or toxic matters, conditions, or substances.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

DATED:
Chicago Title Insurance Company
BY:_____
    AUTHORIZED SIGNATORY

ALTA Endorsement Form 9.1-06
(Covenants, Conditions and Restrictions-Unimproved Land – Owner's Policy–) (Rev. 4/2/12)
©American Land Title Association

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1. The insurance provided by this endorsement is subject to the exclusions in Section 4 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.
2. For the purposes of this endorsement only,
   a. "Covenant" means a covenant, condition, limitation or restriction in a document or instrument in effect at Date of Policy.
   b. "Improvement" means a building, structure located on the surface of the Land, road, walkway, driveway, or curb, affixed to the Land at Date of Policy and that by law constitutes real property, but excluding any crops, landscaping, lawn, shrubbery, or trees.
3. The Company insures against loss or damage sustained by the Insured by reason of:
   a. A violation on the Land at Date of Policy of an enforceable Covenant, unless an exception in Schedule B of the policy identifies the violation;
   b. Enforced removal of an Improvement as a result of a violation, at Date of Policy, of a building setback line shown on a plat of subdivision recorded or filed in the Public Records, unless an exception in Schedule B of the policy identifies the violation; or
   c. A notice of a violation, recorded in the Public Records at Date of Policy, of an enforceable Covenant relating to environmental protection describing any part of the Land and referring to that Covenant, but only to the extent of the violation of the Covenant referred to in that notice, unless an exception in Schedule B of the policy identifies the notice of the violation.
4. This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from:
   a. any Covenant contained in an instrument creating a lease;
   b. any Covenant relating to obligations of any type to perform maintenance, repair, or remediation on the Land; or
   c. except as provided in Section 3.c., any Covenant relating to environmental protection of any kind or nature, including hazardous or toxic matters, conditions, or substances.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]
DATED:
Chicago Title Insurance Company
BY:_____
     AUTHORIZED SIGNATORY

ALTA Endorsement Form 9.2-06
(Covenants, Conditions and Restrictions – Improved Land -Owner's Policy (Rev. 4/1/12)
©American Land Title Association

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1.    The insurance provided by this endorsement is subject to the exclusions in Section 4 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

2.    For the purposes of this endorsement only:

a.    "Covenant" means a covenant, condition, limitation or restriction in a document or instrument in effect at Date of Policy.

b.    "Improvement" means an improvement, including any lawn, shrubbery, or trees, affixed to the Land at Date of Policy that by law constitutes real property.

3.    The Company insures against loss or damage sustained by the Insured by reason of:

a.    A violation of a Covenant that:

i.    divests, subordinates, or extinguishes the lien of the Insured Mortgage,

ii.    results in the invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage, or

iii.    causes a loss of the Insured's Title acquired in satisfaction or partial satisfaction of the Indebtedness;

b.    A violation on the Land at Date of Policy of an enforceable Covenant, unless an exception in Schedule B of the policy identifies the violation;

c.    Enforced removal of an Improvement as a result of a violation, at Date of Policy, of a building setback line shown on a plat of subdivision recorded or filed in the Public Records, unless an exception in Schedule B of the policy identifies the violation; or

d.    A notice of a violation, recorded in the Public Records at Date of Policy, of an enforceable Covenant relating to environmental protection describing any part of the Land and referring to that Covenant, but only to the extent of the violation of the Covenant referred to in that notice, unless an exception in Schedule B of the policy identifies the notice of the violation.

4.    This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from:

a.    any Covenant contained in an instrument creating a lease;

b.    any Covenant relating to obligations of any type to perform maintenance, repair, or remediation on the Land; or

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

    c.   except as provided in Section 3.c, any Covenant pertaining to environmental protection of any kind or nature, including hazardous or toxic matters, conditions, or substances.

    This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]
DATED:
Chicago Title Insurance Company
BY:_____
    AUTHORIZED SIGNATORY

ALTA Endorsement Form 9.3-06
(Covenants, Conditions and Restrictions-Loan Policy) (Rev. 4/2/12)
©American Land Title Association

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1.   The insurance provided by this endorsement is subject to the exclusions in Section 4 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

2.   For purposes of this endorsement only:

   a.   "Covenant" means a covenant, condition, limitation or restriction in a document or instrument in effect at Date of Policy.

   b.    "Private Right" means (i) a private charge or assessment; (ii) an option to purchase; (iii) a right of first refusal; or (iv) a right of prior approval of a future purchaser or occupant.

3.   The Company insures against loss or damage sustained by the Insured under this Loan Policy if enforcement of a Private Right in a Covenant affecting the Title at Date of Policy (a) results in the invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage, or (b) causes a loss of the Insured's Title acquired in satisfaction or partial satisfaction of the Indebtedness.

4.     This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from:

   a.   any Covenant contained in an instrument creating a lease;

   b.   any Covenant relating to obligations of any type to perform maintenance, repair, or remediation on the Land;

   c.   any Covenant relating to environmental protection of any kind or nature, including hazardous or toxic matters, conditions, or substances; or

   d.   any Private Right in an instrument identified in Exception(s)_____in Schedule B.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]
DATED:
Chicago Title Insurance Company
BY:_____
     AUTHORIZED SIGNATORY

ALTA Endorsement Form 9.6-06
(Private Rights-Loan Policy) (Rev. 4/2/13)
©American Land Title Association

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1.      The insurance provided by this endorsement is subject to the exclusions in Section 5 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

2.      For purposes of this endorsement only:

a.      "Covenant" means a covenant, condition, limitation or restriction in a document or instrument in effect at Date of Policy.

b.      "Future Improvement" means a building, structure, road, walkway, driveway, curb, lawn, shrubbery or trees to be constructed on or affixed to the Land in the locations according to    the Plans and that by law will constitute real property.

c.      "Improvement" means an improvement, including any lawn, shrubbery, or trees, affixed to  either the Land or adjoining land at Date of Policy that by law constitutes real property.

d.      "Plans" means the survey, site and elevation plans or other depictions or drawings prepared by
(*insert name of architect or engineer*)  dated_____, last revised _____, designated as (*insert name of project or project number*)  consisting of____sheets.

3.   The Company insures against loss or damage sustained by the Insured by reason of:

a.      A violation of a Covenant that:

i.    divests, subordinates, or extinguishes the lien of the Insured Mortgage,

ii.   results in the invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage, or

iii.  causes a loss of the Insured's Title acquired in satisfaction or partial satisfaction of the Indebtedness;

b.      A violation of an enforceable Covenant by an Improvement on the Land at Date of Policy or by a Future Improvement, unless an exception in Schedule B of the policy identifies the violation;

c.      Enforced removal of an Improvement located on the Land or of a Future Improvement as a result of a violation of a building setback line shown on a plat of subdivision recorded or filed in the Public Records at Date of Policy, unless an exception in Schedule B of the policy identifies the violation; or

d.      A notice of a violation, recorded in the Public Records at Date of Policy, of an enforceable Covenant relating to environmental protection describing any part of the Land and referring to that Covenant, but only to the extent of the violation of the Covenant referred to in that notice, unless an exception in Schedule B of the policy identifies the notice of the violation.

4.   The Company insures against loss or damage sustained by reason of:

a.      An encroachment of:

i.      an Improvement located on the Land at Date of Policy or a Future Improvement, onto adjoining land or onto that portion of the Land subject to an easement; or

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

ii.      an Improvement located on adjoining land onto the Land at Date of Policy,

unless an exception in Schedule B of the policy identifies the encroachment otherwise insured against in Sections 4.a.i. or 4.a.ii.;

b.      Damage to an Improvement located on the Land at Date of Policy or a Future Improvement:

i.      that encroaches onto that portion of the Land subject to an easement excepted in Schedule B, which damage results from the exercise of the right to maintain the easement for the purpose for which it was granted or reserved; or

ii.      resulting from the future exercise of a right to use the surface of the Land for the extraction or development of minerals or any other subsurface substances excepted from the description of the Land or excepted in Schedule B.

5.      This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from:

a.      any Covenant contained in an instrument creating a lease;

b.      any Covenant relating to obligations of any type to perform maintenance, repair, or remediation on the Land;

c.      except as provided in Section 3.d, any Covenant relating to environmental protection of any kind or nature, including hazardous or toxic matters, conditions, or substance

d.      contamination, explosion, fire, vibration, fracturing, earthquake or subsidence; or

e.      negligence by a person or an Entity exercising a right to extract or develop minerals or other subsurface substances.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

DATED:
Chicago Title Insurance Company
BY:_____
      AUTHORIZED SIGNATORY

ALTA Endorsement Form 9.7-06
(Restrictions, Encroachments, Minerals-Land Under Development-Loan Policy) (4/2/12)
©American Land Title Association

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1.     The insurance provided by this endorsement is subject to the exclusions in Section 4 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

2.     For purposes of this endorsement only:

a.     "Covenant" means a covenant, condition, limitation or restriction in a document or instrument in effect at Date of Policy.

b.     "Future Improvement" means a building, structure, road, walkway, driveway, curb to be constructed on or affixed to the Land in the locations according to the Plans and that by law will constitute real property, but excluding any crops, landscaping, lawn, shrubbery, or trees.

c.     "Improvement" means a building, structure located on the surface of the Land, road, walkway, driveway, or curb, affixed to the Land at Date of Policy and that by law constitutes real property, but excluding any crops, landscaping, lawn, shrubbery, or trees.

d.     "Plans" means the survey, site and elevation plans or other depictions or drawings prepared by (*insert name of architect or engineer*) dated_____, last revised _____, designated as (*insert name of project or project number*) consisting of ____sheets.

3.     The Company insures against loss or damage sustained by the Insured by reason of:

a.     A violation of an enforceable Covenant by an Improvement on the Land at Date of Policy or by a Future Improvement, unless an exception in Schedule B of the policy identifies the violation;

b.     Enforced removal of an Improvement located on the Land or of a Future Improvement as a result of a violation of a building setback line shown on a plat of subdivision recorded or filed in the Public Records at Date of Policy, unless an exception in Schedule B of the   policy identifies the violation; or

c.     A notice of a violation, recorded in the Public Records at Date of Policy, of an enforceable Covenant relating to environmental protection describing any part of the Land and referring to that Covenant, but only to the extent of the violation of the Covenant referred    to in that notice, unless an exception in Schedule B of the policy identifies the notice of the violation.

4.     This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from:

a.     any Covenant contained in an instrument creating a lease;

b.     any Covenant relating to obligations of any type to perform maintenance, repair, or remediation on the Land; or

c.     except as provided in Section 3.c, any Covenant relating to environmental protection of any kind or nature, including hazardous or toxic matters, conditions, or substances.

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

This endorsement is issued as part of the policy. Except as it expressly states, it does not
(i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements,
(iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision
of the policy or a previous endorsement is inconsistent with an express provision of this
endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the
terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]


DATED:
Chicago Title Insurance Company
BY:_____
        AUTHORIZED SIGNATORY




ALTA Endorsement Form 9.8-06
(Covenants, Conditions and Restrictions-Land Under Development-Owners Policy) (4/2/12)
©American Land Title Association

*[includes technical correction of 12-3-12]*

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1.    The insurance provided by this endorsement is subject to the exclusions in Section 4 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

2.    For purposes of this endorsement only:

   a.    "Covenant" means a covenant, condition, limitation or restriction in a document or instrument in effect at Date of Policy.

   b.    "Private Right" means (i) an option to purchase; (ii) a right of first refusal; or (iii) a right of prior approval of a future purchaser or occupant.

3.    The Company insures against loss or damage sustained by the Insured under this Owner's Policy if enforcement of a Private Right in a Covenant affecting the Title at Date of Policy based on a transfer of Title on or before Date of Policy causes a loss of the Insured's Title.

4.    This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from: restriction:

   a.    any Covenant  contained in an instrument creating a lease;

   b.    any Covenant relating to obligations of any type to perform maintenance, repair, or remediation on the Land;

   c.    any Covenant relating to environmental protection of any kind or nature, including hazardous or toxic matters, conditions, or substances; or

   d.    any Private Right in an instrument identified in Exception(s)_____in Schedule B.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

DATED:
Chicago Title Insurance Company
BY:_____
        AUTHORIZED SIGNATORY

ALTA Endorsement Form 9.9-06
(Private Rights-Owner's Policy) ( 4/2/13)
©American Land Title Association

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1. The insurance provided by this endorsement is subject to the exclusions in Section 5 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

2. For the purposes of this endorsement only:

   a. "Covenant" means a covenant, condition, limitation or restriction in a document or instrument in effect at Date of Policy.

   b. "Improvement" means an improvement, including any lawn, shrubbery, or trees, affixed to either the Land or adjoining land at Date of Policy that by law constitutes real property.

3. The Company insures against loss or damage sustained by the Insured by reason of:

   a. A violation at Date of Policy of a Covenant that:

      i. divests, subordinates, or extinguishes the lien of the Insured Mortgage,

      ii. results in the invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage, or

      iii. causes a loss of the Insured's Title acquired in satisfaction or partial satisfaction of the Indebtedness;

   b. A violation on the Land at Date of Policy of an enforceable Covenant, unless an exception in Schedule B of the policy identifies the violation;

   c. Enforced removal of an Improvement located on the Land as a result of a violation, at Date of Policy, of a building setback line shown on a plat of subdivision recorded or filed in the Public Records, unless an exception in Schedule B of the policy identifies the violation; or

   d. A notice of a violation, recorded in the Public Records at Date of Policy, of an enforceable Covenant relating to environmental protection describing any part of the Land and referring to that Covenant, but only to the extent of the violation of the Covenant referred to in that notice, unless an exception in Schedule B of the policy identifies the notice of the violation.

4. The Company insures against loss or damage sustained by reason of:

   a. An encroachment of:

      i. an Improvement located on the Land, at Date of Policy, onto adjoining land or onto that portion of the Land subject to an easement; or

      ii. an Improvement located on adjoining land onto the Land at Date of Policy,

unless an exception in Schedule B of the policy identifies the encroachment otherwise insured against in Sections 4.a.i. or 4.a.ii.;

   b. A final court order or judgment requiring the removal from any land adjoining the Land of an encroachment identified in Schedule B; or

   c. Damage to an Improvement located on the Land, at Date of Policy:

      i. that is located on or encroaches onto that portion of the Land subject to an easement excepted in Schedule B, which damage results from the exercise of

the right to maintain the easement for the purpose for which it was granted or reserved; or

    ii.   resulting from the future exercise of a right to use the surface of the Land for the extraction or development of minerals or any other subsurface substances excepted from the description of the Land or excepted in Schedule B.

5.    This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from:

a. any Covenant contained in an instrument creating a lease;

b. any Covenant relating to obligations of any type to perform maintenance, repair, or remediation on the Land;

c. except as provided in Section 3.d, any Covenant relating to environmental protection of any kind or nature, including hazardous or toxic matters, conditions, or substances;

d. contamination, explosion, fire, fracturing, vibration, earthquake or subsidence; or

e. negligence by a person or an Entity exercising a right to extract or develop minerals or other subsurface substances.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements

[Witness clause optional]

DATED:
Chicago Title Insurance Company
BY:_____
    AUTHORIZED SIGNATORY

ALTA Endorsement Form 9.10-06
(Restrictions, Encroachments, Minerals-Current Violations-Loan Policy) ( 4/2/13)
©American Land Title Association

**ASSIGNMENT OF MORTGAGE**
**ALTA 10-06 (02-03-10) AND 10.1-06 (02-03-10)**

The ALTA 10-06 endorsement insures the effectiveness of the assignment of the Insured Mortgage and that there have been no releases or reconveyances placed of record other than as shown. The ALTA 10.1-06 provides the same coverage as the 10-06 and gives additional coverage over only certain matters occurring after the original Date of Policy and before the Date of Endorsement, which is a defined term within the endorsement.

The policy is modified by naming the assignee under the assignment as the Insured. The endorsement provides additional affirmative coverage against the ineffectiveness of the assignment and the effect of any full or partial releases or reconveyances recorded after the Date of Policy and before the Date of Endorsement. In addition, the ALTA 10.1-06 provides coverage for the matters described above. Both forms of endorsement are conditioned upon the proper delivery and endorsement of the underlying notes.

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

<div align="center">

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

</div>

1.       The name of the Insured at Date of Endorsement and referred to in this endorsement as the "Assignee" is amended to read:

2.       The Company insures against loss or damage sustained by the Assignee by reason of:

      a.       The failure of the following assignment to vest title to the Insured Mortgage in the Assignee:

      b.       Any modification, partial or full reconveyance, release, or discharge of the lien of the Insured Mortgage recorded on or prior to Date of Endorsement in the Public Records other than those shown in the policy or a prior endorsement, except:

This endorsement does not insure against loss or damage, and the Company will not pay costs, attorneys' fees, or expenses, by reason of any claim that arises out of the transaction creating the assignment by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws that is based on:

      1.  the assignment being deemed a fraudulent conveyance or fraudulent transfer; or

      2.  the assignment being deemed a preferential transfer.

This endorsement shall be effective provided that, at Date of Endorsement, (1) the note or notes secured by the lien of the Insured Mortgage have been properly endorsed and delivered to the Assignee, or (2) if the note or notes are transferable records, the Assignee has "control" of the single authoritative copy of each "transferable record" as these terms are defined by applicable electronic transaction laws.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

Date of Endorsement_____

Chicago Title Insurance Company
BY:_____
      AUTHORIZED SIGNATORY

ALTA Endorsement Form 10-06
(Assignment) (Rev. 02/03/10)
©American Land Title Association

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1.    The name of the Insured at Date of Endorsement and referred to in this endorsement as the "Assignee" is amended to read:

2.    The Company insures against loss or damage sustained by the Assignee by reason of:

   a.    The failure of the following assignment to vest title to the Insured Mortgage in the Assignee:

   b.    Any liens for taxes or assessments that are due and payable on Date of Endorsement, except:

   c.    Lack of priority of the lien of the Insured Mortgage over defects, liens, or encumbrances other than those shown in the policy or a prior endorsement, except:

   d.    Notices of federal tax liens or notices of pending bankruptcy proceedings affecting the Title and recorded subsequent to Date of Policy in the Public Records and on or prior to Date of Endorsement, except:

   e.    Any modification, partial or full reconveyance, release or discharge of the lien of the Insured Mortgage recorded on or prior to Date of Endorsement in the Public Records other than those shown in the policy or a prior endorsement, except:

This endorsement does not insure against loss or damage, and the Company will not pay costs, attorneys' fees, or expenses, by reason of any claim that arises out of the transaction creating the assignment by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws that is based on:

   1. the assignment being deemed a fraudulent conveyance or fraudulent transfer; or

   2. the assignment being deemed a preferential transfer.

This endorsement shall be effective provided that, at Date of Endorsement, (1) the note or notes secured by the lien of the Insured Mortgage have been properly endorsed and delivered to the Assignee, or (2) if the note or notes are transferable records, the Assignee has "control" of the single authoritative copy of each "transferable record" as these terms are defined by applicable electronic transaction laws.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or
(iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

Date of Endorsement _____

[Witness clause optional]

Chicago Title Insurance Company

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

BY:_____
       AUTHORIZED SIGNATORY

ALTA Endorsement Form 10.1-06
(Assignment and Date Down) (Rev.02/03/10)
©American Land Title Association

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**MORTGAGE MODIFICATION**
**ALTA 11-06 (6-07-06) & 11.1-06 (10-22-09)**

These endorsements were created to insure lenders that the modification of the Insured Mortgage evidenced by the document referred to within the endorsement does not impair the validity, enforceability or priority of the Insured Mortgage as of the Date of Endorsement, which is a defined term within the endorsements. In addition, the 11.1-06 insures against loss based upon a specific matter not being subordinate to the lien of the Insured Mortgage.

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

The Company insures against loss or damage sustained by the Insured by reason of:

1.       The invalidity or unenforceability of the lien of the Insured Mortgage upon the Title at Date of Endorsement as a result of the agreement dated ____ recorded ____ ("Modification"); and

2.       The lack of priority of the lien of the Insured Mortgage, at Date of Endorsement, over defects in or liens or encumbrances on the Title, except for those shown in the policy or any prior endorsement and except:      ADD EXCEPTIONS HERE

This endorsement does not insure against loss or damage, and the Company will not pay costs, attorneys' fees, or expenses, by reason of any claim that arises out of the transaction creating the Modification by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws that is based on:

1.       the Modification being deemed a fraudulent conveyance or fraudulent transfer; or

2.       the Modification being deemed a preferential transfer except where the preferential transfer results from the failure

    a.       to timely record the instrument of transfer; or

    b.       of such recordation to impart notice to a purchaser for value or to a judgment or lien creditor.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

Date of Endorsement _____

[Witness clause optional]

Chicago Title Insurance Company
BY:_____
        AUTHORIZED SIGNATORY

ALTA Endorsement Form 11-06
(Mortgage Modification) (6/17/06)
©American Land Title Association

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

The Company insures against loss or damage sustained by the Insured by reason of:

1.   The invalidity or unenforceability of the lien of the Insured Mortgage upon the Title at Date of Endorsement as a result of the agreement dated_____ , recorded_____, ("Modification"); and

2.   The lack of priority of the lien of the Insured Mortgage, at Date of Endorsement, over defects in or liens or encumbrances on the Title, except for those shown in the policy or any prior endorsement and except:      ADD EXCEPTIONS HERE

3.   The following matters not being subordinate to the lien of the Insured Mortgage: ADD SUBORDINATE MATTERS HERE

     This endorsement does not insure against loss or damage, and the Company will not pay costs, attorneys' fees, or expenses, by reason of any claim that arises out of the transaction creating the Modification by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws that is based on:

1.   the Modification being deemed a fraudulent conveyance or fraudulent transfer; or

2.   the Modification being deemed a preferential transfer except where the preferential transfer results from the failure

     a.   to timely record the instrument of transfer; or

     b.   of such recordation to impart notice to a purchaser for value or to a judgment or lien creditor.

     This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

Date of Endorsement_____

[Witness clause optional]

Chicago Title Insurance Company

BY:_____

ALTA Endorsement Form 11.1-06
(Mortgage Modification with Subordination) (10/22/09)
©American Land Title Association

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**AGGREGATION (TIE-IN)**
**ALTA 12-06 (04-02-13) and 12.1-06 (04-12-13)**

Mortgages covering many parcels in different recording districts or jurisdictions may each be recorded for the full amount of the secured indebtedness, or the allocated collateral value of each site, or a combination of full and allocated values.

The allocated amount is often used in states which impose a mortgage tax.   In any case, the lender views the transaction as one debt and wants insurance coverage for the total amount of the secured indebtedness.   Instead of combining all of the parcels into one large loan policy, the aggregation endorsement allows an insurer to issue a number of policies for lesser amounts but to tie the policies together so that the Insured can aggregate the coverage and take advantage of any increases in the value of a particular parcel should there be a loss.  Form 12-06 can be used for aggregating policies on sites all located in a single state or sites located in multiple states none of which have state statutory limitations on the amount which can be insured.  Form 12.1-06 is intended to be used for aggregating policies in multiple states one or more of which have state statutory limitations on the amount which can be insured.

This endorsement changes the provisions of Conditions 8(a)(i) of the  ALTA Loan Policy so that the Amount of Insurance available to cover a loss is the aggregate of the Amount of Insurance available under the policy to which this endorsement is attached plus the Amounts of Insurance available under the other policies identified in this endorsement.  Effective April 2, 2013 Form 12-06 was modified by adding new paragraphs which change the provisions of Sections 7(a)(i), 8(a), 8(b), 10 of the Conditions of the ALTA Loan Policy.  New Form 12.1-06 also contains the new paragraphs.  These new paragraphs clarify the effect of the endorsement on the options of the Company under the policy in the event of a claim and the extent of the Company's liability.

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1.  The following policies are issued in conjunction with one another:

POLICY NUMBER:            STATE:            AMOUNT OF INSURANCE:

$ _____

$ _____

$ _____

2.  The amount of insurance available to cover the Company's liability for loss or damage under this policy at the time of payment of loss shall be the Aggregate Amount of Insurance defined in Section 3 of this endorsement.

3.  Subject to the limits in Section 4 of this endorsement, the Aggregate Amount of Insurance under these policies is $_____.

4.  Section 7(a)(i) of the Conditions of this policy is amended to read:

**7.  OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY**

In case of a claim under this policy, the Company shall have the following additional options:

(a)  to pay or tender payment of the lesser of the value of the Title as insured or the Aggregate Amount of Insurance applicable under this policy at the date the claim was made by the Insured Claimant, or to purchase the Indebtedness.

(i)  to pay or tender payment of the lesser of the value of the Title as insured at the date the claim was made by the Insured Claimant, or the Aggregate Amount of Insurance applicable under this policy together with any cost, attorneys' fees, and costs and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay; or

5.  Section 8(a) and 8(b) of the Conditions of this policy are amended to read:

**8. DETERMINATION AND EXTENT OF LIABILITY**

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.

(a) The extent of liability of the Company for loss or damage under this policy shall not exceed the least of

(i)    the Aggregate Amount of Insurance,

(ii)   the Indebtedness,

(iii)  the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy, or

(iv)  if a government agency or instrumentality is the Insured Claimant, the amount it paid in the acquisition of the Title or the Insured Mortgage in satisfaction of its insurance contract or guaranty.

(b)  If the Company pursues its rights under Section 5 of these Conditions and is unsuccessful in establishing the Title or the lien of the Insured Mortgage, as insured, the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as the date it is settled and paid.

6.   Section 10 of the Conditions of this policy is amended to read:

## 10.  REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY

(a)  All payments under this policy, except payments made for costs, attorneys' fees, and expenses, shall reduce the Aggregate Amount of Insurance by the amount of the payment.

(b)  However, any payments made prior to the acquisition of Title as provided in Section 2 of these Conditions shall not reduce the Aggregate Amount of Insurance afforded under this endorsement except to the extent that the payments reduce the Indebtedness.

(c)  The voluntary satisfaction or release of the Insured Mortgage shall terminate all liability of the Company under this policy, except as provided in Section 2 of these Conditions, but it will not reduce the Aggregate Amount of Insurance for the other policies identified in Section 1 of this endorsement.

This endorsement is issued as part of the policy.    Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.    To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

DATED:
Chicago Title Insurance Company
BY:_____
     AUTHORIZED SIGNATORY

ALTA Endorsement Form 12-06
(Aggregation-Loan) (rev. 4/2/13)
© American Land Title Association

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1. The following policies are issued in conjunction with one another:

| POLICY NUMBER: | STATE: | AMOUNT OF INSURANCE: |
|---|---|---|
| | | $ |
| | | $ |
| | | $ |

2. The amount of insurance available to cover the Company's liability for loss or damage under this policy at the time of payment of loss shall be the Aggregate Amount of Insurance defined in Section 3 of this endorsement.

3. The Aggregate Amount of Insurance under this policy is either:

   a. $ ; or

   b. If the Land is located in one of the states identified in this subsection, then the Aggregate Amount of Insurance is restricted to the amount shown below:

   | STATE | AGGREGATE AMOUNT OF INSURANCE |
   |---|---|
   | | $ |
   | | $ |

4. Section 7(a)(i) of the Conditions of this policy is amended to read:

   **7. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY**

   In case of a claim under this policy, the Company shall have the following additional options:

   (a)        to pay or tender payment of the lesser of the value of the Title as insured or the Aggregate Amount of Insurance applicable under this policy at the date the claim was made by the Insured Claimant, or to purchase the Indebtedness.

   (i) To pay or tender payment of the lesser of the value of the Title as insured at the date the claim was made by the Insured Claimant, or the Aggregate Amount of Insurance applicable under this policy, together with any cost, attorneys' fees, and costs and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay; or

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

5.   Section 8(a) and 8(b) of the Conditions of this policy are amended to read:

**8. DETERMINATION AND EXTENT OF LIABILITY**

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.

(a) The extent of liability of the Company for loss or damage under this policy shall not exceed the least of

(i)   the Aggregate Amount of Insurance for the State where the Land is located,

(ii)   the Indebtedness,

(iii)  the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy, or

(iv)  if a government agency or instrumentality is the Insured Claimant, the amount it paid in the acquisition of the Title or the Insured Mortgage in satisfaction of its insurance contract or guaranty.

(b) If the Company pursues its rights under Section 5 of these Conditions and is unsuccessful in establishing the Title or the lien of the Insured Mortgage, as insured, the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as the date it is settled and paid.

6.   Section 10 of the Conditions of this policy is amended to read:

**10.  REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY**

(a) All payments under this policy, except payments made for costs, attorneys' fees, and expenses, shall reduce the applicable Aggregate Amount of Insurance by the amount of the payment.

(b) If this policy insures the Title to Land located in a state identified in Section 3 b. of this endorsement:

(i)   all payments under this policy, except payments made for costs, attorneys' fees, and expenses, shall reduce the Aggregate Amount of Insurance  by the amount of the payment; but

(ii)   a payment made for loss or damage on Land insured in one of the policies identified in Section 1 on Land located outside this state shall not reduce the Aggregate Amount of Insurance in Section 3.b. of this endorsement until the Aggregate Amount of Insurance in Section 3.a. is reduced below the  Aggregate Amount of Insurance in Section 3.b .

(c) However, any payments made prior to the acquisition of Title as provided in Section 2 of these Conditions shall not reduce the Aggregate Amount of Insurance afforded under this endorsement except to the extent that the payments reduce the Indebtedness.

(d) The voluntary satisfaction or release of the Insured Mortgage shall terminate all liability of the Company under this policy, except as

provided in Section 2 of these Conditions, but it will not reduce the Aggregate Amount of Insurance for the other policies identified in Section 1 of this endorsement.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

DATED:
Chicago Title Insurance Company
BY:_____
          AUTHORIZED SIGNATORY

ALTA Endorsement Form 12.1-06
(Aggregation- State Limits-Loan) (4/2/13)
© American Land Title Association

## LEASEHOLD-OWNER'S AND LEASEHOLD-LOAN
## ALTA 13-06 (04-02-12) AND 13.1-06 (04-02-12)

The ALTA Endorsement Forms 13-06 and 13.1-06 were created to be attached to the ALTA Owner's Policy and ALTA Loan Policy respectively. They were revised April 2, 2012. They are intended to be used either with policies covering only Leasehold Estates or for those that insure both Leasehold Estates and the ownership of improvements located on them.

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1.  As used in this endorsement, the following terms shall mean:

    a.  "Evicted" or "Eviction": (a) the lawful deprivation, in whole or in part, of the right of possession insured by this policy, contrary to the terms of the Lease or (b) the lawful prevention of the use of the Land or the Tenant Leasehold Improvements for the purposes permitted by the Lease, in either case as a result of a matter covered by this policy.
    b.  "Lease": the lease described in Schedule A.
    c.  "Leasehold Estate": the right of possession granted in the Lease for the Lease Term.
    d.  "Lease Term": the duration of the Leasehold Estate, as set forth in the Lease, including any renewal or extended term if a valid option to renew or extend is contained in the Lease.
    e.  "Personal Property": property, in which and to the extent the Insured has rights, located on or affixed to the Land on or after Date of Policy that by law does not constitute real property because (i) of its character and manner of attachment to the Land and (ii) the property can be severed from the Land without causing material damage to it or to the Land.
    f.  "Remaining Lease Term": the portion of the Lease Term remaining after the Insured has been Evicted.
    g.  "Tenant Leasehold Improvements": Those improvements, in which and to the extent the Insured has rights, including landscaping, required or permitted to be built on the Land by the Lease that have been built at the Insured's expense or in which the Insured has an interest greater than the right to possession during the Lease Term.

2.  Valuation of Estate or Interest Insured:

If in computing loss or damage it becomes necessary to value the Title, or any portion of it, as the result of an Eviction of the Insured, then, as to that portion of the Land from which the Insured is Evicted, that value shall consist of the value for the Remaining Lease Term of the Leasehold Estate and any Tenant Leasehold Improvements existing on the date of the Eviction. The Insured Claimant shall have the right to have the Leasehold Estate and the Tenant Leasehold Improvements affected by a defect insured against by the policy valued either as a whole or separately. In either event, this determination of value shall take into account rent no longer required to be paid for the Remaining Lease Term.

3.  Additional items of loss covered by this endorsement:

If the Insured is Evicted, the following items of loss, if applicable to that portion of the Land from which the Insured is Evicted shall be included, without duplication, in computing loss or damage incurred by the Insured, but not to the extent that the same are included in the valuation of the Title determined pursuant to Section 2 of this endorsement, any other endorsement to the policy or Section 8(a)(ii) of the Conditions:

    a.  The reasonable cost of (i) removing and relocating any Personal Property that the Insured has the right to remove and relocate, situated on the Land at the time of Eviction,(ii) transportation of that Personal Property for the initial one hundred miles incurred in connection with the relocation,(iii) repairing the Personal Property damaged by reason of the removal and relocation, and (iv) restoring the Land to the extent damaged as a result of the removal and relocation of the Personal Property and required of the Insured solely because of the Eviction .

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

b. Rent or damages for use and occupancy of the Land prior to the Eviction that the Insured as owner of the Leasehold Estate may be obligated to pay to any person having paramount title to that of the lessor in the Lease.

c. The amount of rent that, by the terms of the Lease, the Insured must continue to pay to the lessor after Eviction with respect to the portion of the Leasehold Estate and Tenant Leasehold Improvements from which the Insured has been Evicted.

d. The fair market value, at the time of the Eviction, of the estate or interest of the Insured in any lease or sublease permitted by the Lease and made by Insured as lessor of all or part of the Leasehold Estate or the Tenant Leasehold Improvements.

e. Damages caused by the Eviction that the Insured is obligated to pay to lessees or sublessees on account of the breach of any lease or sublease permitted by the Lease and made by the Insured as lessor of all or part of the Leasehold Estate or the Tenant Leasehold Improvements.

f. The reasonable cost to obtain land use, zoning, building and occupancy permits, architectural and engineering services and environmental testing and reviews for leasehold reasonably equivalent to the Leasehold Estate.

g. If Tenant Leasehold Improvements are not substantially completed at the time of Eviction, the actual cost incurred by the Insured, less the salvage value, for the Tenant Leasehold Improvements up to the time of Eviction.  Those costs include costs incurred to obtain land use, zoning, building and occupancy permits, architectural and engineering services, construction management services, environmental testing and reviews, and landscaping.

4.  This endorsement does not insure against loss, damage or costs of remediation (and the Company will not pay cost, attorneys' fees or expenses) resulting from environmental damage or contamination.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

Chicago Title Insurance Company

BY:_____

ALTA Endorsement Form 13-06
(Leasehold – Owners) (Rev. 4/2/12)
© American Land Title Association Association

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1.

2.       As used in this endorsement, the following terms shall mean:

   a.    "Evicted" or "Eviction": (a) the lawful deprivation, in whole or in part, of the right of possession insured by this policy, contrary to the terms of the Lease or (b) the lawful prevention of the use of the Land or the Tenant Leasehold Improvements for the purposes permitted by the Lease, in either case as a result of a matter covered by this policy.

   b.    "Lease": the lease described in Schedule A.

   c.    "Leasehold Estate": the right of possession granted in the Lease for the Lease Term.

   d.    "Lease Term": the duration of the Leasehold Estate, as set forth in the Lease, including any renewal or extended term if a valid option to renew or extend is contained in the Lease.

   e.    "Personal Property": property, in which and to the extent the Insured has rights, located on or affixed to the Land on or after Date of Policy that by law does not constitute real property because (i) of its character and manner of attachment to the Land and (ii) the property can be severed from the Land without causing material damage to the property or to the Land.

   f.    "Remaining Lease Term": the portion of the Lease Term remaining after the Tenant has been Evicted.

   g.    "Tenant": the tenant under the Lease and, after acquisition of all or any part of the Title in accordance with the provisions of Section 2 of the Conditions of the policy, the Insured Claimant.

   h.    "Tenant Leasehold Improvements": Those improvements, in which and to the extent the Insured has rights, including landscaping, required or permitted to be built on the Land by the Lease that have been built at the Tenant's expense or in which the Tenant has an interest greater than the right to possession during the Lease Term.

3.       Valuation of Estate or Interest Insured:

If in computing loss or damage it becomes necessary to value the Title, or any portion of it, as the result of an Eviction of the Tenant, then, as to that portion of the Land from which the Tenant is Evicted, that value shall consist of the value for the Remaining Lease Term of the Leasehold Estate and any Tenant Leasehold Improvements existing on the date of the Eviction. The Insured Claimant shall have the right to have the Leasehold Estate and the Tenant Leasehold Improvements affected by a defect insured against by the policy valued either as a whole or separately. In either event, this determination of value shall take into account rent no longer required to be paid for the Remaining Lease Term.

4.       Additional items of loss covered by this endorsement:

If the Insured acquires all or any part of the Title in accordance with the provisions of Section 2 of the Conditions of this policy and thereafter is Evicted, the following items of loss, if applicable to that portion of the Land from which the Insured is Evicted shall be included, without duplication, in computing loss or damage incurred by the Insured, but not to the extent that the same are included in the valuation of the Title determined pursuant to Section 2 of this endorsement, any other endorsement to the policy, or Section 8(a)(iii) of the Conditions:

   a.    The reasonable cost of (i) removing and relocating any Personal Property that the Insured has the right to remove and relocate, situated on the Land at the time

of Eviction,(ii) transportation of that Personal Property for the initial one hundred miles incurred in connection with the relocation,(iii) repairing the Personal Property damaged by reason of the removal and relocation, and (iv) restoring the Land to the extent damaged as a result of the removal and relocation of the Personal Property and required of the Insured solely because of the Eviction

b.    Rent or damages for use and occupancy of the Land prior to the Eviction that the Insured as owner of the Leasehold Estate may be obligated to pay to any person having paramount title to that of the lessor in the Lease.

c.    The amount of rent that, by the terms of the Lease, the Insured must continue to pay to the lessor after Eviction with respect to the portion of the Leasehold Estate and Tenant Leasehold Improvements from which the Insured has been Evicted.

d.    The fair market value, at the time of the Eviction, of the estate or interest of the Insured in any lease or sublease permitted by the Lease and made by Tenant as lessor of all or part of the Leasehold Estate or the Tenant Leasehold Improvements.

e.    Damages caused by the Eviction that the Insured is obligated to pay to lessees or sublessees on account of the breach of any lease or sublease permitted by the Lease and made by the Tenant as lessor of all or part of the Leasehold Estate or the Tenant Leasehold Improvements.

f.    The reasonable cost to obtain land use, zoning, building and occupancy permits, architectural and engineering services and environmental testing and reviews for a replacement leasehold reasonably equivalent to the Leasehold Estate.

g.    If Tenant Leasehold Improvements are not substantially completed at the time of Eviction, the actual cost incurred by the Insured, less the salvage value, for the Tenant Leasehold Improvements up to the time of Eviction. Those costs include costs incurred to obtain land use, zoning, building and occupancy permits, architectural and engineering services, construction management services, environmental testing and reviews, and landscaping.

5.    This endorsement does not insure against loss, damages, or costs of remediation (and the Company will not pay cost, attorneys' fees or expenses) resulting from environmental damage or contamination.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]
DATED:
Chicago Title Insurance Company
BY:_____
    AUTHORIZED SIGNATORY

ALTA Endorsement Form 13.1-06
(Leasehold – Loan) (Rev. 4/1/12)
© American Land Title Association

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**FUTURE ADVANCES ALTA ENDORSEMENT – FORMS 14-06 (02-03-11), 14.1-06 (02-03-11), 14.2-06 (02-03-11) and 14.3-06 (02-03-11 tech correction 12-03-12)**

These endorsements affirmatively insure the priority and enforceability of the lien of the Insured Mortgage with respect to future advances and repayments and re-advances of Indebtedness. In addition, they include coverage for the consequences of a variable rate, including possible negative amortization (or interest on interest), as discussed above in the ALTA 6-06 endorsement section. These endorsements also cover the effect on the priority and enforceability of the Insured Mortgage of the Indebtedness having been reduced to zero before being increased by subsequent advances ("zero-balance"), and state law requirements to secure these advances not having been met. Unique to the 14.3-06 (Reverse Mortgages) is additional coverage for failure of the Insured Mortgage to state a term or maximum dollar amount, and failure of the mortgagors to be at least 62 years old.

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1.    The insurance for Advances added by Sections 2 and 3 of this endorsement is subject to the exclusions in Section 4 of this endorsement and the Exclusions from Coverage in the Policy, except Exclusion 3(d), the provisions of the Conditions, and the exceptions contained in Schedule B.

a.    "Agreement," as used in this endorsement, shall mean the note or loan agreement, the repayment of Advances under which is secured by the Insured Mortgage.

b.    "Advance," as used in this endorsement, shall mean only an advance of principal made after the Date of Policy as provided in the Agreement, including expenses of foreclosure, amounts advanced pursuant to the Insured Mortgage to pay taxes and insurance, assure compliance with laws, or to protect the lien of the Insured Mortgage before the time of acquisition of the Title, and reasonable amounts expended to prevent deterioration of improvements, together with interest on those advances.

c.    "Changes in the rate of interest," as used in this endorsement, shall mean only those changes in the rate of interest calculated pursuant to a formula provided in the Insured Mortgage or the Agreement at Date of Policy.

2.    The Company insures against loss or damage sustained by the Insured by reason of:

a.    The invalidity or unenforceability of the lien of the Insured Mortgage as security for each Advance.

b.    The lack of priority of the lien of the Insured Mortgage as security for each Advance over any lien or encumbrance on the Title.

c.    The invalidity or unenforceability or lack of priority of the lien of the Insured Mortgage as security for the Indebtedness, Advances and unpaid interest resulting from (i) re-Advances and repayments of Indebtedness, (ii) earlier periods of no indebtedness owing during the term of the Insured Mortgage, or (iii) the Insured Mortgage not complying with the requirements of state law of the state in which the Land is located to secure Advances.

3.    The Company also insures against loss or damage sustained by the Insured by reason of:

a.    The invalidity or unenforceability of the lien of the Insured Mortgage resulting from any provisions of the Agreement that provide for (i) interest on interest, (ii) changes in the rate of interest, or (iii) the addition of unpaid interest to the Indebtedness.

b.    Lack of priority of the lien of the Insured Mortgage as security for the Indebtedness, including any unpaid interest that was added to principal in accordance with any provisions of the Agreement, interest on interest, or interest as changed in accordance with the provisions of the Insured Mortgage, which lack of priority is caused by (i) changes in the rate of interest, (ii) interest on

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

interest, or (iii) increases in the Indebtedness resulting from the addition of unpaid interest.

4.      This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from:

a.      The invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as security for any Advance made after a Petition for Relief under the Bankruptcy Code (11 U.S.C.) has been filed by or on behalf of the mortgagor;

b.      The lien of real estate taxes or assessments on the Title imposed by governmental authority arising after Date of Policy;

c.      The lack of priority of the lien of the Insured Mortgage as security for any Advance to a federal tax lien, which Advance is made after the earlier of (i) actual knowledge of the Insured that a federal tax lien was filed against the mortgagor, or (ii) the expiration, after notice of a federal tax lien filed against the mortgagor, of any grace period for making disbursements with priority over the federal tax lien provided in the Internal Revenue Code (26 U.S.C.);

d.      Any federal or state environmental protection lien; [or]

e.      Usury, or any consumer credit protection or truth-in-lending law. *[; or*

f.      *Any mechanic's or materialmen's lien.]*

5.      The Indebtedness includes Advances.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

DATED:
Chicago Title Insurance Company
BY:_____
        AUTHORIZED SIGNATORY

ALTA Endorsement Form 14-06
(Future Advance - Priority) (Rev. 2/3/11)
© American Land Title Association

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1.  The insurance for Advances added by Sections 2 and 3 of this endorsement is subject to the exclusions in Section 4 of this endorsement and the Exclusions from Coverage in the Policy, except Exclusion 3(d), the provisions of the Conditions, and the exceptions contained in Schedule B.

    a.  "Agreement," as used in this endorsement, shall mean the note or loan agreement, the repayment of Advances under which is secured by the Insured Mortgage.

    b.  "Advance," as used in this endorsement, shall mean only an advance of principal made after the Date of Policy as provided in the Agreement, including expenses of foreclosure, amounts advanced pursuant to the Insured Mortgage to pay taxes and insurance, assure compliance with laws, or to protect the lien of the Insured Mortgage before the time of acquisition of the Title, and reasonable amounts expended to prevent deterioration of improvements, together with interest on those advances.

    c.  "Changes in the rate of interest," as used in this endorsement, shall mean only those changes in the rate of interest calculated pursuant to a formula provided in the Insured Mortgage or the Agreement at Date of Policy.

2.  The Company insures against loss or damage sustained by the Insured by reason of:

    a.  The invalidity or unenforceability of the lien of the Insured Mortgage as security for each Advance.

    b.  The lack of priority of the lien of the Insured Mortgage as security for each Advance over any lien or encumbrance on the Title.

    c.  The invalidity or unenforceability or lack of priority of the lien of the Insured Mortgage as security for the Indebtedness, Advances and unpaid interest resulting from (i) re-Advances and repayments of Indebtedness, (ii) earlier periods of no Indebtedness owing during the term of the Insured Mortgage, or (iii) the Insured Mortgage not complying with the requirements of state law of the state in which the Land is located to secure Advances.

3.  The Company also insures against loss or damage sustained by the Insured by reason of:

    a.  The invalidity or unenforceability of the lien of the Insured Mortgage resulting from any provisions of the Agreement that provide for (i) interest on interest, (ii) changes in the rate of interest, or (iii) the addition of unpaid interest to the Indebtedness.

    b.  Lack of priority of the lien of the Insured Mortgage as security for the Indebtedness, including any unpaid interest that was added to principal in accordance with any provisions of the Agreement, interest on interest, or interest as changed in accordance with the provisions of the Insured Mortgage, which

lack of priority is caused by (i) changes in the rate of interest, (ii) interest on interest, or (iii) increases in the Indebtedness resulting from the addition of unpaid interest.

4.     This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) resulting from:

    a.     The invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as security for any Advance made after a Petition for Relief under the Bankruptcy Code (11 U.S.C.) has been filed by or on behalf of the mortgagor;

    b.     The lien of real estate taxes or assessments on the Title imposed by governmental authority arising after Date of Policy;

    c.     The lack of priority of the lien of the Insured Mortgage as security for any Advance to a federal tax lien, which Advance is made after the earlier of (i) actual knowledge of the Insured that a federal tax lien was filed against the mortgagor, or (ii) the expiration, after notice of a federal tax lien filed against the mortgagor, of any grace period for making disbursements with priority over the federal tax lien provided in the Internal Revenue Code (26 U.S.C.);

    d.     Any federal or state environmental protection lien;

    e.     The lack of priority of any Advance made after the Insured has Knowledge of the existence of liens, encumbrances or other matters affecting the Land intervening between Date of Policy and the Advance, as to the intervening lien, encumbrance or other matter; [or]

    f.     Usury, or any consumer credit protection or truth-in-lending law. *[; or*

    *g.*     *Any mechanic's or materialmen's lien.]*

5.     The Indebtedness includes Advances.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

DATED:
Chicago Title Insurance Company
BY:_____
       AUTHORIZED SIGNATORY

ALTA Endorsement Form 14.1-06
(Future Advance - Knowledge) (Rev. 2/3/11)
©American Land Title Association

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1.    The insurance for Advances added by Section 2 of this endorsement is subject to the exclusions in Section 3 of this endorsement and the Exclusions from Coverage in the Policy, except Exclusion 3(d), the provisions of the Conditions, and the exceptions contained in Schedule B.

    a.    "Agreement," as used in this endorsement, shall mean the letter of credit and its reimbursement agreement, the repayment of Advances under which is secured by the Insured Mortgage.

    b.    "Advance," as used in this endorsement, shall mean only an advance made after the Date of Policy as provided in the Agreement, including expenses of foreclosure, amounts advanced pursuant to the Insured Mortgage to pay taxes and insurance, assure compliance with laws, or to protect the lien of the Insured Mortgage before the time of acquisition of the Title, and reasonable amounts expended to prevent deterioration of improvements, together with interest on those advances.

2.    The Company insures against loss or damage sustained by the Insured by reason of:

    a.    The invalidity or unenforceability of the lien of the Insured Mortgage as security for each Advance.

    b.    The lack of priority of the lien of the Insured Mortgage as security for each Advance over any lien or encumbrance on the Title.

    c.    The invalidity or unenforceability or loss of priority of the lien of the Insured Mortgage as security for the Indebtedness, Advances and unpaid interest resulting from (i) re-Advances and repayments of Indebtedness, (ii) earlier periods of no indebtedness owing during the term of the Insured Mortgage, or (iii) the Insured Mortgage not complying with the requirements of state law of the state in which the Land is located to secure Advances.

3.    This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) resulting from:

    a.    The lien of real estate taxes or assessments on the Title imposed by governmental authority arising after Date of Policy; or

    b.    Any federal or state environmental protection lien; or

    c.    Limitations, if any, imposed under the Bankruptcy Code (11 U.S.C.) on the amount that may be recovered from the mortgagor's estate. *[; or*

    *d.    Any mechanic's or materialmen's lien.]*

4.    The Indebtedness includes Advances.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

DATED:
Chicago Title Insurance Company
BY:_____
      AUTHORIZED SIGNATORY

ALTA Endorsement Form 14.2-06
(Future Advance – Letter of Credit) (Rev. 2/3/11)
© American Land Title Association

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1.   The insurance for Advances added by Sections 2 and 3 of this endorsement is subject to the exclusions in Section 4 of this endorsement and the Exclusions in the Policy, except Exclusion 3(d), the provisions of the Conditions, and the exceptions contained in Schedule B.

   a.   "Agreement," as used in this endorsement, shall mean the note or loan agreement, repayment of Advances under which is secured by the Insured Mortgage.

   b.   "Advance," as used in this endorsement, shall mean only an advance of principal made after the Date of Policy as provided in the Agreement, including expenses of foreclosure, amounts advanced pursuant to the Insured Mortgage to pay taxes and insurance, assure compliance with laws, or to protect the lien of the Insured Mortgage before the time of acquisition of the Title, and reasonable amounts expended to prevent deterioration of improvements, together with interest on those advances.

   c.   "Changes in the rate of interest," as used in this endorsement, shall mean only those changes in the rate of interest calculated pursuant to a formula provided in the Insured Mortgage or the Agreement at Date of Policy.

2.   The Company insures against loss or damage sustained by the Insured by reason of:

   a.   The invalidity or unenforceability of the lien of the Insured Mortgage as security for each Advance.

   b.   The lack of priority of the lien of the Insured Mortgage as security for each Advance over any lien or encumbrance on the Title.

   c.   The invalidity or unenforceability or lack of priority of the lien of the Insured Mortgage as security for the Indebtedness, Advances and unpaid interest resulting from (i) re-Advances and repayments of Indebtedness, (ii) earlier periods of no indebtedness owing during the term of the Insured Mortgage, (iii) the Insured Mortgage not complying with the requirements of state law of the state in which the Land is located to secure Advances, (iv) failure of the Insured Mortgage to state the term for Advances, or (v) failure of the Insured Mortgage to state the maximum amount secured by the Insured Mortgage.

   d.   The invalidity or unenforceability of the lien of the Insured Mortgage because of the failure of the mortgagors to be at least 62 years of age at Date of Policy.

3.   The Company also insures against loss or damage sustained by the Insured by reason of:

   a.   The invalidity or unenforceability of the lien of the Insured Mortgage resulting from any provisions of the Agreement that provide for (i) interest on interest, (ii) changes in the rate of interest, or (iii) the addition of unpaid interest to the principal portion of the Indebtedness.

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

     b.    Lack of priority of the lien of the Insured Mortgage as security for the Indebtedness, including any unpaid interest that was added to principal in accordance with any provisions of the Agreement, interest on interest, or interest as changed in accordance with the provisions of the Insured Mortgage, which lack of priority is caused by (i) changes in the rate of interest, (ii) interest on interest, or (iii) increases in the Indebtedness resulting from the addition of unpaid interest.

"Interest," as used in this Paragraph 3, shall include lawful interest based on appreciated value.

4.    This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from:

     a.    The invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as security for any Advance made after a Petition for Relief under the Bankruptcy Code (11 U.S.C.) has been filed by or on behalf of the mortgagor;

     b.    The lien of real estate taxes or assessments on the Title imposed by governmental authority arising after Date of Policy;

     c.    The lack of priority of the lien of the Insured Mortgage as security for any Advance to a federal tax lien, which Advance is made after the earlier of (i) actual knowledge of the Insured that a federal tax lien was filed against the mortgagor, or (ii) the expiration, after notice of a federal tax lien filed against the mortgagor, of any grace period for making disbursements with priority over the federal tax lien provided in the Internal Revenue Code (26 U.S.C.);

     d.    Any federal or state environmental protection lien; [or]

     e.    Usury, or any consumer credit protection or truth-in-lending law. *[; or*

     f.    *Any mechanic's or materialmen's lien.]*

5.    The Indebtedness includes Advances.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

*[BRACKETED MATERIAL OPTIONAL]*

Chicago Title Insurance Company

BY:_____

ALTA Endorsement Form 14.3-06
(Future Advance – Reverse Mortgage) (Rev. 2/3/11)
© American Land Title Association                            *[includes technical corrections of 12-3-12]*

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**NON-IMPUTATION**
**ALTA 15-06 (FULL-EQUITY TRANSFER) (06-17-06);**
**15.1-06 (ADDITIONAL INSURED) (06-17-06)**
**15.2-06 (PARTIAL EQUITY) (06-17-06)**

These ALTA forms give coverage over matters known to specified parties that would otherwise be excluded from coverage on the basis of imputed knowledge, but also over the consequences of the actions or inactions of those parties which affect the Title. Form 15-06 is to be used when the entire beneficial interest of the entity holding Title and named as the insured on Schedule A (e.g., partnership interest, corporate stock, membership interest of limited liability company) has been transferred for value. Form 15.1-06 is to be used when only a portion of the beneficial interest of the entity holding Title and named on Schedule A as the insured has been transferred and the incoming beneficial owner is identified on the form as an additional insured. Form 15.2-06 is to be used when the incoming beneficial owner requests to be the insured in its own policy, and its interest has been transferred for value.

Exclusions from Coverage 3(a) and (b) in the ALTA Owner's Policy and ALTA Loan Policy exclude from coverage matters created, suffered, assumed, or agreed to by the insured or known to the insured, but not to the Company, and not disclosed by the public records.

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

The Company agrees that it will not assert the provisions of Exclusions from Coverage 3(a), (b), or (e) to deny liability for loss or damage otherwise insured against under the terms of the policy solely by reason of the action or inaction or Knowledge, as of Date of Policy, of_____ whether or not imputed to the Insured by operation of law, provided_____acquired the Insured as a purchaser for value without Knowledge of the asserted defect, lien, encumbrance, adverse claim, or other matter insured against by the policy.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

Chicago Title Insurance Company

BY:_____

ALTA Endorsement Form 15-06
(Nonimputation – Full Equity Transfer) (6/17/06)
©American Land Title Association

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

For purposes of the coverage provided by this endorsement,_____ ("Additional Insured") is added as an Insured under the policy. By execution below, the Insured named in Schedule A acknowledges that any payment made under this endorsement shall reduce the Amount of Insurance as provided in Section 10 of the Conditions.

The Company agrees that it will not assert the provisions of Exclusions from Coverage 3(a), (b), or (e) to deny liability for loss or damage otherwise insured against under the terms of the policy solely by reason of the action or inaction or Knowledge, as of Date of Policy, of_____ whether or not imputed to the Additional Insured by operation of law, to the extent of the percentage interest in the Insured acquired by Additional Insured as a purchaser for value without Knowledge of the asserted defect, lien, encumbrance, adverse claim, or other matter insured against by the policy.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

AGREED AND CONSENTED TO:

_____

INSURED

[Witness clause optional]

Chicago Title Insurance Company

BY:_____

ALTA Endorsement Form 15.1-06
(Nonimputation – Additional Insured) (6/17/06)
©American Land Title Association

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

The Company agrees that it will not assert the provisions of Exclusions from Coverage 3(a), (b), or (e) to deny liability for loss or damage otherwise insured against under the terms of the policy solely by reason of the action or inaction or Knowledge, as of Date of Policy, of_____ whether or not imputed to the entity identified in paragraph 3 of Schedule A or to the Insured by operation of law, but only to the extent that the Insured acquired the Insured's interest in entity as a purchaser for value without Knowledge of the asserted defect, lien, encumbrance, adverse claim, or other matter insured against by the policy.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

Chicago Title Insurance Company

BY:_____

ALTA Endorsement Form 15.2-06
(Nonimputation – Partial Equity Transfer) (6/17/06)
©American Land Title Association

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**MEZZANINE FINANCING**
**ALTA 16-06 (06-17-06)**

This endorsement provides insurance to a lender whose loan is secured not by a lien against the land but rather by some form of security against the beneficial interest of the business entity that owns the Land. The security may be a pledge of  and security interest in  the stock in a corporation, partnership interest in a partnership, or membership interest in a limited liability company. The endorsement is made a part of an Owner's Policy rather than a Loan Policy, because the lender's personal property security interest is not being insured so no Loan Policy is issued to the lender. The endorsement assigns the rights under the policy of the Insured owner of the Land to the defined Mezzanine Lender. The endorsement provides that the Company will not assert as a defense matters known to the Insured owner, as long as they were not known to the Mezzanine Lender. It further provides that the Company will not deny liability on the basis that ownership interests in the Insured have been transferred to or acquired by the Mezzanine Lender.

Conditions paragraph 7 (b) is amended to provide that the Company can terminate its liability under the policy by paying the Mezzanine Lender rather than the Insured. Exclusions from Coverage Nos. 3 (a), (b), (c) or (e) are amended with respect to defects, liens, encumbrances, adverse claims or other matters which were not known to the Mezzanine Lender, or failure of the Mezzanine Lender to pay value.

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1.    The Mezzanine Lender is:_____and each successor in ownership of its loan ("Mezzanine Loan") reserving, however, all rights and defenses as to any successor that the Company would have had against the Mezzanine Lender, unless the successor acquired the Indebtedness as a purchaser for value without Knowledge of the asserted defect, lien, encumbrance, adverse claim, or other matter insured against by this policy as affecting Title.

2.    The Insured

   a.    assigns to the Mezzanine Lender the right to receive any amounts otherwise payable to the Insured under this policy, not to exceed the outstanding indebtedness under the Mezzanine Loan; and

   b.    agrees that no amendment of or endorsement to this policy can be made without the written consent of the Mezzanine Lender.

3.    The Company does not waive any defenses that it may have against the Insured, except as expressly stated in this endorsement.

4.    In the event of a loss under the policy, the Company agrees that it will not assert the provisions of Exclusions from Coverage 3(a), (b) or (e) to refuse payment to the Mezzanine Lender solely by reason of the action or inaction or Knowledge, as of Date of Policy, of the Insured, provided

   a.    the Mezzanine Lender had no actual Knowledge of the defect, lien, encumbrance or other matter creating or causing loss on Date of Policy.

   b.    this limitation on the application of Exclusions from Coverage 3(a), (b) and (e) shall

      i.    apply whether or not the Mezzanine Lender has acquired an interest (direct or indirect) in the Insured either on or after Date of Policy, and

      ii.    benefit the Mezzanine Lender only without benefiting any other individual or entity that holds an interest (direct or indirect) in the Insured or the Land.

5.    In the event of a loss under the Policy, the Company also agrees that it will not deny liability to the Mezzanine Lender on the ground that any or all of the ownership interests (direct or indirect) in the Insured have been transferred to or acquired by the Mezzanine Lender, either on or after the Date of Policy.

6.    The Mezzanine Lender acknowledges

   a.    that the amount of insurance under this policy shall be reduced by any amount the Company may pay under any policy insuring a mortgage to which exception is taken in Schedule B or to which the Insured has agreed, assumed, or taken subject, or which is hereafter executed by an Insured and which is a charge or

lien on the estate or interest described or referred to in Schedule A, and the amount so paid shall be deemed a payment under this policy; and

    b.    that the Company shall have the right to insure mortgages or other conveyances of an interest in the Land, without the consent of the Mezzanine Lender.

7.    If the Insured, the Mezzanine Lender or others have conflicting claims to all or part of the loss payable under the Policy, the Company may interplead the amount of the loss into Court. The Insured and the Mezzanine Lender shall be jointly and severally liable for the Company's cost for the interpleader and subsequent proceedings, including attorneys' fees. The Company shall be entitled to payment of the sums for which the Insured and Mezzanine Lender are liable under the preceding sentence from the funds deposited into Court, and it may apply to the Court for their payment.

8.    Whenever the Company has settled a claim and paid the Mezzanine Lender pursuant to this endorsement, the Company shall be subrogated and entitled to all rights and remedies that the Mezzanine Lender may have against any person or property arising from the Mezzanine Loan. However, the Company agrees with the Mezzanine Lender that it shall only exercise these rights, or any right of the Company to indemnification, against the Insured, the Mezzanine Loan borrower, or any guarantors of the Mezzanine Loan after the Mezzanine Lender has recovered its principal, interest, and costs of collection.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

AGREED AND CONSENTED TO:

*(Name of Insured)*                            *(Name of Mezzanine Lender)*

By: _____    By: _____

[Witness clause optional]

Chicago Title Insurance Company

BY:_____

ALTA Endorsement Form 16-06
(Mezzanine Financing) (6/17/06)
©American Land Title Association

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ACCESS**
**ALTA 17-06 (Access & Entry) (06-17-06)**
**17.1-06 (Indirect Access & Entry) (06-17-06) and**
**17.2-06 (Utility Access) (10-16-08)**

These endorsements are designed to provide insurance against loss if the Land does not abut or have actual vehicular and pedestrian access to and from a specific open and publicly maintained street by way of existing curb cuts or entries. In addition, ALTA 17.1-06 provides the same coverage with respect to a specific easement insured in Schedule A which connects the Land to a specific public street. The ALTA 17.2-06 adopts a version of the generic "Utilities Facilities" endorsement which covers access to utility installations in a public street.

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

The Company insures against loss or damage sustained by the Insured if, at Date of Policy (i) the Land does not abut and have both actual vehicular and pedestrian access to and from FILL IN (the "Street"), (ii) the Street is not physically open and publicly maintained, or (iii) the Insured has no right to use existing curb cuts or entries along that portion of the Street abutting the Land.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

DATED:
Chicago Title Insurance Company
BY:_____
        AUTHORIZED SIGNATORY

ALTA Endorsement Form 17-06
(Access and Entry) (6/17/06)
©American Land Title Association

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

The Company insures against loss or damage sustained by the Insured if, at Date of Policy (i) the easement identified as FILLIN in Schedule FILLIN (the "Easement") does not provide that portion of the Land identified as FILLIN in Schedule FILLIN both actual vehicular and pedestrian access to and from FILLIN (the "Street"), (ii) the Street is not physically open and publicly maintained, or (iii) the Insured has no right to use existing curb cuts or entries along that portion of the Street abutting the Easement.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

DATED:
Chicago Title Insurance Company
BY:_____
        AUTHORIZED SIGNATORY

ALTA Endorsement Form 17.1-06
(Indirect Access and Entry) (6/17/06)
©American Land Title Association

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

The Company insures against loss or damage sustained by the Insured by reason of the lack of a right of access to the following utilities or services:  [CHECK ALL THAT APPLY]

☐ Water service        ☐ Natural gas service        ☐ Telephone service

☐ Electrical power service        ☐ Sanitary sewer        ☐ Storm water drainage

☐ _____        ☐ _____        ☐ _____

either over, under or upon rights-of-way or easements for the benefit of the Land because of:

    (1) a gap or gore between the boundaries of the Land and the rights-of-way or easements;

    (2)  a gap between the boundaries of the rights-of-way or easements; or

    (3)  a termination by a grantor, or its successor, of the rights-of-way or easements.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

Chicago Title Insurance Company

BY:_____

ALTA Endorsement Form 17.2-06
(Utility Access)  (10/16/08)
©American Land Title Association

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**TAX PARCEL**
**ALTA 18-06 (Single) (06-17-06)**
**18.1 (Multiple) [with tax sale protection] (06-17-06)**

These endorsements cover the tax parcel or tax identification numbers often included in the policy for informational. Form 18-06 insures against loss if the tax number shown does not include all the Land described in the policy or includes land not described in the policy. Form 18.1-06 is for use when there are multiple parcels and multiple numbers. In addition, Form 18.1-06 insures that any easement included as an insured parcel in Schedule A or C will not be wiped out by the subsequent foreclosure of taxes on the servient tenement.

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

The Company insures against loss or damage sustained by the Insured by reason of the Land being taxed as part of a larger parcel of land or failing to constitute a separate tax parcel for real estate taxes.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

Chicago Title Insurance Company

BY:_____

ALTA Endorsement Form 18-06
(Single Tax Parcel) (6/17/06)
©American Land Title Association

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

The Company insures against loss or damage sustained by the Insured by reason of:

1.    those portions of the Land identified below not being assessed for real estate taxes under the listed tax identification numbers or those tax identification numbers including any additional land:

| | |
|---|---|
| Parcel: | PARCEL 1 |
| Tax Identification Number(s): | TAX ID 1 |
| | |
| Parcel: | PARCEL 2 |
| Tax Identification Number(s): | TAX ID 2 |
| | |
| Parcel: | PARCEL 3 |
| Tax Identification Number(s): | TAX ID 3 |

2.    the easements, if any, described in Schedule A being cut off or disturbed by the nonpayment of real estate taxes, assessments or other charges imposed on the servient estate by a governmental authority.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

Chicago Title Insurance Company

BY:_____

ALTA Endorsement Form 18.1-06
(Multiple Tax Parcel) (6/17/06)
©American Land Title Association

**CONTIGUITY**

**ALTA 19-06 (MULTIPLE PARCELS) [within Land] AND (06-17-06)**
**FORM 19.1-06 (SINGLE PARCEL) [with property other than Land] (06-17-06)**

ALTA Form 19-06 is designed to provide insurance that (1) each parcel, in a policy which insures multiple parcels, is contiguous to at least one other parcel insured by the policy, or (2) if some parcels are not contiguous to at least one other parcel, that certain parcels are contiguous to certain other parcels. The ALTA Form 19.1-06 provides coverage that the Land in the policy is contiguous to some other specific parcel not insured in the policy.

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

The Company insures against loss or damage sustained by the Insured by reason of:

1.    The failure [of the _____ boundary line of Parcel A] of the Land to be contiguous to [the_____ boundary line of Parcel B] **[for more than two parcels, continue as follows: "; of [the_____boundary line of Parcel B] of the Land to be contiguous to [the _____boundary line of Parcel C] and so on until all contiguous parcels described in the policy have been accounted for]**; or

2.    The presence of any gaps, strips, or gores separating any of the contiguous boundary lines described above.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

Chicago Title Insurance Company

BY:_____

ALTA Endorsement Form 19-06
(Contiguity – Multiple Parcels) (6/17/06)
©American Land Title Association

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

The Company insures against loss or damage sustained by the Insured by reason of:

1.    The failure of the Land to be contiguous to **[describe the land that is contiguous to the Land by its legal description or by reference to a recorded instrument – e.g. ". . . that certain parcel of real property legally described in the deed recorded as Instrument No._____, records of _____ County, State of_____]** along the _____ boundary line[s]; or

2.    The presence of any gaps, strips, or gores separating the contiguous boundary lines described above.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

Chicago Title Insurance Company

BY:_____

ALTA Endorsement Form 19.1-06
(Contiguity – Single Parcel) (6/17/06)
©American Land Title Association

**FIRST LOSS**
**ALTA 20-06 (06-17-06)**

This endorsement is designed to alter the established criteria for determining when a loss is recognized under a loan policy. Loss is normally the difference between the value of the property with or without the defect, lien or encumbrance insured against. Under normal circumstances, a loss would be difficult to determine until the land was sold after foreclosure. If the sale was for an amount less than the debt, and the difference between the sales price and the indebtedness was caused by a matter covered by the policy, the lender could claim a loss. Consequently, an insured lender would normally be required to foreclose to prove this loss before being able to make a claim. This endorsement, to be issued only when there is more than one insured parcel, allows a loss to be recognized whenever a title defect materially impairs the value of a parcel securing the loan without requiring acceleration of the debt and foreclosure against any of the parcels securing the loan.

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

This endorsement is effective only if the Collateral includes at least two parcels of real property.

1.　　For the purposes of this endorsement

　　a.　　"Collateral" means all property, including the Land, given as security for the Indebtedness.
　　b.　　"Material Impairment Amount" means the amount by which any matter covered by the policy for which a claim is made diminishes the value of the Collateral below the Indebtedness.

2.　　In the event of a claim resulting from a matter insured against by the policy, the Company agrees to pay that portion of the Material Impairment Amount that does not exceed the extent of liability imposed by Section 8 of the Conditions without requiring

　　a.　　maturity of the Indebtedness by acceleration or otherwise,
　　b.　　pursuit by the Insured of its remedies against the Collateral, or
　　c.　　pursuit by the Insured of its remedies under any guaranty, bond or other insurance policy.

3.　　Nothing in this endorsement shall impair the Company's right of subrogation. However, the Company agrees that its right of subrogation shall be subordinate to the rights and remedies of the Insured. The Company's right of subrogation shall include the right to recover the amount paid to the Insured pursuant to Section 2 of this endorsement from any debtor or guarantor of the Indebtedness, after payment or other satisfaction of the remainder of the Indebtedness and other obligations secured by the lien of the Insured Mortgage. The Company shall have the right to recoup from the Insured Claimant any amount received by it in excess of the Indebtedness up to the amount of the payment under Section 2.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

Chicago Title Insurance Company

BY:_____ _____

ALTA Endorsement Form 20-06
(First Loss – Multiple Parcel Transactions) (6/17/06)
©American Land Title Association

**CREDITORS' RIGHTS**

**ALTA ENDORSEMENT FORM 21-06**

**This endorsement was decertified by ALTA on 2/8/10 and is no longer available.**

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**LOCATION**
**ALTA 22-06**
**Form 22.1-06 (with map) (06-17-06)**

These endorsements insure against loss or damage if an improvement of the type identified in
the endorsement having the address set forth in the endorsement is not located on the Land. In
addition, the 22.1-06 insures that a copy of a recorded plat or map that may be attached as an
exhibit to the endorsement accurately reflects the location and dimensions of the Land as shown
in the public records.

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

The Company insures against loss or damage sustained by the Insured by reason of the failure of a FILL IN, known as FILL IN, to be located on the Land at Date of Policy.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

Chicago Title Insurance Company

BY:_____

ALTA Endorsement Form 22-06
(Location) (6/17/06)
©American Land Title Association

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

The Company insures against loss or damage sustained by the Insured by reason of the failure of (i) a FILL IN, known as FILL IN, to be located on the Land at Date of Policy, or (ii) the map, if any, attached to this policy to correctly show the location and dimensions of the Land according to the Public Records.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

Chicago Title Insurance Company

BY:_____

ALTA Endorsement Form 22.1-06
(Location and Map) (6/17/06)
©American Land Title Association

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**CO-INSURANCE-SINGLE POLICY**
**ALTA 23-06 (10-16-08)**

This endorsement was designed to facilitate the delivery of a single policy when co-insurance with other underwriters is involved with allocation of liability by endorsement from each co-insurer.

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No.[*lead policy*]
Issued by
[*lead policy issurer*](**"Issuing Co-Insurer"**)

CO-INSURANCE ENDORSEMENT

Attached to and made a part of Issuing Co-Insurer's Policy No. [*lead policy*] ("Co-Insurance Policy"). Each title insurance company executing this Co-Insurance Endorsement, other than the Issuing Co-Insurer, shall be referred to as "Co-Insurer." Issuing Co-Insurer and each Co-Insurer are collectively referred to as "Co-Insuring Companies".

1.  By issuing this endorsement to the Co-Insurance Policy, each of the Co-Insuring Companies adopts the Co-Insurance Policy's Covered Risks, Exclusions, Conditions, Schedules and endorsements, subject to the limitations of this endorsement.

| Co-Insuring Companies | Name and Address | Policy Number [File Number] | Amount of Insurance | Percentage of Liability |
|---|---|---|---|---|
| Issuing Co-Insurer | | | $ | |
| Co-Insurer | | | $ | |
| Co-Insurer | | | $ | |
| Co-Insurer | | | $ | |
| Aggregate Amount of Insurance | | | $ | |

2. Each of the Co-Insuring Companies shall be liable to the Insured only for its Percentage of Liability of: (a) the total of the loss or damage under the Co-Insurance Policy, in no event greater than its respective Amount of Insurance set forth in this endorsement; and (b) costs, attorneys' fees and expenses provided for in the Conditions.

3. Any notice of claim and any other notice or statement in writing required to be given under the Co-Insurance Policy must be given to each of the Co-Insuring Companies at its address set forth above.

4. Any endorsement to the Co-Insurance Policy issued after the date of this Co-Insurance Endorsement must be signed on behalf of each Co-Insuring Company by its authorized officer or agent.

5. This Co-Insurance Endorsement is effective as of the Date of Policy of the Co-Insurance Policy. This Co-Insurance Endorsement may be executed in counterparts.

This endorsement is issued as part of the Co-insurance Policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements to it.

_ALTA 23-06 Continued_

[Witness Optional]

DATED:
Issuing Co-Insurer:

[lead underwriter]

BY:_____ _____


Co-Insurer:

[BLANK] Title Insurance Company

By: _____


Co-Insurer:

[BLANK] Title Insurance Company

By: _____


Co-Insurer:

[BLANK] Title Insurance Company

By: _____


[Additional Co-Insurer signatures may be added if needed.]

ALTA Endorsement Form 23-06
(Co-Insurance - Single Policy) (Rev. 10/16/08)
©American Land Title Association

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**DOING BUSINESS**
**ALTA FORM 24-06 (10-16-08)**

This endorsement for a loan policy provides coverage to the lender concerning the consequences of the failure to comply with state "doing business" laws.

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

The Company insures against loss or damage sustained by the Insured by reason of the invalidity or unenforceability of the lien of the Insured Mortgage on the ground that making the loan secured by the Insured Mortgage constituted a violation of the "doing business" laws of the State where the Land is located because of the failure of the Insured to qualify to do business under those laws.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements to it.

[Witness Optional]

DATED:

Chicago Title Insurance Company

BY:_____
     AUTHORIZED SIGNATORY

ALTA Endorsement Form 24-06
(Doing Business) (10/16/08)
©American Land Title Association

**SAME AS SURVEY & SAME AS PORTION OF SURVEY**
**ALTA 25-06 (10-16-08)**
**25.1-06 (10-16-08)**

These endorsements expand policy coverage by providing insurance in the event the survey identified in the endorsement is not the same land a described in Schedule A(or C) of the policy.

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

The Company insures against loss or damage sustained by the Insured by reason of the failure of the Land as described in Schedule A to be the same as that identified on the survey made by _____dated_____ _, and designated Job No._____.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements to it.

[Witness Optional]

DATED:

Chicago Title Insurance Company

BY:_____
       AUTHORIZED SIGNATORY

ALTA Endorsement Form 25-06
(Same as Survey) (10/16/08)
©American Land Title Association

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

The Company insures against loss or damage sustained by the Insured by reason of the failure of the Land as described in Schedule A to be the same as that identified as [Example: Parcel A, B, C or Parcel 1, 2, 3] on the survey made by_____ dated _____, and designated Job No._____.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements to it.

[Witness Optional]

DATED:

Chicago Title Insurance Company

BY:_____
        AUTHORIZED SIGNATORY

ALTA Endorsement Form 25.1-06
(Same as Portion of Survey) (10/16/08)
©American Land Title Association

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**SUBDIVISION**
**ALTA 26-06 (10-16-08)**

The ALTA Form 26-06 insures against loss based upon the Land described in Schedule A (or Schedule C) not constituting a legally created parcel pursuant to applicable state statutes or local governmental regulations.

This endorsement modifies exclusion 1(a)(iii) which excludes any law, ordinance, permit or governmental regulation which pertains to the subdivision of land.

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

The Company insures against loss or damage sustained by the Insured by reason of the failure of the Land to constitute a lawfully created parcel according to the subdivision statutes and local subdivision ordinances applicable to the Land.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements to it.

[Witness Optional]

DATED:

Chicago Title Insurance Company

BY:_____
     AUTHORIZED SIGNATORY

ALTA Endorsement Form 26-06
(Subdivision) (10/16/08)
©American Land Title Association

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**USURY ENDORSEMENT**
**ALTA 27-06 (10-16-08)**

This endorsement is for use with an ALTA loan policy. It provides insurance against loss the Insured may suffer if the Insured Mortgage is determined to be usurious under state statute.

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

The Company insures against loss or damage sustained by the Insured  by reason of the invalidity or unenforceability of the lien of the Insured Mortgage as security for the Indebtedness because the loan secured by the Insured Mortgage violates the usury law of the state where the Land is located.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

Chicago Title Insurance Company

BY:_____

ALTA Endorsement Form 27-06
(Usury) (10/16//08)
©American Land Title Association

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**EASEMENT - DAMAGE OR ENFORCED REMOVAL ENCROACHMENTS - BOUNDARIES AND EASEMENTS**
**ALTA 28-06 (02-03-10)**
**ALTA 28.1-06 (04-02-12)**
**ALTA 28.2-06 (04-02-13)**

**ALTA Endorsement Form 28-06 (EASEMENT - DAMAGE OR ENFORCED REMOVAL)**

Endorsement Form 28.06 was developed to insure against loss caused by the encroachment of a building located on the Land onto or over an easement shown as an exception in Schedule B, as disclosed by a survey or inspection of the Land. The loss must be based on an exercise of the easement and is only for damage to an existing building or enforced removal or alteration.

**ALTA 28.1-06 (ENCROACHMENTS - BOUNDARIES AND EASEMENTS)**
**ALTA 28.2-06 (ENCROACHMENTS – BOUNDARIES AND EASEMENTS – DESCRIBED IMPROVEMENTS)**

Endorsement Forms 28.1-06 and 28.2-06 were developed to provide coverage with respect to certain boundary and easement encroachments. This coverage was previously included in the former ALTA 9 series. It is no longer contained within those endorsements other than the revised ALTA 9-06 and the new ALTA 9.7-06 and 9.10-06 (which additionally afford coverage as to violations of covenants, violations of setbacks, and damage to existing improvements because of development of minerals). The Form 28.2-06 specifically covers only the Improvements described at item 2 of the endorsement.

**The coverage in these Endorsements include:**

• 	The loss occasioned by the existence of an encroachment by an Improvement onto a neighboring property or onto an easement area within the insured Land, other than as disclosed in Schedule B exceptions.

• 	The loss occasioned by the existence of an encroachment by a neighboring Improvement onto the insured Land, other than as disclosed in Schedule B exceptions.
• 	Enforced removal of an insured Improvement based upon the encroachment into the easement area or onto neighboring property.

These forms allow the exclusion of an encroachment raised as an exception in Schedule B from the enforced removal coverage by reference to the exception that describes it, if the title insurer elects not to include that encroachment within the coverage afforded by these endorsements.

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

The Company insures against loss or damage sustained by the Insured if the exercise of the granted or reserved rights to use or maintain the easement(s) referred to in Exception (s)_____ of Schedule B results in:

    (1)       damage to an existing building located on the Land, or

    (2)       enforced removal or alteration of an existing building located on the Land.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements to it.

[Witness Optional]

DATED:

Chicago Title Insurance Company

BY:_____
      AUTHORIZED SIGNATORY

ALTA Endorsement Form 28-06
(Easement-Damage or Enforced Removal) (rev. 02/03/10)
©American Land Title Association

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1. The insurance provided by this endorsement is subject to the exclusions in Section 4 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

2. For purposes of this endorsement only, "Improvement" means an existing building, located on either the Land or adjoining land at Date of Policy and that by law constitutes real property.

3. The Company insures against loss or damage sustained by the Insured by reason of:

   a. An encroachment of any Improvement located on the Land onto adjoining land or onto that portion of the Land subject to a easement, unless an exception in Schedule B of the policy identifies the encroachment;

   b. An encroachment of any Improvement located on adjoining land onto the Land at Date of Policy, unless an exception in Schedule B of the policy identifies the encroachment;

   c. Enforced removal of any Improvement located on the Land as a result of an encroachment by the Improvement onto any portion of the Land subject to any easement, in the event that the owners of the easement shall, for the purpose of exercising the right of use or maintenance of the easement, compel removal or relocation of the encroaching Improvement; or

   d. Enforced removal of any Improvement located on the Land that encroaches onto adjoining land.

4. This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from the encroachments listed as Exceptions _____of Schedule B.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

DATED:

Chicago Title Insurance Company

BY:_____
   AUTHORIZED SIGNATORY

ALTA Endorsement Form 28.1-06
(Encroachments-Boundaries and Easements) (4/2/12)
©American Land Title Association

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1.  The insurance provided by this endorsement is subject to the exclusions in Section 4 of this  endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in  Schedule B, and the Conditions in the policy.

2.  For purposes of this endorsement only, "Improvement" means each improvement  on the Land or  adjoining land at Date of Policy , itemized below:

.

3.  The Company insures against loss or damage sustained by the Insured by reason of:

    a. An encroachment of any Improvement located on the Land onto adjoining land or onto that  portion of the Land subject to an easement, unless  an exception in Schedule B of the policy  identifies the encroachment;

    b. An encroachment of any Improvement located on adjoining land onto the Land at Date of Policy,   unless an exception in Schedule B of the policy identifies the encroachment;

    c. Enforced removal of any Improvement located on the Land as a result of an encroachment by  the Improvement onto any portion of the Land subject to any easement, in the event that the  owners of the easement shall, for the purpose of exercising the right of use or maintenance of  the easement, compel removal or relocation of the encroaching Improvement; or

    d. Enforced removal of any Improvement located on the Land that encroaches onto adjoining land.

4.  Sections 3.c and 3.d. of this endorsement do not insure against loss or damage (and the Company  will not pay costs, attorneys' fees, or expenses) resulting from the following Exceptions, if any, listed  in Schedule B:

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of  the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or
(iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is  inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this   endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

DATED:
Chicago Title Insurance Company
BY:_____
        AUTHORIZED SIGNATORY

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

ALTA Endorsement Form 28.2-06
(Encroachments-Boundaries and Easements-Described Improvements) (4/2/13)
©American Land Title Association

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**SWAP ENDORSEMENT (INTEREST RATE EXCHANGE AGREEMENT SECURED BY INSURED MORTGAGE)**
**ALTA 29-06 (02-03-10)**
**ALTA 29.1-06 (02-03-10)**
**ALTA 29.2-06 (08-01-11)**
**ALTA 29.3-06 (08-01-11)**

Lenders occasionally request that the Loan Policy insure amounts which are described in an Interest Rate Exchange Agreement or Swap Agreement, the terms of which are contained in or referenced in the Insured Mortgage. Such agreements obligate the mortgagor for damages the lender may suffer under swap transactions it enters into on the borrower's behalf in order to achieve a favorable interest rate. If the borrower defaults on its loan, the lender becomes obligated itself under the swap loan for amounts known as breakage fees. This endorsement is designed to provide additional coverage for these amounts. These amounts are contingent and would accrue as an obligation of the borrower post-policy.

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1. The insurance provided by this endorsement is subject to the exclusions in Section 3 of this endorsement, the Exclusions from Coverage in the Policy, the Exceptions from Coverage contained in Schedule B, and the Conditions. As used in this endorsement:

   a. The "Date of Endorsement" is_____; and

   b. "Swap Obligation" means a monetary obligation under the interest rate exchange agreement dated_____, between _____ and the Insured existing at Date of Endorsement and secured by the Insured Mortgage. The Swap Obligation is included as a part of the Indebtedness.

2. The Company insures against loss or damage sustained by the Insured by reason of the invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as security for the repayment of the Swap Obligation at Date of Endorsement.

3. This endorsement does not insure against loss or damage, and the Company will not pay costs, attorneys' fees, or expenses that arise by reason of:

   a. Rights or obligations set, created or confirmed after the Date of Endorsement under a master interest rate exchange agreement existing on or after Date of Endorsement;

   b. The stay, rejection or avoidance of the lien of the Insured Mortgage as security for the Swap Obligation, or a court order providing some other remedy, by the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws;

   c. The calculation of the amount, if any, determined by a court of competent jurisdiction as the amount of the Swap Obligation[; *or*]

   d. [*The invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as security for repayment of the Swap Obligation because all applicable mortgage recording or similar intangible taxes were not paid; or* ]

   e. [*If Date of Endorsement is after Date of Policy, add any necessary additional exceptions here*].

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements to it.

[Witness clause optional]
DATED:
Chicago Title Insurance Company
BY:_____
      AUTHORIZED SIGNATORY

ALTA Endorsement - Form 29 - 06
(Interest Rate Swap –Direct Obligations) (2/3/10)
©American Land Title Association

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1.  The insurance provided by this endorsement is subject to the exclusions in Section 3 of this endorsement, the Exclusions from Coverage in the Policy, the Exceptions from Coverage contained in  Schedule B, and the Conditions. As used in this endorsement:

    a.  The "Date of Endorsement" is_____; and

    b.  "Swap Obligation" means a monetary obligation under the interest rate exchange                    .
    agreement dated
    \_\_\_, between_____and the Insured existing at Date of Endorsement and secured by the  Insured Mortgage.

    c.  "Additional Interest" means the additional interest calculated pursuant to the formula provided in the   loan documents secured by the Insured Mortgagee at Date of Endorsement.

2.  The Company insures against loss or damage sustained by the Insured by reason of the invalidity,   unenforceability or lack of priority of the lien of the Insured Mortgage as security for the repayment of  the Additional Interest at Date of Endorsement.

3.  This endorsement does not insure against loss or damage, and the Company will not pay costs,   attorneys' fees, or expenses that arise by reason of:

    a.  Rights or obligations set, created or confirmed after the Date of Endorsement under a master  interest rate exchange agreement existing on or after Date of Endorsement;

    b.  The stay, rejection or avoidance of the lien of the Insured Mortgage as security for the Swap  Obligation, or a court order providing some other remedy, by the operation of federal bankruptcy, state  insolvency, or similar creditors' rights laws;

    c.  The calculation of the amount, if any, determined by a court of competent jurisdiction as the amount  of the Additional Interest*[; or*]

    d.  [*The invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as security for  repayment of the Swap Obligation because all applicable mortgage recording or similar intangible taxes  were not paid; or* ]

    e.  [*If Date of Endorsement is after Date of Policy, add any necessary additional exceptions here].*

    This endorsement is issued as part of the policy. Except as it expressly states, it does not  (i)  modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date  of Policy or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous  endorsement is inconsistent with an express provision of this endorsement, this endorsement controls.  Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior  endorsements to it.

Dated:

By_____
          Authorized Signatory

ALTA Endorsement - Form 29.1 - 06

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

(Interest Rate Swap – Additional Interest) (2/3/10)
©American Land Title Association

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1.  The insurance provided by this endorsement is subject to the exclusions in Section 3 of this endorsement, the Exclusions from Coverage in the Policy, the Exceptions from Coverage contained in Schedule B, and the Conditions. As used in this endorsement:

    a.  The "Date of Endorsement" is_____; and

    b.  "Swap Obligation" means a monetary obligation under the interest rate exchange agreement dated_____, between_____and the Insured existing at Date of Endorsement and secured by the Insured Mortgage. The Swap Obligation is included as a part of the Indebtedness.

    c.  "Additional Amount of Insurance" is $\_\_\_\_that is in addition to the Amount of Insurance stated in Schedule A and is Applicable only to loss or damage under this endorsement.

2.  The Company insures against loss or damage sustained by the Insured by reason of the invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as security for the repayment of the Swap Obligation at Date of Endorsement.

3   This endorsement does not insure against loss or damage, and the Company will not pay costs, attorneys' fees, or expenses that arise by reason of:

    a.  Rights or obligations set, created or confirmed after the Date of Endorsement under a master interest rate exchange agreement existing on or after Date of Endorsement;

    b.  The stay, rejection or avoidance of the lien of the Insured Mortgage as security for the Swap Obligation, or a court order providing some other remedy, by the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws;

    c.  The calculation of the amount, if any, determined by a court of competent jurisdiction as the amount of the Swap Obligation[; *or*]

    d.  [*The invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as security for repayment of the Swap Obligation because all applicable mortgage recording or similar intangible taxes were not paid; or* ]

    e.  [*If Date of Endorsement is after Date of Policy, add any necessary additional exceptions here*].

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy or
(iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements to it.

Dated:

By_____
        Authorized Signatory

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

ALTA Endorsement - Form 29 .2 - 06
(Interest Rate Swap –Direct Obligations-Defined Amount) (8/01/11)
©American Land Title Association

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1.  The insurance provided by this endorsement is subject to the exclusions in Section 3 of this endorsement, the Exclusions from Coverage in the Policy, the Exceptions from Coverage contained in  Schedule B, and the Conditions. As used in this endorsement:

    a.  The "Date of Endorsement" is_____; and

    b.  "Swap Obligation" means a monetary obligation under the interest rate exchange    .
    agreement dated
    ____, between_____and the Insured existing at Date of Endorsement and secured
    by the  Insured Mortgage.

    c.  "Additional Interest" means the additional interest calculated pursuant to the formula provided in the  loan documents secured by the Insured Mortgagee at Date of Endorsement.

    d.  "Additional Amount of Insurance" is $___that is in addition to the Amount of Insurance stated in  Schedule A and is applicable  only to loss or damage under this endorsement.

2.  The Company insures against loss or damage sustained by the Insured by reason of the invalidity,   unenforceability or lack of priority of the lien of the Insured Mortgage as security for the repayment of  the Additional Interest at Date of Endorsement.

3.  This endorsement does not insure against loss or damage, and the Company will not pay costs,   attorneys' fees, or expenses that arise by reason of:

    a.  Rights or obligations set, created or confirmed after the Date of Endorsement under a master   interest rate exchange agreement existing on or after Date of Endorsement;

    b.  The stay, rejection or avoidance of the lien of the Insured Mortgage as security for the Swap  Obligation, or a court order providing some other remedy, by the operation of federal bankruptcy, state  insolvency, or similar creditors' rights laws;

    c.  The calculation of the amount, if any, determined by a court of competent jurisdiction as the amount  of the Additional Interest*[; or*]

    d.  [*The invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as security for  repayment of the Swap Obligation because all applicable mortgage recording or similar intangible taxes  were not paid; or* ]

    e.  [*If Date of Endorsement is after Date of Policy, add any necessary additional exceptions here*].

    This endorsement is issued as part of the policy. Except as it expressly states, it does  not  (i)  modify  any  of  the  terms  and  provisions  of  the  policy,  (ii)  modify  any  prior endorsements, (iii) extend the Date  of Policy or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous  endorsement is inconsistent with an express provision  of  this  endorsement,  this  endorsement  controls.  Otherwise,  this  endorsement  is subject to all of the terms and provisions of the policy and of any prior  endorsements to it.

Dated:

By_____
      Authorized Signatory

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

ALTA Endorsement - Form 29.3 - 06
(Interest Rate Swap – Additional Interest-Defined Amount) (8/01/11)
©American Land Title Association

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ONE TO FOUR FAMILY SHARED APPRECIATION MORTGAGE ENDORSEMENT**
**COMMERCIAL PARTICIPATION INTEREST**
**ALTA 30-06 (07-26-10)**
**ALTA 30.1-06 (08-01-12)**

These endorsements are designed to provide additional coverage to the lender when the loan documents provide that the lender will participate in the appreciation in value of the property or a share of the cash flow (as additional interest). The residential version (30-06) was developed for use with government programs that modified and reduced the outstanding debt of homeowners in the face of the downturn of the housing market. These programs allow the recapture of appreciation up to the amount of forgiveness of previously outstanding debt. The commercial version (30.1-06) is for use only with commercial transactions and includes, in addition to the increase in the value of the property (appreciation), a share of the cash flow from the property and any increase in the equity of the borrower in the property. These endorsements provide coverage in the event of an attack on the validity, priority or enforceability of the Insured Mortgage based upon the provisions regarding shared appreciation and participation.

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

The insurance afforded by this endorsement is only effective if the Land is a one to four family residence.

For the purposes of this endorsement, "Shared Appreciation" shall mean increases in the Indebtedness  secured by the Insured Mortgage by reason of shared equity or appreciation in the value of the Land.

The Company insures against loss or damage sustained by the Insured by reason of:

    (a)  The invalidity or unenforceability of the lien of the Insured Mortgage as security for the  Indebtedness caused by the provisions for Shared Appreciation; or

    (b)  Loss of priority of the lien of the Insured Mortgage as security for the Indebtedness caused by  the provisions for Shared Appreciation.

Nothing contained in this endorsement shall be construed as insuring against loss or damage sustained or   incurred by reason of:

    (a)  usury;

    (b)  any consumer credit protection or truth in lending law;

    (c)  costs, expenses or attorney's fees required to obtain a determination, by judicial proceedings  or otherwise, of the amount of the Shared Appreciation;

    (d)  failure to comply with applicable laws and regulations regarding Shared Appreciation;

    (e)  the stay, rejection or avoidance of the lien of the Insured Mortgage as security for the Shared  Appreciation, or a court order providing some other remedy, by the operation of federal  bankruptcy, state insolvency or similar creditors' rights laws; or

    (f)  the invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as security  for the Indebtedness because all applicable mortgage recording or similar intangible taxes  were not paid.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of  the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or
(iv) crease the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is  inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this   endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

Dated:

By_____

  Authorized Signatory

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

ALTA Endorsement Form 30-06
(One to Four Family Shared Appreciation Mortgage) (7/26/10)
©American Land Title Association

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1.     This endorsement is subject to the exclusions in Section 4 of this endorsement, the Exclusions  from Coverage in the policy, the Exceptions from Coverage contained in Schedule B, and the  Conditions.

2.     As used in this endorsement,

a.   "Loan Documents" means those documents, as they exist at Date of Policy, creating the  Indebtedness.

b.   "Participation Interest" means those elements of interest, established and calculated pursuant to  the formula provided in the Loan Documents, that are payable or allocated to the Insured based  upon:

   i.   the borrower's equity in the Title;
   ii.  the increase in value of the Title; or
   iii. cash flow.

3.     The policy insures as of Date of Policy against loss or damage sustained by the Insured by  reason of:

a.   The invalidity or unenforceability of the lien of the Insured Mortgage resulting from the provisions in  the Insured Mortgage or in the Loan Documents which provide for Participation Interest.

b.   Lack of priority of the lien of the Insured Mortgage at Date of Policy as security for (i) the unpaid  principal balance of the loan and (ii) the interest on the loan, including the Participation Interest, if  any, which lack of priority is caused by the provisions in the Loan Documents for payment or  allocation to the Insured of any Participation Interest.

4.     The policy does not insure against loss or damage, and the Company will not pay costs,   attorneys' fees, or expenses that arise by reason of:

a.   usury; unconscionability; or any consumer credit protection or truth-in-lending law;
b.              disputes over the amount of Participation Interest;
c.                    failure to comply with applicable laws and regulations regarding Participation Interest;
d.   the invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as security for  the Participation Interest because all applicable mortgage recording or similar intangible taxes were  not paid; or
e.   any statutory lien for services provided, labor performed, or materials or equipment furnished  arising after Date of Policy.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of  the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is  inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this   endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

Dated:

By_____

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

Authorized Signatory

ALTA Endorsement Form 30.1-06
(Commercial Participation Interest) (8/1/12)
©American Land Title Association

**SEVERABLE IMPROVEMENTS**
**ALTA 31-06 (02-03-11)**

This endorsement adds, as a part of the calculation of the Insured's loss, the diminution in value of the Insured's interest in any defined Severable Improvement affixed to the Land, as well as the reasonable cost of removal or relocation of these. Severable Improvements are defined as property that by law does not constitute real property. Land is defined in the policy as land and improvements that by law constitute real property.

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1.    As used in this endorsement, "Severable Improvement" means property affixed to the Land on or after Date of Policy that by law does not constitute real property because:

    a.    of its character and manner of attachment to the Land; and

    b.    it can be severed from the Land without causing material damage to it or to the Land.

2.    In the event of a loss by reason of a defect, lien, encumbrance, or other matter covered by this Policy ("Defect"), the calculation of the loss shall include (but not to the extent that these items of loss are included in the valuation of the Title determined pursuant to Section 8 of the Conditions or any other endorsement to the Policy):

    a.    the diminution in value of the Insured's interest in any Severable Improvement resulting from the Defect, reduced by the salvage value of the Severable Improvement; and

    b.    the reasonable cost actually incurred by the Insured in connection with the removal or relocation of the Severable Improvement resulting from the Defect and the cost of transportation of that Severable Improvement for the initial one hundred miles incurred in connection with the relocation.

3.    This endorsement relates solely to the calculation of the Insured's loss resulting from a claim based on a defect, lien, encumbrance or other matter otherwise insured against by the Policy. This Policy does not insure against loss or damage (and the Company will not pay any costs, attorneys' fees or expenses) relating to:

    a.    the attachment, perfection or priority of any security interest in the Severable Improvement;

    b.    the vesting or ownership of title to or rights in any Severable Improvement;

    c.    any defect in or lien or encumbrance on the title to any Severable Improvement; or

    d.    the determination of whether any specific property is real or personal in nature.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

Dated:
Chicago Title Insurance Company
BY: _____
        AUTHORIZED SIGNATORY

ALTA Endorsement Form 31-06
(Severable Improvements) (2-3-11)
©American Land Title Association

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**CONSTRUCTION LOAN**
**ALTA 32-06 (Construction Loan – Loss of Priority) (02-03-11) ALTA 32.1-06 (Construction Loan – Loss of Priority-Direct Payment) (04-02-13)**
**ALTA 32.2-06 (Construction Loan –Loss of Priority- Insured's Direct Payment) (04-02-13)**

These endorsements, together with the 33-06 (Disbursement) replace the ALTA Construction Loan Policy and the Construction Loan Policy Endorsements A through D which have been decertified and are no longer available.

These endorsements were developed to give limited coverage where priority has been lost. They only give coverage to the extent of work that the lender has paid for, with the ALTA 32-06 and the ALTA 32.1-06 further limited to liens filed by parties that have been identified on a draw request either paid by the Insured or the Company. They do not give coverage over other inchoate liens that can prime the construction mortgage. The 32-06 covers payment as disclosed by a draw request.

ALTA Endorsement 32.1-06 is designed for loan policies during construction in situations where the mortgage or deed of trust can never have priority over mechanic's liens or where the mortgage or deed of trust has lost priority to mechanic's liens (e.g., due to commencement of work prior to the recording of the mortgage or deed of trust). However, this endorsement may also be used for situations where the mortgage or deed of trust has priority over mechanic's liens.

Specifically, the ALTA 32.1-06 insures only to the extent that direct payment to the Mechanic's Lien claimant has been made by the Company or by the Insured with the Company's written approval.  It does not insure against loss or damage by reason of any mechanic's lien arising from services, labor, material or equipment:

a Furnished after Date of Coverage; or
to the extent that a Mechanic's Lien claimant was not directly paid by the Company or by the Insured with the Company's written approval.

The endorsement contemplates that the Company or its agent will be involved in the direct payment to specific mechanic's lien claimants – either by making the payment or by approving it.

The ALTA 32.2-06 covers a lien filed for payment of previously paid amounts by the title insurer or with the title insurer's consent.

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1. Covered Risk 11(a) of this policy is deleted.

2. The insurance [for Construction Loan Advances] added by Section 3 of this endorsement is subject to the exclusions in  Section 4 of this endorsement and the Exclusions from Coverage in the Policy, the provisions of the Conditions, and the  exceptions contained in Schedule B. For the purposes of this endorsement and each subsequent Disbursement Endorsement:

   a. "Date of Coverage" is unless the Company sets a different Date of Coverage by an ALTA 33-06 Disbursement  Endorsement issued at the discretion of the Company.

   b. "Construction Loan Advance" shall mean an advance that constitutes Indebtedness made on or before Date of Coverage  for the purpose of financing in whole or in part the construction of improvements on the Land.

   c. "Mechanic's Lien" shall mean any statutory lien or claim of lien, affecting the Title, that arises from services provided,  labor performed, or materials or equipment furnished.

3. The Company insures against loss or damage sustained by the Insured by reason of:

   a. The invalidity or unenforceability of the lien of the Insured Mortgage as security for each Construction Loan Advance  made on or before the Date of Coverage;

   b. The lack of priority of the lien of the Insured Mortgage as security for each Construction Loan Advance made on or before  the Date of Coverage, over any lien or encumbrance on the Title recorded in the Public Records and not shown in  Schedule B; and

   c. The lack of priority of the lien of the Insured Mortgage, as security for each Construction Loan Advance made on or  before the Date of Coverage over any Mechanic's Lien, if notice of the Mechanic's Lien is not filed or recorded in the  Public Records, but only to the extent that the charges for the services, labor, materials or equipment for which the  Mechanic's Lien is claimed were designated for payment in the documents supporting a Construction Loan Advance  disbursed by or on behalf of the Insured on or before Date of Coverage.

4 This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) by  reason of any Mechanic's Lien arising from services, labor, material or equipment:
   a. furnished after Date of Coverage; or
   b. not designated for payment in the documents supporting a Construction Loan Advance disbursed by or on behalf of the  Insured on or before Date of Coverage.

This endorsement is issued as part of the policy.  Except as it expressly states, it does not (i) modify any of the terms and provisions  of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the  extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this  endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior  endorsements.

Dated:
Chicago Title Insurance Company
BY: _____

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

AUTHORIZED  SIGNATORY

ALTA Endorsement Form 32-06
(Construction Loan-Loss of Priority) (2-3-11)
© American Land Title Association

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1. Covered Risk 11(a) of this policy is deleted.

2. The insurance [for Construction Loan Advances] added by Section 3 of this endorsement is subject to  the exclusions in Section 4 of this endorsement and the Exclusions from Coverage in the Policy, the  provisions of the Conditions, and the exceptions contained in Schedule B. For the purposes of this  endorsement and each subsequent Disbursement Endorsement:

   a. "Date of Coverage" is_____unless the Company sets a different Date of Coverage by  an ALTA 33-06 Disbursement Endorsement issued at the discretion of the Company.

   b. "Construction Loan Advance" shall mean an advance that constitutes Indebtedness made on or  before Date of Coverage for the purpose of financing in whole or in part the construction of  improvements on the Land.

   c. "Mechanic's Lien" shall mean any statutory lien or claim of lien, affecting the Title, that arises from   services provided, labor performed, or materials or equipment furnished.

3. The Company insures against loss or damage sustained by the Insured by reason of:

   a. The invalidity or unenforceability of the lien of the Insured Mortgage as security for each  Construction Loan Advance made on or before the Date of Coverage;

   b. The lack of priority of the lien of the Insured Mortgage as security for each Construction Loan  Advance made on or before the Date of Coverage, over any lien or encumbrance on the Title  recorded in the Public Records and not shown in Schedule B; and

   c. The lack of priority of the lien of the Insured Mortgage as security for each Construction Loan  Advance made on or before the Date of Coverage over any Mechanic's Lien if notice of the  Mechanic's Lien is not filed or recorded in the Public Records, but only to the extent that direct  payment to the Mechanic's Lien claimant for the charges for the services, labor, materials or  equipment  for which the Mechanic's Lien is claimed  has been made by the Company or by the  Insured with the Company's written approval.

4. This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees  or expenses) by reason of any Mechanic's Lien arising from services, labor, material or equipment:
   a. furnished after Date of Coverage; or
   b. to the extent that the Mechanic's Lien claimant was not directly paid by the Company or by the  Insured with the Company's written approval.

This endorsement is issued as part of the policy.  Except as it expressly states, it does not (i) modify any of  the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or
(iv) increase the Amount of Insurance.  To the extent a provision of the policy or a previous endorsement is  inconsistent with an express provision of this endorsement, this endorsement controls.  Otherwise, this   endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

DATED:

Chicago Title Insurance Company

BY:_____
     AUTHORIZED SIGNATORY

ALTA Endorsement Form 32.1-06
(Construction Loan-Loss of Priority-Direct Payment) (rev. 4-2-13)
 American Land Title Association

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1. Covered Risk 11(a) of this policy is deleted.

2. The insurance [for Construction Loan Advances] added by Section 3 of this endorsement is subject to the exclusions in  Section 4 of this endorsement and the Exclusions from Coverage in the Policy, the provisions of the Conditions, and the  exceptions contained in Schedule B. For the purposes of this endorsement and each subsequent Disbursement Endorsement:

   a. "Date of Coverage" is[ unless the Company sets a different Date of Coverage by an ALTA 33-06 Disbursement  Endorsement issued at the discretion of the Company.

   b. "Construction Loan Advance" shall mean an advance that constitutes Indebtedness made on or before Date of Coverage  for the purpose of financing in whole or in part the construction of improvements on the Land.

   c. "Mechanic's Lien" shall mean any statutory lien or claim of lien, affecting the Title, that arises from services provided,  labor performed, or materials or equipment furnished.

3. The Company insures against loss or damage sustained by the Insured by reason of:

   a. The invalidity or unenforceability of the lien of the Insured Mortgage as security for each Construction Loan Advance  made on or before the Date of Coverage;

   b. The lack of priority of the lien of the Insured Mortgage as security for each Construction Loan Advance made on or before  the Date of Coverage, over any lien or encumbrance on the Title recorded in the Public Records and not shown in Schedule B;  and

   c. The lack of priority of the lien of the Insured Mortgage, as security for each Construction Loan Advance made on or  before the Date of Coverage over any Mechanic's Lien, if notice of the Mechanic's Lien is not filed or recorded in the Public  Records, but only to the extent that a direct payment to the Mechanic's Lien claimant for the charges for the services, labor,  materials or equipment  for which the Mechanic's Lien is claimed  has been made by the Insured  or on the Insured's behalf on  or before Date of Coverage.

4 This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) by  reason of any Mechanic's Lien arising from services, labor, material or equipment:
   a. furnished after Date of Coverage; or
   b. To the extent that the Mechanic's lien claimant was not directly paid by the Insured  or on the Insured's behalf.

This endorsement is issued as part of the policy.  Except as it expressly states, it does not (i) modify any of the terms and provisions  of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the  extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this  endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior  endorsements.

[Witness clause optional]

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

DATED:

Chicago Title Insurance Company

BY:_____
         AUTHORIZED SIGNATORY

ALTA Endorsement Form 32.2-06
(Construction Loan-Loss of Priority-Insured's Direct Payment) (rev. 4/2/13)
© American Land Title Association

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**CONSTRUCTION LOAN DISBURSEMENT**
**ALTA 33-06 (02-03-11)**

This endorsement is used in conjunction with ALTA Forms 32-06, 32.1-06 or 32.2-06 when the Date of Coverage to be extended.

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1.  The Date of Coverage is amended to _____.

    [a.  The current disbursement is: $_____]

    [b.  The aggregate amount, including the current disbursement, recognized by the Company
        as disbursed by the Insured is: $_____]

2.  Schedule A is amended as follows:

3.  Schedule B is amended as follows:

    [Part I]

    [Part II]

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i)
modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii)
extend the Date of Policy or (iv) increase the Amount of Insurance. To the extent a provision of
the policy or a previous endorsement is inconsistent with an express provision of this
endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the
terms and provisions of the policy and of any prior endorsements to it.

[Witness Optional]
[Bracketed material optional]

DATED:

Chicago Title Insurance Company

BY:_____
        AUTHORIZED SIGNATORY

ALTA Endorsement Form 33-06
(Disbursement) (2-3-11)
© American Land Title Association

**IDENTIFIED RISK COVERAGE**

**ALTA 34-06 (08-01-11)**

This endorsement should be used whenever we decide to assume a specific risk or "Identified Risk" as defined therein. Sometime this is referred to as "insuring over", especially when we have raised that risk in a commitment or policy.

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1.  As used in this endorsement "Identified Risk" means: [*insert description of the title defect, restriction encumbrance or other matter*] described in Exception _____of Schedule B.

2.  The Company insures against loss or damage sustained by the Insured by reason of:

    a.  A final order or decree enforcing the Identified Risk in favor of an adverse party; or

    b.  The release of a prospective purchaser or lessee of the Title or lender on the Title from the obligation to purchase, lease, or lend as a result of the Identified Risk, but only if

        i.   there is a contractual condition requiring the delivery of marketable title, and

        ii.  neither the Company nor any other title insurance company is willing to insure over the Identified Risk with the same conditions as in this endorsement.

3.  The Company will also pay the costs, attorneys' fees, and expenses incurred in defense of the Title by reason of the Identified Risk insured against by Paragraph 2 of this endorsement, but only to the extent provided in the Conditions.

4.  This endorsement does not obligate the Company to establish the Title free of the Identified Risk or to remove the Identified Risk, but if the Company does establish the Title free of the Identified Risk or removes it, Section 9(a) of the Conditions applies.

This endorsement is issued as part of the policy.  Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy or (iv) increase the Amount of Insurance.  To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls.  Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements to it.

[Witness Optional]

DATED:

Chicago Title Insurance Company

BY:_____
     AUTHORIZED SIGNATORY

ALTA Endorsement Form 34-06
(Identified Risk Coverage) (8-1-11)
© American Land Title Association

**MINERALS AND OTHER
SUBSURFACE
SUBSTANCES
ALTA 35-06 thru 35.3-06
(04.02.12)**

These endorsement forms were developed to provide coverage to lenders with respect to the enforced removal or alteration of improvements resulting from the extraction or development of minerals or other subsurface substances. This coverage was previously included in the former ALTA 9 series. It is no longer contained within those endorsements other than the revised ALTA 9-06 and the new ALTA 9.7-06.

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1.  The insurance provided by this endorsement is subject to the exclusion in Section 4 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

2.  For purposes of this endorsement only, "Improvement" means a building on the Land at Date of Policy.

3.  The Company insures against loss or damage sustained by the Insured by reason of the enforced removal or alteration of any Improvement resulting from the future exercise of any right existing at Date of Policy to use the surface of the Land for the extraction or development of minerals or any other subsurface substances excepted from the description of the Land or excepted in Schedule B.

4.  This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from:

    a.  contamination, explosion, fire, vibration, fracturing, earthquake or subsidence; [or]

    b.  negligence by a person or an Entity exercising a right to extract or develop minerals or other subsurface substances[; or

    c.  the exercise of the rights described in (                    )]. *

        * Instructional note:  identify the interest excepted from the description of the Land in Schedule A or excepted in Schedule B that you intend to exclude from this coverage.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

DATED:
Chicago Title Insurance Company
BY:_____
        AUTHORIZED SIGNATORY

ALTA Endorsement Form 35-06
(Minerals and other Subsurface Substances-Buildings) (4/2/12)
©American Land Title Association

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1. The insurance provided by this endorsement is subject to the exclusion in Section 4 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

2. For purposes of this endorsement only, "Improvement" means a building, structure located on the surface of the Land, and any paved road, walkway, parking area, driveway, or curb, affixed to the Land at Date of Policy and that by law constitutes real property, but excluding any crops, landscaping, lawn, shrubbery, or trees.

3. The Company insures against loss or damage sustained by the Insured by reason of the enforced removal or alteration of any Improvement, resulting from the future exercise of any right existing at Date of Policy to use the surface of the Land for the extraction or development of minerals or any other subsurface substances excepted from the description of the Land or excepted in Schedule B.

4. This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from:

   a. contamination, explosion, fire, vibration, fracturing, earthquake or subsidence; [or]

   b. negligence by a person or an Entity exercising a right to extract or develop minerals or other subsurface substances[; or

   c. the exercise of the rights described in (                    )]. *

   * Instructional note:  identify the interest excepted from the description of the Land in Schedule A or excepted in Schedule B that you intend to exclude from this coverage.


This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.


[Witness clause optional]

DATED:
Chicago Title Insurance Company
BY:_____
      AUTHORIZED SIGNATORY


ALTA Endorsement Form 35.1-06
(Minerals and other Subsurface Substances-Improvements) (4/2/12)
©American Land Title Association

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1. The insurance provided by this endorsement is subject to the exclusion in Section 4 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

2. For purposes of this endorsement only, "Improvement" means each improvement on the Land at Date of Policy itemized [on the exhibit attached to this endorsement] [below:]

3. The Company insures against loss or damage sustained by the Insured by reason of the enforced removal or alteration of any Improvement resulting from the future exercise of any right existing at Date of Policy to use the surface of the Land for the extraction or development of minerals or any other subsurface substances excepted from the description of the Land or excepted in Schedule B.

4. This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from:

   a. contamination, explosion, fire, vibration, fracturing, earthquake or subsidence; [or]

   b. negligence by a person or an Entity exercising a right to extract or develop minerals or other subsurface substances[; or

   c. the exercise of the rights described in (                    )]. *

      * Instructional note:  identify the interest excepted from the description of the Land in Schedule A or excepted in Schedule B that you intend to exclude from this coverage.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

**Chicago Title Insurance Company**

By: _____
        Authorized Signatory

ALTA Endorsement Form 35.2-06
(Minerals and other Subsurface Substances-Described Improvements) (4/2/12)
©American Land Title Association

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1. The insurance provided by this endorsement is subject to the exclusion in Section 4 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

2. For purposes of this endorsement only:

   a. "Improvement" means a building, structure located on the surface of the Land, and any paved road, walkway, parking area, driveway, or curb, affixed to the Land at Date of Policy and that by law constitutes real property, but excluding any crops, landscaping, lawn, shrubbery, or trees.

   b. "Future Improvement" means a building, structure, and any paved road, walkway, parking area, driveway, or curb to be constructed on or affixed to the Land in the locations according to the Plans and that by law will constitute real property, but excluding any crops, landscaping, lawn, shrubbery, or trees.

   c. "Plans" means the survey, site and elevation plans or other depictions or drawings prepared by (*insert name of architect or engineer*) dated_____, last revised\_\_, designated as (*insert name of project or project number*) consisting of\_sheets.

3. The Company insures against loss or damage sustained by the Insured by reason of the enforced removal or alteration of an Improvement or a Future Improvement, resulting from the future exercise of any right existing at Date of Policy to use the surface of the Land for the extraction or development of minerals or any other subsurface substances excepted from the description of the Land or excepted in Schedule B.

4. This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from:

   a. contamination, explosion, fire, vibration, fracturing, earthquake or subsidence; [or]

   b. negligence by a person or an Entity exercising a right to extract or develop minerals or other subsurface substances[; or

   c. the exercise of the rights described in (           )]. *

   * Instructional note: identify the interest excepted from the description of the Land in Schedule A or excepted in Schedule B that you intend to exclude from this coverage.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or
(iv) crease the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

**Chicago Title Insurance Company**

By: _____
        Authorized Signatory

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

ALTA Endorsement Form 35.3-06
(Minerals and other Subsurface Substances-Land Under Development) (4/2/12)
©American Land Title Association

**ENERGY PROJECT Series**

**ALTA 36.06 thru 36.6-06 (04-02-12)**

The ALTA 36 series of endorsement forms were developed to provide coverages to energy project owners and lenders which use a leasehold or easement rights structure. Examples of such projects would include solar or wind farms.

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1.  The insurance provided by this endorsement is subject to the exclusions in Section 6 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

2.  For purposes of this endorsement only:

    a.  "Constituent Parcel" means one of the parcels of Land described in Schedule A that together constitute one integrated project.

    b.  "Easement" means each easement described in Schedule A.

    c.  "Easement Interest" means the right of use granted in the Easement for the Easement Term.

    d.  "Easement Term" means the duration of the Easement Interest, as set forth in the Easement, including any renewal or extended term if a valid option to renew or extend is contained in the Easement.

    e.  "Electricity Facility" means an electricity generating facility which may include one or more of the following: a substation; a transmission, distribution or collector line; an interconnection, inverter, transformer, generator, turbine, array, solar panel, or module; a circuit breaker, footing, tower, pole, cross-arm, guy line, anchor, wire, control system, communications or radio relay system, safety protection facility, road, and other building, structure, fixture, machinery, equipment, appliance and item associated with or incidental to the generation, conversion, storage, switching, metering, step-up, step-down, inversion, transmission, conducting, wheeling, sale or other use or conveyance of electricity, on the Land at Date of Policy or to be built or constructed on the Land in the locations according to the Plans, that by law constitutes real property.

    f.  "Evicted" or "Eviction" means (a) the lawful deprivation, in whole or in part, of the right of possession or use insured by this policy, contrary to the terms of any Lease or Easement or (b) the lawful prevention of the use of the Land or any Electricity Facility or Severable Improvement for the purposes permitted by the Lease or the Easement, as applicable, in either case as a result of a matter covered by this policy.

    g.  "Lease" means each lease described in Schedule A.

    h.  "Leasehold Estate" means the right of possession granted in the Lease for the Lease Term.

    i.  "Lease Term" means the duration of the Leasehold Estate, as set forth in the Lease, including any renewal or extended term if a valid option to renew or extend is contained in the Lease.

    j.  "Plans" means the survey, site and elevation plans or other depictions or drawings prepared by _(insert name of architect or engineer)_ dated, last revised_____,designated as _(insert name of project or project number)_ consisting of____sheets.

    k.  "Remaining Term" means the portion of the Easement Term or the Lease Term remaining after the Insured has been Evicted.

    l.  "Severable Improvement" means property affixed to the Land at Date of Policy or to be affixed in the locations according to the Plans, that would constitute an Electricity Facility but for its characterization as personal property, and that by law does not constitute real property because (a) of its character and manner of attachment to the Land and (b) the property can be severed from the Land without causing material damage to the property or to the Land.

3.  Valuation of Title as an Integrated Project:

    a.  If in computing loss or damage it becomes necessary to value the Title, or any portion of it, as the result of an Eviction, then, as to that portion of the Land from which the Insured is Evicted, that value shall consist of (i) the value of (A) the Leasehold Estate or the Easement Interest for the Remaining Term, as applicable, (B) any Electricity Facility existing on the date of the Eviction, and, if applicable, (ii) any reduction in value of another insured Lease or Easement as computed in Section 3(b) below.

    b.  A computation of loss or damage resulting from an Eviction affecting any Constituent Parcel shall include loss or damage to the integrated project caused by the covered matter affecting the Constituent Parcel from which the Insured is Evicted.

    c.  The Insured Claimant shall have the right to have the Leasehold Estate, the Easement Interest, and any Electricity Facility affected by a defect insured against by this policy valued either as a whole or separately.  In either event, this determination of value shall take into account any rent or use payments no longer required to be paid for the Remaining Term.

d. The provisions of this Section 3 shall not diminish the Insured's rights under any other endorsement to the policy; however, the calculation of loss or damage pursuant to this endorsement shall not allow duplication of recovery for loss or damage calculated pursuant to Section 8 of the Conditions or any other endorsement to the policy.

4. Valuation of Severable Improvements:

a. In the event of an Eviction, the calculation of the loss shall include (but not to the extent that these items of loss are included in the valuation of the Title determined pursuant to Section 8 of the Conditions or any other provision of this or any other endorsement) the diminution in value of the Insured's interest in any Severable Improvement resulting from the Eviction, reduced by the salvage value of the Severable Improvement.

b. The policy does not insure against loss or damage (and the Company will not pay any costs, attorneys' fees or expenses) relating to:

i. the attachment, perfection or priority of any security interest in any Severable Improvement;

ii. the vesting or ownership of title to or rights in any Severable Improvement;

iii. any defect in or lien or encumbrance on the title to any Severable Improvement; or

iv. the determination of whether any specific property is real or personal in nature.

5. Additional items of loss covered by this endorsement:

If the Insured is Evicted, the following items of loss, if applicable to that portion of the Land from which the Insured is Evicted, shall be included, without duplication, in computing loss or damage incurred by the Insured, but not to the extent that the same are included in the valuation of the Title determined pursuant to Section 3 of this endorsement, the valuation of Severable Improvements pursuant to Section 4 of this endorsement, or Section 8(a)(ii) of the Conditions.

a. The reasonable cost of: (i) disassembling, removing, relocating and reassembling any Severable Improvement that the Insured has the right to remove and relocate, situated on the Land at the time of Eviction, to the extent necessary to restore and make functional the integrated project; (ii) transportation of that Severable Improvement for the initial one hundred miles incurred in connection with the restoration or relocation; and (iii) restoring the Land to the extent damaged as a result of the disassembly, removal and relocation of the Severable Improvement and required of the Insured solely because of the Eviction.

b. Rent, easement payments or damages for use and occupancy of the Land prior to the Eviction that the Insured as owner of the Leasehold Estate or the Easement Interest, as applicable, may be obligated to pay to any person having paramount title to that of the lessor or the grantor in the Easement, as applicable.

c. The amount of rent, easement payments or damages that, by the terms of the Lease or the Easement, as applicable, the Insured must continue to pay to the lessor or grantor after Eviction with respect to the portion of the Leasehold Estate or Easement Interest, as applicable, from which the Insured has been Evicted.

d. The fair market value, at the time of the Eviction, of the estate or interest of the Insured in any lease, sublease or easement specifically permitted by the Lease or Easement, as applicable, and made by the Insured as lessor or grantor of all or part of the Leasehold Estate or Easement Interest, as applicable.

e. Damages caused by the Eviction that the Insured is obligated to pay to lessees or sublessees or easement or subeasement grantees on account of the breach of any lease or sublease or easement or subeasement specifically permitted by the Lease or the Easement, as applicable, and made by the Insured as lessor or grantor of all or part of the Leasehold Estate or Easement Interest, as applicable.

f. The reasonable cost to obtain land use, zoning, building and occupancy permits, architectural and engineering services and environmental testing and reviews for a replacement leasehold reasonably equivalent to the Leasehold Estate or a replacement easement reasonably equivalent to the Easement Interest, as applicable.

g. If any Electricity Facility is not substantially completed at the time of Eviction, the actual cost incurred by the Insured up to the time of Eviction, less the salvage value, for the Electricity Facility located on that portion of the Land from which the Insured is Evicted. Those costs include costs incurred to construct and fabricate the Electricity Facility, obtain land use, zoning, building and occupancy permits, architectural and engineering services, construction management services, environmental testing and reviews, and landscaping, and cancellation fees related to the foregoing.

6. This endorsement does not insure against loss, damage or costs of remediation (and the Company will not pay costs, attorneys' fees, or expenses) resulting from environmental damage or contamination.

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

**Chicago Title Insurance Company**

By: _____
              Authorized Signatory

ALTA Endorsement Form 36-06
(Energy Project –Leasehold/Easement-Owners) (4/2/12)
©American Land Title Association

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1.  The insurance provided by this endorsement is subject to the exclusions in Section 6 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

2.  For purposes of this endorsement only:

    a.  "Constituent Parcel" means one of the parcels of Land described in Schedule A that together constitute one integrated project.

    b.  "Easement" means each easement described in Schedule A.

    c.  "Easement Interest" means the right of use granted in the Easement for the Easement Term.

    d.  "Easement Term" means the duration of the Easement Interest, as set forth in the Easement, including any renewal or extended term if a valid option to renew or extend is contained in the Easement.

    e.  "Electricity Facility" means an electricity generating facility which may include one or more of the following: a substation; a transmission, distribution or collector line; an interconnection, inverter, transformer, generator, turbine, array, solar panel, or module; a circuit breaker, footing, tower, pole, cross-arm, guy line, anchor, wire, control system, communications or radio relay system, safety protection facility, road, and other building, structure, fixture, machinery, equipment, appliance and item associated with or incidental to the generation, conversion, storage, switching, metering, step-up, step-down, inversion, transmission, conducting, wheeling, sale or other use or conveyance of electricity, on the Land at Date of Policy or to be built or constructed on the Land in the locations according to the Plans, that by law constitutes real property.

    f.  "Evicted" or "Eviction" means (a) the lawful deprivation, in whole or in part, of the right of possession or use insured by this policy, contrary to the terms of any Lease or Easement or (b) the lawful prevention of the use of the Land or any Electricity Facility or Severable Improvement for the purposes permitted by the Lease or the Easement, as applicable, in either case as a result of a matter covered by this policy.

    g.  "Lease" means each lease described in Schedule A.

    h.  "Leasehold Estate" means the right of possession granted in the Lease for the Lease Term.

    i.  "Lease Term" means the duration of the Leasehold Estate, as set forth in the Lease, including any renewal or extended term if a valid option to renew or extend is contained in the Lease.

    j.  "Plans" means the survey, site and elevation plans or other depictions or drawings prepared by _(insert name of architect or engineer)_ dated, last revised_____,designated as _(insert name of project or project number)_ consisting of____sheets.

    k.  "Remaining Term" means the portion of the Easement Term or the Lease Term remaining after the Insured has been Evicted.

    l.  "Severable Improvement" means property affixed to the Land at Date of Policy or to be affixed in the locations according to the Plans, that would constitute an Electricity Facility but for its characterization as personal property, and that by law does not constitute real property because (a) of its character and manner of attachment to the Land and (b) the property can be severed from the Land without causing material damage to the property or to the Land.

    m.  "Tenant" means the tenant under the Lease or a grantee under the Easement, as applicable, and, after acquisition of all or any part of the Title in accordance with the provisions of Section 2 of the Conditions of the policy, the Insured Claimant.

3.  Valuation of Title as an Integrated Project:

    a.  If in computing loss or damage it becomes necessary to value the Title, or any portion of it, as the result of an Eviction, then, as to that portion of the Land from which the Tenant is Evicted, that value shall consist of (i) the value of (A) the Leasehold Estate or the Easement Interest for the Remaining Term, as applicable, (B) any Electricity Facility existing on the date of the Eviction, and, if applicable, (ii) any reduction in value of another insured Lease or Easement as computed in Section 3(b) below.

    b.  A computation of loss or damage resulting from an Eviction affecting any Constituent Parcel shall include loss or damage to the integrated project caused by the covered matter affecting the Constituent Parcel from which the Insured is Evicted.

    c.  The Insured Claimant shall have the right to have the Leasehold Estate, the Easement Interest, and any Electricity Facility affected by a defect insured against by the policy valued either as a whole or separately.  In

either event, this determination of value shall take into account any rent or use payments no longer required to be paid for the Remaining Term.

d.   The provisions of this Section 3 shall not diminish the Insured's rights under any other endorsement to the policy; however, the calculation of loss or damage pursuant to this endorsement shall not allow duplication of recovery for loss or damage calculated pursuant to Section 8 of the Conditions or any other endorsement to the policy.

4.   Valuation of Severable Improvements:

a.   In the event of an Eviction, the calculation of the loss shall include (but not to the extent that these items of loss are included in the valuation of the Title determined pursuant to Section 8 of the Conditions or any other provision of this or any other endorsement) the diminution in value of the Insured's interest in any Severable Improvement resulting from the Eviction, reduced by the salvage value of the Severable Improvement.

b.   The policy does not insure against loss or damage (and the Company will not pay any costs, attorneys' fees or expenses) relating to:

i.    the attachment, perfection or priority of any security interest in any Severable Improvement;

ii.   the vesting or ownership of title to or rights in any Severable Improvement;

iii.  any defect in or lien or encumbrance on the title to any Severable Improvement; or

iv.   the determination of whether any specific property is real or personal in nature.

5.   Additional items of loss covered by this endorsement:

If the Insured acquires all or any part of the Title in accordance with the provisions of Section 2 of the Conditions of the policy and thereafter is Evicted, the following items of loss, if applicable to that portion of the Land from which the Insured is Evicted shall be included, without duplication, in computing loss or damage incurred by the Insured, but not to the extent that the same are included in the valuation of the Title determined pursuant to Section 3 of this endorsement, the valuation of Severable Improvements pursuant to Section 4 of this endorsement, or Section 8(a)(iii) of the Conditions:

a.   The reasonable cost of: (i) disassembling, removing, relocating and reassembling any Severable Improvement that the Insured has the right to remove and relocate, situated on the Land at the time of Eviction, to the extent necessary to restore and make functional the integrated project; (ii) transportation of that Severable Improvement for the initial one hundred miles incurred in connection with the restoration or relocation; and (iii) restoring the Land to the extent damaged as a result of the disassembly, removal and relocation of the Severable Improvement and required of the Insured solely because of the Eviction.

b.   Rent, easement payments or damages for use and occupancy of the Land prior to the Eviction that the Insured as owner of the Leasehold Estate or the Easement Interest, as applicable, may be obligated to pay to any person having paramount title to that of the lessor in the Lease or the grantor in the Easement, as applicable.

c.   The amount of rent, easement payments or damages that, by the terms of the Lease or the Easement, as applicable, the Insured must continue to pay to the lessor or grantor after Eviction with respect to the portion of the Leasehold Estate or Easement Interest, as applicable, from which the Insured has been Evicted.

d.   The fair market value, at the time of the Eviction, of the estate or interest of the Insured in any lease, sublease or easement specifically permitted by the Lease or Easement, as applicable, and made by the Tenant as lessor or grantor of all or part of the Leasehold Estate or Easement Interest, as applicable.

e.   Damages caused by the Eviction that the Insured is obligated to pay to lessees or sublessees or easement or subeasement grantees on account of the breach of any lease or sublease or easement or subeasement specifically permitted by the Lease or the Easement, as applicable, and made by the Tenant as lessor or grantor of all or part of the Leasehold Estate or Easement Interest, as applicable.

f.   The reasonable cost to obtain land use, zoning, building and occupancy permits, architectural and engineering services and environmental testing and reviews for a replacement leasehold reasonably equivalent to the Leasehold Estate or a replacement easement reasonably equivalent to the Easement Interest, as applicable.

g.   If any Electricity Facility is not substantially completed at the time of Eviction, the actual cost incurred by the Insured up to the time of Eviction, less the salvage value, for the Electricity Facility located on that portion of the Land from which the Insured is Evicted.  Those costs include costs incurred to construct and fabricate the Electricity Facility, obtain land use, zoning, building and occupancy permits, architectural and engineering services, construction management services, environmental testing and reviews, and landscaping, and cancellation fees related to the foregoing.

6.   This endorsement does not insure against loss, damage or costs of remediation (and the Company will not pay costs, attorneys' fees, or expenses) resulting from environmental damage or contamination.

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]


Chicago Title Insurance Company


By: _____

    Authorized Signatory




ALTA Endorsement Form 36.1-06
(Energy Project –Leasehold/Easement-Loan) (4/2/12)
©American Land Title Association

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1. The insurance provided by this endorsement is subject to the exclusions in Section 6 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

2. For purposes of this endorsement only:

   a. "Constituent Parcel" means one of the parcels of Land described in Schedule A that together constitute one integrated project.

   b. "Electricity Facility" means an electricity generating facility which may include one or more of the following: a substation; a transmission, distribution or collector line; an interconnection, inverter, transformer, generator, turbine, array, solar panel, or module; a circuit breaker, footing, tower, pole, cross-arm, guy line, anchor, wire, control system, communications or radio relay system, safety protection facility, road, and other building, structure, fixture, machinery, equipment, appliance and item associated with or incidental to the generation, conversion, storage, switching, metering, step-up, step-down, inversion, transmission, conducting, wheeling, sale or other use or conveyance of electricity, on the Land at Date of Policy or to be built or constructed on the Land in the locations according to the Plans, that by law constitutes real property.

   c. "Evicted" or "Eviction" means (a) the lawful deprivation, in whole or in part, of the right of possession insured by this policy, contrary to the terms of any Lease or (b) the lawful prevention of the use of the Land or any Electricity Facility or Severable Improvement for the purposes permitted by the Lease, in either case as a result of a matter covered by this policy.

   d. "Lease" means each lease described in Schedule A.

   e. "Leasehold Estate" means the right of possession granted in the Lease for the Lease Term.

   f. "Lease Term" means the duration of the Leasehold Estate, as set forth in the Lease, including any renewal or extended term if a valid option to renew or extend is contained in the Lease.

   g. "Plans" means the survey, site and elevation plans or other depictions or drawings prepared by _(insert name of architect or engineer)_ dated, last revised_____,designated as _(insert name of project or project number)_ consisting of____sheets.

   h. "Remaining Term" means the portion of the Lease Term remaining after the Insured has been Evicted.

   i. "Severable Improvement" means property affixed to the Land at Date of Policy or to be affixed in the locations according to the Plans, that would constitute an Electricity Facility but for its characterization as personal property, and that by law does not constitute real property because (a) of its character and manner of attachment to the Land and (b) the property can be severed from the Land without causing material damage to the property or to the Land.

3. Valuation of Title as an Integrated Project:

   a. If in computing loss or damage it becomes necessary to value the Title, or any portion of it, as the result of an Eviction, then, as to that portion of the Land from which the Insured is Evicted, that value shall consist of (i) the value of (A) the Leasehold Estate for the Remaining Term, (B) any Electricity Facility existing on the date of the Eviction, and, if applicable, (ii) any reduction in value of another insured Lease as computed in Section 3(b) below.

   b. A computation of loss or damage resulting from an Eviction affecting any Constituent Parcel shall include loss or damage to the integrated project caused by the covered matter affecting the Constituent Parcel from which the Insured is Evicted.

   c. The Insured Claimant shall have the right to have the Leasehold Estate and any Electricity Facility affected by a defect insured against by this policy valued either as a whole or separately.  In either event, this determination of value shall take into account any rent no longer required to be paid for the Remaining Term.

   d. The provisions of this Section 3 shall not diminish the Insured's rights under any other endorsement to the policy; however, the calculation of loss or damage pursuant to this endorsement shall not allow duplication of recovery for loss or damage calculated pursuant to Section 8 of the Conditions or any other endorsement to the policy.

4. Valuation of Severable Improvements:

   b. In the event of an Eviction, the calculation of the loss shall include (but not to the extent that these items of loss are included in the valuation of the Title determined pursuant to Section 8 of the Conditions or any other provision of this or any other endorsement) the diminution in value of the Insured's interest in any Severable Improvement resulting from the Eviction, reduced by the salvage value of the Severable Improvement.

b. The policy does not insure against loss or damage (and the Company will not pay any costs, attorneys' fees or expenses) relating to:

i. the attachment, perfection or priority of any security interest in any Severable Improvement;

ii. the vesting or ownership of title to or rights in any Severable Improvement;

iii. any defect in or lien or encumbrance on the title to any Severable Improvement; or

iv. the determination of whether any specific property is real or personal in nature.

5. Additional items of loss covered by this endorsement:

If the Insured is Evicted, the following items of loss, if applicable to that portion of the Land from which the Insured is Evicted shall be included, without duplication, in computing loss or damage incurred by the Insured, but not to the extent that the same are included in the valuation of the Title determined pursuant to Section 3 of this endorsement, the valuation of Severable Improvements pursuant to Section 4 of this endorsement, or Section 8(a)(ii) of the Conditions.

a. The reasonable cost of: (i) disassembling, removing, relocating and reassembling any Severable Improvement that the Insured has the right to remove and relocate, situated on the Land at the time of Eviction, to the extent necessary to restore and make functional the integrated project; (ii) transportation of that Severable Improvement for the initial one hundred miles incurred in connection with the restoration or relocation; and (iii) restoring the Land to the extent damaged as a result of the disassembly, removal and relocation of the Severable Improvement and required of the Insured solely because of the Eviction.

b. Rent or damages for use and occupancy of the Land prior to the Eviction that the Insured as owner of the Leasehold Estate may be obligated to pay to any person having paramount title to that of the lessor in the Lease.

c. The amount of rent or damages that, by the terms of the Lease , the Insured must continue to pay to the lessor after Eviction with respect to the portion of the Leasehold Estate from which the Insured has been Evicted.

d. The fair market value, at the time of the Eviction, of the estate or interest of the Insured in any lease or sublease specifically permitted by the Lease and made by the Insured as lessor of all or part of the Leasehold Estate.

e. Damages caused by the Eviction that the Insured is obligated to pay to lessees or sublessees on account of the breach of any lease or sublease specifically permitted by the Lease and made by the Insured as lessor of all or part of the Leasehold Estate.

f. The reasonable cost to obtain land use, zoning, building and occupancy permits, architectural and engineering services and environmental testing and reviews for a replacement leasehold reasonably equivalent to the Leasehold Estate.

g. If any Electricity Facility is not substantially completed at the time of Eviction, the actual cost incurred by the Insured up to the time of Eviction, less the salvage value, for the Electricity Facility located on that portion of the Land from which the Insured is Evicted. Those costs include costs incurred to construct and fabricate the Electricity Facility, obtain land use, zoning, building and occupancy permits, architectural and engineering services, construction management services, environmental testing and reviews, and landscaping, and cancellation fees related to the foregoing.

6. This endorsement does not insure against loss, damage or costs of remediation (and the Company will not pay costs, attorneys' fees, or expenses) resulting from environmental damage or contamination.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

Chicago Title Insurance

Company

By: ______________________________

Authorized Signatory

ALTA Endorsement Form 36.2-06
(Energy Project –Leasehold-Owners) (4/2/12)
©American Land Title Association

SAMPLE

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1. The insurance provided by this endorsement is subject to the exclusions in Section 6 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

2. For purposes of this endorsement only:

   a. "Constituent Parcel" means one of the parcels of Land described in Schedule A that together constitute one integrated project.

   b. "Electricity Facility" means an electricity generating facility which may include one or more of the following: a substation; a transmission, distribution or collector line; an interconnection, inverter, transformer, generator, turbine, array, solar panel, or module; a circuit breaker, footing, tower, pole, cross-arm, guy line, anchor, wire, control system, communications or radio relay system, safety protection facility, road, and other building, structure, fixture, machinery, equipment, appliance and item associated with or incidental to the generation, conversion, storage, switching, metering, step-up, step-down, inversion, transmission, conducting, wheeling, sale or other use or conveyance of electricity, on the Land at Date of Policy or to be built or constructed on the Land in the locations according to the Plans, that by law constitutes real property.

   c. "Evicted" or "Eviction" means (a) the lawful deprivation, in whole or in part, of the right of possession insured by this policy, contrary to the terms of any Lease or (b) the lawful prevention of the use of the Land or any Electricity Facility or Severable Improvement for the purposes permitted by the Lease, in either case as a result of a matter covered by this policy.

   d. "Lease" means each lease described in Schedule A.

   e. "Leasehold Estate" means the right of possession granted in the Lease for the Lease Term.

   f. "Lease Term" means the duration of the Leasehold Estate, as set forth in the Lease, including any renewal or extended term if a valid option to renew or extend is contained in the Lease.

   g. "Plans" means the survey, site and elevation plans or other depictions or drawings prepared by _(insert name of architect or engineer)_ dated, last revised_____,designated as _(insert name of project or project number)_ consisting of_____sheets.

   h. "Remaining Term" means the portion of the Lease Term remaining after the Insured has been Evicted.

   i. "Severable Improvement" means property affixed to the Land at Date of Policy or to be affixed in the locations according to the Plans, that would constitute an Electricity Facility but for its characterization as personal property, and that by law does not constitute real property because (a) of its character and manner of attachment to the Land and (b) the property can be severed from the Land without causing material damage to the property or to the Land.

   j. "Tenant" means the tenant under the Lease  and, after acquisition of all or any part of the Title in accordance with the provisions of Section 2 of the Conditions of the policy, the Insured Claimant.

3. Valuation of Title as an Integrated Project:

   a. If in computing loss or damage it becomes necessary to value the Title, or any portion of it, as the result of an Eviction, then, as to that portion of the Land from which the Tenant is Evicted, that value shall consist of (i) the value of (A) the Leasehold Estate  for the Remaining Term,  (B) any Electricity Facility existing on the date of the Eviction, and, if applicable, (ii) any reduction in value of another insured Lease as computed in Section 3(b) below.

   b. A computation of loss or damage resulting from an Eviction affecting any Constituent Parcel shall include loss or damage to the integrated project caused by the covered matter affecting the Constituent Parcel from which the Insured is Evicted.

   c. The Insured Claimant shall have the right to have the Leasehold Estate and any Electricity Facility affected by a defect insured against by the policy valued either as a whole or separately.  In either event, this determination of value shall take into account any rent no longer required to be paid for the Remaining Term.

   d. The provisions of this Section 3 shall not diminish the Insured's rights under any other endorsement to the policy; however, the calculation of loss or damage pursuant to this endorsement shall not allow duplication of recovery for loss or damage calculated pursuant to Section 8 of the Conditions or any other endorsement to the policy.

4. Valuation of Severable Improvements:

   c. In the event of an Eviction, the calculation of the loss shall include (but not to the extent that these items of loss are included in the valuation of the Title determined pursuant to Section 8 of the Conditions or any other

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

provision of this or any other endorsement) the diminution in value of the Insured's interest in any Severable Improvement resulting from the Eviction, reduced by the salvage value of the Severable Improvement.

b.   The policy does not insure against loss or damage (and the Company will not pay any costs, attorneys' fees or expenses) relating to:

i.   the attachment, perfection or priority of any security interest in any Severable Improvement;

ii.   the vesting or ownership of title to or rights in any Severable Improvement;

iii.   any defect in or lien or encumbrance on the title to any Severable Improvement; or

iv.   the determination of whether any specific property is real or personal in nature.

5.   Additional items of loss covered by this endorsement:
If the Insured acquires all or any part of the Title in accordance with the provisions of Section 2 of the Conditions of the policy and thereafter is Evicted, the following items of loss, if applicable to that portion of the Land from which the Insured is Evicted shall be included, without duplication, in computing loss or damage incurred by the Insured, but not to the extent that the same are included in the valuation of the Title determined pursuant to Section 3 of this endorsement, the valuation of Severable Improvements pursuant to Section 4 of this endorsement, or Section 8(a)(iii) of the Conditions:

a.   The reasonable cost of: (i) disassembling, removing, relocating and reassembling any Severable Improvement that the Insured has the right to remove and relocate, situated on the Land at the time of Eviction, to the extent necessary to restore and make functional the integrated project; (ii) transportation of that Severable Improvement for the initial one hundred miles incurred in connection with the restoration or relocation; and (iii) restoring the Land to the extent damaged as a result of the disassembly, removal and relocation of the Severable Improvement and required of the Insured solely because of the Eviction.

b.   Rent or damages for use and occupancy of the Land prior to the Eviction that the Insured as owner of the Leasehold Estate may be obligated to pay to any person having paramount title to that of the lessor in the Lease.

c.   The amount of rent or damages that, by the terms of the Lease , the Insured must continue to pay to the lessor after Eviction with respect to the portion of the Leasehold Estate  from which the Insured has been Evicted.

d.   The fair market value, at the time of the Eviction, of the estate or interest of the Insured in any lease or sublease specifically permitted by the Lease and made by the Tenant as lessor of all or part of the Leasehold Estate.

e.   Damages caused by the Eviction that the Insured is obligated to pay to lessees or sublessees on account of the breach of any lease or sublease specifically permitted by the Lease and made by the Tenant as lessor of all or part of the Leasehold Estate.

f.   The reasonable cost to obtain land use, zoning, building and occupancy permits, architectural and engineering services and environmental testing and reviews for a replacement leasehold reasonably equivalent to the Leasehold Estate.

g.   If any Electricity Facility is not substantially completed at the time of Eviction, the actual cost incurred by the Insured up to the time of Eviction, less the salvage value, for the Electricity Facility located on that portion of the Land from which the Insured is Evicted.  Those costs include costs incurred to construct and fabricate the Electricity Facility, obtain land use, zoning, building and occupancy permits, architectural and engineering services, construction management services, environmental testing and reviews, and landscaping, and cancellation fees related to the foregoing.

6.   This endorsement does not insure against loss, damage or costs of remediation (and the Company will not pay costs, attorneys' fees, or expenses) resulting from environmental damage or contamination.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]  DATED:
Chicago Title Insurance Company
BY:_____
   AUTHORIZED SIGNATORY

ALTA Endorsement Form 36.3-06
(Energy Project –Leasehold-Loan) (4/2/12)
©American Land Title Association

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance Company

1.  The insurance provided by this endorsement is subject to the exclusions in Section 4 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

2.  For purposes of this endorsement only:

    a.  "Covenant" means a covenant, condition, limitation or restriction in a document or instrument in effect at Date of Policy.

    b.  "Electricity Facility" means an electricity generating facility that may include one or more of the following:  a substation; a transmission, distribution or collector line; an interconnection, inverter, transformer, generator, turbine, array, solar panel, or module; a circuit breaker, footing, tower, pole, cross-arm, guy line, anchor, wire, control system, communications or radio relay system, safety protection facility, road, and other building, structure, fixture, machinery, equipment, appliance and item associated with or incidental to the generation, conversion, storage, switching, metering, step-up, step-down, inversion, transmission, conducting, wheeling, sale or other use or conveyance of electricity, on the Land at Date of Policy or to be built or constructed on the Land in the locations according to the Plans, that by law constitutes real property.

    c.  "Plans" means the survey, site and elevation plans or other depictions or drawings prepared by _(insert name of architect or engineer)_ dated_____, last revised_____, designated as _(insert name of project or project number)_ consisting of_____sheets.

    d.  "Severable Improvement" means property affixed to the Land at Date of Policy or to be affixed to the Land in the locations according to the Plans, that would constitute an Electricity Facility but for its characterization as personal property, and that by law does not constitute real property because (a) of its character and manner of attachment to the Land and (b) the property can be severed from the Land without causing material damage to the property or to the Land.

3.  The Company insures against loss or damage sustained by the Insured by reason of:

    i.  A violation of an enforceable Covenant by any Electricity Facility or Severable Improvement, unless an exception in Schedule B of the policy identifies  the violation;

    ii.  Enforced removal of any Electricity Facility or Severable Improvement as a result of a violation of a building setback line shown on a plat of subdivision recorded or filed in the Public Records, unless an exception in Schedule B of the policy identifies the violation; or

    iii.  A notice of a violation, recorded in the Public Records at Date of Policy, of an enforceable Covenant relating to environmental protection, describing any part of the Land and referring to that Covenant, but only to the extent of the violation of the Covenant referred to in that notice, unless an exception in Schedule B of the policy identifies the notice of the violation.

4.  This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from:

    a.  any Covenant contained in an instrument creating a lease or easement;

    b.  any Covenant relating to obligations of any type to perform maintenance, repair, or remediation on the Land; or

    c.  except as provided in Section 3.c., any Covenant pertaining to environmental protection of any kind or nature, including hazardous or toxic matters, conditions, or substances.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]
DATED:
Chicago Title Insurance Company
BY:____
AUTHORIZED SIGNATORY

ALTA Endorsement Form 36.4-06
(Energy Project –Covenants, Conditions and Restrictions-Land Under Development-Owners) (4/2/12)
©American Land Title Association

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

<div align="center">

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

</div>

1.    The insurance provided by this endorsement is subject to the exclusions in Section 4 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

2.   For purposes of this endorsement only:

   a.   "Covenant" means a covenant, condition, limitation or restriction in a document or  instrument in effect at Date of Policy.

   b.   "Electricity Facility" means an electricity generating facility that may include one or more  of the following: a substation; a transmission, distribution or collector line; an interconnection, inverter, transformer, generator, turbine, array, solar panel, or module; a  circuit breaker, footing, tower, pole, cross-arm, guy line, anchor, wire, control system,  communications or radio relay system, safety protection facility, road, and other building,   structure, fixture, machinery, equipment, appliance and item associated with or incidental   to the generation, conversion, storage, switching, metering, step-up, step-down,  inversion, transmission, conducting, wheeling, sale or other use or conveyance of  electricity, on the Land at Date of Policy or to be built or constructed on the Land in the  locations according to the Plans, that by law constitutes real property.

   c.   "Plans" means the survey, site and elevation plans or other depictions or drawings  prepared by
    (*insert name of architect or engineer*)  dated_____, last revised _____ ,designated as
    (*insert name of project or project number*)  consisting of____sheets.

   d.   "Severable Improvement" means property affixed to the Land at Date of Policy or to be  affixed to the Land in the locations according to the Plans, that would constitute an  Electricity Facility but for its characterization as personal property, and that by law does  not constitute real property because (a) of its character and manner of attachment to the  Land and (b) the property can be severed from the Land without causing material  damage to the property or to the Land.

3.   The Company insures against loss or damage sustained by the Insured by reason of:

   a.   A violation of a Covenant that:

      i.   divests, subordinates, or extinguishes the lien of the Insured Mortgage;

      ii.   results in the invalidity, unenforceability, or lack of priority of the lien of the Insured  Mortgage; or

      iii.   causes a loss of the Insured's Title acquired in satisfaction or partial satisfaction of  the Indebtedness.

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

    b.   A violation of an enforceable Covenant by any Electricity Facility or Severable Improvement, unless an exception in Schedule B of the policy identifies the violation;

    c.   Enforced removal of any Electricity Facility or Severable Improvement, as a result of a violation of a building setback line shown on a plat of subdivision recorded or filed in the Public Records, unless an exception in Schedule B of the policy identifies the violation; or

    d.   A notice of a violation, recorded in the Public Records at Date of Policy, of an enforceable Covenant relating to environmental protection, describing any part of the Land and referring to that Covenant, but only to the extent of the violation of the Covenant referred to in that notice, unless an exception in Schedule B of the policy identifies the notice of the violation.

4.   This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from:

    a.   any Covenant contained in an instrument creating a lease or easement;

    b.   any Covenant relating to obligations of any type to perform maintenance, repair, or remediation on the Land; or

    c.   except as provided in Section 3.d., any Covenant pertaining to environmental protection of any kind or nature, including hazardous or toxic matters, conditions, or substances.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.


[Witness clause optional]


**Chicago Title Insurance Company**


By: _____
        Authorized Signatory


ALTA Endorsement Form 36.5-06
(Energy Project –Covenants, Conditions and Restrictions-Land Under Development-Loan) (4/2/12)
©American Land Title Association

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1. The insurance provided by this endorsement is subject to the exclusions in Section 4 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

2. For purposes of this endorsement only:

   a. "Electricity Facility" means an electricity generating facility that may include one or more of the following:  a substation; a transmission, distribution or collector line; an interconnection, inverter,  transformer, generator, turbine, array, solar panel, or module; a circuit breaker, footing, tower, pole, cross-arm, guy line, anchor, wire, control system, communications or radio relay system, safety protection facility, road, and other building, structure, fixture, machinery, equipment, appliance and item associated with or incidental to the generation, conversion, storage, switching, metering, step-up, step-down, inversion, transmission, conducting, wheeling, sale or other use or conveyance of electricity, on the Land at Date of Policy or to be built or constructed on the Land in the locations according to the Plans, that by law constitutes real property.

   b. "Plans" means the survey, site and elevation plans or other depictions or drawings prepared by
      \_(*insert name of architect or engineer*)\_ dated\_\_\_\_\_, last revised _____, designated as
      \_(*insert name of project or project number*)\_ consisting of\_\_\_\_sheets.

   c. "Severable Improvement" means property affixed to the Land at Date of Policy or to be affixed to the Land in the locations according to the Plans, that would constitute an Electricity Facility but for its characterization as personal property, and that by law does not constitute real property because (a) of its character and manner of attachment to the Land and (b) the property can be severed from the Land without causing material damage to the property or to the Land.

3. The Company insures against loss or damage sustained by the Insured by reason of:

   a. An encroachment of any Electricity Facility or Severable Improvement located on the Land onto adjoining land or onto that portion of the Land subject to an easement, unless an exception in Schedule B of the policy identifies the encroachment;

   b. An encroachment of an improvement located on adjoining land onto the Land at Date of Policy, unless an exception in Schedule B of the policy identifies the encroachment;

   c. Enforced removal of any Electricity Facility or Severable Improvement, as a result of an encroachment by the Electricity Facility or Severable Improvement onto any portion of the Land subject to any easement, in the event that the owners of the easement shall, for the purpose of exercising the right of use or maintenance of the easement, compel removal or relocation of the encroaching Electricity Facility or Severable Improvement; [or]

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

d. Damage to any Electricity Facility or Severable Improvement that is located on or encroaches onto that portion of the Land subject to an easement excepted in Schedule B, which damage results from the exercise of the right to maintain the easement for the purpose for which it was granted or reserved [; or]

[e. The coverage of Sections 3.c. and 3.d. shall not apply to the encroachments listed in Exception(s)_____of Schedule B].

4    This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from contamination, explosion, fire, vibration, fracturing, earthquake or subsidence.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

**Chicago Title Insurance Company**


By: _____
        Authorized Signatory


ALTA Endorsement Form 36.6-06
(Energy Project –Encroachments) (4/2/12)
©American Land Title Association

**ASSIGNMENT OF RENTS OR LEASES**

**ALTA 37-06 (12-03-12)**

Lenders occasionally request that the loan policy insure certain recorded interests that are taken as additional security for the loan primarily secured by the Insured Mortgage. The most common additional security, other than a security interest under the Uniform Commercial Code, is an assignment of rents or leases.

This endorsement is issued to provide certain coverages with respect to a separate assignment of rents or leases shown in Schedule B, Part II of the policy. This endorsement provides insurance that the assignment of rents or leases is properly executed, and that the Public Records do not disclose any prior assignments of these same rents or leases.

These endorsements do not amend or modify any specific policy provisions, but add additional coverage to the terms of the policy.

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1.  The insurance provided by this endorsement is subject to the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

2.  The Company insures against loss or damage sustained by the Insured by reason of:

    a.any defect in the execution of the [*Insert Title of Assignment of Rents or Leases Document*] referred to in paragraph_____[*of Part II*] of Schedule B; or

    b.any assignment of the lessor's interest in any lease or leases or any assignment of rents affecting the Title and recorded in the Public Records at Date of Policy other than as set forth in any instrument referred to in Schedule B.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

Chicago Title Insurance Company
BY:_____

ALTA Endorsement Form 37-06
(Assignment of Rents or Leases) (12/03/12)
©American Land Title Association

**MORTGAGE TAX**

**ALTA ENDORSEMENT - FORM 38-06**

This endorsement provides coverage to the insured lender if there is a deficiency in the recordation tax paid at the time the Insured Mortgage is recorded that is subsequently paid. The endorsement provides that, if the deficiency is paid, the Company will provide coverage against the invalidity or unenforceability of the Insured Mortgage or the lack of priority of the Insured Mortgage, from the failure to pay at the time of recording any portion of the recording tax. The Company does not provide coverage if the insured lender fails to pay the recordation tax deficiency.

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

1.  The insurance provided by this endorsement is subject to the exclusions in Sections 4 and 5 of this endorsement, the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

2.  For the purposes of this endorsement only, "Mortgage Tax" means a recordation, registration or related tax or charge required to be paid when the Insured Mortgage is recorded in the Public Records.

3.  Upon payment of any deficiency in the Mortgage Tax, including interest and penalties, by the Insured, the Company insures against loss or damage sustained by the Insured by reason of:

    a.  the invalidity or unenforceability of the lien of the Insured Mortgage as security for the Indebtedness resulting from the failure to pay, at the time of recording, any portion of the Mortgage Tax; or

    b.  the lack of priority of the lien of the Insured Mortgage as security for the Indebtedness resulting from the failure to pay, at the time of recording, any portion of the Mortgage Tax.

4.  The Company does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from the failure of the Insured to pay the Mortgage Tax deficiency, together with interest and penalties.

5.  The Company is not liable for the payment of any portion of the Mortgage Tax, including interest or penalties

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

Chicago Title Insurance Company
BY:_____

ALTA Endorsement Form 38-06
(Mortgage Tax) (12/3/12)
©American Land Title Association

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**POLICY AUTHENTICATION**
**ALTA 39-06 (04-02-13)**

This endorsement provides coverage to the insured lender if a policy is issued electronically, or does not have a signature which may be required by the form of policy cover used. This endorsement for the insured lender modifies the cover and Conditions 14 (c) of the Policy which requires an authentication by an authorized person. This typically would be the signature of a licensed employee or agent.

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

**ENDORSEMENT**

Attached to Policy No._____
Issued by
Chicago Title Insurance
Company

When the policy is issued by the Company with a policy number and Date of Policy, the Company will not deny liability under the policy or any endorsements issued with the policy solely on the grounds that the policy or endorsements were issued electronically or lack signatures in accordance with the Conditions.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

Chicago Title Insurance Company
BY:_____

ALTA Endorsement Form 39-06
(Policy Authentication) (4/3/13)
©American Land Title Association

Endorsements descriptions and sample forms are provided as a courtesy only. Information is deemed reliable but not guaranteed. Please contact your local Sales Executive with questions.

© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF



© 2013 Chicago Title, a member of the Fidelity National Financial family of companies. | NYSE:FNF

# EXHIBIT 2

# EXHIBIT 2



# Endorsements

## Common Endorsements requested by Residential Lenders

FORM DESCRIPTION
CLTA

*Generally, endorsements will provide additional coverage for matters which would ordinarily be excluded by the Exclusions from Coverage, or excepted from coverage either by the pre-printed exceptions, if any, or by the specific exceptions shown in Schedule B of the policy.*

*Because of this, most endorsements are not general in nature, but are specific as to items for which the insured desires coverage. Some are specifically designed for owner's policies and others for lender's policies.*

*The issuance of any endorsement is conditioned upon the circumstances surrounding the property involved, and upon the fulfillment of the underwriting criteria established by the Company.*

*The following descriptions do not define the coverage of the endorsement, which can only be determined by reading the same. This list is provided as a convenience in locating the endorsement which may fit a particular set of facts. CLTA Endorsement (with ALTA Equivalent) Numbers Available*

**100** Provides comprehensive coverage for insured ALTA lender against loss by reason of present or future CC&Rs violations, the encroachment of improvements, or by reason of surface entry for mineral development.

Endorsement provides insurance that:

1. There are no CC&Rs under which the lien of the insured mortgage can be cut off, subordinated or impaired;

2. There are no present CC&R violations on the land; and

3. Except as shown in Schedule B, there are no encroachments of improvements on the land onto adjoining land, and no encroachments of improvements on adjoining land onto the land. Endorsement insures against loss by reason of:

I. Future violations of CC&Rs which result in loss of the insured mortgage lien or title to the land if the insured lender has acquired same by foreclosure or conveyance in lieu thereof;

2. Unmarketability of title by reason of CC&R violations occurring prior to acquisition of title by the insured lender;

3. Damage to improvements which encroach on any portion of the land subject to an easement excepted in Schedule B;

4. Damage to improvements resulting from the exercise of any right to use the surface of the land

for the extraction or development of excepted minerals; and

5. Final court order or judgment requiring removal from any land adjoining the land of any encroachment shown in Schedule B.

**100.12** Provides insured lender with insurance concerning the enforceability of reverter rights found in CC&Rs.

**100.13** Provides insured ALTA lender with insurance concerning the priority of a mortgage lien over maintenance or upkeep assessment liens.

**100.18** Provides insured lender with coverage against loss by reason of the exercise or attempted exercise of reverter rights in CC&Rs.

**100.23** Provides insured ALTA lender with coverage against loss by reason of the exercise of surface rights for the extraction or development of minerals leased under oil lease.

**100.24** Provides insured ALTA lender with insurance that lessee under mineral lease does not have any right to enter on or use the surface of the land.

# FIDELITY NATIONAL TITLE

Template Copyright © 2009 EffectiveSolutions,LLC for HelpMyTitleRep.com members only

# Endorsements

100.26 Provides insured ALTA lender with coverage against loss by reason of damage to proposed or completed improvements under FHA project, resulting from the exercise of surface or subsurface rights for the extraction or development of minerals excepted from the description of the land.

100.29 Provides insured owner or lender with coverage against loss by reason of the exercise of surface rights for the extraction or development of minerals excepted from the description of the land or shown as a reservation in Schedule B.

101.2 Provides insured construction lender with coverage against loss by reason of a lack of priority of the insured mortgage over statutory liens for services, labor or material arising out of a work of improvement referred to in a recorded notice of completion.

102.4 Provides insured construction lender with insurance that the foundations of the structure under construction are within the boundaries of the land and that their location docs not violate referenced CC&Rs.

102.5 Provides insured construction lender with insurance that the foundations of the structure under construction are within the boundaries of the land, that their location does not violate referenced CC&Rs and that they do not encroach upon referenced easements. (Broader coverage than Form 102.4).

103.1 Provides insured lender with coverage against loss by reason of the exercise of the right of use or maintenance of a particular easement by the easement holder.

103.1a   Provides insured lender with against loss resulting from (1) damage to the existing improvements, including lawns, shrubbery and trees, on the land, and (2) interference with the continuing use, as presently utilized, of the existing improvements on the land, arising from a particular easement described in Schedule B.

103.3 Provides insured lender with coverage against loss by reason of the forced removal of improvements which encroach upon a particular easement which easement right is presently being exercised

103.4 Provides insured owner or lender with insurance that an insured easement affords ingress and egress to and from a specified public street.

103.7 Provides insured owner or lender with assurance that the land described in Schedule A abuts upon a specific, physically- open public street.

104.1 Provides assignee of the insured mortgage with assurance concerning (a) validity of a recorded assignment to evidence transfer of the entire beneficial interest to the named assured assignee and (b) full or partial reconveyances, modification or subordination of the insured mortgage.

108.7 Provides insured CLTA lender with coverage against loss concerning vesting of title, subsistence and priority of insured mortgage lien insofar as same secures an additional (optional) advance and increases policy liability by the amount of the advance.

108.8 Provides insured ALTA lender with coverage against loss concerning vesting of title, subsistence and priority of insured mortgage lien insofar as same secures an additional (optional) advance and increases policy liability by the amount of the advance

110.5 Provides insured ALTA lender insurance concerning proper modification of the insured mortgage, including express priority coverage.

110.9 (ALTA form 8.1) Provides insured ALTA residential lender with coverage against loss by reason of lack of priority over (a) any federal or state environmental protection lien which is recorded in the public records, except as set forth in Schedule B, and (b) any state environmental protection lien provided for by any state statute in effect at Date of Policy, except as provided for by state statutes specified in the endorsement.

111.5 (ALTA Form 6) Provides insured ALTA variable rate mortgage lender with coverage against loss by reason of (1) invalidity or unenforceability of the insured mortgage resulting from terms therein providing for changes in the rate of interest, or (2) loss of priority of the insured mortgage lien caused by the changes in the rate of interest.

111.8 (ALTA Form 6.2) Provides insured ALTA variable rate mortgage lender with coverage against changes in the rate of interest, the addition of unpaid interest to principal and/or interest on interest, or (2) loss of priority of the insured mortgage lien caused by the changes in the rate of interest, unpaid interest added to principal and/or interest on interest.

111.9 Provides insured ALTA lender with insurance concerning the priority of a mortgage lien relating to FNMA Balloon mortgage, conditional right to refinance, extension of the loan term and change in the interest rate.

111.10 (Optional Advance) Provides insured lender with coverage against (1) loss by reason of invalidity or unenforceability of the insured mortgage or of (2) loss of priority of said mortgage for the unpaid balance together with interest caused by changes in the rate of interest in

# Endorsements

accordance with the terms of a specified loan agreement. Except as to intervening matters of which the insured has actual knowledge.

111.11 (Obligatory Advance) Provides insured lender with coverage against (1) loss by reason of invalidity or unenforceability of the insured mortgage or of (2) loss of priority of said mortgage for the unpaid balance together with interest caused by changes in the rate of interest in accordance with the terms of a specified loan agreement.

115 Provides insured lender with insurance that the estate or interest covered by the policy is a condominium, in fee, and is entitled to be assessed and taxed as a separate parcel.

115.1 Provides coverage for an insured ALTA lender against loss concerning statutory compliance. Violations of CC&Rs, homeowners association charges and assessments, the separate assessment of real property taxes , encroachments and the exercise of a right of first refusal to purchase, all with respect to a condominium unit within a condominium project.

115.2 Provides coverage for an insured ALTA lender against loss concerning violations of CC&Rs, homeowners association charges and assessments, encroachments and the exercise of a right of first refusal to purchase, all with respect to a parcel of land in a planned development.

116 Provides insured ALTA lender with insurance concerning the street address of designated improvements on the land; and, with respect to the sufficiency of the policy plat to show the record location and dimensions of that land.

116.1 Provides insured lender with insurance that the land described in the policy is the same as that delineated on plat of a survey

attached to and made a part of the policy.

116.2 Provides insured ALTA lender with insurance concerning the street address of designated separately-owned elements comprising pan of the insured condominium and with respect to the sufficiency of the referenced map or plan to show the exterior boundary of the condominium project as a whole.

116.7 Provides insured with insurance that the land described is a lawfully created parcel according to the California Subdivision Map Act and local ordinances adopted pursuant thereto.

122 Provides insured ALTA lender with insurance concerning obligatory advance made under the insured mortgage; liability limited to face amount of policy.

123.1 (ALTA form 3) Provides insured ALTA owner or lender with insurance concerning the zoning classification of the land and the broad, allowable use or uses under that classification.

123.2 (ALTA Form 3.I) Provides insured ALTA owner or lender with insurance concerning the zoning classification of the land, the allowable use or uses under that classification and with respect to the existing structure on the land, limited coverage concerning compliance with applicable provisions of the zoning ordinance.

124.1 Provides insured owner or lender with insurance concerning affirmative and/or negative covenants contained in a deed or agreement between landowners.

124.2 Provides insured owner or lender with insurance concerning affirmative covenants contained in a lease.

124.3 Provides insured owner or lender with insurance concerning negative covenants contained in a

lease.

125 Provides coverage for the insured ALTA lender against loss by reason of a judicial determination that (a) the insured mortgage lien (or the lender's title after foreclosure) has been defeated by a valid exercise of the right of rescission conferred by the Federal Truth in Lending Act, and that (b) such right of rescission existed because neither the loan transaction nor the right of rescission there of was exempted or excepted by the provision of Regulation Z.

126.1 Provides coverage for insured CLTA owner of a one-to-four family residence against defined loss by reason of lack of a right of access, rights to liens for services, labor or material, encroachments, zoning and restrictions violations and surface entry for mineral development.

126.2 Provides coverage for insured CLTA fee owner of a residential condominium against defined loss concerning the separate assessment of taxes, lack of a right of access, rights to liens for services, labor or material, encroachments, zoning and restrictions violations and surface entry for mineral development.

# EXHIBIT 3

# EXHIBIT 3

# Bulletin : MU000003

**Date:** December 12, 1991

**From:** Stewart Title Guaranty Company
P. O. Box 2029
Houston, Texas 77252-2029
(800) 729-1902

**To:** All Issuing Offices in Alabama, Alaska, Colorado, Connecticut, Florida, Nevada, Oregon, Pennsylvania, Rhode Island, Washington, West Virginia

**RE:** Condominium Assessment Lien Priority

_____

Dear Associates:

All offices issuing policies in any of the above states should be aware that relevant state laws provide that condominium assessment liens have limited priority over first mortgages. The amount of assessment having priority ranges from six months to five years. Paragraph 4 of ALTA Form 4 Endorsement, the condominium endorsement, insures a lender against loss or damage by reason of the priority of any assessment lien over the lien to be issued. Because of the priority of the assessment liens, Company policy requires that any ALTA Form 4 Endorsement issued in any of the above states have paragraph 4 of the endorsement deleted. You may accomplish this by x-ing through the paragraph with a typewriter.

Within the next few weeks, a supply of ALTA Form 4 Endorsements will be printed with paragraph 4 deleted. Thereafter, any orders for ALTA Form 4 originating in the above states will receive ALTA Form 4 with paragraph 4 deleted.

You should also note that ALTA Form 9 Endorsement, the so-called Comprehensive Endorsement, contains paragraph 2 which provides insurance against loss due to the existence of provisions in covenants and restrictions which would create a loss of priority of the insured lien. Because assessment lien priority would affect the priority of the insured lien, if you are asked to issue an ALTA 9 on a condominium unit, you must delete all of paragraph 2 from the Form 9. The Company does not plan on printing ALTA Form 9 Endorsements with paragraph 2 deleted.

In addition, if you issue any master policy or short form policy in which the Form 4 or Form 9 is incorporated into the coverage by marking a box, it will be necessary for you to include (with the

certificate or short form policy) an addendum deleting the appropriate paragraph(s) from the incorporated endorsement(s) if you have included the coverage in the policy. Blank addendums are available from the Forms Department in Houston.

In addition to filing this Bulletin in your Bulletin binder, you should place a copy in your Underwriting Manual, Volume I, under "Condominiums" Section 3.40.

**THIS BULLETIN IS FURNISHED TO INFORM YOU OF CURRENT DEVELOPMENTS. AS A REMINDER, YOU ARE CHARGED WITH KNOWLEDGE OF ALL CONTENT ON VIRTUAL UNDERWRITER AS IT EXISTS FROM TIME TO TIME AND ANY OTHER INSTRUCTIONS. OUR UNDERWRITING AGREEMENTS DO NOT AUTHORIZE OUR ISSUING AGENTS TO ENGAGE IN SETTLEMENTS OR CLOSINGS ON BEHALF OF STEWART TITLE GUARANTY COMPANY. THIS BULLETIN IS NOT INTENDED TO DIRECT YOUR ESCROW OR SETTLEMENT PRACTICES OR TO CHANGE PROVISIONS OF APPLICABLE UNDERWRITING AGREEMENTS. CONFIDENTIAL, PROPRIETARY, OR NONPUBLIC PERSONAL INFORMATION SHOULD NEVER BE SHARED, OR DISSEMINATED EXCEPT AS ALLOWED BY LAW. IF APPLICABLE STATE LAW OR REGULATION IMPOSES ADDITIONAL REQUIREMENTS, YOU SHOULD CONTINUE TO COMPLY WITH THOSE REQUIREMENTS.**

# References

**Bulletins Replaced :** None
**Related Bulletins :** None
**Underwriting Manual :** 3.40 Condominiums

**Exceptions Manual :** CON Condominiums
**Forms :** ALTA Endorsement 4 (Condominium)
ALTA Endorsement 4.1 (Condominium)
ALTA Restrictions, Encroachments, Minerals Endorsement 9

# EXHIBIT 4

# EXHIBIT 4

# Bulletin : MU000008

**Date:** July 16, 1993

**From:** Stewart Title Guaranty Company
P. O. Box 2029
Houston, Texas 77252-2029
(800) 729-1902

**To:** All Issuing Offices in Alabama, Alaska, Colorado, Connecticut, District of Columbia, Massachusetts, Nevada, Oregon, Pennsylvania, Rhode Island, Washington, West Virginia

**RE:** ALTA Condominium Endorsement 4.1

_____

Dear Associates:

Paragraph 4 of the ALTA Endorsement 4 (Condominium) insures against loss because of priority of maintenance liens over the insured mortgage. The ALTA Master Policy, Short Form Policy, CLTA Comprehensive Endorsement, and ALTA Endorsement 9 provide similar coverage.

The ALTA adopted ALTA Endorsement 4.1 on October 17, 1992. At paragraph 4, it insures against loss because of any charges or assessments that are due and unpaid at date of policy. It does not insure that the mortgage has priority over future condominium assessment liens.

Some states (such as Alaska and Pennsylvania) have a modified condominium endorsement like the ALTA Form 4.1.

In your states, future assessments (usually six months) have priority over a prior mortgage.

Company Policy:

Issue the ALTA Endorsement 4.1 or your modified condominium endorsement (in Alaska and Pennsylvania) to the Policy or Master Policy Certificate on condominiums. Do not issue the ALTA Endorsement Form 4 on condominiums without underwriter approval.

If you issue an ALTA Endorsement Form 9, CLTA Comprehensive Endorsement, Master Policy Certificate or Short Form Loan Policy on condominiums, add the following exception:

"The Policy and any endorsements to the Policy do not insure against loss because of condominium assessments not yet due and payable."

You also should comply with our Underwriting Manual Guidelines on condominiums (Condominiums 3.40.17).

Attached is the rate filing for your state where applicable.

Alta 4.1 Form - Condominium Endorsement

StateRate

| State | Rate |
|---|---|
| Alabama | $15 |
| Colorado, | 10%$25 min. |
| District of Columbia | $15 |
| | $50 |
| Oregon | $50 |
| Pennsylvania | $15 |
| West Virginia | |

**THIS BULLETIN IS FURNISHED TO INFORM YOU OF CURRENT DEVELOPMENTS. AS A REMINDER, YOU ARE CHARGED WITH KNOWLEDGE OF ALL CONTENT ON VIRTUAL UNDERWRITER AS IT EXISTS FROM TIME TO TIME AND ANY OTHER INSTRUCTIONS. OUR UNDERWRITING AGREEMENTS DO NOT AUTHORIZE OUR ISSUING AGENTS TO ENGAGE IN SETTLEMENTS OR CLOSINGS ON BEHALF OF STEWART TITLE GUARANTY COMPANY. THIS BULLETIN IS NOT INTENDED TO DIRECT YOUR ESCROW OR SETTLEMENT PRACTICES OR TO CHANGE PROVISIONS OF APPLICABLE UNDERWRITING AGREEMENTS. CONFIDENTIAL, PROPRIETARY, OR NONPUBLIC PERSONAL INFORMATION SHOULD NEVER BE SHARED, OR DISSEMINATED EXCEPT AS ALLOWED BY LAW. IF APPLICABLE STATE LAW OR REGULATION IMPOSES ADDITIONAL REQUIREMENTS, YOU SHOULD CONTINUE TO COMPLY WITH THOSE REQUIREMENTS.**

# References

**Bulletins Replaced :** None
**Related Bulletins :** None
**Underwriting Manual :** 3.40 Condominiums

**Exceptions Manual :** CON Condominiums
**Forms :** ALTA Endorsement 4.1 (Condominium)

# EXHIBIT 5

# EXHIBIT 5

# Insurance of the Future - The ALTA 9

AUTHOR: Douglass W. Dewing

At its 1988 convention the American Land Title Association adopted the ALTA 9, which is a comprehensive endorsement similar to a form issued by the California Land Title Association, and similar to the "Comprehensive Endorsement" issued by LTIC for use in commercial transactions. As this endorsement provides affirmative insurance over most recorded exceptions to title, it is anticipated that many lenders, especially those selling their loans in the secondary market, will request the endorsement.

The endorsement has five numbered paragraphs and several of those have numbered subparagraphs. The lender **must** request the endorsement. Some lenders may request the endorsement on all loan policies, but that request will need to go through the Virginia State Office. The endorsement should **not** be issued automatically upon the lender's request. The issuing office must closely review all relevant documents, including easements, restrictions and surveys. The Company has not decided if the endorsement will carry a separate premium.

The endorsement should be issued **only** on loan policies. Because of references to matters excepted in Schedule B, it should not be used with the ALTA Short Form Residential Loan Policy (Policy series 121-xx-xxxxxx) or LTIC's Short Form Residential Loan Policy (Policy series 117-xx-xxxxxx). The endorsement should be used **only** on residential loan policies for one-to-four family residential properties with existing improvements. It must be issued at the time the policy is issued. Due to some language which could be construed as date-down coverage, title must be examined to the date of the request if the lender asks for the endorsement after the policy has been issued. **A current physical survey is mandatory.** If the coverage of one of the paragraphs cannot be given, the paragraph may be stricken, initialed by the underwriter, and the endorsement, as amended, may then be issued.

The Company insures the owner of the indebtedness secured by the insured mortgage against loss or damage sustained by reason of:

1.   Any incorrectness in the assurance that, at Date of Policy:

   a)   There are no covenants, conditions or restrictions under which the lien of the mortgage referred to in Schedule A can be divested, subordinated or extinguished, or its validity, priority or enforceability impaired.

To give this coverage, the underwriter must review all covenants, conditions and restriction listed in the title report to determine if there is language which could result in forfeiture, reversion or other impairment. Note that other impairment is added to traditional forfeiture or reversion. This includes a provision permitting a home owners or civic association to levy an assessment, secured by a lien with priority over the insured deed of trust. Under the Property Owners Association Act, 55-508, et seq., some owners associations can levy for limited purposes, with limited super-priority.

   b)   Unless excepted in Schedule B:

http://www.agentstra.net/extranet/SingleSource/content/Articles/Endorsementofthe.htm

1/29/2010

1)  There are no present violations on the land of any enforceable covenants, conditions or restrictions, nor do any existing improvements on the land violated any building setback lines shown on a plat of subdivision recorded or filed in the public records.

2)  Any instrument referred to in Schedule B as containing covenants, conditions or restrictions on the land does not, in addition, (i) establish an easement on the land; (ii) provide a lien for liquidated damages; (iii) provide for a private charge or assessment; (iv) provide for an option to purchase, a right of first refusal or the prior approval of a future purchaser or occupant.

3)  There is not encroachment of existing improvements located on the land onto adjoining land, nor any encroachment onto the land of existing improvements located on adjoining land.

4)  There is no encroachment of existing improvements located on the land onto that portion of the land subject to any easement excepted in Schedule B.

Paragraphs b) 1), 3), and 4) provide assurances that there are no violations or encroachments. To provide this assurance, all restrictions and conditions must be reviewed to determine if there has been a violation. Note that this does not say we insure against damage if there is a violation, it says there are none. Encroachments will only be found on the physical survey, but remember that some physical features may be shown on plats recorded in the records.

If we will be providing coverage over the violation, the policy will need to say so. The legal staff at the branch or state office will make this determination, as in the past. Review the underwriting manual sections on Encroachments and Restrictions for preliminary guidance. The phrasing of the endorsement says the coverage is there unless there is an exception in Schedule B. This implies that an omission of the exception for an encroachment in Schedule B, coupled with this endorsement, provides the coverage. But, in that case, we won't know if we assumed the risk, or if careless underwriting was involved, when facing a claim on that risk. To make the position clear, an exception with an affirmative statement that the Company is covering the risk should appear.

Obviously, these paragraphs must be deleted if 1) no survey is submitted; 2) if you do not have copies of the restrictions or 3) there is no attorneys' certificate stating there has been no violation.

2.  Any future violation on the land of any existing covenants, conditions or restrictions occurring prior to the acquisition of title to the estate or interest in land by the insured, provided the violation results in:

a)  impairment or loss of the lien of the insured mortgage; or

b)  loss of title to the estate or interest in the land if the insured shall acquire title in satisfaction of the indebtedness secured by the insured mortgage.

This paragraph speaks only in terms of future violations of the restrictions. The underwriting for this section is comparable to that for paragraph 1(a).

Case 2:21-cv-00538-GMN-NJK Document 1-3 Filed 04/02/21 Page 211 of 527
Case 2:08-cv-00531-RBJK Document 43-23 Filed 01/04/10 Page 29 of 30

Endorsement of the                                                                                      Page 3 of 4

3.  Damage to the existing improvements, including lawns, shrubbery or trees:

    a)  which are located on or encroach upon that portion of the land subject to any easement excepted in Schedule B, which damage results from the exercise of the right to maintain the easement for the purpose for which is was granted or reserved;

    b)  resulting from the future exercise of any right to use the surface of the land for the extraction or development of minerals excepted from the description of the land or excepted to in Schedule B.

This coverage is an extension of the coverage offered in paragraph 1(b)(4). Again, reference to the underwriting manual section on Encroachments will provide preliminary guidance. To provide affirmative coverage over encroachments, contact the legal staff.

The coverage against damage to lawns, shrubbery, or trees is extremely broad, but for our purposes, you should worry about that coverage only if the security includes such items. Examples would be orchards, vineyards, working farms, and historical properties with gardens, golf courses, and other similar properties.

Paragraph 3(b) can be given only if there is no reservation or conveyance of mineral rights. This would include oil and gas leases, coal, specific minerals or substances. If your property is being used as a borrow pit, this coverage should not be given. For exceptions or affirmative coverages, contact the legal staff.

4.  Any final court order or judgment required the removal from any land adjoining the land of any encroachment excepted in Schedule B.

This is an extension of paragraph 1(b)(3), and as in the case of future violation coverage, extends to something which will happen after the policy is issued. This provides coverage over encroachments from the insured land onto other land, including neighbors or public rights of way. There must be a physical survey, and if there are significant encroachments, the coverage must be deleted. For exceptions or affirmative coverages, contact the legal staff.

5.  Any final order or judgment denying the right to maintain any existing improvements on the land because of any violation of covenants, conditions or restrictions or building setback lines shown on a plat of subdivision recorded or filed in the public records.

This paragraph also speaks of a post-policy event, the entry of a court order denying the right to maintain the existing improvements because they violate the restrictions or setback lines. If there are any violations, or if you have not received a physical survey, then this coverage cannot be given without approval from the legal staff.

Wherever in this endorsement the words "covenants, conditions or restrictions" appear, they shall not be deemed to refer to or included the terms, covenants, conditions or limitations contained in an instrument creating a lease.

This endorsement is made a part of the policy and is subject to all the terms and provisions

NTLT 51

thereof and any prior endorsements thereto. Except to the extent expressly state, it neither modified any of terms and provisions of the policy and any prior endorsements, not does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

These final two paragraphs limit the coverage to restrictions, which are called restrictions, and not covenants contained in a lease. The final paragraph is the standard language for endorsements intended to limit the effective date of the endorsement. Notwithstanding that language, the endorsement should not be issued for a previously issued policy without running the title current.

The following comments are my personal editorial and are not to be construed as company policy. This endorsement provides lenders with virtually every affirmative coverage they have asked for. It insures that they will suffer no loss or damage from matters which are of record and for which they have knowledge (because we told them about them). It ignores the reality of real property that people have been using and living on our land for over 300 years, and no title policy will be completely free of exceptions. It also ignores the fact that lenders receive interest payments to compensate them for their risk.

*Remember*, you are the underwriter. If you do not receive anything that you need to offer these coverages, you are entitled to, and I hope you will feel free to, delete all or any specific paragraph of coverage.

# EXHIBIT 6

# EXHIBIT 6

# ENDORSEMENT MANUAL

Foreword
Introduction
Table of Contents
CLTA/ALTA Conversion Charts

## FIDELITY NATIONAL TITLE GROUP, INC.

August 2013

**FOREWORD**

**PURPOSE OF ENDORSEMENT MANUAL**

This Endorsement Manual ("Manual") is prepared exclusively for the use of employees and agents of the Fidelity National Title Group, Inc. family of title insurance companies ("Company") which includes: Alamo Title Insurance, Chicago Title Insurance Company, Commonwealth Land Title Insurance Company, and Fidelity National Title Insurance Company.

The endorsement forms contained in the Manual are representative versions of acceptable forms generally in use.  Local practices and regulatory requirements may result in different versions of these forms.  No endorsement form, whether one contained in the Manual or any accepted version thereof in use in a particular area, should be modified at a customer's request without considering the state regulatory requirements for filing and approval of forms and discussing the request for modification with a Company underwriting advisor.

**CONFIDENTIALITY OF MANUAL**

All materials contained in the Manual are confidential communications from the Company to you. Under no circumstances are the instructions or any other part of the Manual to be given or communicated to anyone who is not an employee or agent of the Company.  However, the endorsement forms contained in the Manual may be duplicated and given to our customers as specimen copies in order to facilitate the issuance of our title insurance policies.  Such specimen copies must clearly indicate that they are specimens through the use of the words SPECIMEN COPY or other such words.

**ISSUANCE OF ENDORSEMENTS**

No endorsement in the Manual is to be issued unless the instructions associated with that endorsement are followed or any additional instructions or conditions that may be contained in other memos or directions from the Company are complied with.  When the instructions require approval by a Company underwriting advisor, such approval must be obtained and maintained in the file.  No endorsement to a policy may be issued without compliance with applicable state insurance statutes and regulations.

Several of the endorsements in the Manual provide insurance for matters not disclosed by the public records at the date the policy is issued.  Therefore, any time the Date of Policy of a policy containing any endorsement is updated or changed, consideration must be given to whether or not the new effective date will have an unintended consequence on the insurance provided by the endorsement.  When in doubt, contact a Company underwriting advisor.

© Copyright 1999-2013 Fidelity National Title Group, Inc.  All Rights Reserved.

**TABLE OF CONTENTS**

Foreword
Introduction
CLTA/ALTA  conversion charts

SECTION:

1.      Street Assessments
        ALTA Form 1-06

2.      Truth-in-Lending
        ALTA Form 2-06

3.      Zoning
        ALTA Form 3-06 (Zoning)
        ALTA Form 3.1-06 (Zoning -Completed structure)
        ALTA Form 3.2-06 (Zoning-Land Under Development)

4.      Condominium
        ALTA Form 4-06
        ALTA Form 4.1-06 (no priority over subsequent HOA assessments)

5.      Planned Unit Development
        ALTA Form 5-06
        ALTA Form 5.1-06 (no priority over subsequent HOA assessments)

6.      Variable Rate Mortgage
        ALTA Form 6-06
        ALTA Form 6.2-06 (Negative Amortization)
        ALTA Form 6.1 [old form with statute blanks]

7.      Manufactured Housing
        ALTA Form 7-06 (expands definition only)
        ALTA Form 7.1-06 (Loan Policy)
        ALTA Form 7.2-06 (Owner's Policy)

8.      Environmental Protection Lien
        ALTA Form 8.1-06
        ALTA Form 8.2-06 (Commercial)

9.      Restrictions, Encroachments, Minerals
        ALTA Form 9-06 (REM-Loan Policy)
        ALTA Form 9.1-06 (CCR-Unimproved Land-Owner's Policy)
        ALTA Form 9.2-06 (CCR-Improved Land- Owner's Policy)
        ALTA Form 9.3-06 (CCR-Loan Policy)
        ALTA Form 9.6-06 (Private Rights – Loan Policy)
        ALTA Form 9.7-06 (REM –Land under Development-Loan Policy)
        ALTA Form 9.8-06 (CCR-Land Under Development – Owners Policy)
        ALTA Form 9.9-06 (Private Rights-Owner's Policy)
        ALTA Form 9.10-06 (REM-Current violations-Loan Policy)

10.     Assignment of Mortgage
        ALTA Form 10-06
        ALTA Form 10.1-06 (With Date Down)

11.     Mortgage Modification
        ALTA Form 11-06

© Copyright 1999-2013 Fidelity National Title Group, Inc.  All Rights Reserved.

ALTA Form 11.1-06 (With Subordination)

12.     Aggregation ("Tie-in")
ALTA Form 12-06 (Aggregation-Loan)
ALTA Form 12.1-06 (Aggregation-State Limits-Loan)

13.     Leasehold
ALTA Form 13-06 (Owner's)
ALTA Form 13.1-06 (Loan)

14.     Future Advances
ALTA Forms 14-06 (Priority)
ALTA Forms 14.1-06 (Knowledge)
ALTA Forms 14.2-06 (Letter of Credit)
ALTA Forms 14.3-06 (Reverse Mortgage)

15.     Non-Imputation
ALTA Form 15-06 (Full-Equity Transfer)
ALTA Form 15.1-06 (Additional Insured)
ALTA Form 15.2-06 (Partial Equity Transfer)

16.     Mezzanine Financing Endorsement
ALTA Form 16-06

17.     Access and Entry
ALTA Form 17-06 (Direct)
ALTA Form 17.1-06 (Indirect)
ALTA Form 17.2-06 (Utility Access)

18.     Tax Parcel
ALTA Form 18-06 (Single)
ALTA Form 18.1-06 (Multiple)[with tax sale protection]

19.     Contiguity
ALTA Form 19-06 (Multiple Parcels)[within Land]
ALTA Form 19.1-06 (Single Parcel)[with property other than Land]

20.     First Loss Endorsement [Contingent liability]
ALTA Form 20-06

21.     Creditors' Rights
ALTA Form 21-06 (Decertified)

22.     Location
ALTA Form 22-06
ALTA Form 22.1-06 (location with map)

23.     Coinsurance – Single Parcel
ALTA Form 23-06

24.     Doing Business
ALTA Form 24-06

25.     Same as Survey
ALTA Form 25-06
ALTA Form 25.1-06 (Portion of Survey)

© Copyright 1999-2013 Fidelity National Title Group, Inc.  All Rights Reserved.

26.     Subdivision
        ALTA Form 26-06

27.     Usury
        ALTA Form 27-06

28.     Easements and Encroachments
        ALTA Form 28-06 (Easement -Damage or Enforced Removal)
        ALTA Form 28.1-06 (Encroachments-Boundaries and Easements)
        ALTA Form 28.2-06 (Encroachments-Boundaries and Easements-Described Improvements)

29.     Interest Rate Swap
        ALTA Form 29-06 (Direct Obligation)
        ALTA Form 29.1-06 (Additional Interest)
        ALTA Form 29.2-06 (Direct Obligation – Defined Amount)
        ALTA Form 29.3-06 (Additional Interest – Defined Amount)

30.      Shared Appreciation Mortgage
        ALTA Form 30-06  (One to Four Family )
        ALTA Form 30.1-06 (Commercial Participation Interest)

31.     Severable Improvements
        ALTA Form 31-06

32.     Construction Loan
        ALTA Form 32-06 (Construction Loan –Loss of Priority)
        ALTA Form 32.1-06 (Construction Loan –Loss of Priority – Direct Payment)
        ALTA Form 32.2-06 (Construction Loan – Loss of Priority-Insured's Direct Payment)

33.     Disbursement (*to be used in conjunction with ALTA Forms 32-06 and 32.1-06*)
        ALTA Form 33-06

34.     Identified Risk Coverage
        ALTA Form 34-06

35.     Minerals and Other Subsurface Substances
        ALTA Form 35-06 (Buildings)
        ALTA Form 35.1-06 (Improvements)
        ALTA Form 35.2-06 (Described Improvements)
        ALTA Form 35.3-06 (Land Under Development)

36.     Energy Projects
        ALTA Form 36-06 (Leasehold/Easement-Owners Policy)
        ALTA Form 36.1-06 (Leasehold/Easement- Loan Policy)
        ALTA Form 36.2-06 (Leasehold- Owners Policy)
        ALTA Form 36.3-06 (Leasehold-Loan Policy)
        ALTA Form 36.4-06 (CCR-Land Under Development-Owners Policy)
        ALTA Form 36.5-06 (CCR-Land Under Development-Loan Policy)
        ALTA Form 36.6-06 (Encroachments)

37.     Assignment of Rents or Leases
        ALTA Form 37-06

38.     Mortgage Tax
        ALTA Form 38-06

39.     Policy Authentication
        ALTA Form 39-06

© Copyright 1999-2013 Fidelity National Title Group, Inc.  All Rights Reserved.

**[Nos.40 through 49 have been reserved for insertion of future ALTA Endorsements.]**

50.    CLTA Endorsement 100 - Comprehensive
(Similar to ALTA Form 9)

51.    Shared Appreciation Mortgage Endorsement- Commercial
Form A – Total Sum as Policy amount
Form B – Separate Additional Insurance

52.    Share of Cash Flow (Additional Interest)

53.    Interest of Incoming Partner
Form A – for use with 2006 Policy
Form B – for use with the Former ALTA 1970(rev.84) Policy

54.    Excess Insurance Endorsement (for Use In Insuring Existing Partnership or Interest of New Partner in Existing Partnership)

55.    Option to Purchase Endorsements
Form A – Option priority primed by intervening matters
Form B – Option priority relates back

56.    Assignment of Rents Endorsement
Contained in Insured Mortgage

57.    Issuance of Future Insurance Endorsement
Form A - No pending Claims
Form B - New Construction

58.    Covenants Run with the Land [shopping center]
(Same as CLTA Endorsement No. 124.1)

59.    Revolving Credit Endorsements–Non-ALTA forms
Form A – Obligatory Advance, Majority View
Form B – Obligatory Advance, Minority View
Form C - Optional Advance, Majority View
Form D - Optional Advance, Minority View

60.    Last Dollar – for policies OTHER than ALTA 2006

61.    Tax Credit Benefit Endorsement

© Copyright 1999-2013 Fidelity National Title Group, Inc.  All Rights Reserved.

**INTRODUCTION**

**What is an endorsement?**

"*A provision added to an insurance contract whereby the scope of its coverage is restricted or enlarged.*"

In order to understand what an endorsement is, we must first take a look at the underlying insurance policy. A title insurance policy is a contract of indemnity. The American Land Title Association ("ALTA") forms that we issue in the vast majority of states provide in Condition 8 of the Owners and the Loan policies:

> "This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy."

We must be careful to support this definition in the construction of our endorsements. Why is this distinction so important?  In order to have our liability capped at the policy amount, the courts must determine our liability within the scope of the contract (the four corners of the instrument), under rules of contract law and not on the basis of tort liability (negligence).  In tort, the liability amounts might not be limited by the policy amount, but could be determined to be all damages, regardless of the amount of policy.  This opened ended liability is similar to what is sometimes referred to as "abstractors' liability".

A contract of indemnity, as used in our forms, insures against loss or damage occasioned by the risk we have identified. In response to a series of cases in the mid 1990's (called the "Alliance" cases) the endorsement forms were changed to conform the language to the indemnity structure of the policy. Previously, the format of some endorsements used the following style of language:

> ……*any inaccuracies in the following (or previous) statements*…..

The court held that this language made the endorsements *opinions* of title and therefore subject to a law suit in tort for negligence based upon a negligent rendering of that opinion. Because the action would be held to be in tort and not in contract, the limitation on liability in the policy would not be effective.

We should be specifying the risk we will undertake, not opining on the state of facts. A way to remember this is that we do not insure the sky is blue. We insure against loss or damage

© Copyright 1999-2013 Fidelity National Title Group, Inc.  All Rights Reserved.

occasioned by the sky not being blue. It may be difficult to see the difference at first. But the policies themselves are written in the same indemnity language:

> *"SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CANTAINED IN SCHEDULE B AND THE CONDITIONS…[The Company] insures….against loss or damage, ….sustained or incurred by the Insured by reason of:"*

The Covered Risks then listed are written in the indemnity language form:

> *"1. Title being vested other than as stated in Schedule A"*

We don't insure "title is vested as shown"; we insure against loss if title is not vested as shown, (vested in a different manner than is shown). Sometimes this language looks "negative" at first glance. But once again, it is important to utilize this language in endorsements to conform to the policy structure.

If you come across old endorsement language, or are requested to issue an endorsement utilizing that old format – DON'T USE IT!  Please discuss any such form or request with the Company's underwriting advisor.

**ALTA Policies**

In most states we issue policies that are promulgated by the American Land Title Association (usually referred to as ALTA).  This is the national professional organization for our industry.  Not all states issue ALTA policies.  In California, they also issue the CLTA (or California Land Title Association) forms. Texas, New Mexico and New York also issue their own type of policy.  Some states, such as Florida and Pennsylvania, issue ALTA Policies, but issue only a few of the hundreds of endorsements that are available nationwide. This manual contains forms that were prepared for use with the ALTA policy forms. Some endorsements were written by ALTA; they are designated as such and are located in the first part of the manual.  Each title company also writes its own endorsements which are sometimes referred to as "proprietary" or "non-ALTA" forms. These are shown after the ALTA form sections.

© Copyright 1999-2013 Fidelity National Title Group, Inc.  All Rights Reserved.

**Loan Policy vs. Owners Policy Endorsements**

As you look through the manual, you will see that some endorsement forms are available ONLY for Loan Policies, some ONLY for Owners Policies and some for both. There are usually more endorsements available for the lender because the risk is different than for an owner.

The equity an owner has in a piece of property is a buffer we benefit from when we insure the lender. In other words, if there is a loss, and the loss does not exceed the equity, the lender is not affected. The owner is harmed from dollar one of the loss, so the odds of there being a loss from any specific risk is always greater for an owner.

In addition, in order to prove a loss, the lender might have to go through foreclosure and not get sufficient proceeds to cover its debt, AND the loss has to be based on the title issue, not other economic market factors. That type of loss is harder to prove than the owners' loss. That is why one of the first questions the underwriter asks when discussing coverage requests is what type of policy is being issued. They need this information to assess the risk properly, again, because they are different risks.


**Rates and Forms**

The Forms contained in this manual are the standard forms that have been approved generally for use. If you are located in a state that has a forms filing requirement, you must verify that these forms have been filed for use. Some forms may have been modified in order to be filed. You must use the appropriate form filed for your state instead of the form shown here, if that is an issue for your state.

Rates are usually based upon the risk assumed, the work involved to analyze that risk and the market.

There are four approaches used throughout the country for the filing of rates and forms which the Company is subject to: Promulgated; Rating Bureaus; Filing required; No filing required.

In promulgated states, rates and forms are created legislatively, and are usually set forth in a state's Administrative Code. All companies issuing title insurance in promulgated states must adhere to the rates set forth in the Code and usually must use the forms prescribed by the Code. The three promulgated states are Florida, New Mexico and Texas. New Mexico and Texas prescribe all forms that must be used. Florida prescribes many forms, particularly endorsements, but title insurers may also individually file their own forms.

© Copyright 1999-2013 Fidelity National Title Group, Inc.  All Rights Reserved.

A Rating Bureau is comprised of a consortium of Title Insurers that, pursuant to statute, are permitted to set rates and, in most cases, prescribe forms for use in a particular state. All rates set by, and forms prescribed by, a rating bureau must be filed with and approved by the state agency that regulates the title insurance industry. The eight rating bureau states are Delaware, Louisiana, New Jersey, New York, North Carolina, Ohio, Oregon and Pennsylvania. All rating bureaus permit the filing of "additional" rates and forms by individual title insurers that are in addition to those filed by the rating bureau. Unless an "additional" rate or form is being used, all title insurers must charge the rates and use the forms created by the rating bureau.

Many states require that rates and/or forms be filed with and approved by the state agency that regulates the title insurance industry. Some states require that both rates and forms be filed, while others only require that rates or forms be filed. In all instances where a rate or form is required to be filed, title insurers must use the rate and/or form filed in that state. In a state that requires rates, but not forms, to be filed title insurers may not issue any title insurance products until there is a rate filed for those products. Conversely, in states that require forms to be filed, but not rates, no title insurance products can be issued until the applicable form has been filed. In all cases where a filing is required, the filed rate and/or form must be supported by the underwriter's filed rate manual.

A handful of states do not require that any rates or forms be filed. These states include District of Columbia, Illinois, Indiana, Massachusetts, Mississippi and Oklahoma. Even though filings are not required in these states, some have published rate manuals which must be followed when determining rates to be used and forms to be issued. Some of the states publish rates on a local or regional basis, which published rates should be followed when issuing title insurance products. Each underwriter in the non-filed states has a prescribed set of forms which are intended for use by all operations.

Questions about the application of rates or approved forms in any of the states should be discussed with the Company's underwriting advisor.

*REMEMBER:* We are prohibited from discussing or setting rates between companies outside of a Rating Bureau.  Rates may or may not be the same between companies.

© Copyright 1999-2013 Fidelity National Title Group, Inc.  All Rights Reserved.

***SAMPLE ENDORSEMENT***:

ENDORSEMENT

*A*

Attached to and forming a part of

Policy of Insurance No. _____(File no_____)

Issued By

[FNTG BRAND] TITLE INSURANCE COMPANY

**_B_**

**_C_**

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls.  Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

**_D_**

Dated:

*E*          [FNTG BRAND] TITLE INSURANCE COMPANY

_____

*F*          Authorized signatory

**A**: Identify the policy

**B**: Describe the coverage

**C**: Integration or "boilerplate" clause

**D**: Date endorsement is issued, NOT the effective date of the coverage, unless specifically defined as such (see ALTA 10 and ALTA 11). If the endorsement is issued contemporaneously with the policy, it may be dated with the effective Date of Policy.

**E**: Identify Company

**F**: Signed by licensed agent or authorized party.

© Copyright 1999-2013 Fidelity National Title Group, Inc.  All Rights Reserved.

**Uses**

As was mentioned at the beginning of this introduction, an endorsement can be used to restrict or enlarge coverage. Most commonly they are to *increase* coverage, either by identifying additional risks assumed or deleting a limiting provision, such as an exception or exclusion. A caution on using an endorsement to decrease coverage: the endorsement may be easily removed from the policy. The policy might then be offered up as giving coverage where none was meant. An example - endorsing a commitment to add an exception such as an additional easement not contained in the original commitment. If the party issuing the final policy did not have or know about the endorsement, the policy would be issued without the additional exception, and this mistake could be carried forward in the future. The current insured buyer might be found to have had knowledge of the matter and be bound by it, but perhaps not its lender (if they had not seen the endorsement) and presumably not a future buyer.

A good rule of thumb is to use an endorsement to increase liability; amend the commitment or policy to decrease the liability. An endorsement reducing the Amount of Insurance after the claims process would be an exception to this rule.

**Drafting Endorsements Not Included in This Manual**

There are many instances in which the Company will agree to assume specific liability for matters not covered by any of the sample endorsements included within this manual. Where appropriate, for those endorsements containing affirmative insurance that we want to extend only after a court determination ( as opposed to giving the coverage against an assertion of an interest or challenge to the title before an action is commenced, as we sometimes may be willing to do) the following format is preferred:

> *The Company insures the Insured against loss or damage that the Insured shall sustain by reason of the entry of a final, non-appealable order or judgment finding ……*

 If you are an Agent, any requests for this type of coverage must be discussed with your Company underwriting advisor.

Return to Table of Contents

© Copyright 1999-2013 Fidelity National Title Group, Inc.  All Rights Reserved.

## CLTA to ALTA ENDORSEMENT CONVERSION CHART AS OF 04-02-13

| CLTA | ALTA | Description | Adoption (Rev.) |
|---|---|---|---|
| | 38-06 | Mortgage Tax | 12-03-12 |
| | 1-06 | Street Assessments | 6-17-06 |
| (100.2.6-06) | 9.6-06 | Private Rights - Loan | 04-02-13 |
| (100.2.7-06) | 9.7-06 | Restrictions, Encroachments, Minerals – Land under Development-Loan | 04-02-12 |
| (100.2.8-06) | 9.8-06 | Covenants, Conditions and Restrictions-Land under Development-Owners | 04-02-12 (Tech. Correction 12-3-12) |
| 100.10-06 | 9.2-06 | Covenants, Conditions and Restrictions (Owner's Policy - Improved Land) | (04-02-12) |
| **100.2.10-06** | **9.10-06** | **Restrictions, Encroachments, Minerals – Current Violations - Loan** | **(04-02-13)** |
| 100.2.1-06 | 9.3-06 | Covenants, Conditions and Restrictions-Loan | (04-02-12) |
| 100.2.2-06 | 9.4-06 | Restrictions, Encroachments, Minerals-Future Improvements re Minerals Extraction– OP-Unimproved Land | Withdrawn 04-02-12) |
| 100.2.3-06 | 9.5-06 | Restrictions, Encroachments, Minerals –Future Improvements re Minerals Extraction- OP– Improved Land | (Withdrawn 04-02-12) |
| **100.2.9-06** | **9.9-06** | **Private Rights – Owner's** | **(04-02-13)** |
| 100.2-06 | 9-06 | Restrictions, Encroachments & Minerals-Loan | (04-02-12) |
| 100.9-06 | 9.1-06 | Covenants, Conditions and Restrictions (Owner's Policy - Unimproved Land) | (04-02-12) |
| 103.1-06 | 28-06 | Easement – Damage or Enforced Removal | 02-03-10 |
| 103.11-06 | 17-06 | Access and Entry | 6-17-06 |
| 103.12-06 | 17.1-06 | Indirect Access and Entry | 6-17-06 |
| 103.13-06 | 17.2-06 | Utility Access | 10-16-08 |
| 103.14-06 | 28.1-06 | Encroachments-Boundaries and Easements | 04-02-12 |
| **103.15-06** | **28.2-06** | **Encroachments-Boundaries and Easements – Described Improvements** | **04-02-13** |
| 104.12-06 | 10-06 | Assignment of Mortgage | (02-03-10) |
| 104.13-06 | 10.1-06 | Assignment and Date Down | (02-03-10) |
| **104.6-06** | **37-06** | **Assignment of Rents or Leases** | **12-03-12** |
| 110.11.1-06 | 11.1-06 | Mortgage Modification with Subordination | 10-22-09 |
| 110.11-06 | 11-06 | Mortgage Modification | 6-17-06 |
| 110.9.1-06 | 8.2-06 | Commercial Environmental Protection Lien | 10-16-08 |
| 110.9-06 | 8.1-06 | Environmental Protection Lien | 6-17-06 |
| 111.14.1-06 | 14.1-06 | Future Advance-Knowledge [See Note for ALTA 14] | (02-03-11) |
| 111.14.2-06 | 14.2-06 | Future Advance-Letter of Credit [See Note for ALTA 14] | (02-03-11) |
| 111.14.3 -06 | 14.3-06 | Future Advance-Reverse Mortgage [See Note for ALTA 14] | (02-03-11) (Tech. Correction 12-3-12) |
| 111.14-06 | 14-06 | Future Advance-Priority [Note: Version A gives ML Coverage: Version B Does Not] | (02-03-11) |
| 111.5-06 | 6-06 | Variable rate | (10-16-08) |
| 111.8-06 | 6.2-06 | Variable Rate - Negative Amortization | (10-16-08) |
| 114.3-06 | 23-06 | Co-Insurance – Single Policy (01-01-08) | 10-16-08 |
| 115.1-06 | 4-06 | Condominium | (02-03-10) |
| 115.2-06 | 5-06 | Planned Unit Development | (02-03-10) |
| 115.3-06 | 4.1-06 | Condominium (for NV & HI not CA) | (10-16-08) |
| 115.4-06 | 5.1-06 | Planned Unit Development (for NV & HI not CA) | (10-16-08) |
| 116.01-06 | 22-06 | Location | 6-17-06 |
| 116.02-06 | 22.1-06 | Location & Map | 6-17-06 |
| 116.1.2-06 | 25.1-06 | Same as Portion of Survey | 10-16-08 |
| 116.1-06 | 25-06 | Same as Survey | 10-16-08 |
| 116.4.1-06 | 19-06 | Contiguity-Multiple Parcels | 6-17-06 |
| 116.4-06 | 19.1-06 | Contiguity-Single Parcel | 6-17-06 |
| 116.5. 1-06 | 7.1-06 | Manufactured Housing Unit-Conversion; Loan | 6-17-06 |
| 116.5. 2-06 | 7.2-06 | Manufactured Housing Unit-Conversion; Owner's | 6-17-06 |
| 116.5-06 | 7-06 | Manufactured Housing Unit | 6-17-06 |
| 116.8-06 | 26-06 | Subdivision | 10-16-08 |
| **117.1-06** | **12.1-06** | **Aggregation – State Limits – Loan** | **04-02-13** |
| **117-06** | **12-06** | **Aggregation - Loan** | **(04-02-13)** |
| 119.5-06 | 13-06 | Leasehold – Owner's | 04-02-12 |
| 119.6-06 | 13.1-06 | Leasehold – Loan | 04-02-12 |
| 123.1-06 | 3-06 | Zoning – Unimproved Land | 6-17-06 |
| 123.2-06 | 3.1-06 | Zoning – Improved Land | (10-22-09) |

© Copyright 1999-2013 Fidelity National Title Group, Inc.  All Rights Reserved.

| 123.3-06 | 3.2-06 | Zoning – Land Under Development (OP or LP) | 04-02-12 (Tech. Correction 12-3-12) |
|---|---|---|---|
| 125-06 | 2-06 | Truth in Lending | 6-17-06 |
| 127.1-06 | 15.1-06 | Non-imputation-Additional Insured [Owner's Policy Only] | 6-17-06 |
| 127.2-06 | 15.2-06 | Non-imputation-Partial Equity Transfer [Owner's Policy Only] | 6-17-06 |
| 127-06 | 15-06 | Non-imputation-Full Equity Transfer [Owner's Policy Only] | 6-17-06 |
| 128-06 | 16-06 | Mezzanine Financing [Owner's Policy Only] | 6-17-06 |
| 129.1-06 | 18.1-06 | Multiple Tax Parcels | 6-17-06 |
| 129-06 | 18-06 | Single Tax Parcel | 6-17-06 |
| 130-06 | 20-06 | First Loss-(Multiple Parcels) Transaction [Loan Policy Only] | 6-17-06 |
| 131-06 | 21-06 | Creditors' Rights (Decertification effective 03-08-10) | 6-17-06 |
| 132-06 | 27-06 | Usury | 10-16-08 |
| 133-06 | 24-06 | Doing Business | 10-16-08 |
| 134.1-06 | 29.1-06 | Interest Rate SWAP-Additional Interest | 02-03-10 |
| 134.2-06 | 29.2-06 | Interest Rate SWAP-Direct Obligation – Defined Amount | 08-01-11 |
| 134.3-06 | 29.3-06 | Interest Rate SWAP-Additional Interest – Defined Amount | 08-01-11 |
| 134-06 | 29-06 | Interest Rate SWAP-Direct Obligation | 02-03-10 |
| 135.1-06 | 30.1-06 | Commercial Participation Interest | 08-01-12 |
| 135-06 | 30-06 | Shared Appreciation Mortgage | 07-26-10 |
| 136-06 | 31-06 | Severable Improvements | 02-03-11 |
| **137.1-06** | **32.1-06** | **Construction Loan – Loss of Priority – Direct Payment** | **(04-02-13)** |
| **137.2-06** | **32.2-06** | **Construction Loan – Loss of Priority – Insured's Direct Payment** | **(04-02-13)** |
| 137-06 | 32-06 | Construction Loan – Loss of Priority | 02-03-11 |
| 138-06 | 33-06 | Disbursement Endorsement | 02-03-11 |
| 139-06 | 34-06 | Identified Risk Coverage | 08-01-11 |
| 140.1-06 | 35.1-06 | Minerals and Other Subsurface Substances-Described Improvements –OP or LP | 04-02-12 |
| 140.2-06 | 35.2-06 | Minerals and Other Subsurface Substances-Improvements- OP or LP_ | 04-02-12 |
| 140.3-06 | 35.3-06 | Minerals and Other Subsurface Substances-Land Under Development-OP or LP | 04-02-12 |
| 140-06 | 35-06 | Minerals and Other Subsurface Substances – Buildings-OP or LP | 04-02-12 |
| 141.1-06 | 36.1-06 | Energy Project-Leasehold/Easement-LP | 04-02-12 |
| 141.2-06 | 36.2-06 | Energy Project-Leasehold-OP | 04-02-12 |
| 141.3-06 | 36.3-06 | Energy Project-Leasehold-LP | 04-02-12 |
| 141.4-06 | 36.4-06 | Energy Project- CC and Rs- Land Under Development-OP | 04-02-12 |
| 141.5-06 | 36.5-06 | Energy Project- CC and Rs- Land Under Development-LP | 04-02-12 |
| 141.6-06 | 36.6-06 | Energy Project-Encroachments- LP or OP | 04-02-12 |
| 141-06 | 36-06 | Energy Project-Leasehold/Easement-OP | 04-02-12 |
| **142-06** | **39-06** | **Policy Authentication** | **04-02-13** |

CLTA to ALTA Endorsement Conversion Chart (Rev. 04-02-13)

Return to Table of Contents

© Copyright 1999-2013 Fidelity National Title Group, Inc.  All Rights Reserved.

*ALTA to CLTA ENDORSEMENT CONVERSION CHART AS OF 04-02-13*

| ALTA | CLTA | Description | Adoption (Rev.) |
|---|---|---|---|
| 1-06 | | Street Assessments | 6-17-06 |
| 2-06 | 125-06 | Truth in Lending | 6-17-06 |
| 3-06 | 123.1-06 | Zoning – Unimproved Land | 6-17-06 |
| 3.1-06 | 123.2-06 | Zoning – Improved Land | (10-22-09) |
| 3.2-06 | 123.3-06 | Zoning – Land Under Development (OP or LP) | 04-02-12 (Tech. Correction 12-3-12) |
| 4-06 | 115.1-06 | Condominium | (02-03-10) |
| 4.1-06 | 115.3-06 | Condominium (for NV & HI not CA) | (10-16-08) |
| 5-06 | 115.2-06 | Planned Unit Development | (02-03-10) |
| 5.1-06 | 115.4-06 | Planned Unit Development (for NV & HI not CA) | (10-16-08) |
| 6-06 | 111.5-06 | Variable rate | (10-16-08) |
| 6.2-06 | 111.8-06 | Variable Rate - Negative Amortization | (10-16-08) |
| 7-06 | 116.5-06 | Manufactured Housing Unit | 6-17-06 |
| 7.1-06 | 116.5. 1-06 | Manufactured Housing Unit-Conversion; Loan | 6-17-06 |
| 7.2-06 | 116.5. 2-06 | Manufactured Housing Unit-Conversion; Owner's | 6-17-06 |
| 8.1-06 | 110.9-06 | Environmental Protection Lien | 6-17-06 |
| 8.2-06 | 110.9.1-06 | Commercial Environmental Protection Lien | 10-16-08 |
| 9-06 | 100.2-06 | Restrictions, Encroachments & Minerals-Loan | (04-02-12) |
| 9.1-06 | 100.9-06 | Covenants, Conditions and Restrictions (Owner's Policy - Unimproved Land) | (04-02-12) |
| 9.2-06 | 100.10-06 | Covenants, Conditions and Restrictions (Owner's Policy - Improved Land) | (04-02-12) |
| 9.3-06 | 100.2.1-06 | Covenants, Conditions and Restrictions-Loan | (04-02-12) |
| 9.4-06 | 100.2.2-06 | Restrictions, Encroachments, Minerals-Future Improvements re Minerals Extraction– OP-Unimproved Land | Withdrawn 04-02-12) |
| 9.5-06 | 100.2.3-06 | Restrictions, Encroachments, Minerals –Future Improvements re Minerals Extraction- OP– Improved Land | (Withdrawn 04-02-12) |
| 9.6-06 | (100.2.6-06) | Private Rights - Loan | 04-02-12 |
| 9.7-06 | (100.2.7-06) | Restrictions, Encroachments, Minerals – Land under Development-Loan | 04-02-12 |
| 9.8-06 | (100.2.8-06) | Covenants, Conditions and Restrictions-Land under Development-Owners | 04-02-12 (Tech. Correction 12-3-12) |
| **9.9-06** | **100.2.9-06** | **Private Rights – Owner's** | **(04-02-13)** |
| **9.10-06** | **100.2.10-06** | **Restrictions, Encroachments, Minerals – Current Violations - Loan** | **(04-02-12)** |
| 10-06 | 104.12-06 | Assignment of Mortgage | (02-03-10) |
| 10.1-06 | 104.13-06 | Assignment and Date Down | (02-03-10) |
| 11-06 | 110.11-06 | Mortgage Modification | 6-17-06 |
| 11.1-06 | 110.11.1-06 | Mortgage Modification with Subordination | 10-22-09 |
| **12-06** | **117-06** | **Aggregation - Loan** | **(04-02-13)** |
| **12.1-06** | **117.1-06** | **Aggregation – State Limits – Loan** | **04-02-13** |
| 13-06 | 119.5-06 | Leasehold – Owner's | 04-02-12 |
| 13.1-06 | 119.6-06 | Leasehold – Loan | 04-02-12 |
| 14-06 | 111.14-06 | Future Advance-Priority [Note: Version A gives ML Coverage: Version B Does Not] | (02-03-11) |
| 14.1-06 | 111.14.1-06 | Future Advance-Knowledge [See Note for ALTA 14] | (02-03-11) |
| 14.2-06 | 111.14.2-06 | Future Advance-Letter of Credit [See Note for ALTA 14] | (02-03-11) |
| 14.3-06 | 111.14.3 -06 | Future Advance-Reverse Mortgage [See Note for ALTA 14] | (02-03-11) (Tech. Correction 12-3-12) |
| 15-06 | 127-06 | Non-imputation-Full Equity Transfer [Owner's Policy Only] | 6-17-06 |
| 15.1-06 | 127.1-06 | Non-imputation-Additional Insured [Owner's Policy Only] | 6-17-06 |
| 15.2-06 | 127.2-06 | Non-imputation-Partial Equity Transfer [Owner's Policy Only] | 6-17-06 |
| 16-06 | 128-06 | Mezzanine Financing [Owner's Policy Only] | 6-17-06 |
| 17-06 | 103.11-06 | Access and Entry | 6-17-06 |
| 17.1-06 | 103.12-06 | Indirect Access and Entry | 6-17-06 |
| 17.2-06 | 103.13-06 | Utility Access | 10-16-08 |
| 18-06 | 129-06 | Single Tax Parcel | 6-17-06 |
| 18.1-06 | 129.1-06 | Multiple Tax Parcels | 6-17-06 |
| 19-06 | 116.4.1-06 | Contiguity-Multiple Parcels | 6-17-06 |
| 19.1-06 | 116.4-06 | Contiguity-Single Parcel | 6-17-06 |
| 20-06 | 130-06 | First Loss-(Multiple Parcels) Transaction [Loan Policy Only] | 6-17-06 |
| 21-06 | 131-06 | Creditors' Rights (Decertification effective 03-08-10) | 6-17-06 |
| 22-06 | 116.01-06 | Location | 6-17-06 |

© Copyright 1999-2013 Fidelity National Title Group, Inc.  All Rights Reserved.

| 22.1-06 | 116.02-06 | Location & Map | 6-17-06 |
|---|---|---|---|
| 23-06 | 114.3-06 | Co-Insurance – Single Policy (01-01-08) | 10-16-08 |
| 24-06 | 133-06 | Doing Business | 10-16-08 |
| 25-06 | 116.1-06 | Same as Survey | 10-16-08 |
| 25.1-06 | 116.1.2-06 | Same as Portion of Survey | 10-16-08 |
| 26-06 | 116.8-06 | Subdivision | 10-16-08 |
| 27-06 | 132-06 | Usury | 10-16-08 |
| 28-06 | 103.1-06 | Easement – Damage or Enforced Removal | 02-03-10 |
| 28.1-06 | 103.14-06 | Encroachments-Boundaries and Easements | 04-02-12 |
| **28.2-06** | **103.15-06** | **Encroachments-Boundaries and Easements – Described Improvements** | **04-02-13** |
| 29-06 | 134-06 | Interest Rate SWAP-Direct Obligation | 02-03-10 |
| 29.1-06 | 134.1-06 | Interest Rate SWAP-Additional Interest | 02-03-10 |
| 29.2-06 | 134.2-06 | Interest Rate SWAP-Direct Obligation – Defined Amount | 08-01-11 |
| 29.3-06 | 134.3-06 | Interest Rate SWAP-Additional Interest – Defined Amount | 08-01-11 |
| 30-06 | 135-06 | Shared Appreciation Mortgage | 07-26-10 |
| 30.1-06 | 135.1-06 | Commercial Participation Interest | 08-01-12 |
| 31-06 | 136-06 | Severable Improvements | 02-03-11 |
| 32-06 | 137-06 | Construction Loan – Loss of Priority | 02-03-11 |
| **32.1-06** | **137.1-06** | **Construction Loan – Loss of Priority – Direct Payment** | **(04-02-13)** |
| **32.2-06** | **137.2-06** | **Construction Loan – Loss of Priority – Insured's Direct Payment** | **(04-02-13)** |
| 33-06 | 138-06 | Disbursement Endorsement | 02-03-11 |
| 34-06 | 139-06 | Identified Risk Coverage | 08-01-11 |
| 35-06 | 140-06 | Minerals and Other Subsurface Substances – Buildings-OP or LP | 04-02-12 |
| 35.1-06 | 140.1-06 | Minerals and Other Subsurface Substances-Described Improvements –OP or LP | 04-02-12 |
| 35.2-06 | 140.2-06 | Minerals and Other Subsurface Substances-Improvements- OP or LP_ | 04-02-12 |
| 35.3-06 | 140.3-06 | Minerals and Other Subsurface Substances-Land Under Development-OP or LP | 04-02-12 |
| 36-06 | 141-06 | Energy Project-Leasehold/Easement-OP | 04-02-12 |
| 36.1-06 | 141.1-06 | Energy Project-Leasehold/Easement-LP | 04-02-12 |
| 36.2-06 | 141.2-06 | Energy Project-Leasehold-OP | 04-02-12 |
| 36.3-06 | 141.3-06 | Energy Project-Leasehold-LP | 04-02-12 |
| 36.4-06 | 141.4-06 | Energy Project- CC and Rs- Land Under Development-OP | 04-02-12 |
| 36.5-06 | 141.5-06 | Energy Project- CC and Rs- Land Under Development-LP | 04-02-12 |
| 36.6-06 | 141.6-06 | Energy Project-Encroachments- LP or OP | 04-02-12 |
| **37-06** | **104.6-06** | **Assignment of Rents or Leases** | **12-03-12** |
| **38-06** | | **Mortgage Tax** | **12-03-12** |
| **39-06** | **142-06** | **Policy Authentication** | **04-02-13** |

ALTA to CLTA Endorsement Conversion Chart (Rev. 04-02-13)
Prepared by Paul Flores

Return to Table of Contents

© Copyright 1999-2013 Fidelity National Title Group, Inc.  All Rights Reserved.

**Return to Table of Contents**

**STREET ASSESSMENTS**

**ALTA ENDORSEMENT - FORM 1-06**

**PURPOSE**

The repair and maintenance of public streets is either contracted for by a governmental body or done directly by government employees.  The property owners adjoining the streets or in the generally benefited area are usually assessed the costs of the work on some basis.  The governmental body is almost universally given a lien to secure the payment of this assessment.

This endorsement is concerned with the priority of that lien if the improvements are either in process or completed at the Date of Policy.  If this lien is prior to the lien of the Insured Mortgage and the assessments are not paid by the borrower, the lender will have to pay them in order to stop a tax foreclosure.  This endorsement covers the loss or damage which the lender may sustain by having to pay the assessments which have gained priority over the Insured Mortgage. Whether the assessment lien has priority at the Date of Policy or gains that priority later is immaterial.  This endorsement covers the lender in either event.

**SECTION OF THE POLICY AMENDED BY ENDORSEMENT**

This endorsement is incorporated into the terms of the ALTA Loan Policy in use in some states, particularly in the West.  Those policies contain the note that they include "ALTA Form 1 Coverage."  The instructions set out below should be followed when issuing such a policy form or the Form 1-06 endorsement.

**BASIS FOR PROVIDING COVERAGE**

This endorsement may be issued to all ALTA Loan Policies under the following circumstances:

1.      Access to the Land is by a private easement and the land or easement does not adjoin a public street or generally benefited area.

2.      At Date of Policy, there are no street improvements under construction or recently completed which could generate a later assessment lien.

3.      The Insured Mortgage is recorded prior to the commencement of work on new subdivision streets or other streets adjoining the Land or in the generally benefited area.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

4.      All street improvements are currently complete and you have determined that the assessments for them have been fully paid.

5.      The lien securing the street assessments attaches to the title to the Land after the Insured Mortgage is recorded and does not relate back to a prior point in time.  While this is a possibility, it is very unlikely.  The law usually gives governmental units assessment liens the same priority as real estate tax liens.  Therefore, before proceeding on this basis, you must obtain the approval of the Company's underwriting adviser.

You must obtain the approval of the Company's underwriting adviser to issue this endorsement on any basis other than as specified above.

**MODIFICATION**

In the event that modification of an endorsement is requested, it is necessary to consider your state regulatory requirements for filing and approval of forms.  If the endorsement is modified, the endorsement is not an ALTA form and should not reference ALTA in the title.  You must obtain the approval of the Company's underwriting adviser before complying with any request for a modification.

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**ENDORSEMENT**

<div align="center">

Attached to Policy No._____

Issued by

[FNTG BRAND]

</div>

The Company insures against loss or damage sustained by the Insured by reason of the lack of priority of the lien of the Insured Mortgage over the lien of any assessments for street improvements under construction or completed at Date of Policy.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness Clause Optional]

DATED:

[FNTG BRAND]

BY: _____

        AUTHORIZED SIGNATORY

ALTA Endorsement Form 1-06
(Street Assessments) (6/17/06)
© American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 2**

**Return to Table of Contents**

**TRUTH IN LENDING**
**ALTA ENDORSEMENT - FORM 2-06**


**PURPOSE**

This endorsement is for loan policies only.  It provides insurance against some losses the Insured may suffer if the borrower exercises a right of rescission under Regulation Z of the Federal Truth in Lending Act.  To be covered, the loss would have to come from a termination of the mortgage lien or the voiding of the Title of a mortgagee who acquired it in a proper foreclosure or workout.


**SECTION OF THE POLICY AMENDED BY ENDORSEMENT**

This endorsement amends Exclusions from Coverage No. 5 of the ALTA Loan Policy.  This section eliminates the policy coverage for enforceability of the Insured Mortgage if enforceability is denied because of usury, or violation of any consumer credit protection or truth-in-lending law.


**BASIS FOR PROVIDING COVERAGE**

**This endorsement is not to be issued on the basis of the lender's compliance with Regulation Z.**  It is to be issued only if the transaction is <u>not covered</u> by the regulation.  For our purposes, this includes only transactions in which:

The borrower is a corporation, partnership or governmental unit; or

The loan is for **non-agricultural** business or commercial purposes.

**CAUTION**:  LOANS SECURED BY OWNER OCCUPIED SINGLE FAMILY DWELLINGS CAN NEVER BE CONSIDERED LOANS FOR COMMERCIAL PURPOSES.

You must obtain the authority of the Company's underwriting adviser before honoring any request to issue this endorsement in any case not specified above.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 2**

**MODIFICATION**

In the event that modification of an endorsement is requested, it is necessary to consider your state regulatory requirements for filing and approval of forms.  If the endorsement is modified, the endorsement is not an ALTA form and should not reference that in the title.  You must obtain the approval of the Company's underwriting adviser before complying with any request for a modification.

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**ENDORSEMENT**
Attached to Policy No._____
Issued by
[FNTG BRAND]

The Company insures against loss or damage sustained by the Insured by reason of:

any final judgment of a court of competent jurisdiction that either the lien of the Insured Mortgage has been terminated or the Title of an Insured, who has acquired all or any part of the Land by foreclosure, trustee's sale, conveyance in lieu of foreclosure, or other legal manner, which discharges the lien of the Insured Mortgage, has been defeated by a valid exercise of the right of rescission conferred by the Federal Truth-in-Lending Act and that the right or rights of rescission existed because neither the credit transaction evidenced by the Insured Mortgage nor the right of rescission was exempted or excepted by the provisions of Regulation Z (12 CFR 226).

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness Optional]

DATED:

[FNTG BRAND]

BY: _____
        AUTHORIZED SIGNATORY

ALTA Endorsement Form 2-06
(Truth in Lending) (6/17/06)
© American Land Title Association.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

Return to Table of Contents

## ZONING
## ALTA ENDORSEMENT - FORMS 3-06, 3.1-06 and 3.2-06

**CAUTION:**    ZONING INSURANCE CONSTITUTES AN EXTRA HAZARDOUS RISK. THEREFORE, NO ZONING ENDORSEMENT IS TO BE ISSUED WITHOUT THE EXPRESS AUTHORIZATION OF THE COMPANY'S UNDERWRITING ADVISER.

## PURPOSE

These forms carefully select certain zoning issues for coverage.  They do not provide unlimited zoning insurance.

### ALTA Endorsement Form 3-06 (Zoning-Unimproved Land)

This endorsement provides insurance with respect to the zoning classification covering the Land and the uses permitted on the Land in that zone.  It also insures against loss if any of those uses are prohibited by a court order that invalidates the zoning ordinance.  However, it does not insure against losses suffered because the Land can't be sold or mortgaged due to any zoning problem. This endorsement is appropriate for both vacant and improved land.

### ALTA Endorsement 3.1-06 (Zoning-Completed Structure)

This endorsement provides the same coverage as Endorsement Form 3-06, above, and is subject to the same limitations.  It also insures against losses from court orders which:

> Prohibit use of the Land for specified purposes allowed by the zoning because certain physical characteristics of the Land violate the ordinance; and

> Require removal or modification of the structure located on the Land due to these violations.

This endorsement is issued for policies covering improved property.

### ALTA Endorsement 3.2-06 (Zoning – Land Under Development)

This endorsement became effective on April 2, 2012 and extends the coverage available in the Endorsement Form 3.1-06. That coverage, previously only available for Land which contained

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

existing improvements, can now be given for Land on which proposed buildings are to be built or constructed, if the proposed building is built or constructed according to site and elevation plans identified therein.

This endorsement is issued for policies covering property upon which improvements are to be built or constructed. *[a technical correction to the language was made by ALTA 12-3-2012]*

## SECTION OF THE POLICY AMENDED BY THE ENDORSEMENT

These endorsements amend Exclusions from Coverage No. 1 (a) of the ALTA Owner's and Loan Policies.  Use with other policy versions must be approved by your Company's underwriting advisor.

## BASIS FOR PROVIDING COVERAGE

**CAUTION:**  A CERTIFICATE FROM A ZONING OR PLANNING AUTHORITY OR A LETTER FROM A MUNICIPALITY, A SO-CALLED MUNI-LETTER, IS **NOT** A SUFFICIENT BASIS FOR ANY DETERMINATION TO BE MADE BELOW.  THESE LETTERS DO NOT ESTOP THE AUTHORITY OR MUNICIPALITY IF THEY ARE INCORRECT.  FURTHERMORE, THEY DO NOT COVER CONSTITUTIONALITY CONCERNS OR SPOT ZONING PROBLEMS.

1.      We must determine the zone designation in which the Land lies from the **most recent, official** zoning maps.

        All of the endorsements require this designation to be inserted in the space provided at paragraph No. 1(a) [for Forms 3-06 and 3.1-o6] or 2(a) [for Form 3.2-06].

        The Land must fall clearly within the boundaries of the zone designation.  If the scale of the maps is too small, or the maps are too unclear to make this determination accurately, you must be able to determine it by the legal description in the ordinance or resolution, if it contains such a description.  Otherwise, we will not provide the insurance.

2.      We must be satisfied that the zoning ordinance or resolution is valid before these endorsements may be issued.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

This requirement can be satisfied by an attorney's opinion from an attorney **skilled in zoning matters.**  This opinion must meet the following requirements:

a.    It must either be written to us or the attorney must give us a letter authorizing us to rely on it for the purposes of our zoning insurance.

b.    It must cover at least the following matters:

The constitutionality of the zoning ordinance or resolution under the federal and state constitutions.

The compliance with all state laws in the process of the adoption of the ordinance or resolution with respect to the land being insured.

This includes, but is not limited to, an analysis of the following matters: (1) The propriety of notices for the hearing on the zoning change; (2) the compliance of the hearing with state "open meeting" or "sunshine" laws; (3) the presence of a quorum of the necessary officials; (4) the approval of the necessary majority of officials at that meeting; (5) the approval of any other officials or public bodies which may be necessary; (6) the recordation or filing of the ordinances with the county recorder or other body, if necessary; and (7) the expiration of all periods of appeal without appeal being taken.

c.    It must also address the susceptibility of the ordinance to attack because it constitutes spot zoning, contract zoning, or zoning which violates some public policy, such as zoning excluding the elderly.

Frequently, the Company's underwriting advisor will undertake to determine these matters.  If this is the case, no separate attorney's opinion will be required.  You should check with the underwriting adviser on this issue prior to requiring an attorney's opinion. In special situations such as newly enacted zoning, newly annexed property and in certain areas such as Washington, D.C., (and other areas of the Northeast) an opinion letter may still be necessary.  Some areas have zoning that is extremely complex, requiring special expertise.

3.    We must determine the likelihood of an attack on the zoning we are asked to insure.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

This requires an assessment of the compatibility of the uses permitted under the ordinance or resolution with the use being made of the surrounding land.  Therefore, we must be informed by a reliable source of the public sentiment concerning the project. The number of persons objecting at the hearing to the imposition of the zoning, who they represented and the nature of their complaints are some indications of public sentiment. This factor is more critical in the case of newly changed zoning than where the zoning has been long standing.

4.      We must determine the uses permitted as a matter of right in the zone from the **most recent, official** zoning ordinances or resolutions.

If we issue Endorsement Form 3-06 or 3.1-06, these uses will be inserted in the space provided at the end of paragraph no. 1b of the forms.  If we issue Endorsement Form 3.2-06, these uses will be inserted in the space provided at the end of paragraph no. 2b of the form. When the uses are inserted, they must be inserted **exactly in the form in which they are set forth in the ordinance or resolution.**

Interpretation of the designated uses can be extremely dangerous.  For example, if the ordinance allows the use of the Land for "shopping centers," and the customer intends to build a department store on the property, you are not to insert "department stores" into the endorsement, but rather use the words "shopping centers" contained in the ordinance.

Requests for coverage of **conditional uses** must be approved by the Company's underwriting adviser on a case by case basis and require adjustment of the language of the endorsements.

5.      If the Endorsement Form 3.1-06 is requested, the following additional requirements must be met:

An analysis of the zoning ordinance or resolution, and of the site and elevation plans identified in paragraph 1b, to determine any restrictions, with respect to the following matters:

- Area, width or depth of the Land as a building site for the structure constructed on it.
- Floor space area of the structures on the Land.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

- Setback requirements for the structures on the Land.
- Height of the structures on the Land.
- Number of parking spaces striped.

If the ordinance or resolution contains any or all such restrictions, then we will require a current accurate survey from a reputable surveyor which includes the representation of any such matter in order to evaluate compliance with the restrictions.

It is not possible to say categorically just what the survey must contain. For example, whether the Land contains sufficient area for the Improvements may depend upon more than just its area and the floor space of the building. Among other issues, parking, open space and landscaping requirements may also have to be considered.

6. If the Endorsement Form 3.2-06 is requested, the following additional requirements must be met:

An analysis of the zoning ordinance or resolution, and of the site and elevation plans identified in paragraph 1b, to determine any restrictions, with respect to the following matters:

- Area, width or depth of the Land as a building site for the Improvements to be built or constructed on it.
- Floor space area of the proposed Improvements on the Land.
- Setback requirements for the proposed Improvements on the Land.
- Height of the proposed Improvements on the Land.
- Number of parking spaces to be striped.

If the ordinance or resolution contains any or all such restrictions, then we will require the site and elevation plans identified in paragraph 1 (b) which must contain the same elements as those in a current, accurate survey, in order to evaluate compliance with the restrictions.

It is not possible to say categorically just what the Plans must contain. For example, whether the Land contains sufficient area for the proposed Improvements may depend upon more than just its area and the floor space of the building. Among other issues, parking, open space and landscaping requirements may also have to be considered.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 3**

Occasionally, you may receive requests to cover matters in addition to those above.  Requests to cover compliance with parking "requirements" are common, but not acceptable. We can count the number of spaces, but we do not want to analyze whether the spaces themselves are proper dimensions or include sufficient handicap spots.  Coverage requests for conditional uses and non-conforming uses are also frequent, but, as mentioned before, the language of the endorsements must be changed to accommodate those issues.  Before responding to such a request, you should contact the Company's underwriting advisor.

<div align="center">

**MODIFICATION**

</div>

In the event that modification of an endorsement is requested, it is necessary to consider your state regulatory requirements for filing and approval of forms. If the endorsement is modified, the endorsement may not be considered an ALTA form and should not reference ALTA in the title. You must obtain the approval of the Company's underwriting advisor before complying with any request for a modification.

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**ENDORSEMENT**

Attached to Policy No._____
Issued by
[FNTG BRAND]

1.      The Company insures against loss or damage sustained by the Insured in the event that, at Date of Policy,

      a.      According to applicable zoning ordinances and amendments, the Land is not classified Zone *[FILL IN];*

      b.      The following use or uses are not allowed under that classification:

      *[FILL IN]*

2.      There shall be no liability under this endorsement based on

      a.      Lack of compliance with any conditions, restrictions, or requirements contained in the zoning ordinances and amendments, including but not limited to the failure to secure necessary consents or authorizations as a prerequisite to the use or uses.  This paragraph 2.a. does not modify or limit the coverage provided in Covered Risk 5.

      b.      The invalidity of the zoning ordinances and amendments until after a final decree of a court of competent jurisdiction adjudicating the invalidity, the effect of which is to prohibit the use or uses.

      c.      The refusal of any person to purchase, lease or lend money on the estate or interest covered by this policy.

This endorsement is issued as part of the policy.  Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy or (iv) increase the Amount of Insurance.  To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls.  Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements to it.

[Witness Optional]

DATED:

[FNTG BRAND]

BY: _____
      AUTHORIZED SIGNATORY

ALTA Endorsement Form 3-06
(Zoning – Unimproved Land) (6/17/06)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**ENDORSEMENT**
Attached to Policy No._____
Issued by
[FNTG BRAND]

1.   The Company insures against loss or damage sustained by the Insured in the event that, at Date of Policy,

    a.    according to applicable zoning ordinances and amendments, the Land is not classified Zone FILL IN;

    b.    the following use or uses are not allowed under that classification: FILL IN

    c.    There shall be no liability under paragraph 1.b. if the use or uses are not allowed as the result of any lack of compliance with any conditions, restrictions, or requirements contained in the zoning ordinances and amendments, including but not limited to the failure to secure necessary consents or authorizations as a prerequisite to the use or uses.  This paragraph 1.c. does not modify or limit the coverage provided in Covered Risk 5.

2.   The Company further insures against loss or damage sustained by the Insured by reason of a final decree of a court of competent jurisdiction either prohibiting the use of the Land, with any existing structure, as specified in paragraph 1.b. or requiring the removal or alteration of the structure, because, at Date of Policy, the zoning ordinances and amendments have been violated with respect to any of the following matters:

    a.    Area, width, or depth of the Land as a building site for the structure
    b.    Floor space area of the structure
    c.    Setback of the structure from the property lines of the Land
    d.    Height of the structure, or
    e.    Number of parking spaces.

3.   There shall be no liability under this endorsement based on:

    a.    the invalidity of the zoning ordinances and amendments until after a final decree of a court of competent jurisdiction adjudicating the invalidity, the effect of which is to prohibit the use or uses;

    b.    the refusal of any person to purchase, lease or lend money on the Title covered by this policy.

This endorsement is issued as part of the policy.  Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy or (iv) increase the Amount of Insurance.  To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls.  Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements to it.
[Witness Optional]

DATED:
[FNTG BRAND]
BY: _____
       AUTHORIZED SIGNATORY

ALTA Endorsement Form 3.1-06
(Zoning-Completed Structure) (rev. 10/22/09)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**ENDORSEMENT**

**Attached to Policy No. _____**

**Issued by**

***[FNTG BRAND]***

1. For purposes of this endorsement:
   a. "Improvement" means a building, structure, road, walkway, driveway, curb, subsurface utility or water well existing at Date of Policy or to be built or constructed according to the Plans that is or will be located on the Land, but excluding crops, landscaping, lawns, shrubbery, or trees.

   b. "Plans" means those site and elevation plans made by [*name of architect or engineer*] dated ____, last revised _____, designated as [*name of project*] consisting of ___sheets.

2. The Company insures against loss or damage sustained by the Insured in the event that, at Date of Policy
   a. according to applicable zoning ordinances and amendments, the Land is not classified Zone _____;

   b. the following use or uses are not allowed under that classification:

   c. There shall be no liability under paragraph 2.b. if the use or uses are not allowed as the result of any lack of compliance with any condition, restriction, or requirement contained in the zoning ordinances and amendments, including but not limited to the failure to secure necessary consents or authorizations as a prerequisite to the use or uses. This paragraph 2.c. does not modify or limit the coverage provided in Covered Risk 5.

3. The Company further insures against loss or damage sustained by the Insured by reason of a final decree of a court of competent jurisdiction either prohibiting the use of the Land, with any existing Improvement, as specified in paragraph 2.b. or requiring the removal or alteration of the Improvement, because of a violation of the zoning ordinances and amendments in effect at Date of Policy with respect to any of the following matters:
   a.          Area, width, or depth of the Land as a building site for the Improvement

   b.          Floor space area of the Improvement

   c.          Setback of the Improvement from the property lines of the Land

   d.          Height of the Improvement, or

   e.          Number of parking spaces.

4. There shall be no liability under this endorsement based on:
   a. the invalidity of the zoning ordinances and amendments until after a final decree of a court of competent jurisdiction adjudicating the invalidity, the effect of which is to prohibit the use or uses;

   b. the refusal of any person to purchase, lease or lend money on the Title covered by this policy.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

**[FNTG BRAND]**

**By: _____**

          **Authorized Signatory**

ALTA Endorsement Form 3.2-06
(Zoning-Land Under Development) (4/2/12)
©American Land Title Association

*[includes technical correction of 12-3-12]*

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 4**

**Return to Table of Contents**

**CONDOMINIUM**

**ALTA ENDORSEMENT FORMS 4-06 and 4.1-06**

**PURPOSE**

These endorsements provide affirmative insurance to mortgage lenders loaning on the security of condominium units. There are seven matters selected for insurance in these endorsements. Some of them would be covered by the policy without these endorsements but they are stated anyway to facilitate the sale of mortgage loans in the secondary market. The ALTA 4.1-06 differs from the ALTA 4-06 only in that there is no insurance of priority over future assessments in paragraph 4 of the endorsement. Thus, the 4.1-06 is appropriate for use in states where insured second mortgages do not have priority, or where first mortgages are primed by certain assessments. The ALTA 4.1-06 is also the appropriate form to be used with an Owners Policy.

This endorsement is designed to be issued **only** after considering the relevant aspects of the condominium project in which the unit exists. If the requirements presented below cannot be met, you must either decline to issue this endorsement or offer to issue a modified version deleting one or more insuring clauses.

**SECTION OF THE POLICY AMENDED BY ENDORSEMENT**

No specific section of the policy is amended by these endorsements; however additional affirmative coverages are added.

**BASIS FOR PROVIDING COVERAGE**

Insuring Paragraph Nos. 1 and 2 insure against loss if the unit is not part of a condominium regime or if Title to the unit is affected by any failure of the condominium documents to comply with applicable statutes.

**First**, the project must comply with all requirements of the condominium statutes in the state where it is located, including meeting all statutory requirements for form and content for the declaration, plat and any other required instruments or processes.

**Second**, the insured unit must be properly identified in the declaration and on the plat or map so as to be included within the project.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

<u>Insuring Paragraph No. 3</u> insures against loss from the violation of covenants or restrictions contained in the condominium documents or the existence of rights of reverter or powers of termination in those documents.

**First**, the condominium declaration must not contain any provisions for the reversion of Title due to violation of the covenants contained in it.  Similarly, no power of termination must exist. To determine this, you must be sure that all of the restraints against use of the premises are in the form of covenants rather than conditions.   A declaration violates this requirement if it contains any statement that the unit is owned "on the condition that" certain acts not occur. Similarly, provisions that the unit may be owned "as long as" certain conditions exist or certain events do not occur should be viewed as violating this requirement.

**Second**, you must determine that there are no existing violations of covenants by the unit owner which affect the unit, the common elements, or any other physical improvements which are subject to the declaration.  A lender acquiring the unit in a foreclosure will suffer a loss if it has to spend money correcting these problems. Examples would be the removal of walls within the unit contrary to the provisions of the declaration, and the unauthorized modification of balconies which constitute limited common elements.  You are authorized to rely on an affidavit from the unit owner that no such unauthorized modifications exist where you are issuing the endorsement to a loan policy on **a residential condominium unit.**  You should consult with the Company's underwriting adviser where a commercial condominium is involved.

<u>Insuring Paragraph No. 4</u> is where the two endorsements differ. In many states a properly imposed HOA assessment can have super lien priority, which means that it might be treated like the lien for taxes, and have priority over subsequently filed mortgages, or it might be inchoate or "hidden" like a mechanic's or construction lien and the priority of the assessment could date back to the passing of a resolution by the board approving work to be done or an assessment to be imposed, even though the contracts or actual assessments come later.

The ALTA 4-06 insures against loss if the assessment liens of the condominium association have priority over the lien of the Insured Mortgage. **In order to provide this coverage the declaration or state law must provide that the lien of the mortgage to be insured is prior to the lien for unpaid condominium assessments.**  In most cases the declaration or state law will provide that only a **first** mortgage lender's lien is superior to the association's lien for charges assessed after the recording of the mortgage or deed of trust. In such cases, a second or lower priority lender would not be protected from assessment liens, and the 4-06 could not

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

be given. In those situations you would need to issue the 4.1-06, which merely insures there are no liens *due and unpaid* on Date of Policy. The 4.1-06 is also the endorsement form to be used with an Owner's Policy.

To issue the ALTA 4.1-06, you must determine that all charges or assessments provided for in the condominium statutes and condominium documents, which are due, have been paid.  If there is a ground lease or recreation lease which the unit owner or association is obligated to pay, you must determine that all charges are current.

Insuring Paragraph No. 5 insures against loss if the condominium unit is not a separate parcel from all other units for real estate tax purposes.  If it is not a separate parcel, the payment of taxes which would otherwise discharge the tax lien on the unit and its share of the common elements each year will not do so.  An ensuing tax foreclosure would require payment of the taxes on the entire project in order to prevent the owner from losing title to the unit and the lender from losing its mortgage lien.  Moreover, the lender's ownership of the unit upon a foreclosure would leave the lender with the recurring problem of making payment of taxes due on the entire project in order to keep its unit.

**First**, the law of the state in which the condominium is located **must** provide for the separate taxation of all condominium units.  This is the usual case.  However, if the law does not so provide, then paragraph 5 must be deleted.

**Second**, you must determine that the local tax assessor is, in fact, assessing each unit in the condominium project as a separate tax parcel.

Insuring Paragraph No. 6 insures against loss because of both currently existing encroachments and those which may be unintentionally created in the future.  The problem of present encroachments results from the construction of the improvements after the filing of the declaration. If the structures are not built exactly in the places shown on the map, there can be an encroachment of common elements into the space provided for airspace units, and vice versa.  The conventional sort of encroachment of improvements over easements or over the property line can also result.

The future encroachment problem would result from the rebuilding of the condominium project after a fire or other casualty.  If the new structures are not built precisely where the map shows they should be, an encroachment into the airspace of one or more unit owners can result.  The units might also encroach into areas provided for common elements.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

The declaration must provide an easement for any projection of units onto common elements, or common elements into units.  This provision must be effective for both present problems and those which may arise in the future from rebuilding, expansion or alteration.

As to the ordinary kinds of encroachments noted above, you must have an adequate survey or inspection which shows no such problems exist.  If they do, you should modify the coverage of the endorsement so as to take exception to them.  One way to do this would be to raise exceptions for these matters in Schedule B, Part I of the policy and note on the endorsement that this paragraph is subject to those exceptions.

Insuring Paragraph No. 7 covers the right of first refusal which is often contained in condominium projects.  If the right is properly exercised, it may defeat the Title of a borrower who had not procured a waiver or relinquishment.  This, in turn, might extinguish the lien of the Insured Mortgage.

There must either be **no provision** in any of the condominium documents for a right of first refusal or you must require and receive a **proper waiver or relinquishment** of it before insuring the transaction.  If a waiver or relinquishment is involved, you must be sure it comes from the proper party or parties.  The waiver by the condominium association should not be relied on to accomplish a waiver by the unit owners, if the right runs in their favor.

**MODIFICATION**

In the event that modification of an endorsement is requested, it is necessary to consider your state regulatory requirements for filing and approval of forms. If the endorsement is modified, the endorsement is not an ALTA form and should not reference ALTA in the title.  You must obtain the approval of the Company's underwriting adviser before complying with any request for a modification.

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 4**

**ENDORSEMENT**

Attached to Policy No. _____

**Issued By**
**[FNTG BRAND]**

The Company insures against loss or damage sustained by the Insured by reason of:

1.      The failure of the unit identified in Schedule A and its common elements to be part of a condominium within the meaning of the condominium statutes of the jurisdiction in which the unit and its common elements are located.

2.      The failure of the documents required by the condominium statutes to comply with the requirements of the statutes to the extent that such failure affects the Title to the unit and its common elements.

3.      Present violations of any restrictive covenants that restrict the use of the unit and its common elements and that are contained in the condominium documents or the forfeiture or reversion of Title by reason of any provision contained in the restrictive covenants. As used in this paragraph 3, the words "restrictive covenants" do not refer to or include any covenant, condition, or restriction (a) relating to obligations of any type to perform maintenance, repair, or remediation on the Land, or (b) pertaining to environmental protection of any kind or nature, including hazardous or toxic matters, conditions, or substances, except to the extent that a notice of a violation or alleged violation affecting the Land has been recorded in the Public Records at Date of Policy and is not excepted in Schedule B.

4.      The priority of any lien for charges and assessments provided for in the condominium statutes and condominium documents at Date of Policy over the lien of any Insured Mortgage identified in Schedule A.

5.      The failure of the unit and its common elements to be entitled by law to be assessed for real property taxes as a separate parcel.

6.      Any obligation to remove any improvements that exist at Date of Policy because of any present encroachments or because of any future unintentional encroachment of the common elements upon any unit or of any unit upon the common elements or another unit.

7.      The failure of the Title by reason of a right of first refusal to purchase the unit and its common elements that was exercised or could have been exercised at Date of Policy.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]
[FNTG BRAND]

BY: _____

ALTA Endorsement Form 4-06
(Condominium) (Rev. 02/03/10)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**ENDORSEMENT**
Attached to Policy No. _____

**Issued By**
**[FNTG BRAND]**

The Company insures against loss or damage sustained by the Insured by reason of:

1.      The failure of the unit identified in Schedule A and its common elements to be part of a condominium within the meaning of the condominium statutes of the jurisdiction in which the unit and its common elements are located.

2.      The failure of the documents required by the condominium statutes to comply with the requirements of the statutes to the extent that such failure affects the Title to the unit and its common elements.

3.      Present violations of any restrictive covenants that restrict the use of the unit and its common elements and that are contained in the condominium documents or the forfeiture or reversion of Title by reason of any provision contained in the restrictive covenants.  As used in this paragraph 3, the words "restrictive covenants" do not refer to or include any covenant, condition, or restriction (a) relating to obligations of any type to perform maintenance, repair, or remediation on the Land, or (b) pertaining to environmental protection of any kind or nature, including hazardous or toxic matters, conditions, or substances, except to the extent that a notice of a violation or alleged violation affecting the Land has been recorded in the Public Records at Date of Policy and is not excepted in Schedule B.

4.      Any charges or assessments provided for in the condominium statutes and condominium documents due and unpaid at Date of Policy.

5.      The failure of the unit and its common elements to be entitled by law to be assessed for real property taxes as a separate parcel.

6.      Any obligation to remove any improvements that exist at Date of Policy because of any present encroachments or because of any future unintentional encroachment of the common elements upon any unit or of any unit upon the common elements or another unit.

7.      The failure of the Title by reason of a right of first refusal to purchase the unit and its common elements which was exercised or could have been exercised at Date of Policy.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]
[FNTG BRAND]

BY: _____

ALTA Endorsement Form 4.1-06
(Condominium) (Rev. 10/16/08)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL - Fidelity National Title Group, Inc.                    SECTION 5

**Return to Table of Contents**

**PLANNED UNIT DEVELOPMENT**

**ALTA ENDORSEMENT FORMS 5-06 and 5.1-06**

**PURPOSE**

These endorsements provide affirmative coverage for lenders loaning on the security of units in a Planned Unit Development, or PUD. While designed for policies on individual residences in PUDs, they can be used in any situation where a homeowners association agreement or other type of master agreement is recorded. Affirmative coverage is provided against loss caused by violation of restrictions or by the existence of certain kinds of restrictions. In addition, both cover loss from enforced removal of buildings by reason of encroachments and from failure of Title caused by the exercise of any right of first refusal. The ALTA 5-06 insures against loss from lack of priority of the mortgage lien over the lien for homeowners' association assessments. The ALTA 5.1-06 differs in that there is no insurance of priority over future assessments in Paragraph 2 of the 5.1-06; instead it only covers unpaid assessments at date of policy. In that regard, the 5.1-06 is appropriate for use where the agreement or applicable law do not allow insurance of priority of the Insured Mortgage. The ALTA 5.1-06 is also the appropriate form for use with an Owners Policy.

**SECTION OF THE POLICY AMENDED BY ENDORSEMENT**

The provisions of these endorsements expand coverage of the policies as described below. The coverages do overlap coverages afforded in the CLTA 100 and ALTA Endorsement Series 9.

**BASIS FOR PROVIDING COVERAGE**

Insuring Clause No. 1 provides coverage against loss resulting from violation of restrictive covenants affecting the Land.  It also covers the lender against loss because covenants exist which would cause a forfeiture of the Title if violated.  **This latter coverage is effective whether or not the violation occurs.**  It is designed to cover losses by the lender if the loan cannot be sold due to the existence of such a covenant.

The coverage of this clause may be given only where one or more of the following circumstances exist:

1.       No covenant, condition or restriction appears in your title examination; **or**

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

2.      Any covenant or restriction which does appear does not contain any provision for reversion of Title or any power to terminate the Title upon violation;

**and** one or more of the following circumstances exists:

a.      None of the covenants or restrictions are enforceable under state or federal laws. **CAUTION: Extra-Hazardous Risk** is involved and you **must receive the approval of the Company's underwriting adviser** to use this as the basis of issuance **in any case other than covenants, conditions or restrictions based on race, color, religion, sex, handicap, familial status, or national origin.**

b.      The covenants and restrictions provide that the kind of mortgage lien you are insuring is protected against the effect of any violation.  NOTE:  MOST OFTEN, ONLY FIRST MORTGAGE LIENS ARE PROTECTED.

c.      The covenants or restrictions relate only to physical characteristics of the property or improvements on it and you have an adequate **current** survey or inspection which discloses there are no violations.

IF YOU FIND ANY **CONDITIONS** IN YOUR EXAMINATION OF TITLE, YOU MUST NOT ISSUE THIS ENDORSEMENT unless the condition is based upon race, color, religion, sex, handicap, familial status, or national origin, since   conditions based on these characteristics are not enforceable under state and  federal law.

Statements to the effect that the property is owned "on the condition that" certain things not occur or "as long as" a certain state of facts exist create conditions on the ownership of the Land. Though not commonly found in planned developments, they are **extremely dangerous** because of their effect on title.  If you are in doubt as to the existence of a **condition**, contact the Company's underwriting adviser.

Insuring Clause No. 2 is where the two endorsements differ.

The ALTA 5-06 provides coverage for the priority of the lien of the Insured Mortgage over the lien of assessments by a homeowner's association.  This would not be covered by the policy without an endorsement because the policy should have an exception in Schedule B for the covenants or restrictions which create the lien for these assessments.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

This coverage may be given only if state law or the covenants and restrictions, which provide for the lien for assessments, also provide that the lien of the mortgage you are insuring is prior to the assessment lien. The usual provision is that a first mortgage lender's lien is superior to the association's lien for charges assessed after the recording of the mortgage or deed of trust. Such a provision would not protect a second or lower priority lender, and in those situations you would need to issue the 5.1-06, which merely insures there are no liens *due and unpaid* on Date of Policy. The 5.1-06 is also the appropriate form to issue with an Owner's Policy.

To issue the ALTA 5.1-06, you must determine that all charges or assessments provided for in any documents shown in Schedule B, which are due, have been paid. If there is a ground lease or recreation lease which the PUD owner or HOA association is obligated to pay, you must determine that all charges are current.

Insuring Clause No. 3 provides coverage against forced removal of improvements. This is an element of loss covered by the ALTA Loan policies which have no exceptions for survey matters in Schedule B.

This coverage should be given only when you have an adequate current survey or inspection of the Land and improvements which discloses there are no encroachments of improvements over boundary lines or easements. Since boundary walls and fences are excluded, you need not be concerned with them for purposes of issuing this endorsement. However, if you are issuing an ALTA Loan Policy without any exceptions for survey matters in Schedule B, you must be concerned with boundary walls and fences because the policy will provide coverage over them with or without this endorsement.

Insuring Clause No. 4 covers loss because of failure of Title of the borrower resulting from exercise of a right of first refusal which existed at the Date of Policy, whether such exercise was before or after that date. The consequent failure of Title to property acquired by the insured lender through foreclosure or deed-in-lieu-of-foreclosure would also be covered. The policy would not cover these matters without this endorsement because an exception should appear in Schedule B for the instrument or instruments creating this right.

You must determine that there are no provisions in any of the documents affecting the Title which create a right of first refusal to purchase the Land. This kind of provision might be included in the covenants and restrictions of the project itself. If you do find such a right, you must require a **proper waiver or relinquishment from the proper person or party** prior to issuing this

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL - Fidelity National Title Group, Inc.                SECTION 5

endorsement.  A waiver by the homeowner's association is not likely to be sufficient as a waiver by any of the property owners if the right runs in their favor.  Similarly, an association's waiver would do no good where the right was in a governmental body, as is the case for certain low income multifamily housing developments.

## MODIFICATION

In the event that modification of an endorsement is requested, it is necessary to consider your state regulatory requirements for filing and approval of forms. If the endorsement is modified, the endorsement is not an ALTA form and should not reference ALTA in the title.  You must obtain the approval of the Company's underwriting adviser before complying with any request for a modification.

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL - Fidelity National Title Group, Inc.                    SECTION 5

**ENDORSEMENT**

Attached to Policy No. _____

**Issued By**
**[FNTG BRAND]**

The Company insures against loss or damage sustained by the Insured by reason of:

1.     Present violations of any restrictive covenants referred to in Schedule B that restrict the use of the Land or the forfeiture or reversion of Title by reason of any provision contained in the restrictive covenants. As used in this paragraph 1, the words "restrictive covenants" do not refer to or include any covenant, condition or restriction (a) relating to obligations of any type to perform maintenance, repair or remediation on the Land, or (b) pertaining to environmental protection of any kind or nature, including  hazardous or toxic matters, conditions, or substances, except to the extent that a notice of a violation or alleged violation affecting the Land has been recorded in the Public Records at Date of Policy and is not excepted in Schedule B.

2.     The priority of any lien for charges and assessments in favor of any association of homeowners which are provided for in any document at Date of Policy referred to in Schedule B over the lien of any Insured Mortgage identified in Schedule A.

3.     The enforced removal of any existing structure on the Land (other than a boundary wall or fence) because it encroaches onto adjoining land or onto any easements.

4.     The failure of the Title by reason of a right of first refusal to purchase the Land which was exercised or could have been exercised at Date of Policy.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

[FNTG BRAND]

BY: _____

ALTA Endorsement Form 5-06
(Planned Unit Development) (Rev. 02/03/10)
© American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL - Fidelity National Title Group, Inc.                    SECTION 5

**ENDORSEMENT**

Attached to Policy No. _____

**Issued By**
**[FNTG BRAND]**

The Company insures against loss or damage sustained by the Insured by reason of:

1.      Present violations of any restrictive covenants referred to in Schedule B that restrict the use of the Land or the forfeiture or reversion of Title by reason of any provision contained in the restrictive covenants. As used in this paragraph 1, the words "restrictive covenants" do not refer to or include any covenant, condition, or restriction (a) relating to obligations of any type to perform maintenance, repair, or remediation on the Land, or (b) pertaining to environmental protection of any kind or nature, including hazardous or toxic matters, conditions, or substances, except to the extent that a notice of a violation or alleged violation affecting the Land has been recorded in the Public Records at Date of Policy and is not excepted in Schedule B.

2.      Any charges or assessments in favor of any association of homeowners, which are provided for in any document referred to in Schedule B, due and unpaid at Date of Policy.

3.      The enforced removal of any existing structure on the Land (other than a boundary wall or fence) because it encroaches onto adjoining land or onto any easements.

4.      The failure of the Title by reason of a right of first refusal to purchase the Land that was exercised or could have been exercised at Date of Policy.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

[FNTG BRAND]

BY: _____

ALTA Endorsement Form 5.1-06
(Planned Unit Development) (Rev. 10/16/08)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL - Fidelity National Title Group, Inc.                    **SECTION 6**

**Return to Table of Contents**

**VARIABLE RATE MORTGAGE**

**ALTA ENDORSEMENT - FORMS 6-06, 6.1 and 6.2-06**

**PURPOSE**

These endorsements were created to insure the validity and priority of the mortgage liens securing loans with variable interest rates. The ALTA 6-06 is the basic variable interest rate endorsement. The ALTA 6.1 is designed for use where lenders face regulatory requirements which must be followed in order to make such loans. (Note: there is no 2006 version of the ALTA Form 6.1). The ALTA 6.2-06 was created to the validity and priority of mortgage liens as security for interest at variable rates and as security for additional principal created by the negative amortization of unpaid interest.

**CAUTION:**    *THE LAW IN MANY STATES PROHIBITS OR GREATLY IMPAIRS THE ENFORCEMENT OF THE KINDS OF LOANS TO WHICH THE ALTA 6.2-06 ENDORSEMENT IS APPLICABLE.   THEREFORE, YOU SHOULD NOT ISSUE IT WITHOUT THE APPROVAL OF THE COMPANY'S UNDERWRITING ADVISER.*

**SECTION OF POLICY AMENDED BY ENDORSEMENT**

Section 3(d) of the Exclusions from Coverage of all of the ALTA Loan Policies is modified by each of these endorsements.

**BASIS FOR PROVIDING COVERAGE**

**Endorsement Form 6-06**

You are authorized to issue this endorsement only when **all** of the following requirements are met:

1.      The Insured Mortgage contains a clear statement that it secures interest at a variable rate**.**

2.      It is not sufficient for the mortgage or deed of trust to state merely that the interest secured is pursuant to the terms of the note or other security agreement.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL - Fidelity National Title Group, Inc.                    **SECTION 6**

3.      The interest rate varies according to **a formula disclosed in the Insured Mortgage** which is **based on an index that cannot be easily manipulated by the lender** to change the rate of interest it receives.

>    **Examples of indices which comply with this requirement are:**

>>       Federal cost of funds indices,

>>       Treasury bill interest rates,

>>       The Prime rate of a substantial local, national or international bank other than the lender (if a bank); **and**

>>       The Prime rate of the lending bank (if a bank loan), if the bank is a large commercial bank.

4.      The documents comply with all requirements of any state statute which governs validity and priority of mortgages securing variable interest rate loans.

**Endorsement Form 6.1**

The coverage of this endorsement is identical to the coverage of ALTA 6-06 except it adds an exception to coverage.  It does not cover loss resulting from the lender's failure to comply with statutes or regulations specified in the endorsement which govern the ability of the lender to make a variable interest rate mortgage.

While this endorsement has not been withdrawn by the ALTA, it is today mostly a matter of historical interest.  The relaxation of federal and state regulation on lending institutions with respect to variable interest rate mortgages has drastically reduced its utility.  Any request you receive for this endorsement should be discussed with the Company's underwriting adviser.

**Endorsement Form 6.2-06** **(Variable Rate –Negative Amortization)**
(See **CAUTION** at beginning of this Section 6)

*Preliminary Considerations*

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

This endorsement combines the provisions of ALTA 6-06 with provisions covering the security of negative amortization of interest.

Negative amortization is one name commonly given to a process which adds interest which is due and unpaid to the principal balance of the loan. It is also called "interest on interest". Amortization is the process which reduces the principal balance as payments are made on a loan.

Negative amortization loans are usually structured so that the principal balance increases rather than declining over time. The most common arrangement is to allow the borrower to make its monthly payments as if the interest rate were lower than it actually is. This produces a deficit in the interest payments which is then added to the principal. Interest is then charged on the new principal amount, thus compounding interest. The borrower makes lower payments in the initial years of the loan and higher payments at the end. This may be a benefit to borrowers who are likely to have greater income in later years, such as first time home purchasers.

*Endorsement Coverage*

The coverage for the variable rate aspect of the Insured Mortgage is identical to that provided in the ALTA 6-06.

In addition, this endorsement provides the following coverage for the negative amortization aspects:

- coverage against loss if the lien of the Insured Mortgage is rendered unenforceable as a result of its negative amortization provisions

- coverage against loss if the lien of the Insured Mortgage loses its priority as security for the principal of the loan, including interest added through negative amortization because of its negative amortization provisions

This endorsement may be issued only if all of the following requirements are met:

1.      All of the requirements for issuing an ALTA 6-06 have been met.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

2.      The Insured Mortgage clearly states that it secures a loan providing for negative amortization or adding unpaid interest to principal.

3.      The law of the state in which the Land lies does not prohibit the making of negative amortization loans or the compounding of interest.  This may be based on a different public policy than the one on which usury is based.

4.      The amount of interest which will be charged as a result of the negative amortization program does not appear to be unconscionably high as that determination is generally understood under state law.

If any transaction appears to you to require the payment of extreme rates or amounts of interest, you should contact the Company's underwriting adviser.

The policy is issued in a face amount which reflects the increased principal amount of the loan as a result of negative amortization, often up to 125% of the original principal amount of the mortgage, but not in excess of the amount allowed by any state insurance laws or regulations.

**MODIFICATION**

In the event that modification of an endorsement is requested, it is necessary to consider your state regulatory requirements for filing and approval of forms.  If the endorsement is modified, the endorsement is not an ALTA form and should not reference ALTA in the title.  You must obtain the approval of the Company's underwriting adviser before complying with any request for a modification.

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL - Fidelity National Title Group, Inc.                                    **SECTION 6**

**ENDORSEMENT**

Attached to Policy No. _____

**Issued By**
**[FNTG BRAND]**

The Company insures against loss or damage sustained by the Insured by reason of:

1.      The invalidity or unenforceability of the lien of the Insured Mortgage resulting from its provisions that provide for changes in the rate of interest.

2.      Loss of priority of the lien of the Insured Mortgage as security for the unpaid principal balance of the loan, together with interest as changed in accordance with the provisions of the Insured Mortgage, which loss of priority is caused by the changes in the rate of interest.

"Changes in the rate of interest", as used in this endorsement, shall mean only those changes in the rate of interest calculated pursuant to the formula provided in the documents secured by the Insured Mortgage at Date of Policy.

This endorsement does not insure against loss or damage based upon:

1.      usury, or

2.      any consumer credit protection or truth in lending law.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

[FNTG BRAND]

BY: _____

ALTA Endorsement Form 6-06
(Variable Rate) (Rev. 10/16/08)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL - Fidelity National Title Group, Inc.                    **SECTION 6**

**For use with 1992 policies or older**

**ENDORSEMENT**

Attached to Policy No. _____

**Issued by**

**[FNTG BRAND]**

The Company insures the owner of the indebtedness secured by the insured mortgage against loss or damage sustained by reason of:

1.       The invalidity or unenforceability of the lien of the insured mortgage resulting from the provisions therein which provide for changes in the rate of interest.

2.       Loss of priority of the lien of the insured mortgage as security for the unpaid principal balance of the loan, together with interest as changed in accordance with the provisions of the insured mortgage, which loss of priority is caused by the changes in the rate of interest.

"Changes in the rate of interest", as used in this endorsement, shall mean only those changes in the rate of interest calculated pursuant to the formula provided in the insured mortgage at Date of Policy.

This endorsement does not insure against loss or damage by reason of the failure of the insured to comply with the following statutes or regulations concerning variable rate mortgages:

This endorsement does not insure against loss or damage based upon (a) usury, or (b) any consumer credit protection or truth in lending law.

This endorsement is issued as part of the policy.  Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy or (iv) increase the Amount of Insurance.  To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls.  Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

[FNTG BRAND]

BY:_____

ALTA Endorsement - Form 6.1
(Variable Rate Mortgage) (1/17/04)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL - Fidelity National Title Group, Inc.                    **SECTION 6**

**ENDORSEMENT**

Attached to Policy No. _____

**Issued By**
**[FNTG BRAND]**

The Company insures against loss or damage sustained by the Insured by reason of:

1.    The invalidity or unenforceability of the lien of the Insured Mortgage resulting from its provisions that provide for (a) interest on interest, (b) changes in the rate of interest, or (c) the addition of unpaid interest to the principal balance of the loan.

2.    Loss of priority of the lien of the Insured Mortgage as security for the principal balance of the loan, including any unpaid interest which was added to principal in accordance with the provisions of the Insured Mortgage, interest on interest, or interest as changed in accordance with the provisions of the Insured Mortgage, which loss of priority is caused by (a) changes in the rate of interest, (b) interest on interest, or (c) increases in the unpaid principal balance of the loan resulting from the addition of unpaid interest.

"Changes in the rate of interest", as used in this endorsement shall mean only those changes in the rate of interest calculated pursuant to the formula provided in the loan documents secured by the Insured Mortgage at Date of Policy.

This endorsement does not insure against loss or damage based upon:

1.    usury, or

2.    any consumer credit protection or truth in lending law.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

[FNTG BRAND]

BY: _____

ALTA Endorsement Form 6.2-06
(Variable Rate, Negative Amortization) (Rev. 10/16/08)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 7**

**Return to Table of Contents**

**MANUFACTURED HOUSING**

**ALTA ENDORSEMENT – FORMS 7-06, 7.1-06 and 7.2-06**

**PURPOSE**

These endorsements clarify whether or not a manufactured housing unit ("MHU") located on the Land is covered by the insurance policy. The ALTA 7-06 adds the MHU to the definition of Land. In addition the ALTA 7.1-06 and the ALTA 7.2-06 insure against loss or damage if the MHU is not located on the subject premises, if there are UCC type liens filed against the MHU and if the MHU does not constitute real property under state law. The ALTA 7.1-06, which is the form to be used with a Loan Policy, also insures that the Insured Mortgage can be enforced in a single foreclosure action against both the MHU and the Land.

**SECTION OF POLICY AMENDED BY ENDORSEMENT**

These endorsements do not amend any section of the policy.  However, they do modify the impact on coverage of the definition of "Land" contained in Conditions No. 1(g) of the ALTA Owner's Policy and No. 1(i) of the ALTA Loan Policy.  Because of this definition, the policies normally only insure titles to or mortgage liens on a MHU if the MHU is considered a fixture under state law.  Issuance of these endorsements constitutes the Company's recognition that the MHU on the Land **is** covered by the policy, and, in the case of the ALTA 7.1-06 and the 7.2-06, against loss occasioned by the failure to meet state requirements for conversion of the MHU from personal to real property.

**BASIS FOR PROVIDING COVERAGE**

**ALTA 7-06** **(inclusion of MHU within the definition of Land)**

You may issue this endorsement if all of the following requirements are met:

1.      There must be no state law which would make it impossible for the MHU to become real property.

**CAUTION:**  THE COMPANY'S UNDERWRITING ADVISOR SHOULD BE CONSULTED FOR INSURABILITY IN YOUR STATE.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

2.       You must determine that the owner of the underlying Land is the owner of the MHU.  This should be done by examining the **current** motor vehicle title certificate which was issued when the unit was purchased or registered in the last state of residence of the owner.

3.       You must determine that the MHU is actually located on the Land.

4.       You must determine that the unit is permanently affixed to the Land.  To be permanently affixed, the wheels and axles of the unit must have been removed.  It must also be hooked up to public utilities such as gas or electricity.

5.       You must determine whether any security interests encumbering the unit at the time it was affixed to the Land still exist.  If they do, you must require their release, or you must show them as an exception in Schedule B of any Owner's Policy and Schedule B, Part I of any ALTA Loan Policy which you issue and to which you  add the following:

> This is a matter covered under the Uniform Commercial Code or under the motor vehicle registration laws of the state of residence of the owner of the unit.

The problem of existing security interests is complex.  State law generally treats MHUs as motor vehicles, at least until they are affixed to a parcel of land.  While they are motor vehicles, liens which encumber them must be filed in the place designated for motor vehicles.  These are shown on the most current vehicle title certificates.  Even after becoming affixed, they may still retain their motor vehicle registration in some states.  Thus, examination of the vehicle title certificate may be required each time a transaction takes place after affixation to the land.  It is possible such laws may prevent the unit from ever being considered real property. Consult the Company's underwriting advisor for the status of the law in your state.

Prior to being permanently affixed, mobile homes are also personal property subject to Article 9 of the Uniform Commercial Code, which relates to security interests.  Therefore, a UCC search may have to be done both in the capitol of the state where the Land is located and, under some circumstances, in the capitol of the state where the unit was last registered.  For searching requirements, consult the Company's underwriting adviser.

6.       You must add a notation in the legal description in Schedule A identifying the mobile home unit as a part of the property insured. The unit's make and serial number should be included.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                                    **SECTION 7**

**ALTA 7.1-06 and 7.2-06** Conversion

You may issue this endorsement if all of the following requirements are met:

1.      There must be no state law which would make it impossible for the MHU to become real property.

**CAUTION:**  THE COMPANY'S UNDERWRITING ADVISOR SHOULD BE CONSULTED FOR INSURABILITY IN YOUR STATE.

2.      You must determine that the MHU has become real property under state law, *and that all procedures necessary for the conversion of the MHU from personal property to real property have been accomplished.* This could include the surrender and cancellation of the motor vehicle title.

**CAUTION:**  THE COMPANY'S UNDERWRITING ADVISOR SHOULD BE CONSULTED FOR INSURABILITY IN YOUR STATE.

3.      You must determine that the owner of the underlying Land is the owner of the MHU. This should be done by examining the **current** motor vehicle title certificate issued when the unit was purchased or registered in the last state of residence of the owner, or by verifying the chain of title since the conversion discussed at No. 2 above.

4.      You must determine that the MHU is actually located on the Land. Appraisal, survey, inspection, or affidavit a few of the ways to accomplish this. Consult the Company's underwriting advisor for the specific requirements for your state.

5.      You must determine that the unit is permanently affixed to the Land.  To be permanently affixed, the wheels and axles of the unit must have been removed.  It must also be hooked up to public utilities such as gas or electricity.

6.      You must determine whether any security interests encumbering the unit at the time it was affixed to the Land still exist.  If they do, you must require their release, or you must show them as an exception in Schedule B of any Owner's Policy and Schedule B, Part I of any ALTA  Loan Policy which you issue, and add the following:

This is a matter covered under the Uniform Commercial Code or under the motor vehicle registration laws of the state of residence of the owner of the unit.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

The problem of existing security interests is complex. State law generally treats mobile homes as motor vehicles, at least until they are removed from the vehicle title registration scheme and/or affixed to a parcel of land. While they are motor vehicles, liens which encumber them must be filed in the place designated for motor vehicles. These are shown on the most current vehicle title certificates. *Even after becoming affixed, they may still retain their motor vehicle registration in some states*. Thus, examination of the vehicle title certificate may be required each time a transaction takes place after affixation to the Land. *It is possible such laws may prevent the unit from ever being considered real property; consult the Company's underwriting advisor for the status of law in your state.*

Prior to being permanently affixed, mobile homes are also personal property subject to Article 9 of the Uniform Commercial Code, which relates to security interests. Therefore, a UCC search may have to be done both in the capitol of the state where the Land is located and, under some circumstances, in the capitol of the state where the unit was last registered. For searching requirements, consult the Company's underwriting advisor.

7.      You may need to add a notation in the legal description in Schedule A identifying the MHU as a part of the property insured. The unit's make and serial number should be included. Refer to the Company's underwriting advisor for the specific requirements for your state.

8.      You must verify with the Company's underwriting adviser for your state that the Insured Mortgage will be enforceable against the MHU within any foreclosure action against the balance of the real property.

**MODIFICATION**

In the event that modification of an endorsement is requested, it is necessary to consider your state regulatory requirements for filing and approval of forms. If the endorsement is modified, the endorsement is not an ALTA form and should not reference ALTA in the title. You must obtain the approval of the Company's underwriting advisor before complying with any request for a modification.

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT

Attached to Policy No. _____

**Issued By**
**[FNTG BRAND]**


The term "Land" includes the manufactured housing unit located on the land described in Schedule A at Date of Policy.

      This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.


[Witness clause optional]




[FNTG BRAND]

BY: _____


ALTA Endorsement Form 7-06
(Manufactured Housing Unit) (6/17/06)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 7**

ENDORSEMENT

Attached to Policy No. _____

**Issued By**
**[FNTG BRAND]**

1.    The term "Land" as defined in this policy includes the manufactured housing unit located on the land described in Schedule A at Date of Policy.

2.    Unless excepted in Schedule B, the Company insures against loss or damage sustained by the Insured if, at Date of Policy,

   (a)    A manufactured housing unit is not located on the land described in Schedule A.

   (b)    The manufactured housing unit located on the land is not real property under the law of the state where the Land described in Schedule A is located.

   (c)    The owner of the Land is not the owner of the manufactured housing unit.

   (d)    Any lien is attached to the manufactured housing unit as personal property, including

      (i)     a federal, state, or other governmental tax lien,

      (ii)    UCC security interest,

      (iii)   a motor vehicular lien,

      (iv)   other personal property lien.

   (e)    The lien of the Insured Mortgage is not enforceable against the Land.

   (f)    The lien of the Insured Mortgage is not enforceable in a single foreclosure procedure.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

[FNTG BRAND]

BY: _____
ALTA Endorsement Form 7.1-06
(Manufactured Housing – Conversion; Loan) (6/17/06)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 7**

ENDORSEMENT

Attached to Policy No. _____

**Issued By**
**[FNTG BRAND]**

1.      The term "Land" as defined in this policy includes the manufactured housing unit located on the land described in Schedule A at Date of Policy.

2.      Unless excepted in Schedule B, the Company insures against loss or damage, sustained by the Insured if, at Date of Policy

    (a)      A manufactured housing unit is not located on the Land described in Schedule A.

    (b)      The manufactured housing unit located on the Land is not real property under the law of the state where the Land described in Schedule A is located.

    (c)      The Insured is not the owner of the manufactured housing unit.

    (d)      Any lien is attached to the manufactured housing unit as personal property, including

        (i)      a federal, state, or other governmental tax lien,

        (ii)      UCC security interest,

        (iii)      a motor vehicular lien,

        (iv)      other personal property lien.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

[FNTG BRAND]

BY: _____

ALTA Endorsement Form 7.2-06
(Manufactured Housing – Conversion; Owners) (6/17/06)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 8**

**Return to Table of Contents**

**ENVIRONMENTAL PROTECTION LIEN**

**COMMERCIAL ENVIRONMENTAL LIEN**

**ALTA ENDORSEMENT FORMS 8.1-06 and 8.2-06**

**PURPOSE**

These endorsements provide affirmative insurance that the lien of the Insured Mortgage has priority over unrecorded or unfiled environmental protection liens.

**SECTION OF POLICY AMENDED BY ENDORSEMENT**

This endorsement reiterates the coverage afforded by Covered Risk 5 (d). In addition, the ALTA 8.1-06, for use with loan policies insuring residential mortgages, adds affirmative coverage against loss caused by priority over the Insured Mortgage of any environmental protection lien created by a state statute, if the statute is not disclosed in the endorsement or the lien is not shown as an exception in Schedule B of the policy. The ALTA 8.2-06, which was developed for commercial property, does not contain this additional coverage.

**BASIS FOR PROVIDING COVERAGE**

You may issue the ALTA 8.1-06 endorsement to any ALTA Loan Policy covering a **residential** mortgage loan (1 to 4 family)  if all of the following requirements are met:

1.      No environmental liens are recorded or filed which affect the Title to the Land which is described in the policy; or

2.      You have taken an exception in Schedule B to any environmental liens which have been recorded or filed.

3.      You must insert the citation to any state statute which creates secret or hidden environmental protection liens or environmental liens which have "super priority".  By this we mean a statute that either:

A. Does not require the filing of any notice of the lien in the county recorder's office where the land is located; or

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

B. Gives the lien a priority over all outstanding liens or encumbrances.

A space for this citation is provided at the end of paragraph (b) of the endorsement. If there are no citations for your state, indicate that by inserting the word "none" in the blank.

**You must consult the Company's underwriting adviser for instructions as to which, if any, citations are applicable.**

**CAUTION:**    NOTICES OF FEDERAL ENVIRONMENTAL LIENS CREATED BY THE COMPREHENSIVE ENVIRONMENTAL RESPONSE, CLEANUP AND LIABILITY ACT (CERCLA) ARE REQUIRED TO BE <u>RECORDED</u> IN COUNTY RECORDERS' OFFICES **ONLY** IF THE STATE HAS ADOPTED THE UNIFORM FEDERAL LIEN REGISTRATION ACT OR SIMILAR STATUTE.    **OTHERWISE, CONSTRUCTIVE NOTICE OF THE LIENS EXISTS IF THE NOTICE IS <u>FILED</u> WITH THE CLERK OF THE U.S. DISTRICT COURT FOR THE DISTRICT IN WHICH THE LAND SUBJECT TO THE LIEN IS LOCATED.**

**Therefore,** if the state in which the Land lies has **not** adopted such an act, <u>you must search the records in the office of the Clerk of the U.S. District Court for such liens before issuing this endorsement.</u>

You may issue the ALTA 8.2-06 (Commercial Environmental Lien) endorsement to any ALTA Loan Policy covering a **commercial** mortgage loan (including multi-family residential), or an ALTA Owners Policy if all of the following requirements are met:

1.    You have checked BOTH the office you would normally check under state law *and* the **District Court** for the District in which the Land is located, even if your state has adopted the Uniform Federal Lien Registration Act or similar statute as discussed above.

2.    No environmental liens are recorded or filed which affect the Title to the Land which is described in the policy; or

3.    You have taken an exception in Schedule B to any environmental liens which have been recorded or filed.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

As mentioned earlier, the commercial form does not include the second coverage, and that should **not** be added without consulting your Company underwriting advisor.

<div align="center">

**MODIFICATION**

</div>

In the event that modification of an endorsement is requested, it is necessary to consider your state regulatory requirements for filing and approval of forms.  If the endorsement is modified, the endorsement is not an ALTA form and should not reference ALTA in the title.  You must obtain the approval of the Company's underwriting adviser before complying with any request for a modification.

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 8**

ENDORSEMENT

Attached to Policy No. _____

**Issued By**
**[FNTG BRAND]**

The insurance afforded by this endorsement is only effective if the Land is used or is to be used primarily for residential purposes.

The Company insures against loss or damage sustained by the Insured by reason of lack of priority of the lien of the Insured Mortgage over

(a)      any environmental protection lien that, at Date of Policy, is recorded in those records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge, or is filed in the records of the clerk of the United States district court for the district in which the Land is located, except as set forth in Schedule B; or

(b)      any environmental protection lien provided by any state statute in effect at Date of Policy, except environmental protection liens provided by the following state statutes:

FILL IN

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

[FNTG BRAND]

BY: _____

ALTA Endorsement Form 8.1-06
(Environmental Protection Lien) (6/17/06)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                                    **SECTION 8**

ENDORSEMENT

Attached to Policy No. _____

**Issued By**
**[FNTG BRAND]**

　　　　The Company insures against loss or damage sustained by the Insured by reason of an environmental protection lien that, at Date of Policy, is recorded in the Public Records or filed in the records of the clerk of the United States district court for the district in which the Land is located, unless the environmental protection lien is set forth as an exception in Schedule B.

　　　　This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

[FNTG BRAND]

BY: _____

ALTA Endorsement Form 8.2-06
(Commercial Environmental Lien) (10/16/08)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                                    **SECTION 9**

**Return to Table of Contents**

<div align="center">

**SERIES 9**

**ALTA ENDORSEMENTS 9-06 to 9.10-06**
**[THE ALTA 9.4-06 AND 9.5-06 HAVE BEEN WITHDRAWN EFFECTIVE 4/2/2012]**


**PURPOSE**
</div>

In General


It is common for institutional lenders to require certain additional title insurance coverages for loans secured by first mortgages on improved real property when these mortgages are to be sold on the secondary market. The original ALTA Form 9 was designed to provide those coverages in a single, inclusive form. It afforded the lender various protections with respect to private property restrictions, building setback lines, encroachments and excepted minerals. Forms for use with owner's policies were subsequently adopted also.


In 2012 ALTA completely revised all of the endorsements in the series, withdrawing the 9.4-06 and 9.5-06 and adding 3 new forms- the 9.6-06, 9.7-06, and 9.8-06. In 2013 the 9.9-06 and the 9.10-06 were adopted. We will discuss each form and the corresponding underwriting requirements.


<div align="center">

**SECTIONS OF POLICY AMENDED BY ENDORSEMENT**
</div>

These endorsements expand policy coverage by minimizing the risk to the Insured with respect to certain policy exclusions or exceptions.


**REMINDER:** All exceptions for documents in our standard form policies should be characterized appropriately. For example:


> *The matters contained in the document shown below which, among other things, contains or provides for: [establishment of easements] [liens for liquidated damages] [private charges or assessments]  [and] [option to purchase, a right of first refusal or the prior approval of a future purchaser or occupant] and covenants, conditions and restrictions but omitting any covenants or restrictions, if any, including, but not limited to those based upon race, color, religion, sex, sexual orientation, familial status, marital status, disability, handicap, national origin, ancestry, or source of income, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law.*

> *Entitled: ^*
> *Recording Date: ^*
> *Recording No: ^*

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

The form for showing exceptions varies from state to state, but it should always disclose any of the Private Rights (as discussed at ALTA 9.6-06 and 9.9-06  below) and other appropriate terms and provisions, and  include the mandated carve out for "omitted" provisions.

## BASIS FOR PROVIDING COVERAGE

**ALTA Form 9-06 (Restrictions, Encroachments, Minerals - Loan Policy)**
**ALTA Form 9.3-06 (Covenants, Conditions and Restrictions-Loan Policy)**
**ALTA Form 9.7-06 (Restrictions, Encroachments, Minerals-Land Under Development-Loan Policy)**
**ALTA Form 9.10-06 (Restrictions, Encroachments, Mineralt-Current Violations-Loan Policy**

Forms 9-06, 9.10-06  and 9.7-06 most closely resemble the coverages given under the old loan policy endorsement forms. The revised 9-06 is used for existing Improvements and the new 9.7-06 is used for Land under development, by expanding the coverages to Future Improvements, as defined therein. The 9.10-06 is used when violation of a Covenant could result in forfeiture or reversion, but there is no current violation. The revised 9.3-06 has no mineral or encroachment coverage found at section 4 in the other two endorsements.

The following is a discussion of the various provisions:

- 3.a. – All  give coverage for loss by reason of a violation of a Covenant that divests the lien of the Insured Mortgage or impairs the priority of the Insured Mortgage, or affects the Title of the lender after foreclosure. An example of such a loss would be as the result of forfeiture or reversion provisions in a covenant. Form 9.10-06 is used when a <u>future</u> violation could result in the forfeiture or reversion, there is <u>no current violation</u> of any such Covenants.

- 3.b.-Coverage is given over any violation of a Covenant **unless an exception in Schedule B identifies the violation.**

- 3.c. -Coverage is given for enforced removal for a building set back violation **unless an exception in Schedule B identifies the violation.**

- 3.d.-Coverage is given for notice of a violation of a Covenant that relates to environmental protection but only to the extent of the violation in the notice **unless an exception in Schedule B identifies the notice of violation.**

- 4.a.-[In Forms 9-06, 9.10-06 and 9.7-06 only] Coverage for an encroachment onto neighboring property, onto an easement, or onto our Land by a neighboring Improvement **unless an exception in Schedule B identifies any such encroachment.**

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

- 4.b.-[In Forms 9-06 and 9.10-06] Enforced removal of our Improvement if it encroaches over the boundary line (**even if such encroachment is shown on Schedule B).**

- 4.c.i. [in Form 9-06 and 9.10-06] or 4.b.i [in Form 9.7-06]-Damage to an Improvement that encroaches onto an easement resulting from the exercise of the right to maintain the easement **(even if such encroachment is shown on Schedule B).**

- 4.c.ii.[in Form 9-06and 9.10-06] or  4.b.ii. [in Form 9.7-06] Damage to an Improvement resulting from the exercise of any mineral rights excepted in the legal description or on Schedule B**.**

**UNDERWRITING GUIDELINES**

**For anything other than a policy insuring a residential 1-4 family loan an accurate current survey must be examined and reflected in the policy.**

*Coverage 3.a. may be given if any of the following situations apply:*

- There are no covenants, conditions or restrictions.
- The covenants, conditions or restrictions are not enforceable under state or federal law.
- The restrictions contain a clause protecting the lien of a mortgage made in good faith and for value against a violation.
- Rights to enforce the restrictions have been waived or are subordinated to the Insured Mortgage.
- If there is a no CURRENT violation that could result in Forfeiture or reversion, but a FUTURE violation might result in the loss of priority or enforceability of the lien of the Insured Mortgage, the 9.10-06 must be used.

*Coverage 3.b. may be given provided:*

- There are no covenants, conditions or restrictions or
-  it has been determined that either there are no violations that are enforceable, or
-  all enforceable violations that have been disclosed by inspection, survey or other means are identified and excepted in Schedule B.

*Coverage 3.c. may be given provided:*

- There are no building setback lines shown on a recorded or filed plat of subdivision or
-  it has been determined that either there are no violations that are enforceable, or

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

- all enforceable violations that have been disclosed by inspection, survey or other means are identified and excepted in Schedule B.

*Coverage 3.d. may be given provided:*

- Either there are no notices of violation of covenants, conditions and restrictions relating to environmental protection recorded or
- filed in the public records or the notices of violations are identified and excepted in Schedule B.

*Coverage 4.a.i.[in Form 9-06 , 9.10-06 and 9.7-06]  may be given if any of the following situations apply:*

- There are no encroachments onto adjoining land OR any such encroachments are identified in Schedule B.
- There are no easements excepted in Schedule B.
- There are no encroachments onto easements identified in Schedule B OR any such encroachments are identified in Schedule B.

*Coverage 4.a.ii.[in Form 9-06, 9.10-06 and 9.7-06] may be given if any of the following situations apply:*

- There are no encroachments onto the Land by neighbors' Improvements OR
- any such encroachments are identified in Schedule B.

*Coverage 4.b. Form 9-06 and 9.10-06 may be given if any of the following situations apply:*

- There are no encroachments of Improvements onto neighboring land.
- There is an encroachment identified in Schedule B and with respect to the encroachment, the Company's underwriting advisor has determined that it would be unlikely that there would be any attempted enforced removal or is satisfied that a state court would not deny the right to maintain the existing improvements because of adverse possession or other protections.

**[See also Section 28 for encroachment coverage]**

*Coverage 4.c.i [in Form 9-06 and 9.10-06] or Coverage 3.b.i.[in Form 9.7-06] may be given if any of the following situations apply:*

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                                    **SECTION 9**

- There are no encroachments of an Improvement onto an easement
- The encroachment does not interfere with the right to maintain the easement for the purpose for which it was granted.

[See also Section 28 for encroachment coverage]

*Coverage 4.c.ii [in Form 9-06] or Coverage 3.b.ii [in Form 9.7-06] may be given if any of the following situations apply:*

- There is no separation of minerals from the surface estate by deed, lease or otherwise.
- There is a separate mineral estate but it does not include any rights of surface entry.
- Mineral rights, with rights of surface entry either expressed or implied, have been severed from the surface estate.  However, the land and surrounding area is entirely improved with residential development.  Under these circumstances, submit the request for coverage to the Company's underwriting advisor who will consider the risk based upon such things as the size of the parcel, use, (proposed or current), local zoning, ownership of minerals and the possibility of waiver of mineral rights.

**[See also - Section 35 for mineral rights coverage]**

**ALTA Form 9.1–06 (Covenants, Conditions and Restrictions-Unimproved Land–Owner's Policy)**
**ALTA Form 9.2–06 (Covenants, Conditions and Restrictions-Improved Land-Owner's Policy)**
**ALTA Form 9.8–06 (Covenants, Conditions and Restrictions-Land Under Improvement–Owner's Policy** *[technically corrected by ALTA 12-3-12]*

**An accurate current survey must be examined and reflected in the policy**

These 3 forms give various levels of coverage to an owner. They contain some but not all of the coverages in the loan policy forms. They do not contain coverage for encroachments or mineral rights. See Section 28 for encroachment coverage and Section 35 for mineral rights coverage. The following is a discussion of the various provisions:

- 3.a.-[in all Forms] Coverage is given over any violation of a Covenant **unless an exception in Schedule B identifies the violation.**

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                              **SECTION 9**

- 3.b. [in Form 9.2-06 and 9.8-06 only]-Coverage is given for enforced removal for a building set back violation **unless an exception in Schedule B identifies the violation.**
- 3.c. [in Form 9.2-06 and 9.8-06, it is coverage 3.b. in Form 9.1-06]-Coverage is given for notice of a violation of a Covenant that relates to environmental protection but only to the extent of the violation in the notice **unless an exception in Schedule B identifies the notice of violation.**

*Coverage 3.a. may be given provided:*

- There are no covenants, conditions or restrictions; or
- it has been determined that either there are no violations that are enforceable, or
- all enforceable violations that have been disclosed by inspection, survey, or other means are identified and excepted by description of such matter in Schedule B.

*Coverage 3.b. [in Form 9.2-06 and 9.8-06] may be given provided:*

- There are no building setback lines shown on a recorded or filed plat of subdivision; or
- It has been determined that either there are no violations that are enforceable, or
- all enforceable violations that have been disclosed by inspection, survey or other means are identified and excepted in Schedule B.

*Coverage 3.c. [in Form 9.2-06 and 9.8-06] or 3.b. [in Form 9.1-06] may be given provided:*

- Either there are no notices of violations of covenants, conditions and restrictions relating to environmental protection recorded or filed in the public records, or
- the notices of violations are identified and excepted in Schedule B.

**ALTA Form 9.6–06 (Private Rights-Loan Policy)**
**ALTA Form 9.9-06 (Private Rights-Owners Policy)**

This form addresses the existence of Private Rights within instruments which provide for covenants, conditions or restrictions (CCRs) and are excepted on Schedule B. These Private Rights are defined as:

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

- Option to purchase
- Right of first refusal
- Right of prior approval of a future purchaser or occupant (often found in retail developments)
- Private Charge or assessment (such as home owners or other association fees or dues or private transfer fees, for example) NOTE: **The 9.9-06 for Owners Policies does not contain this coverage.**

The endorsement gives coverage over loss as a result of the enforcement of such a right as it affects the priority or enforceability of the lien of the Insured Mortgage, or affects the title of the lender after foreclosure.

*Coverage may be given provided if:*

- There are no recorded instruments that contain covenants, conditions or restrictions (CCRs) on the Land; or
- All recorded instruments which contain CCRs are examined and they contain no such Private Rights as shown above for Owners or Loan Policy usage. Do not rely upon the classification of the document in the commitment failing to identify such rights. All documents must be examined for these rights before the coverage can be given, or
- Any exception for an instrument that contains a Private Right is indicated in the blank at item 4. D. of the endorsement.
- If there are no such private rights in an instrument or there is no instrument as an exception, the blank at item 4.d. should be filled in with the word "**NONE** "
- Also- See **REMINDER** at beginning of this Section.

## MODIFICATION

In the event that modification of an endorsement is requested, it is necessary to consider your state regulatory requirements for filing and approval of Forms. If the endorsement is modified, the endorsement is not an ALTA Form and should not reference ALTA in the title. You must obtain the approval of the Company's underwriting advisor before complying with any request for a modification.

**Charts:**

| ALTA Endorsement | Original Title | New Revision |
|---|---|---|
| 9-06 | REM (LP) | Restriction Encroachments Mineral (LP) |

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

| 9.1-06 | REM (OP-Unimproved) | CCR (OP-Unimproved Land) |
| 9.2-06 | REM (OP-Improved) | CCR ((OP-Improved Land) |
| 9.3-06 | REM (LP) | CCR (LP) |
| 9.4-06 | Decertified | |
| 9.5-06 | Decertified | |
| 9.6-06 | New | Private Rights (LP) |
| 9.7-06 | New | REM (LP-Land under development) |
| 9.8-06 | New | CCR (OP-Land under Development) |
| 9.9-06 | New | Private Rights (OP) |
| 9.10-06 | New | REM-Current violations (LP) |

**Another way to classify the new forms:**

Restrictions, Encroachments, Minerals

ALTA 9-06 Loan Policy

ALTA 9.7-06 Loan Policy- Land Under Development

ALTA 9.10-06 Loan Policy- Current Violations

Covenants, Conditions, Restrictions:

ALTA 9.1-06 Owner - Unimproved

ALTA 9.2-06 Owner - Improved

ALTA 9.8-06 Owner - Land Under Development

ALTA 9.3-06 Loan Policy

Private Rights

ALTA 9.6-06 Loan Policy

ALTA 9.9-06 Owner

[See Section 28 for Encroachment coverages and Section 35 for Mineral coverages.]

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT

Attached to Policy No. _____

**Issued By**

*[FNTG BRAND]*

1. The insurance provided by this endorsement is subject to the exclusions in Section 5 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

2. For the purposes of this endorsement only:

   a. "Covenant" means a covenant, condition, limitation or restriction in a document or instrument in effect at Date of Policy.

   b. "Improvement" means an improvement, including any lawn, shrubbery, or trees, affixed to either the Land or adjoining land at Date of Policy that by law constitutes real property.

3. The Company insures against loss or damage sustained by the Insured by reason of:

   a. A violation of a Covenant that:

      i. divests, subordinates, or extinguishes the lien of the Insured Mortgage,
      ii. results in the invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage, or
      iii. causes a loss of the Insured's Title acquired in satisfaction or partial satisfaction of the Indebtedness;

   b. A violation on the Land at Date of Policy of an enforceable Covenant, unless an exception in Schedule B of the policy identifies the violation;

   c. Enforced removal of an Improvement located on the Land as a result of a violation, at Date of Policy, of a building setback line shown on a plat of subdivision recorded or filed in the Public Records, unless an exception in Schedule B of the policy identifies the violation; or

   d. A notice of a violation, recorded in the Public Records at Date of Policy, of an enforceable Covenant relating to environmental protection describing any part of the Land and referring to that Covenant, but only to the extent of the violation of the Covenant referred to in that notice, unless an exception in Schedule B of the policy identifies the notice of the violation.

4. The Company insures against loss or damage sustained by reason of:

   a. An encroachment of:

      i. an Improvement located on the Land, at Date of Policy, onto adjoining land or onto that portion of the Land subject to an easement; or

      ii. an Improvement located on adjoining land onto the Land at Date of Policy,

   unless an exception in Schedule B of the policy identifies the encroachment otherwise insured against in Sections 4.a.i. or 4.a.ii.;

   b. A final court order or judgment requiring the removal from any land adjoining the Land of an encroachment identified in Schedule B; or

   c. Damage to an Improvement located on the Land, at Date of Policy:

      i. that is located on or encroaches onto that portion of the Land subject to an easement excepted in Schedule B, which damage results from the exercise of the right to maintain the easement for the purpose for which it was granted or reserved; or

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

      ii.       resulting from the future exercise of a right to use the surface of the Land for the extraction or development of minerals or any other subsurface substances excepted from the description of the Land or excepted in Schedule B.

5.    This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from:

    a.    any Covenant contained in an instrument creating a lease;

    b.    any Covenant relating to obligations of any type to perform maintenance, repair, or remediation on the Land;

    c.    except as provided in Section 3.d, any Covenant relating to environmental protection of any kind or nature, including hazardous or toxic matters, conditions, or substances;

    d.    contamination, explosion, fire, fracturing, vibration, earthquake or subsidence; or

    e.    negligence by a person or an Entity exercising a right to extract or develop minerals or other subsurface substances.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements

[Witness clause optional]

[FNTG BRAND]

BY: _____

ALTA Endorsement Form 9-06
(Restrictions, Encroachments, Minerals-Loan Policy) (Rev. 4/2/12)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**ENDORSEMENT**
**Attached to Policy No. _____**

**Issued By**
*[FNTG BRAND]*

1.      The insurance provided by this endorsement is subject to the exclusions in Section 4 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

2.      For the purposes of this endorsement only, "Covenant" means a covenant, condition, limitation or restriction in a document or instrument in effect at Date of Policy.

3.      The Company insures against loss or damage sustained by the Insured by reason of:

   a.   A violation on the Land at Date of Policy of an enforceable Covenant, unless an exception in Schedule B of the policy identifies the violation; or

   b.   A notice of a violation, recorded in the Public Records at Date of Policy, of an enforceable Covenant relating to environmental protection describing any part of the Land and referring to that Covenant, but only to the extent of the violation of the Covenant referred to in that notice, unless an exception in Schedule B of the policy identifies the notice of the violation.

4.      This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from:

   a.   any Covenant contained in an instrument creating a lease;

   b.   any Covenant relating to obligations of any type to perform maintenance, repair, or remediation on the Land; or

   c.   except as provided in Section 3.b, any Covenant relating to environmental protection of any kind or nature, including hazardous or toxic matters, conditions, or substances.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

[FNTG BRAND]

BY: _____

ALTA Endorsement Form 9.1-06
(Covenants, Conditions and Restrictions-Unimproved Land – Owner's Policy–) (Rev. 4/2/12)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 9**

**ENDORSEMENT**
**Attached to Policy No. _____**

**Issued By**

*[FNTG BRAND]*

1. The insurance provided by this endorsement is subject to the exclusions in Section 4 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

2. For the purposes of this endorsement only,
   a. "Covenant" means a covenant, condition, limitation or restriction in a document or instrument in effect at Date of Policy.
   b. "Improvement" means a building, structure located on the surface of the Land, road, walkway, driveway, or curb, affixed to the Land at Date of Policy and that by law constitutes real property, but excluding any crops, landscaping, lawn, shrubbery, or trees.

3. The Company insures against loss or damage sustained by the Insured by reason of:
   a. A violation on the Land at Date of Policy of an enforceable Covenant, unless an exception in Schedule B of the policy identifies the violation;
   b. Enforced removal of an Improvement as a result of a violation, at Date of Policy, of a building setback line shown on a plat of subdivision recorded or filed in the Public Records, unless an exception in Schedule B of the policy identifies the violation; or
   c. A notice of a violation, recorded in the Public Records at Date of Policy, of an enforceable Covenant relating to environmental protection describing any part of the Land and referring to that Covenant, but only to the extent of the violation of the Covenant referred to in that notice, unless an exception in Schedule B of the policy identifies the notice of the violation.

4. This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from:
   a. any Covenant contained in an instrument creating a lease;
   b. any Covenant relating to obligations of any type to perform maintenance, repair, or remediation on the Land; or
   c. except as provided in Section 3.c., any Covenant relating to environmental protection of any kind or nature, including hazardous or toxic matters, conditions, or substances.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.
Witness clause optional]

[FNTG BRAND]

BY: _____

ALTA Endorsement Form 9.2-06
(Covenants, Conditions and Restrictions – Improved Land -Owner's Policy (Rev. 4/1/12)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                                      SECTION 9

**ENDORSEMENT**
**Attached to Policy No. _____**
**Issued By**

**[FNTG BRAND]**

1.   The insurance provided by this endorsement is subject to the exclusions in Section 4 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

2.    For the purposes of this endorsement only:

a.   "Covenant" means a covenant, condition, limitation or restriction in a document or instrument in effect at Date of Policy.

b.   "Improvement" means an improvement, including any lawn, shrubbery, or trees, affixed to the Land at Date of Policy that by law constitutes real property.

3.   The Company insures against loss or damage sustained by the Insured by reason of:

a.   A violation of a Covenant that:

i.   divests, subordinates, or extinguishes the lien of the Insured Mortgage,

ii.   results in the invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage, or

iii.   causes a loss of the Insured's Title acquired in satisfaction or partial satisfaction of the Indebtedness;

b.   A violation on the Land at Date of Policy of an enforceable Covenant, unless an exception in Schedule B of the policy identifies the violation;

c.   Enforced removal of an Improvement as a result of a violation, at Date of Policy, of a building setback line shown on a plat of subdivision recorded or filed in the Public Records, unless an exception in Schedule B of the policy identifies the violation; or

d.   A notice of a violation, recorded in the Public Records at Date of Policy, of an enforceable Covenant relating to environmental protection describing any part of the Land and referring to that Covenant, but only to the extent of the violation of the Covenant referred to in that notice, unless an exception in Schedule B of the policy identifies the notice of the violation.

4.   This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from:

a.   any Covenant contained in an instrument creating a lease;

b.   any Covenant relating to obligations of any type to perform maintenance, repair, or remediation on the Land; or

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

c.   except as provided in Section 3.c, any Covenant pertaining to environmental protection of any kind or nature, including hazardous or toxic matters, conditions, or substances.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

[FNTG BRAND]

BY: _____

ALTA Endorsement Form 9.3-06
(Covenants, Conditions and Restrictions-Loan Policy) (Rev. 4/2/12)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                                    SECTION 9

**ENDORSEMENT**

**Attached to Policy No. _____**

**Issued by**

*[FNTG BRAND]*

1.   The insurance provided by this endorsement is subject to the exclusions in Section 4 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

2.   For purposes of this endorsement only:

   a.   "Covenant" means a covenant, condition, limitation or restriction in a document or instrument in effect at Date of Policy.

   b.    "Private Right" means (i) a private charge or assessment; (ii) an option to purchase; (iii) a right of first refusal; or (iv) a right of prior approval of a future purchaser or occupant.

3.   The Company insures against loss or damage sustained by the Insured under this Loan Policy if enforcement of a Private Right in a Covenant affecting the Title at Date of Policy (a) results in the invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage, or (b) causes a loss of the Insured's Title acquired in satisfaction or partial satisfaction of the Indebtedness.

4.       This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from:

   a.   any Covenant contained in an instrument creating a lease;

   b.   any Covenant relating to obligations of any type to perform maintenance, repair, or remediation on the Land;

   c.   any Covenant relating to environmental protection of any kind or nature, including hazardous or toxic matters, conditions, or substances; or

   d.   any Private Right in an instrument identified in Exception(s) _____ in Schedule B.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.


[Witness clause optional]


[FNTG BRAND]


By: _____
            Authorized Signatory


ALTA Endorsement Form 9.6-06
(Private Rights-Loan Policy) (Rev. 4/2/13)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**ENDORSEMENT**

**Attached to Policy No. _____**

**Issued by**

*[FNTG BRAND]*

1.      The insurance provided by this endorsement is subject to the exclusions in Section 5 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

2.      For purposes of this endorsement only:

        a.      "Covenant" means a covenant, condition, limitation or restriction in a document or instrument in effect at Date of Policy.

        b.      "Future Improvement" means a building, structure, road, walkway, driveway, curb, lawn, shrubbery or trees to be constructed on or affixed to the Land in the locations according to    the Plans and that by law will constitute real property.

        c.      "Improvement" means an improvement, including any lawn, shrubbery, or trees, affixed to  either the Land or adjoining land at Date of Policy that by law constitutes real property.

        d.      "Plans" means the survey, site and elevation plans or other depictions or drawings prepared by _(insert name of architect or engineer)_  dated ____, last revised _____, designated as _(insert name of project or project number)_  consisting of ___ sheets.

3.      The Company insures against loss or damage sustained by the Insured by reason of:

        a.      A violation of a Covenant that:

                i.      divests, subordinates, or extinguishes the lien of the Insured Mortgage,

                ii.     results in the invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage, or

                iii.    causes a loss of the Insured's Title acquired in satisfaction or partial satisfaction of the Indebtedness;

        b.      A violation of an enforceable Covenant by an Improvement on the Land at Date of Policy or by a Future Improvement, unless an exception in Schedule B of the policy identifies the violation;

        c.      Enforced removal of an Improvement located on the Land or of a Future Improvement as a result of a violation of a building setback line shown on a plat of subdivision recorded or filed in the Public Records at Date of Policy, unless an exception in Schedule B of the policy identifies the violation; or

        d.      A notice of a violation, recorded in the Public Records at Date of Policy, of an enforceable Covenant relating to environmental protection describing any part of the Land and referring to that Covenant, but only to the extent of the violation of the Covenant referred to in that notice, unless an exception in Schedule B of the policy identifies the notice of the violation.

4.      The Company insures against loss or damage sustained by reason of:

        a.      An encroachment of:

                i.      an Improvement located on the Land at Date of Policy or a Future Improvement, onto adjoining land or onto that portion of the Land subject to an easement; or

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

       ii.        an Improvement located on adjoining land onto the Land at Date of Policy,

unless an exception in Schedule B of the policy identifies the encroachment otherwise insured against in Sections 4.a.i. or 4.a.ii.;

       b.        Damage to an Improvement located on the Land at Date of Policy or a Future Improvement:

          i.        that encroaches onto that portion of the Land subject to an easement excepted in Schedule B, which damage results from the exercise of the right to maintain the easement for the purpose for which it was granted or reserved; or

         ii.        resulting from the future exercise of a right to use the surface of the Land for the extraction or development of minerals or any other subsurface substances excepted from the description of the Land or excepted in Schedule B.

5.       This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from:

       a.        any Covenant contained in an instrument creating a lease;

       b.        any Covenant relating to obligations of any type to perform maintenance, repair, or remediation on the Land;

       c.        except as provided in Section 3.d, any Covenant relating to environmental protection of     any kind or nature, including hazardous or toxic matters, conditions, or substance

       d.        contamination, explosion, fire, vibration, fracturing, earthquake or subsidence; or

       e.        negligence by a person or an Entity exercising a right to extract or develop minerals or other subsurface substances.

       This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]


[FNTG BRAND]


By: _____
Authorized Signatory

ALTA Endorsement Form 9.7-06
(Restrictions, Encroachments, Minerals-Land Under Development-Loan Policy) (4/2/12)
 ©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                                    SECTION 9

**ENDORSEMENT**

**Attached to Policy No. _____**

**Issued by**

*[FNTG BRAND]*

1.      The insurance provided by this endorsement is subject to the exclusions in Section 4 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

2.      For purposes of this endorsement only:

     a.      "Covenant" means a covenant, condition, limitation or restriction in a document or instrument in effect at Date of Policy.

     b.      "Future Improvement" means a building, structure, road, walkway, driveway, curb to be constructed on or affixed to the Land in the locations according to the Plans and that by law will constitute real property, but excluding any crops, landscaping, lawn, shrubbery, or trees.

     c.      "Improvement" means a building, structure located on the surface of the Land, road, walkway, driveway, or curb, affixed to the Land at Date of Policy and that by law constitutes real property, but excluding any crops, landscaping, lawn, shrubbery, or trees.

     d.      "Plans" means the survey, site and elevation plans or other depictions or drawings prepared by (*insert name of architect or engineer*) dated ____, last revised _____, designated as (*insert name of project or project number*) consisting of ___ sheets.

3.      The Company insures against loss or damage sustained by the Insured by reason of:

     a.      A violation of an enforceable Covenant by an Improvement on the Land at Date of Policy or by a Future Improvement, unless an exception in Schedule B of the policy identifies the violation;

     b.      Enforced removal of an Improvement located on the Land or of a Future Improvement as a result of a violation of a building setback line shown on a plat of subdivision recorded or filed in the Public Records at Date of Policy, unless an exception in Schedule B of the   policy identifies the violation; or

     c.      A notice of a violation, recorded in the Public Records at Date of Policy, of an enforceable Covenant relating to environmental protection describing any part of the Land and referring to that Covenant, but only to the extent of the violation of the Covenant referred   to in that notice, unless an exception in Schedule B of the policy identifies the notice of the violation.

4.      This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from:

     a.      any Covenant contained in an instrument creating a lease;

     b.      any Covenant relating to obligations of any type to perform maintenance, repair, or remediation on the Land; or

     c.      except as provided in Section 3.c, any Covenant relating to environmental protection of any kind or nature, including hazardous or toxic matters, conditions, or substances.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]


[FNTG BRAND]

By: _____

Authorized Signatory

ALTA Endorsement Form 9.8-06
(Covenants, Conditions and Restrictions-Land Under Development-Owners Policy) (4/2/12)
©American Land Title Association

*[includes technical correction of 12-3-12]*

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**ENDORSEMENT**

**Attached to Policy No. _____**

**Issued by**

*[FNTG BRAND]*

1.    The insurance provided by this endorsement is subject to the exclusions in Section 4 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

2.    For purposes of this endorsement only:

  a.    "Covenant" means a covenant, condition, limitation or restriction in a document or instrument in effect at Date of Policy.

  b.    "Private Right" means (i) an option to purchase; (ii) a right of first refusal; or (iii) a right of prior approval of a future purchaser or occupant.

3.    The Company insures against loss or damage sustained by the Insured under this Owner's Policy if enforcement of a Private Right in a Covenant affecting the Title at Date of Policy based on a transfer of Title on or before Date of Policy causes a loss of the Insured's Title.

4.    This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from: restriction:

  a.    any Covenant  contained in an instrument creating a lease;

  b.    any Covenant relating to obligations of any type to perform maintenance, repair, or remediation on the Land;

  c.    any Covenant relating to environmental protection of any kind or nature, including hazardous or toxic matters, conditions, or substances; or

  d.    any Private Right in an instrument identified in Exception(s) _____ in Schedule B.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

[FNTG BRAND]

By: _____
   Authorized Signatory

ALTA Endorsement Form 9.9-06
(Private Rights-Owner's Policy) ( 4/2/13)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    SECTION 9

**ENDORSEMENT**

**Attached to Policy No. _____**
**Issued By**

*[FNTG BRAND]*

1. The insurance provided by this endorsement is subject to the exclusions in Section 5 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

2. For the purposes of this endorsement only:

   a. "Covenant" means a covenant, condition, limitation or restriction in a document or instrument in effect at Date of Policy.

   b. "Improvement" means an improvement, including any lawn, shrubbery, or trees, affixed to either the Land or adjoining land at Date of Policy that by law constitutes real property.

3. The Company insures against loss or damage sustained by the Insured by reason of:

   a. A violation at Date of Policy of a Covenant that:

       i. divests, subordinates, or extinguishes the lien of the Insured Mortgage,

       ii. results in the invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage, or

       iii. causes a loss of the Insured's Title acquired in satisfaction or partial satisfaction of the Indebtedness;

   b. A violation on the Land at Date of Policy of an enforceable Covenant, unless an exception in Schedule B of the policy identifies the violation;

   c. Enforced removal of an Improvement located on the Land as a result of a violation, at Date of Policy, of a building setback line shown on a plat of subdivision recorded or filed in the Public Records, unless an exception in Schedule B of the policy identifies the violation; or

   d. A notice of a violation, recorded in the Public Records at Date of Policy, of an enforceable Covenant relating to environmental protection describing any part of the Land and referring to that Covenant, but only to the extent of the violation of the Covenant referred to in that notice, unless an exception in Schedule B of the policy identifies the notice of the violation.

4. The Company insures against loss or damage sustained by reason of:

   a. An encroachment of:

       i. an Improvement located on the Land, at Date of Policy, onto adjoining land or onto that portion of the Land subject to an easement; or

       ii. an Improvement located on adjoining land onto the Land at Date of Policy,

unless an exception in Schedule B of the policy identifies the encroachment otherwise insured against in Sections 4.a.i. or 4.a.ii.;

   b. A final court order or judgment requiring the removal from any land adjoining the Land of an encroachment identified in Schedule B; or

   c. Damage to an Improvement located on the Land, at Date of Policy:

       i. that is located on or encroaches onto that portion of the Land subject to an easement excepted in Schedule B, which damage results from the exercise of

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

the right to maintain the easement for the purpose for which it was granted or reserved; or

ii.  resulting from the future exercise of a right to use the surface of the Land for the extraction or development of minerals or any other subsurface substances excepted from the description of the Land or excepted in Schedule B.

5.    This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from:

a. any Covenant contained in an instrument creating a lease;

b. any Covenant relating to obligations of any type to perform maintenance, repair, or remediation on the Land;

c. except as provided in Section 3.d, any Covenant relating to environmental protection of any kind or nature, including hazardous or toxic matters, conditions, or substances;

d. contamination, explosion, fire, fracturing, vibration, earthquake or subsidence; or

e. negligence by a person or an Entity exercising a right to extract or develop minerals or other subsurface substances.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements

[Witness clause optional]

[FNTG BRAND]

BY: _____

ALTA Endorsement Form 9.10-06
(Restrictions, Encroachments, Minerals-Current Violations-Loan Policy) ( 4/2/13)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    SECTION 10

Return to Table of Contents

### ASSIGNMENT OF MORTGAGE
### ALTA ENDORSEMENT - FORMS 10-06 AND 10.1-06

#### PURPOSE

The ALTA 10-06 endorsement insures the effectiveness of the assignment of the Insured Mortgage and that there have been no releases or reconveyances placed of record other than as shown. The ALTA 10.1-06 provides the same coverage as the 10-06 and gives additional coverage over only certain matters occurring after the original Date of Policy and before the Date of Endorsement, which is a defined term within the endorsement, unless those matters are disclosed by filling in the blanks contained within the endorsement. These matters include:  real estate taxes or assessments; priority of intervening defects, liens or encumbrances; and federal tax liens or bankruptcy proceedings.

**Warning: These forms are not the equivalent of complete date-down endorsements. They provide coverage only for the matters discussed. Any request to add the assignment of the Insured Mortgage to Schedule A without doing a complete policy date down or by use of any other type of endorsement other than these forms must be approved by your Company underwriting advisor.**

#### SECTION OF POLICY AMENDED BY ENDORSEMENT

The policy is modified by naming the assignee under the assignment as the Insured. The endorsement provides additional affirmative coverage against the ineffectiveness of the assignment and the effect of any full or partial releases or reconveyances recorded after the Date of Policy and before the Date of Endorsement. In addition, the ALTA 10.1-06 provides coverage for the matters described above. Both forms of endorsement are conditioned upon the proper delivery and endorsement of the underlying notes.

#### BASIS FOR PROVIDING COVERAGE

Title must be examined **through** the "Date of Endorsement", which is a defined term in the endorsement and must cover the recording of the assignment of the Insured Mortgage. This requirement may vary from the normal procedure of dating an endorsement the day it is issued.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

The Date of Policy is **not** changed except to the extent of the liability assumed under the endorsement for matters specifically addressed in the endorsement. If you find a previous assignment to a different party, without a re-assignment back to the current Insured, you cannot issue this endorsement without approval of your Company underwriting advisor.

The name of the assignee as disclosed by the recorded assignment is to be inserted at item 1.

All modifications, releases or partial releases must be shown at Paragraph No. 2(b) of ALTA 10-06 and at Paragraph No. 2(e) of ALTA 10.1-06.

All taxes that are **due and payable** are shown at Paragraph No. 2(b) of ALTA 10.1-06.

All intervening matters that gain priority over the Insured Mortgage must be shown at Paragraph No. 2(c) of ALTA 10.1-06.

Any federal tax liens and/or notices of bankruptcy should be shown at Paragraph No. 2(d) of ALTA 10.1-06.  Please note that federal tax liens must be shown at 2(d) *even if you have determined that these liens are junior to the mortgage and therefore are not shown at 2(c)*, since the existence of the notice of federal tax lien on the record does affect the title.

In addition, for this and any other type of endorsement or policy that insures a subsequent assignee of an Insured Mortgage the following requirements must be met if the Insured Mortgage is <u>more than one year old and the loan is **not known**</u> to be non-performing:

- If the Land is  one-to-four family residential property and the assignor is a non-institutional lender; OR
- If the land is commercial or multi-family (i.e., other than one to four family), regardless of the type of lender THEN

you must require an estoppel statement from the borrower acknowledging the existence of the debt and stating that the debt is still valid and free of all defenses in law and equity by use of this requirement:

> *A written sworn statement by the record owner of the land, stating that the lien of the mortgages(s) is (are) still good and valid, and in all respects, free from all defenses, both in law and in equity, should be furnished to the Company.*

For large portfolios this may be impractical for the assignor to obtain. Nonetheless we should not insure the assignment unless we have something which addresses the current status of the debt. Your Company underwriting advisor must be consulted for guidance.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

For insurance of assignments of loans **known to be non-performing**, which you might discover when you request an estoppel statement, you should raise the following exception, which addresses the possibility that the loan is so far past due as to be unenforceable and excepts the consequences of other actions of the lender that may be raised as defenses to the foreclosure.

*Consequences, if any, arising out of any inability to foreclose or delay in foreclosing the Insured Mortgage(s) based upon the expiration of any statute of limitations, or challenges raised to the priority or enforceability of the Insured Mortgage based upon the acts or conduct of the original or subsequent lender.*

Any offer of an indemnity to cover these issues must be referred to Regional Counsel by your Company underwriting advisor.

## MODIFICATION

In the event that modification of an endorsement is requested, it is necessary to consider your state regulatory requirements for filing and approval of forms. If the endorsement is modified, the endorsement is not an ALTA form and should not reference ALTA in the title. You must obtain the approval of the Company's underwriting adviser before complying with any request for a modification.

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**ENDORSEMENT**

Attached to Policy No. _____

**Issued By**
**[FNTG BRAND]**

1.      The name of the Insured at Date of Endorsement and referred to in this endorsement as the "Assignee" is amended to read:

2.      The Company insures against loss or damage sustained by the Assignee by reason of:

   a.      The failure of the following assignment to vest title to the Insured Mortgage in the Assignee:

   b.      Any modification, partial or full reconveyance, release, or discharge of the lien of the Insured Mortgage recorded on or prior to Date of Endorsement in the Public Records other than those shown in the policy or a prior endorsement, except:

This endorsement does not insure against loss or damage, and the Company will not pay costs, attorneys' fees, or expenses, by reason of any claim that arises out of of the transaction creating the  assignment by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws that is based on:

   1.  the assignment being deemed a fraudulent conveyance or fraudulent transfer; or

   2. the assignment being deemed a preferential transfer.

This endorsement shall be effective provided that, at Date of Endorsement, (1) the note or notes secured by the lien of the Insured Mortgage have been properly endorsed and delivered to the Assignee, or (2) if the note or notes are transferable records, the Assignee has "control" of the single authoritative copy of each "transferable record" as these terms are defined by applicable electronic transaction laws.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

Date of Endorsement_____

[Witness clause optional]


[FNTG BRAND]


BY: _____


ALTA Endorsement Form 10-06
(Assignment) (Rev. 02/03/10)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                                    **SECTION 10**

**ENDORSEMENT**
Attached to Policy No. _____

**Issued By**
**[FNTG BRAND]**

1.       The name of the Insured at Date of Endorsement and referred to in this endorsement as the "Assignee" is amended to read:

2.       The Company insures against loss or damage sustained by the Assignee by reason of:

         a.       The failure of the following assignment to vest title to the Insured Mortgage in the Assignee:

         b.       Any liens for taxes or assessments that are due and payable on Date of Endorsement, except:

         c.       Lack of priority of the lien of the Insured Mortgage over defects, liens, or encumbrances other than those shown in the policy or a prior endorsement, except:

         d.       Notices of federal tax liens or notices of pending bankruptcy proceedings affecting the Title and recorded subsequent to Date of Policy in the Public Records and on or prior to Date of Endorsement, except:

         e.       Any modification, partial or full reconveyance, release or discharge of the lien of the Insured Mortgage recorded on or prior to Date of Endorsement in the Public Records other than those shown in the policy or a prior endorsement, except:

This endorsement does not insure against loss or damage, and the Company will not pay costs, attorneys' fees, or expenses, by reason of any claim that arises  out of the transaction creating the  assignment by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws that is based on:

         1.  the assignment being deemed a fraudulent conveyance or fraudulent transfer; or

         2. the assignment being deemed a preferential transfer.

This endorsement shall be effective provided that, at Date of Endorsement, (1) the note or notes secured by the lien of the Insured Mortgage have been properly endorsed and delivered to the Assignee, or (2) if the note or notes are transferable records, the Assignee has "control" of the single authoritative copy of each "transferable record" as these terms are defined by applicable electronic transaction laws.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an  express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

Date of Endorsement _____

[Witness clause optional]

[FNTG BRAND]


BY: _____

ALTA Endorsement Form 10.1-06
(Assignment and Date Down) (Rev.02/03/10)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

Return to Table of Contents

## MORTGAGE MODIFICATION
## ALTA ENDORSEMENT - FORMS 11-06 & 11.1-06

### PURPOSE

These endorsements were created to insure lenders that the modification of the Insured Mortgage evidenced by the document referred to within the endorsement does not impair the validity, enforceability or priority of the Insured Mortgage as of the Date of Endorsement, which is a defined term within the endorsements. In addition, the 11.1-06 insures against loss based upon a specific matter not being subordinate to the lien of the Insured Mortgage.

### SECTION OF POLICY AMENDED BY ENDORSEMENT

No specific sections of the policy are amended by these endorsements. However, additional affirmative coverages are added.

### BASIS FOR PROVIDING COVERAGE

Title must be examined **through** the Date of Endorsement, which must cover the recording of the modification of the Insured Mortgage. This requirement may vary from the normal procedure of dating an endorsement the day it is issued. The Date of Policy is not changed except to the extent of the liability assumed under the endorsement for matters specifically addressed in the endorsement.

The modification agreement must be examined to determine that it does not contain anything which will impair the validity, enforceability or priority of the Insured Mortgage under state law. If anything is found in the agreement which will impair validity, enforceability or priority, then intervening matters such as liens or outstanding taxes must be shown in the space provided below Paragraph No. 2.  For example, if the law in your state provides that a modification of a mortgage that increases the principal will subject that additional principal to intervening matters, then all intervening matters disclosed by the title examination must be shown. If issuing the 11.1-06, any matter that is specifically subordinated to the Insured Mortgage by separate document or state law may be shown in the space following Paragraph No. 3.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

These endorsements do not extend the Date of Policy so as to bring forward coverages contained in any other endorsements that are a part of the policy. To the extent that the examination covering the recording of the modification agreement discloses any matter which affects the coverages afforded by other endorsements, they should be reflected on the office file for consideration by future examiners.

These endorsements contain a "creditors' rights" exception relating to the modification agreement.

This was included to cover those situations where "creditor's rights" coverage may have been given in the underlying policy based on the terms of the original mortgage or deed of trust and the structure of the original transaction. The modification could change those terms or structure.  Any request for coverage over or deletion of this provision of the endorsement must be referred to the Company's underwriting adviser.

**MODIFICATION**

In the event that modification of an endorsement is requested, it is necessary to consider your state regulatory requirements for filing and approval of forms.  If the endorsement is modified, the endorsement is not an ALTA form and should not reference ALTA in the title.  You must obtain the approval of the Company's underwriting adviser before complying with any request for a modification.

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT

Attached to Policy No. _____

**Issued By**
**[FNTG BRAND]**

The Company insures against loss or damage sustained by the Insured by reason of:

1.    The invalidity or unenforceability of the lien of the Insured Mortgage upon the Title at Date of Endorsement as a result of the agreement dated ____ recorded _____ ("Modification"); and

2.    The lack of priority of the lien of the Insured Mortgage, at Date of Endorsement, over defects in or liens or encumbrances on the Title, except for those shown in the policy or any prior endorsement and except:       ADD EXCEPTIONS HERE


This endorsement does not insure against loss or damage, and the Company will not pay costs, attorneys' fees, or expenses, by reason of any claim that arises out of the transaction creating the Modification by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws that is based on:

1.    the Modification being deemed a fraudulent conveyance or fraudulent transfer; or

2.    the Modification being deemed a preferential transfer except where the preferential transfer results from the failure

        a.    to timely record the instrument of transfer; or

        b.    of such recordation to impart notice to a purchaser for value or to a judgment or lien creditor.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

Date of Endorsement _____

[Witness clause optional]


[FNTG BRAND]

BY: _____

ALTA Endorsement Form 11-06
(Mortgage Modification) (6/17/06)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT
Attached to Policy No. _____

**Issued By**
**[FNTG BRAND]**

The Company insures against loss or damage sustained by the Insured by reason of:

1.    The invalidity or unenforceability of the lien of the Insured Mortgage upon the Title at Date of Endorsement as a result of the agreement dated ____ , recorded ____, ("Modification"); and

2.    The lack of priority of the lien of the Insured Mortgage, at Date of Endorsement, over defects in or liens or encumbrances on the Title, except for those shown in the policy or any prior endorsement and except:       ADD EXCEPTIONS HERE

3.    The following matters not being subordinate to the lien of the Insured Mortgage:
ADD SUBORDINATE MATTERS HERE

     This endorsement does not insure against loss or damage, and the Company will not pay costs, attorneys' fees, or expenses, by reason of any claim that arises out of the transaction creating the Modification by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws that is based on:

1.    the Modification being deemed a fraudulent conveyance or fraudulent transfer; or

2.    the Modification being deemed a preferential transfer except where the preferential transfer results from the failure

     a.    to timely record the instrument of transfer; or

     b.    of such recordation to impart notice to a purchaser for value or to a judgment or lien creditor.

     This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

Date of Endorsment _____

[Witness clause optional]

[FNTG BRAND]

BY: _____

ALTA Endorsement Form 11.1-06
(Mortgage Modification with Subordination) (10/22/09)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    SECTION 12

**Return to Table of Contents**

**AGGREGATION**

**ALTA ENDORSEMENT - FORM 12-06**


**PURPOSE**


These endorsements are also known as "tie-in" endorsements.   Mortgages covering many parcels in different recording districts or jurisdictions may each be recorded for the full amount of the secured indebtedness, or the allocated collateral value of each site, or a combination of full and allocated values.    The allocated amount is often used in states which impose a mortgage tax.   In any case, the lender views the transaction as one debt and wants insurance coverage for the total amount of the secured indebtedness.   Instead of combining all of the parcels into one large loan policy, the aggregation endorsement allows an insurer to issue a number of policies for lesser amounts but to tie the policies together so that the Insured can aggregate the coverage and take advantage of any increases in the value of a particular parcel should there be a loss. Form 12-06 can be used for aggregating policies on sites all located in a single state or sites located in multiple states none of which have state statutory limitations on the amount which can be insured.  Form 12.1-06 is intended to be used for aggregating policies in multiple states one or more of which have state statutory limitations on the amount which can be insured.


**SECTIONS OF POLICY AMENDED BY ENDORSEMENT**


This endorsement changes the provisions of Conditions 8(a)(i) of the  ALTA Loan Policy so that the Amount of Insurance available to cover a loss is the aggregate of the Amount of Insurance available under the policy to which this endorsement is attached plus the Amounts of Insurance available under the other policies identified in this endorsement.  Effective April 2, 2013 Form 12-06 was modified by adding new paragraphs which change the provisions of Sections 7(a)(i), 8(a), 8(b), 10 of the Conditions of the ALTA Loan Policy.  New Form 12.1-06 also contains the new paragraphs.  These new paragraphs clarify the effect of the endorsement on the options of the Company under the policy in the event of a claim and the extent of the Company's liability.

**BASIS FOR PROVIDING COVERAGE**


If a Loan Policy is issued insuring more than one parcel, the liability for a Title defect affecting any one of the parcels is not limited by an apportioned amount of insurance allocated to that parcel. Therefore, the coverage can be shifted among the parcels from those which are not affected by a

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                                    SECTION 12

defect causing a loss to a parcel affected by such a defect.   If the affected property has increased in value since the policy was issued, this shift of coverage provides protection up to the parcel's increased value without the face amount of the policy being increased.  This is basically the theory behind this coverage.

If one policy could be issued covering multiple parcels, an aggregation endorsement would not be necessary.   Since a single policy covering all parcels is often not feasible because policy forms, rates and other regulatory issues vary between states, or such a policy could result in a highly complex policy when attempting to cover multiple parcels, with all of their individual exceptions, even within the same state, the ALTA 12-06 was designed to reach the same results as a single policy insuring multiple parcels.

Example:  There is a mortgage securing a debt of $10 million.  The $10 million mortgage is recorded against a parcel in Illinois and a parcel in California. The Illinois and California policies are each to be issued for $5 million, based on the lender's evaluation. The tie-in endorsement would allow the lender to make a claim of up to $10 million against either parcel, if the parcel against which the claim is made had increased in value to that extent. In no event would the total liability under both policies be more than $10 million.

You may be asked to issue an alternative format in which both the Illinois and California policies would be issued for a face amount of $10 million but each would include an endorsement limiting our total liability to $10 million under both policies notwithstanding the fact that the sum of the two policies is $20 million. **This format is not acceptable**. We should never issue a policy with an Amount of Insurance that exceeds the amount for which premium was collected for the insured parcel.   In addition, this format could cause the Company to over-reserve based on the Amount of Insurance reported for each policy, and perhaps to pay additional premium tax that would not otherwise be due.

ALTA Form 12.1-06 was designed for multistate transactions involving one or more states with statutory limitations which are less than the aggregate amount of insurance under all the policies to be issued in the transaction.  This form allows the full amount of available coverage to be provided for sites in state in which the statutory limit is not a problem, while at the same time limiting coverage in states in which the statutory limit prevents the full amount of coverage from being provided.  This form may **not** be used without the approval of the Reinsurance Department in transactions in which the aggregate amount of insurance will exceed the self-imposed limit of the Fidelity family, or if a party to the transaction is requiring reinsurance from an outside company.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

Example:  The policies in a multistate transaction will aggregate $100 million.  The sites to be insured are located in states X, Y, and Z.  In state X the policy aggregate is $70 million, and there is no statutory limit; in state Y the policy aggregate is $20 million, and the state statutory limit is also $20 million; and in state Z the policy aggregate is $10 million and so is the statutory limit.  When Form 12.1-06 is completed, the Aggregate Amount of Insurance which will be shown in section 3.a. will be $100 million.  This will also be the amount of coverage available for the sites in state X since there is no statutory limit in that state.  In section 3.b. of the form state Y will be listed with an Aggregate Amount of Insurance of $20 million, as will state Z with an Aggregate Amount of Insurance of $10 million.  The net effect is to provide the full amount of coverage available under the policies to the sites in state X, while limiting coverage for the sites in states Y and Z to the applicable statutory limits.

The following conditions apply to the aggregation endorsements:

1.    All of the loan policies to which either of the endorsements will be attached must be of the same type.

2.    The loan amount must be secured by mortgages on two or more parcels.

3.    The Insured Mortgage must state that each secures the entire Indebtedness or the sum of the amounts secured by all of the Insured Mortgages must equal the entire Indebtedness.

4.    The Amount of Insurance shown on Schedule A of  any policy must be equal to the amount the Insured allocates to the property described in Schedule A and not to the total aggregate amount shown on the tie-in endorsement.

5.    Policies of other companies, including our sister companies, **cannot** be tied in with policies issued by any one particular company.

6.    If Form 12.1-06 is requested for a transaction in which the aggregate amount of insurance will exceed the self-imposed limit of the Fidelity family, or if a party to the transaction is requiring reinsurance from an outside the Fidelity family for any transaction, you must contact the Reinsurance Department before committing to issue the form.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

This endorsement is not available in all states.   You must verify it is available before agreeing to issue it.

**MODIFICATION**

In the event that modification of an endorsement is requested, it is necessary to consider your state regulatory requirements for filing and approval of forms.  If the endorsement is modified, the endorsement is not an ALTA form and should not reference ALTA in the title.  You must obtain the approval of the Company's underwriting advisor before complying with any request for a modification.

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT

Attached to Policy No.   _____

**Issued By**

***[FNTG BRAND]***

1.  The following policies are issued in conjunction with one another:

<u>POLICY NUMBER</u>:            <u>STATE</u>:              <u>AMOUNT OF INSURANCE</u>:

$

$

$

2.  The amount of insurance available to cover the Company's liability for loss or damage under this policy at the time of payment of loss shall be the Aggregate Amount of Insurance defined in Section 3 of this endorsement.

3.  Subject to the limits in Section 4 of this endorsement, the Aggregate Amount of Insurance under these policies is $ _____.

4.  Section 7(a)(i) of the Conditions of this policy is amended to read:

**7. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY**

In case of a claim under this policy, the Company shall have the following additional options:

(a)  to pay or tender payment of the lesser of the value of  the Title as insured or the Aggregate Amount of Insurance applicable under this policy at the date the claim was made by the Insured Claimant, or to purchase the Indebtedness.

(i)  to pay or tender payment of the lesser of the value of the Title as insured at the date the claim was made by the Insured Claimant, or the Aggregate Amount of Insurance applicable under this policy together with any cost, attorneys' fees, and costs and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay; or

5.  Section 8(a) and 8(b) of the Conditions of this policy are amended to read:

**8. DETERMINATION AND EXTENT OF LIABILITY**

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.

(a) The extent of liability of the Company for loss or damage under this policy shall not exceed the least of

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 12**

(i)  the Aggregate Amount of Insurance,

(ii)  the Indebtedness,

(iii)  the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy, or

(iv)  if a government agency or instrumentality is the Insured Claimant, the amount it paid in the acquisition of the Title or the Insured Mortgage in satisfaction of its insurance contract or guaranty.

(b)  If the Company pursues its rights under Section 5 of these Conditions and is unsuccessful in establishing the Title or the lien of the Insured Mortgage, as insured, the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as the date it is settled and paid.

6.  Section 10  of the Conditions of this policy is amended to read:

**10.  REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY**

(a)  All payments under this policy, except payments made for costs, attorneys' fees, and expenses, shall reduce the Aggregate Amount of Insurance by the amount of the payment.

(b)  However, any payments made prior to the acquisition of Title as provided in Section 2 of these Conditions shall not reduce the Aggregate Amount of Insurance afforded under this endorsement except to the extent that the payments reduce the Indebtedness.

(c)  The voluntary satisfaction or release of the Insured Mortgage shall terminate all liability of the Company under this policy, except as provided in Section 2 of these Conditions, but it will not reduce the Aggregate Amount of Insurance for the other policies identified in Section 1 of this endorsement.


This endorsement is issued as part of the policy.   Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.   To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls.   Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.


[Witness clause optional]


[FNTG BRAND]

BY: _____

ALTA Endorsement Form 12-06
(Aggregation-Loan) (rev. 4/2/13)
© American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**ENDORSEMENT**

**Attached to Policy No. _____**

**Issued By**

***[FNTG BRAND]***

1. The following policies are issued in conjunction with one another:

| POLICY NUMBER: | STATE: | AMOUNT OF INSURANCE: |
|---|---|---|
| | | $ |
| | | $ |
| | | $ |

2. The amount of insurance available to cover the Company's liability for loss or damage under this policy at the time of payment of loss shall be the Aggregate Amount of Insurance defined in Section 3 of this endorsement.

3. The Aggregate Amount of Insurance under this policy is either:

   a. $ _____; or

   b. If the Land is located in one of the states identified in this subsection, then the Aggregate Amount of Insurance is restricted to the amount shown below:

| STATE | AGGREGATE AMOUNT OF INSURANCE |
|---|---|
| | $ |
| | $ |

4. Section 7(a)(i) of the Conditions of this policy is amended to read:

   **7. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY**

   In case of a claim under this policy, the Company shall have the following additional options:

   (a)    to pay or tender payment of the lesser of the value of  the Title as insured or the Aggregate Amount of Insurance applicable under this policy at the date the claim was made by the Insured Claimant, or to purchase the Indebtedness.

   (i) To pay or tender payment of the lesser of the value of the Title as insured at the date the claim was made by the Insured Claimant, or the Aggregate Amount of Insurance applicable under this policy, together with any cost, attorneys' fees, and costs and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay; or

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

Case 2:21-cv-00538-GMN-NJK    Document 1-1    Filed 04/02/21    Page 314 of 527

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                          SECTION 12

5.   Section 8(a) and 8(b) of the Conditions of this policy are amended to read:

### 8. DETERMINATION AND EXTENT OF LIABILITY

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.

(a) The extent of liability of the Company for loss or damage under this policy shall not exceed the least of

   (i)   the Aggregate Amount of Insurance for the State where the Land is located,

   (ii)  the Indebtedness,

   (iii)  the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy, or

   (iv) if a government agency or instrumentality is the Insured Claimant, the amount it paid in the acquisition of the Title or the Insured Mortgage in satisfaction of its insurance contract or guaranty.

(b) If the Company pursues its rights under Section 5 of these Conditions and is unsuccessful in establishing the Title or the lien of the Insured Mortgage, as insured, the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as the date it is settled and paid.

6.   Section 10 of the Conditions of this policy is amended to read:

### 10. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY

(a) All payments under this policy, except payments made for costs, attorneys' fees, and expenses, shall reduce the applicable Aggregate Amount of Insurance by the amount of the payment.

(b) If this policy insures the Title to Land located in a state identified in Section 3 b. of this endorsement:

   (i)   all payments under this policy, except payments made for costs, attorneys' fees, and expenses, shall reduce the Aggregate Amount of Insurance  by the amount of the payment; but

   (ii)  a payment made for loss or damage on Land insured in one of the policies identified in Section 1 on Land located outside this state shall not reduce the Aggregate Amount of Insurance in Section 3.b. of this endorsement until the Aggregate Amount of Insurance in Section 3.a. is reduced below the  Aggregate Amount of Insurance in Section 3.b .

(c) However, any payments made prior to the acquisition of Title as provided in Section 2 of these Conditions shall not reduce the Aggregate Amount of Insurance afforded under this endorsement except to the extent that the payments reduce the Indebtedness.

(d) The voluntary satisfaction or release of the Insured Mortgage shall terminate all liability of the Company under this policy, except as

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

provided in Section 2 of these Conditions, but it will not reduce the Aggregate Amount of Insurance for the other policies identified in Section 1 of this endorsement.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

[FNTG BRAND]

By: _____
          Authorized Signatory

ALTA Endorsement Form 12.1-06
(Aggregation- State Limits-Loan) (4/2/13)
© American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

Return to Table of Contents

## LEASEHOLD-OWNER'S AND LEASEHOLD-LOAN
## ALTA ENDORSEMENT – FORMS 13-06 AND 13.1-06

### PURPOSE

The ALTA Endorsement Forms 13-06 and 13.1-06 were created to be attached to the ALTA Owner's Policy and ALTA Loan Policy respectively.  They were revised April 2, 2012. They are intended to be used either with policies covering only Leasehold Estates or for those that insure both Leasehold Estates and the ownership of improvements located on them.

### SECTIONS OF POLICY AMENDED BY ENDORSEMENT

The previous ALTA Leasehold Owner's and Leasehold Loan Policies were designed to provide insurance for space tenants that had no significant investment in Tenant Improvements.  As a result, these policies did not provide compensation for the loss of Tenant Improvements or for the value of the loss of use of the leasehold for legitimate purposes as the result of a matter covered by the policies.

The ALTA 13-06 and 13.1-06 provide all of the coverages previously provided by the former leasehold policy forms but in addition include the value of improvements in the calculation of losses resulting from eviction based on a matter insured by the current policy forms.  Similarly, improvement value is included if the Insured is unable to use the property for its intended purpose as a result of a matter covered by the policy, assuming the lease permits such a use.

Reimbursement to the Insured for specified out-of-pocket construction costs for improvements on the land that were not substantially completed at the time of eviction is also provided.  Similar coverage is provided to insured leasehold lenders for improvements they construct after they acquire the property by foreclosure or conveyance in lieu thereof.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 13**

Finally, both endorsements also increase to 100 miles the distance for which the Company will pay the costs of relocating personal property.

The April 2, 2012 revision consists of:

- A revision of the definition of "Personal Property" to make it consistent with the use of the term in other endorsements such as the ALTA 36-06 (Energy Project – Leasehold/Easement –Owners) and the ALTA 36.2-06 (Energy Project –Leasehold-Owners).

- A revision of the definition of "Tenant Leasehold Improvements" to relate only to the extent the Insured has rights in such Improvements.

- A revision of the "Valuation of Estate or Interest Insured" to clarify that it covers the entire Title, or any portion of it, from which the Insured suffers eviction. In addition, it clarifies that the loss must come from a defect insured against by the policy.

- "Additional items of loss" is clarified to make coverage applicable to the portion of Land from which the Insured is Evicted, if it is not the entire Land, and references the Condition in the policy that determines the measure of loss (Owners Policy, Section 8(a)(ii) and Loan Policy, Section 8(a)(iii)).

- Adds the cost of restoring the property to the extent it is damaged because of Eviction.

- Adds a limitation that the coverage does not include loss resulting from environmental damage or contamination, to conform to policy provisions.

**BASIS FOR PROVIDING COVERAGE**

The ALTA Leasehold Owner's and Leasehold Loan Policies were withdrawn as official ALTA Forms.  The ALTA 13-06 and 13.1-06 were meant to replace the old policy forms.  Since these

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

endorsements give more coverage than the old policies, it is not expected that there will be any requests for the old forms, which now must be titled "formerly ALTA" to indicate that they have been withdrawn by ALTA.

These endorsements will be issued when the customer is seeking the additional coverages provided therein. The searching and examining procedures for insuring leaseholds remain the same, as does the modification of Schedule A. The estate or interest in the Land is not a Fee, but rather the Leasehold Estate created by and between the parties, with a reference to the underlying lease information. The entire lease must be examined, and many states require any short form lease or memorandum of the lease to <u>contain the signatures of both parties</u> to give effective constructive notice on the record of the tenants' rights and interests (if the full lease is not recorded).

Consult your Company underwriting advisor for instructions on how to correctly modify the fee policies for use with these endorsements.

<div align="center">

**MODIFICATION**

</div>

In the event that modification of an endorsement is requested, it is necessary to consider your state regulatory requirements for filing and approval of forms. If the endorsement is modified, the endorsement is not an ALTA form and should not reference ALTA in the title. You must obtain the approval of the Company's underwriting advisor before complying with any request for a modification.

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT
Attached to Policy No. _____

**Issued By**
**[FNTG BRAND]**

1.  As used in this endorsement, the following terms shall mean:

    a.  "Evicted" or "Eviction": (a) the lawful deprivation, in whole or in part, of the right of possession insured by this policy, contrary to the terms of the Lease or (b) the lawful prevention of the use of the Land or the Tenant Leasehold Improvements for the purposes permitted by the Lease, in either case as a result of a matter covered by this policy.
    b.  "Lease": the lease described in Schedule A.
    c.  "Leasehold Estate": the right of possession granted in the Lease for the Lease Term.
    d.  "Lease Term": the duration of the Leasehold Estate, as set forth in the Lease, including any renewal or extended term if a valid option to renew or extend is contained in the Lease.
    e.  "Personal Property":  property, in which and to the extent the Insured has rights, located on or affixed to the Land on or after Date of Policy that by law does not constitute real property because (i) of its character and manner of attachment to the Land and (ii) the property can be severed from the Land without causing material damage to it or to the Land.
    f.  "Remaining Lease Term": the portion of the Lease Term remaining after the Insured has been Evicted.
    g.  "Tenant Leasehold Improvements": Those improvements, in which and to the extent the Insured has rights, including landscaping, required or permitted to be built on the Land by the Lease that have been built at the Insured's expense or in which the Insured has an interest greater than the right to possession during the Lease Term.

2.  Valuation of Estate or Interest Insured:

If in computing loss or damage it becomes necessary to value the Title, or any portion of it, as the result of an Eviction of the Insured, then, as to that portion of the Land from which the Insured is Evicted, that value shall consist of the value for the Remaining Lease Term of the Leasehold Estate and any Tenant Leasehold Improvements existing on the date of the Eviction.  The Insured Claimant shall have the right to have the Leasehold Estate and the Tenant Leasehold Improvements affected by a defect insured against by the policy valued either as a whole or separately.  In either event, this determination of value shall take into account rent no longer required to be paid for the Remaining Lease Term.

3.  Additional items of loss covered by this endorsement:

If the Insured is Evicted, the following items of loss, if applicable to that portion of the Land from which the Insured is Evicted shall be included, without duplication, in computing loss or damage incurred by the Insured, but not to the extent that the same are included in the valuation of the Title determined pursuant to Section 2 of this endorsement, any other endorsement to the policy or Section 8(a)(ii) of the Conditions:

    a.  The reasonable cost of (i) removing and relocating any Personal Property that the Insured has the right to remove and relocate, situated on the Land at the time of Eviction,(ii) transportation of that Personal Property for the initial one hundred miles incurred in connection with the relocation,(iii) repairing the Personal Property damaged by reason of the removal and relocation, and (iv) restoring the Land to the extent damaged as a result of the removal and relocation of the Personal Property and required of the Insured solely because of the Eviction .

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

b.  Rent or damages for use and occupancy of the Land prior to the Eviction that the Insured as owner of the Leasehold Estate may be obligated to pay to any person having paramount title to that of the lessor in the Lease.

c.  The amount of rent that, by the terms of the Lease, the Insured must continue to pay to the lessor after Eviction with respect to the portion of the Leasehold Estate and Tenant Leasehold Improvements from which the Insured has been Evicted.

d.  The fair market value, at the time of the Eviction, of the estate or interest of the Insured in any lease or sublease permitted by the Lease and made by Insured as lessor of all or part of the Leasehold Estate or the Tenant Leasehold Improvements.

e.  Damages caused by the Eviction that the Insured is obligated to pay to lessees or sublessees on account of the breach of any lease or sublease permitted by the Lease and made by the Insured as lessor of all or part of the Leasehold Estate or the Tenant Leasehold Improvements.

f.  The reasonable cost to obtain land use, zoning, building and occupancy permits, architectural and engineering services and environmental testing and reviews for a leasehold reasonably equivalent to the Leasehold Estate.

g.  If Tenant Leasehold Improvements are not substantially completed at the time of Eviction, the actual cost incurred by the Insured, less the salvage value, for the Tenant Leasehold Improvements up to the time of Eviction.  Those costs include costs incurred to obtain land use, zoning, building and occupancy permits, architectural and engineering services, construction management services, environmental testing and reviews, and landscaping.

4.  This endorsement does not insure against loss, damage or costs of remediation (and the Company will not pay cost, attorneys' fees or expenses) resulting from environmental damage or contamination.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

[FNTG BRAND]

BY: _____

ALTA Endorsement Form 13-06
(Leasehold – Owners) (Rev. 4/2/12)
© American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT
Attached to Policy No. _____
**Issued By**
**[FNTG BRAND]**

1.        As used in this endorsement, the following terms shall mean:

   a.        "Evicted" or "Eviction": (a) the lawful deprivation, in whole or in part, of the right of possession insured by this policy, contrary to the terms of the Lease or (b) the lawful prevention of the use of the Land or the Tenant Leasehold Improvements for the purposes permitted by the Lease, in either case as a result of a matter covered by this policy.

   b.        "Lease": the lease described in Schedule A.

   c.        "Leasehold Estate": the right of possession granted in the Lease for the Lease Term.

   d.        "Lease Term": the duration of the Leasehold Estate, as set forth in the Lease, including any renewal or extended term if a valid option to renew or extend is contained in the Lease.

   e.        "Personal Property": property, in which and to the extent the Insured has rights, located on or affixed to the Land on or after Date of Policy that by law does not constitute real property because (i) of its character and manner of attachment to the Land and (ii) the property can be severed from the Land without causing material damage to the property or to the Land.

   f.        "Remaining Lease Term": the portion of the Lease Term remaining after the Tenant has been Evicted.

   g.        "Tenant": the tenant under the Lease and, after acquisition of all or any part of the Title in accordance with the provisions of Section 2 of the Conditions of the policy, the Insured Claimant.

   h.        "Tenant Leasehold Improvements": Those improvements, in which and to the extent the Insured has rights, including landscaping, required or permitted to be built on the Land by the Lease that have been built at the Tenant's expense or in which the Tenant has an interest greater than the right to possession during the Lease Term.

2.        Valuation of Estate or Interest Insured:

   If in computing loss or damage it becomes necessary to value the Title, or any portion of it, as the result of an Eviction of the Tenant, then, as to that portion of the Land from which the Tenant is Evicted, that value shall consist of the value for the Remaining Lease Term of the Leasehold Estate and any Tenant Leasehold Improvements existing on the date of the Eviction.  The Insured Claimant shall have the right to have the Leasehold Estate and the Tenant Leasehold Improvements affected by a defect insured against by the policy valued either as a whole or separately.  In either event, this determination of value shall take into account rent no longer required to be paid for the Remaining Lease Term.

3.        Additional items of loss covered by this endorsement:

   If the Insured acquires all or any part of the Title in accordance with the provisions of Section 2 of the Conditions of this policy and thereafter is Evicted, the following items of loss, if applicable to that portion of the Land from which the Insured is Evicted shall be included, without duplication, in computing loss or damage incurred by the Insured, but not to the extent that the same are included in the valuation of the Title determined pursuant to Section 2 of this endorsement, any other endorsement to the policy, or Section 8(a)(iii) of the Conditions:

   a.        The reasonable cost of (i) removing and relocating any Personal Property that the Insured has the right to remove and relocate, situated on the Land at the time

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

of Eviction,(ii) transportation of that Personal Property for the initial one hundred miles incurred in connection with the relocation,(iii) repairing the Personal Property damaged by reason of the removal and relocation, and (iv) restoring the Land to the extent damaged as a result of the removal and relocation of the Personal Property and required of the Insured solely because of the Eviction

b.    Rent or damages for use and occupancy of the Land prior to the Eviction that the Insured as owner of the Leasehold Estate may be obligated to pay to any person having paramount title to that of the lessor in the Lease.

c.    The amount of rent that, by the terms of the Lease, the Insured must continue to pay to the lessor after Eviction with respect to the portion of the Leasehold Estate and Tenant Leasehold Improvements from which the Insured has been Evicted.

d.    The fair market value, at the time of the Eviction, of the estate or interest of the Insured in any lease or sublease permitted by the Lease and made by Tenant as lessor of all or part of the Leasehold Estate or the Tenant Leasehold Improvements.

e.    Damages caused by the Eviction that the Insured is obligated to pay to lessees or sublessees on account of the breach of any lease or sublease permitted by the Lease and made by the Tenant as lessor of all or part of the Leasehold Estate or the Tenant Leasehold Improvements.

f.    The reasonable cost to obtain land use, zoning, building and occupancy permits, architectural and engineering services and environmental testing and reviews for a replacement leasehold reasonably equivalent to the Leasehold Estate.

g.    If Tenant Leasehold Improvements are not substantially completed at the time of Eviction, the actual cost incurred by the Insured, less the salvage value, for the Tenant Leasehold Improvements up to the time of Eviction. Those costs include costs incurred to obtain land use, zoning, building and occupancy permits, architectural and engineering services, construction management services, environmental testing and reviews, and landscaping.

4.    This endorsement does not insure against loss, damages, or costs of remediation (and the Company will not pay cost, attorneys' fees or expenses) resulting from environmental damage or contamination.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

 [Witness clause optional]

[FNTG BRAND]

BY: _____

ALTA Endorsement Form 13.1-06
(Leasehold – Loan) (Rev. 4/1/12)
© American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 14**

Return to Table of Contents

### FUTURE ADVANCES
### ALTA ENDORSEMENT – FORMS 14-06, 14.1-06, 14.2-06 and 14.3-06

#### PURPOSE

These endorsements, like the Revolving Credit Endorsements discussed in Section 60, affirmatively insure the priority and enforceability of the lien of the Insured Mortgage with respect to future advances and repayments and re-advances of Indebtedness. In addition, they include coverage for the consequences of a variable rate, including possible negative amortization (or interest on interest), as discussed in Section 6. These endorsements also cover the effect on the priority and enforceability of the Insured Mortgage of the Indebtedness having been reduced to zero before being increased by subsequent advances ("zero-balance"), and state law requirements to secure these advances not having been met. Unique to the 14.3-06 (Reverse Mortgages) is additional coverage for failure of the Insured Mortgage to state a term or maximum dollar amount, and failure of the mortgagors to be at least 62 years old.

#### SECTIONS OF POLICY AMENDED BY ENDORSEMENT

Each endorsement modifies Exclusions from Coverage No. 3(d) and Conditions No. 1 (d)(ii). They also expand the coverage granted by Covered Risks 9 and 10 to those amounts included within the definition of Indebtedness at Condition 1(d) by using and defining the term "Advances" to include those amounts.

#### BASIS FOR PROVIDING COVERAGE

The underwriting issues discussed in Section 6 must be considered in order to issue the variable rate coverage included in all these forms. In addition, refer to Section 59 for a complete discussion of the various factors to take into consideration when analyzing which form of endorsement to use to cover revolving credit and future advances. These factors include:

**1. Preliminary Considerations**

*Security*

A mortgage or deed of trust will secure repayment of future advances of funds by the lender if it so provides.  It doesn't matter whether the loan provides for revolving credit or not. However, except in the case where the principal balance has been paid down to zero, the security instrument may not secure future advances unless the parties agree that it will.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

Under Section 549 of the Bankruptcy Code, the bankruptcy trustee of a borrower may have the power to avoid the lien of a mortgage or trust deed to the extent it secures advances made after the lender has notice of the bankruptcy.  The recording or filing of a copy of the petition, or a notice that the petition has been filed, is sufficient to give the lender that notice.  Therefore, draws against a revolving credit line and other loan advances which are funded after this point may be in jeopardy of being unsecured.

*Priority*

The priority of the mortgage or deed of trust as security for future advances depends upon the factors discussed below.  The problems arise where a lien or encumbrance is created or attaches after recording of the mortgage or trust deed but prior to a future advance.

**2. Ordinary Liens and Encumbrances**

*Notice*

To be prior, notice that the mortgage or trust deed secures future advances must be given to future holders of liens and encumbrances.  Therefore, the recorded mortgage must disclose that it secures future advances.

*Obligation to Advance*

Whether the lender is obligated to make the advance after an intervening party's lien or encumbrance attaches to the borrower's Title is important to priority in most states.  If the lender is legally obligated to make the advance ("obligatory advance"), the lien securing it is prior to the lien or encumbrance of the intervening party.  An advance is obligatory if the lender could be successfully sued for damages if it did not make it.  Therefore, any conditions on the lender's obligation to fund must not be under the lender's control.   If the lender is not obligated to fund after a lien or encumbrance attaches to the title, any advances made thereafter are optional ("optional advance"). The rule differs among the states as to whether a lien securing optional advances will have priority over an intervening lien or encumbrance:

*Majority Rule:*  A future advance mortgage lien is prior if the lender does not have actual notice of the intervening interest at the time of the advance.

*Minority Rule:*  A future advance mortgage lien is prior if the lender has neither actual nor constructive notice of the intervening interest at the time of the advance.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

Unless the agreement between the lender and borrower provides for a cure by the borrower, any advance made after a default by the borrower is an optional advance. Where an obligatory advance agreement contains a cure provision, advances made after cure are again obligatory. Therefore they would be entitled to priority over encumbrances attaching after cure but before the advance. Advances made after default and before cure would be treated as optional advances.

**3. Special Cases:   Federal Tax Liens, Mechanics' Liens and Environmental Protection Liens**

*Federal Tax Liens*

There is some argument about the priority of federal tax liens with respect to the lien for disbursements under a construction loan.  Under the worst case view, the construction loan mortgage lien has the same priority over federal tax liens as it would have over a judgment lien under state law. However, no advance made under a non-construction future advance mortgage is protected against a federal tax lien recorded after recording of the mortgage where the advance is made (1) more than 45 days after the recording of the tax lien notice or (2) after actual notice of the tax lien, whichever occurs first.  Whether the advance is optional or obligatory is immaterial.

*Mechanics' Liens*

The law of many states gives mechanics' liens priority over the lien of mortgages or trust deeds. In some states, this is limited to those mortgages or trust deeds which finance the construction out of which the liens arise.  Others treat mechanic's liens like other liens with respect to future advance mortgages if the mortgage was recorded before the visible commencement of construction. **The exception or carve out for Mechanics' Liens appears as bracketed optional material. Some states may require a separate form filing for each version of the endorsement (with or without the optional material). The version that may be available in your state will be determined by your Company underwriting advisor.**

*Environmental Protection Liens*

Currently, federal law and the laws of many states create governmental liens to secure repayment for the cost of cleaning the environment of toxic or hazardous waste.  These liens may also secure repayment for the damage done to the environment.  Under some state laws, these liens have priority over existing liens.  It is possible for them to be created without recording or filing in the local real estate records. The impact of such liens on the priority of future advances of loan proceeds is uncertain.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

## Forms

Form 14-06 is the broadest coverage and is only available where your state law provides absolute priority for the additional advances, without regard to the knowledge (even the actual knowledge) of the insured lender. All requirements of state law must be met, such as the inclusion of specific language on the face of the recorded mortgage. Paragraph No. 4 of the endorsement must include any other specific matter that primes the additional advance under your state law, such as construction or mechanics liens (which is shown as optional item f.)

Form 14.1-06 is comparable to Form C in Section 59. The form excepts "actual knowledge", only, not constructive knowledge. Therefore, this can only be issued in those jurisdictions where the law protects additional advances or re-advances made in the face of recorded matters of which the lender did not have *actual* knowledge, i.e., where constructive notice alone will not prime the advance. In other words, if an advance or re-advance is subordinate to intervening recorded matters, without regard to whether the lender had actual knowledge, you would not be able to issue this form of endorsement as it is written. It would be possible to issue this endorsement if an exception for such matters is included under Paragraph No. 4. For example:  "The loss of priority of any Advance made after the Insured has actual or constructive notice of the existence of liens, encumbrances or other matters affecting the Land intervening between Date of Policy and the Advance, as to the intervening lien, encumbrance or other matter."

Form 14.2-06 affords affirmative coverage for a mortgage which collateralizes the obligations of a borrower under a letter of credit. Since those obligations will not arise until the letter is drawn on, the same kinds of factors will need to be analyzed under your state law to see what kind of priority these types of *possible* future advances might enjoy, and add to Paragraph No. 4 any additional matters that prime these types of future advances. The fact that these advances are, in a sense, conditional may mean that they do not enjoy the same priority as other types of future advances under your state law. This endorsement was revised by ALTA in 2009 and now it contains a bankruptcy carve-out, which is similar to older proprietary versions.

Form 14.3-06 deals with reverse mortgages, which are sometimes structured as a series of additional advances. It is comparable to Form C in Section 59.  The form excepts "actual knowledge", not constructive knowledge.  Therefore, like the 14.1-06, this can only be issued in those jurisdictions where the law protects additional advances or re-advances made in the face of recorded matters of which the lender did not have actual knowledge, i.e., where constructive notice alone will not prime the advance.  In addition, state law must be reviewed to determine if failure to state a length of term or maximum dollar amount in the Insured Mortgage will affect the

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

priority and enforceability of the Insured Mortgage. The endorsement was created to support the HUD approved form of reverse mortgage, and the statutory support and recognition of this type of loan product may be found in separate statutes passed after HUD began this program. Additionally, you must verify the mortgagors are at least 62 years old, which is another HUD requirement. [*technically corrected by ALTA 12-3-2012*]

## AUTHORITY FOR ISSUANCE OF THIS COVERAGE

These endorsements may not be issued without the approval of the Company's underwriting advisor.

## MODIFICATION

In the event that modification of an endorsement is requested, it is necessary to consider your state regulatory requirements for filing and approval of forms. If the endorsement is modified, other than as discussed in this section, the endorsement is not an ALTA form and should not reference ALTA in the title. You must obtain the approval of the Company's underwriting advisor before complying with any request for a modification.

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**ENDORSEMEN**T

Attached to Policy No. _____

**Issued By**
**[FNTG BRAND]**

1.      The insurance for Advances added by Sections 2 and 3 of this endorsement is subject to the exclusions in Section 4 of this endorsement and the Exclusions from Coverage in the Policy, except Exclusion 3(d), the provisions of the Conditions, and the exceptions contained in Schedule B.

      a.      "Agreement," as used in this endorsement, shall mean the note or loan agreement, the repayment of Advances under which is secured by the Insured Mortgage.

      b.      "Advance," as used in this endorsement, shall mean only an advance of principal made after the Date of Policy as provided in the Agreement, including expenses of foreclosure, amounts advanced pursuant to the Insured Mortgage to pay taxes and insurance, assure compliance with laws, or to protect the lien of the Insured Mortgage before the time of acquisition of the Title, and reasonable amounts expended to prevent deterioration of improvements, together with interest on those advances.

      c.      "Changes in the rate of interest," as used in this endorsement, shall mean only those changes in the rate of interest calculated pursuant to a formula provided in the Insured Mortgage or the Agreement at Date of Policy.

2.      The Company insures against loss or damage sustained by the Insured by reason of:

      a.      The invalidity or unenforceability of the lien of the Insured Mortgage as security for each Advance.

      b.      The lack of priority of the lien of the Insured Mortgage as security for each Advance over any lien or encumbrance on the Title.

      c.      The invalidity or unenforceability or lack of priority of the lien of the Insured Mortgage as security for the Indebtedness, Advances and unpaid interest resulting from (i) re-Advances and repayments of Indebtedness, (ii) earlier periods of no indebtedness owing during the term of the Insured Mortgage, or (iii) the Insured Mortgage not complying with the requirements of state law of the state in which the Land is located to secure Advances.

3.      The Company also insures against loss or damage sustained by the Insured by reason of:

      a.      The invalidity or unenforceability of the lien of the Insured Mortgage resulting from any provisions of the Agreement that provide for (i) interest on interest, (ii) changes in the rate of interest, or (iii) the addition of unpaid interest to the Indebtedness.

      b.      Lack of priority of the lien of the Insured Mortgage as security for the Indebtedness, including any unpaid interest that was added to principal in accordance with any provisions of the Agreement, interest on interest, or interest as changed in accordance with the provisions of the Insured Mortgage, which lack of priority is caused by (i) changes in the rate of interest, (ii) interest on

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

interest, or (iii) increases in the Indebtedness resulting from the addition of unpaid interest.

4.    This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from:

    a.    The invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as security for any Advance made after a Petition for Relief under the Bankruptcy Code (11 U.S.C.) has been filed by or on behalf of the mortgagor;

    b.    The lien of real estate taxes or assessments on the Title imposed by governmental authority arising after Date of Policy;

    c.    The lack of priority of the lien of the Insured Mortgage as security for any Advance to a federal tax lien, which Advance is made after the earlier of (i) actual knowledge of the Insured that a federal tax lien was filed against the mortgagor, or (ii) the expiration, after notice of a federal tax lien filed against the mortgagor, of any grace period for making disbursements with priority over the federal tax lien provided in the Internal Revenue Code (26 U.S.C.);

    d.    Any federal or state environmental protection lien; [or]

    e.    Usury, or any consumer credit protection or truth-in-lending law. *[; or*

    f.    *Any mechanic's or materialmen's lien.]*

5.    The Indebtedness includes Advances.

        This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.


[Witness clause optional]


*[BRACKETED MATERIAL OPTIONAL]*


[FNTG BRAND]

BY: _____


ALTA Endorsement Form 14-06
(Future Advance - Priority) (Rev. 2/3/11)
© American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

## ENDORSEMENT

Attached to Policy No. _____

**Issued By**
**[FNTG BRAND]**

1. The insurance for Advances added by Sections 2 and 3 of this endorsement is subject to the exclusions in Section 4 of this endorsement and the Exclusions from Coverage in the Policy, except Exclusion 3(d), the provisions of the Conditions, and the exceptions contained in Schedule B.

    a. "Agreement," as used in this endorsement, shall mean the note or loan agreement, the repayment of Advances under which is secured by the Insured Mortgage.

    b. "Advance," as used in this endorsement, shall mean only an advance of principal made after the Date of Policy as provided in the Agreement, including expenses of foreclosure, amounts advanced pursuant to the Insured Mortgage to pay taxes and insurance, assure compliance with laws, or to protect the lien of the Insured Mortgage before the time of acquisition of the Title, and reasonable amounts expended to prevent deterioration of improvements, together with interest on those advances.

    c. "Changes in the rate of interest," as used in this endorsement, shall mean only those changes in the rate of interest calculated pursuant to a formula provided in the Insured Mortgage or the Agreement at Date of Policy.

2. The Company insures against loss or damage sustained by the Insured by reason of:

    a. The invalidity or unenforceability of the lien of the Insured Mortgage as security for each Advance.

    b. The lack of priority of the lien of the Insured Mortgage as security for each Advance over any lien or encumbrance on the Title.

    c. The invalidity or unenforceability or lack of priority of the lien of the Insured Mortgage as security for the Indebtedness, Advances and unpaid interest resulting from (i) re-Advances and repayments of Indebtedness, (ii) earlier periods of no Indebtedness owing during the term of the Insured Mortgage, or (iii) the Insured Mortgage not complying with the requirements of state law of the state in which the Land is located to secure Advances.

3. The Company also insures against loss or damage sustained by the Insured by reason of:

    a. The invalidity or unenforceability of the lien of the Insured Mortgage resulting from any provisions of the Agreement that provide for (i) interest on interest, (ii) changes in the rate of interest, or (iii) the addition of unpaid interest to the Indebtedness.

    b. Lack of priority of the lien of the Insured Mortgage as security for the Indebtedness, including any unpaid interest that was added to principal in accordance with any provisions of the Agreement, interest on interest, or interest as changed in accordance with the provisions of the Insured Mortgage, which

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 14**

lack of priority is caused by (i) changes in the rate of interest, (ii) interest on interest, or (iii) increases in the Indebtedness resulting from the addition of unpaid interest.

4.      This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) resulting from:

a.      The invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as security for any Advance made after a Petition for Relief under the Bankruptcy Code (11 U.S.C.) has been filed by or on behalf of the mortgagor;

b.      The lien of real estate taxes or assessments on the Title imposed by governmental authority arising after Date of Policy;

c.      The lack of priority of the lien of the Insured Mortgage as security for any Advance to a federal tax lien, which Advance is made after the earlier of (i) actual knowledge of the Insured that a federal tax lien was filed against the mortgagor, or (ii) the expiration, after notice of a federal tax lien filed against the mortgagor, of any grace period for making disbursements with priority over the federal tax lien provided in the Internal Revenue Code (26 U.S.C.);

d.      Any federal or state environmental protection lien;

e.      The lack of priority of any Advance made after the Insured has Knowledge of the existence of liens, encumbrances or other matters affecting the Land intervening between Date of Policy and the Advance, as to the intervening lien, encumbrance or other matter; [or]

f.      Usury, or any consumer credit protection or truth-in-lending law. *[; or*

g.      *Any mechanic's or materialmen's lien.]*

5.      The Indebtedness includes Advances.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

*[BRACKETED MATERIAL OPTIONAL]*

[FNTG BRAND]

BY: _____

ALTA Endorsement Form 14.1-06
(Future Advance - Knowledge) (Rev. 2/3/11)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                                    SECTION 14

**ENDORSEMENT**
Attached to Policy No. _____

**Issued By**
**[FNTG BRAND]**

1.      The insurance for Advances added by Section 2 of this endorsement is subject to the exclusions in Section 3 of this endorsement and the Exclusions from Coverage in the Policy, except Exclusion 3(d), the provisions of the Conditions, and the exceptions contained in Schedule B.

     a.      "Agreement," as used in this endorsement, shall mean the letter of credit and its reimbursement agreement, the repayment of Advances under which is secured by the Insured Mortgage.

     b.      "Advance," as used in this endorsement, shall mean only an advance made after the Date of Policy as provided in the Agreement, including expenses of foreclosure, amounts advanced pursuant to the Insured Mortgage to pay taxes and insurance, assure compliance with laws, or to protect the lien of the Insured Mortgage before the time of acquisition of the Title, and reasonable amounts expended to prevent deterioration of improvements, together with interest on those advances.

2.      The Company insures against loss or damage sustained by the Insured by reason of:

     a.      The invalidity or unenforceability of the lien of the Insured Mortgage as security for each Advance.

     b.      The lack of priority of the lien of the Insured Mortgage as security for each Advance over any lien or encumbrance on the Title.

     c.      The invalidity or unenforceability or loss of priority of the lien of the Insured Mortgage as security for the Indebtedness, Advances and unpaid interest resulting from (i) re-Advances and repayments of Indebtedness, (ii) earlier periods of no indebtedness owing during the term of the Insured Mortgage, or (iii) the Insured Mortgage not complying with the requirements of state law of the state in which the Land is located to secure Advances.

3.      This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) resulting from:

     a.      The lien of real estate taxes or assessments on the Title imposed by governmental authority arising after Date of Policy; or

     b.      Any federal or state environmental protection lien; or

     c.      Limitations, if any, imposed under the Bankruptcy Code (11 U.S.C.) on the amount that may be recovered from the mortgagor's estate. *[; or*

     *d.      Any mechanic's or materialmen's lien.]*

4.      The Indebtedness includes Advances.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

*[BRACKETED MATERIAL OPTIONAL]*

[FNTG BRAND]

BY: _____

ALTA Endorsement Form 14.2-06
(Future Advance – Letter of Credit) (Rev. 2/3/11)
© American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**ENDORSEMEN**T

Attached to Policy No. _____

**Issued By**
**[FNTG BRAND]**

1.   The insurance for Advances added by Sections 2 and 3 of this endorsement is subject to the exclusions in Section 4 of this endorsement and the Exclusions in the Policy, except Exclusion 3(d), the provisions of the Conditions, and the exceptions contained in Schedule B.

    a.   "Agreement," as used in this endorsement, shall mean the note or loan agreement, repayment of Advances under which is secured by the Insured Mortgage.

    b.   "Advance," as used in this endorsement, shall mean only an advance of principal made after the Date of Policy as provided in the Agreement, including expenses of foreclosure, amounts advanced pursuant to the Insured Mortgage to pay taxes and insurance, assure compliance with laws, or to protect the lien of the Insured Mortgage before the time of acquisition of the Title, and reasonable amounts expended to prevent deterioration of improvements, together with interest on those advances.

    c.   "Changes in the rate of interest," as used in this endorsement, shall mean only those changes in the rate of interest calculated pursuant to a formula provided in the Insured Mortgage or the Agreement at Date of Policy.

2.   The Company insures against loss or damage sustained by the Insured by reason of:

    a.   The invalidity or unenforceability of the lien of the Insured Mortgage as security for each Advance.

    b.   The lack of priority of the lien of the Insured Mortgage as security for each Advance over any lien or encumbrance on the Title.

    c.   The invalidity or unenforceability or lack of priority of the lien of the Insured Mortgage as security for the Indebtedness, Advances and unpaid interest resulting from (i) re-Advances and repayments of Indebtedness, (ii) earlier periods of no indebtedness owing during the term of the Insured Mortgage, (iii) the Insured Mortgage not complying with the requirements of state law of the state in which the Land is located to secure Advances, (iv) failure of the Insured Mortgage to state the term for Advances, or (v) failure of the Insured Mortgage to state the maximum amount secured by the Insured Mortgage.

    d.   The invalidity or unenforceability of the lien of the Insured Mortgage because of the failure of the mortgagors to be at least 62 years of age at Date of Policy.

3.   The Company also insures against loss or damage sustained by the Insured by reason of:

    a.   The invalidity or unenforceability of the lien of the Insured Mortgage resulting from any provisions of the Agreement that provide for (i) interest on interest, (ii) changes in the rate of interest, or (iii) the addition of unpaid interest to the principal portion of the Indebtedness.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 14**

      b.      Lack of priority of the lien of the Insured Mortgage as security for the Indebtedness, including any unpaid interest that was added to principal in accordance with any provisions of the Agreement, interest on interest, or interest as changed in accordance with the provisions of the Insured Mortgage, which lack of priority is caused by (i) changes in the rate of interest, (ii) interest on interest, or (iii) increases in the Indebtedness resulting from the addition of unpaid interest.

      "Interest," as used in this Paragraph 3, shall include lawful interest based on appreciated value.

4.      This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from:

      a.      The invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as security for any Advance made after a Petition for Relief under the Bankruptcy Code (11 U.S.C.) has been filed by or on behalf of the mortgagor;

      b.      The lien of real estate taxes or assessments on the Title imposed by governmental authority arising after Date of Policy;

      c.      The lack of priority of the lien of the Insured Mortgage as security for any Advance to a federal tax lien, which Advance is made after the earlier of (i) actual knowledge of the Insured that a federal tax lien was filed against the mortgagor, or (ii) the expiration, after notice of a federal tax lien filed against the mortgagor, of any grace period for making disbursements with priority over the federal tax lien provided in the Internal Revenue Code (26 U.S.C.);

      d.      Any federal or state environmental protection lien; [or]

      e.      Usury, or any consumer credit protection or truth-in-lending law. *[; or*

      f.      *Any mechanic's or materialmen's lien.]*

5.      The Indebtedness includes Advances.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

*[BRACKETED MATERIAL OPTIONAL]*

[FNTG BRAND]

BY: _____

ALTA Endorsement Form 14.3-06
(Future Advance – Reverse Mortgage) (Rev. 2/3/11)
© American Land Title Association)                                  *[includes technical corrections of 12-3-12]*

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    SECTION 15

Return to Table of Contents

NON-IMPUTATION

ALTA ENDORSEMENT – FORMS 15-06 (FULL-EQUITY TRANSFER);

15.1-06 (ADDITIONAL INSURED) and 15.2-06 (PARTIAL EQUITY)


PURPOSE

These ALTA forms give coverage over matters known to specified parties that would otherwise be excluded from coverage on the basis of imputed knowledge, but also over the consequences of the actions or inactions of those parties which affect the Title. Form 15-06 is to be used when the *entire beneficial interest* of the entity holding Title and named as the insured on Schedule A (e.g., partnership interest, corporate stock, membership interest of limited liability company) has been transferred for value. Form 15.1-06 is to be used when only a *portion of the beneficial interest* of the entity holding Title and named on Schedule A as the insured has been transferred and the incoming beneficial owner is identified on the form as an additional insured.  Form 15.2-06 is to be used when the incoming beneficial owner requests to be the insured in its own policy, and its interest has been transferred for value.


SECTIONS OF POLICY AMENDED BY ENDORSEMENT


Exclusions from Coverage 3(a) and (b) in the ALTA Owner's Policy and ALTA Loan Policy exclude from coverage matters created, suffered, assumed, or agreed to by the insured or known to the insured, but not to the Company, and not disclosed by the public records. With these endorsements, the Company agrees not to assert these Exclusions as defenses to coverage for matters that would be legally binding on a business entity under the law of imputed knowledge. The ALTA forms further clarify that the Company will not raise as a defense the failure to utilize the protection of recording acts, which is the purpose of Exclusion 3(e). These endorsements are usually requested in situations where no deed will be recorded, thereby precluding this protection.


BASIS FOR PROVIDING COVERAGE


These endorsements are only to be given when we have received adequate assurances in affidavit form that there are no matters known by the party or parties from whom knowledge is to be imputed to the insured entity, and we are provided a satisfactory indemnity from an appropriate indemnitor. Specimen affidavits are included at the end of this Section as Exhibits A and B and are to used only after the appropriate credit underwriting has been completed.  The affidavit must provide that the affiant has done proper due diligence to support the statements

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

made therein. When issuance of one of these endorsements is authorized, the endorsement must be completed so as to provide the coverage to the "innocent party" **only**.

**Underwriting considerations:**

*Owner's policy*

The knowledge of one party having an interest in an insured entity may be imputed by law to the entity and to other parties having an interest in the named entity. This means that if one partner knows about some off-record matter (such as the interest of a purchaser under a contract), the partnership and the other partners are held to "know" it. Since the partnership, in this example, is the Insured under the Policy, this may result in the denial of coverage as a matter known to the Insured and not known to the Company and not disclosed by the public records.

Unlike the ALTA 15-06, the coverage in the ALTA 15.1-06 and 15.2-06 is not designed to protect the Insured entity itself, but instead to protect one or more of the so-called "innocent parties" that have an interest in the named entity.

*Loan policy*

Because knowledge may be imputed to a lender through its agents, partners or other participating lenders, requests for this coverage may be made by the insured lender. This is quite common where the lender, in addition to loaning money, participates directly or indirectly in the development entity.

Examples

*Example:* Title is presently vested in A. B has agreed to participate in a project with A to develop the land for an office building. A will convey the land to a new partnership being formed between himself and B. B is concerned that A may have knowledge or have done some act that B is unaware of that would be imputed to the new partnership.

*Example:* In the example above, after A and B form their partnership they proceed to arrange financing for the project. A and B discover that the best deal they can structure involves lender C who will forego market interest rates in exchange for an equity participation interest for its wholly-owned subsidiary D. Title is conveyed to a new partnership composed of the A&B partnership and D and the new partnership AB&D gets a loan from C. D is concerned that knowledge by A

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

and B will be imputed to the A&B partnership which would then be imputed to the new partnership AB&D.

In the first example, coverage could be provided to B with regard to the knowledge of A *prior* to the conveyance to the A&B partnership. This coverage would be provided by an owner's policy insuring A&B partnership and an ALTA 15.1-06 naming B as the additional insured.

In the second example, coverage could be provided to D with regard to the knowledge of A and B *prior* to the conveyance to AB&D partnership. Again this coverage would be in an owner's policy insuring the partnership and an ALTA Form 15.1-06 naming the new partner as the additional insured, or an ALTA 15.2-06 attached to a policy wherein D is the named Insured for the partial ownership interest it has acquired in the partnership.

**Forms of Coverage**

For <u>ALTA Form 15-06</u>, the parties that need to be queried would be some or all of the outgoing beneficial owners. For a partnership, it would be all of the outgoing partners. For any other business entity, your underwriting advisor should be consulted as to the identity of the parties from whom we require assurances.

For <u>ALTA Form 15.1-06</u>, the parties to be questioned would be some or all of the outgoing beneficial owners. For a partnership, it would be all of the outgoing *and remaining* general partners. For any other business entity, your underwriting advisor should be consulted as to the identity of the parties from whom we require assurances.

For <u>ALTA Form 15.2-06</u>, the parties to be queried would be some or all of the outgoing beneficial owners. For a partnership, it would be all of the outgoing *and remaining general* partners. For any other business entity, your underwriting advisor should be consulted as to the identity of the parties from whom we require assurances

> **NOTE:** For Form 15.2-06 (but **not** for Form 15-06 or 15.1-06), it may be necessary to coordinate the benefits of the Owners Policy to which it is attached and any *other* Owner's Policy which the Company may have previously issued naming the entity vested with Title as the Insured on Schedule A. This coordination may be accomplished with an exception on Schedule B of both policies that provides that the Company's liability thereunder is noncumulative. Such an exception might read as follows "It is understood that the Amount of Insurance under this policy shall be reduced by any amount the

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

Company may pay under [identify other Owner's Policy], and the amount so paid shall be deemed a payment under this policy to the Insured."  The question of the need for or the form of coordination of the policies must be referred to your underwriting advisor.

## AUTHORITY FOR ISSUANCE OF THIS COVERAGE

This endorsement may not be issued without the approval of the Company's underwriting advisor.

## MODIFICATION

In the event that modification of an endorsement is requested, it is necessary to consider your state regulatory requirements for filing and approval of forms.  If the endorsement is modified, the endorsement is not an ALTA form and should not reference ALTA in the title.  You must obtain the approval of the Company's underwriting adviser before complying with any request for a modification.

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

## Exhibit A

[Affiant to be personally liable on indemnity, e.g., a general partner]

State of    _____ )

_____ )   ss.

County of    _____ )

Affidavit and Indemnity

The undersigned, being first duly sworn, on oath, deposes and says the following:

1.    The undersigned is _____[*title or capacity*] of _____[*name of entity*]_____.

2.    To the best knowledge of the undersigned,

a.    There are presently no defects in or liens, encumbrances or other claims against the Title to the property described in the Commitment for Title Insurance No. _____, having an Effective Date of _____, issued by [*insert name of the insuring company* ] (hereinafter referred to as "the Company") other than as disclosed in exceptions Nos. _____on Schedule B - Section 2 of said commitment, other than the following: (If none, state "None"); and;

b.    There are presently no inchoate rights which may ripen into any defect, lien, encumbrance or claim against the Title to said property except as may be created by any instrument or action required in Schedule B - Section 1 of said commitment, other than the following: (If none, state "None")

3.    The undersigned makes these statements after having questioned all of the other partners and the employees and agents, if any, of [*name of entity*] who have had any substantial contact with any transaction or negotiation involving the property described in said commitment.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

4.      The undersigned hereby indemnifies the Company and agrees to hold it harmless against any loss which the Company may suffer by virtue of any valid claim made under the said endorsement based on the existence of any defect in or lien, encumbrance, right or claim against or with respect to the Title to the aforesaid property which was not disclosed above but which should have been so disclosed in order to make all statements above true and correct.

The undersigned understands such losses may include court costs and attorney's fees expended by the Company in defending the Title or interest of the insured against such lien, encumbrance, right or claim.

5.      The undersigned makes these statements and gives the aforesaid indemnity for the purpose of inducing the Company to issue the endorsement attached hereto as Exhibit A to one or more of the owner's or loan policies issued pursuant to the said Commitment for Title Insurance.

The undersigned further agrees to pay all court costs and reasonable attorney's fees which the Company may expend in enforcing the terms of this indemnity agreement.

Dated:_____

_____
      [Name of Affiant & Indemnitor]

[Standard form jurat.]

[Standard form acknowledgment, if useful.]

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 15**

## **Exhibit B**

*[Affiant to be personally liable on indemnity, e.g,. a corporate partner]*


State of _____ )
                                 )  ss.
County of _____ )


Affidavit and Indemnity

The undersigned, being first duly sworn, on oath, deposes and says the following:

1.    The    undersigned    is    _____[*title   or   capacity*]   of
_____[*name of entity*].


2.    To the best knowledge of the undersigned,


a.    There are presently no defects in or liens, encumbrances or other claims against the Title
to the property described in the Commitment for Title Insurance No. _____, having an
Effective Date of _____, issued by [*insert the name of the company insuring*]
(hereinafter referred to as "the Company") other than as disclosed in exceptions Nos.
_____ on Schedule B - Section 2 of said commitment, other than the following: (If none,
state "None"); and


b.    There are presently no inchoate rights which may ripen into any defect, lien,
encumbrance or claim against the Title to said property except as may be created by any
instrument or action required in Schedule B - Section 1 of said commitment, other than
the following: (If none, state "None")


3.    The undersigned makes these statements after having questioned all of the other
officers, directors, employees, partners and agents, if any, of [name of entity] who have
had any substantial contact with any transaction or negotiation involving the property
described in said commitment.


© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

4.      The undersigned makes these statements for the purpose of inducing the Company to issue the endorsement attached hereto as Exhibit A to one or more of the owner's or loan policies issued pursuant to the said Commitment for Title Insurance.


Dated: _____

_____
            [Name of Affiant]


The following indemnity is given to the Company as a further inducement to it to issue the said endorsement, as aforesaid.


The undersigned hereby indemnifies the Company against any loss which the Company may suffer by virtue of any valid claim made under the said endorsement based on the existence of any defect in or lien, encumbrance, right or claim against or with respect to the Title to the aforesaid property which was not disclosed in the above affidavit but which should have been so disclosed in order to make all statements in the affidavit true and correct.  The undersigned understands such losses may include court costs and attorney's fees expended by the Company in defending the title or interest of the insured against such lien, encumbrance, right or claim.


The undersigned further agrees to pay all court costs and reasonable attorney's fees which the Company may expend in enforcing the terms of this indemnity agreement.


Dated: _____


[ Name of Company ]


By: _____
[Name and title of officer]

[Standard form jurat.]


[Standard form acknowledgment, if useful.]


© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT

Attached to Policy No. _____

**Issued By**
**[FNTG BRAND]**

The Company agrees that it will not assert the provisions of Exclusions from Coverage 3(a), (b), or (e) to deny liability for loss or damage otherwise insured against under the terms of the policy solely by reason of the action or inaction or Knowledge, as of Date of Policy, of _____ whether or not imputed to the Insured by operation of law, provided _____ acquired the Insured as a purchaser for value without Knowledge of the asserted defect, lien, encumbrance, adverse claim, or other matter insured against by the policy.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

[FNTG BRAND]

BY: _____

ALTA Endorsement Form 15-06
(Nonimputation – Full Equity Transfer) (6/17/06)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 15**

ENDORSEMENT

Attached to Policy No. _____

**Issued By**
**[FNTG BRAND]**

For purposes of the coverage provided by this endorsement, _____ ("Additional Insured") is added as an Insured under the policy.  By execution below, the Insured named in Schedule A acknowledges that any payment made under this endorsement shall reduce the Amount of Insurance as provided in Section 10 of the Conditions.

The Company agrees that it will not assert the provisions of Exclusions from Coverage 3(a), (b), or (e) to deny liability for loss or damage otherwise insured against under the terms of the policy solely by reason of the action or inaction or Knowledge, as of Date of Policy, of _____ whether or not imputed to the Additional Insured by operation of law, to the extent of the percentage interest in the Insured acquired by Additional Insured as a purchaser for value without Knowledge of the asserted defect, lien, encumbrance, adverse claim, or other matter insured against by the policy.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

AGREED AND CONSENTED TO:

_____
INSURED

[Witness clause optional]

[FNTG BRAND]

BY: _____

ALTA Endorsement Form 15.1-06
(Nonimputation – Additional Insured) (6/17/06)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 15**

ENDORSEMENT

Attached to Policy No. _____

**Issued By**
**[FNTG BRAND]**

The Company agrees that it will not assert the provisions of Exclusions from Coverage 3(a), (b), or (e) to deny liability for loss or damage otherwise insured against under the terms of the policy solely by reason of the action or inaction or Knowledge, as of Date of Policy, of _____ whether or not imputed to the entity identified in paragraph 3 of Schedule A or to the Insured by operation of law, but only to the extent that the Insured acquired the Insured's interest in entity as a purchaser for value without Knowledge of the asserted defect, lien, encumbrance, adverse claim, or other matter insured against by the policy.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

[FNTG BRAND]

BY: _____

ALTA Endorsement Form 15.2-06
(Nonimputation – Partial Equity Transfer) (6/17/06)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                                          **SECTION 16**

**Return to Table of Contents**

<div align="center">

**MEZZANINE FINANCING ENDORSEMENT**

**ALTA ENDORSEMENT- FORM 16-06**

**PURPOSE**
</div>

This endorsement provides insurance to a lender whose loan is secured not by a lien against the land but rather by some form of security against the beneficial interest of the business entity that owns the Land.   The security may be a pledge of and security interest in the stock in a corporation, partnership interest in a partnership, or membership interest in a limited liability company.   The endorsement is made a part of an Owner's Policy rather than a Loan Policy, because the lender's personal property security interest is not being insured so no Loan Policy is issued to the lender. The endorsement assigns the rights under the policy of the Insured owner of the Land to the defined Mezzanine Lender. The endorsement provides that the Company will not assert as a defense matters known to the Insured owner, as long as they were not known to the Mezzanine Lender (see also Non-Imputation Endorsements under Section 15). It further provides that the Company will not deny liability on the basis that ownership interests in the Insured have been transferred to or acquired by the Mezzanine Lender.

<div align="center">

**SECTIONS OF POLICY AMENDED BY ENDORSEMENT**
</div>

Conditions paragraph 7 (b) is amended to provide that the Company can terminate its liability under the policy by paying the Mezzanine Lender rather than the Insured.   Exclusions from Coverage Nos. 3 (a), (b), (c) or (e) are amended with respect to defects, liens, encumbrances, adverse claims or other matters which were not known to the Mezzanine Lender, or failure of the Mezzanine Lender to pay value.

<div align="center">

**BASIS FOR PROVIDING COVERAGE**
</div>

You may issue this endorsement to an ALTA Owner's Policy if all of the following requirements are met:

1.  The Insured (corporation, partnership, limited liability company or other business entity) has agreed to assign to the Mezzanine Lender the amounts payable under the policy as indicated by the Insured's  signature at the end of the Endorsement, and the terms of the endorsement are accepted by the Mezzanine Lender as  indicated by its signature on the Endorsement.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

2.  The requirements for issuance of a Non-Imputation Endorsement have been met (see Section 15). That is, we must receive adequate assurances that there are no matters known by the party or parties from whom knowledge is to be imputed. In most cases this assurance would be in the form of a sworn statement from the party together with a satisfactory indemnity.

3.  If the Insured is also insured by the Company under a different Owner's Policy, the benefits of that policy must be coordinated with the benefits of the policy to which the endorsement will be attached. This can be accomplished by adding to Schedule B of the already issued policy the following: "It is expressly understood that the amount of insurance under this policy shall be reduced by any amount the Company may pay under Owner's Policy Number [new policy], and the amount so paid shall be deemed a payment under this policy to the Insured owner."

### AUTHORITY FOR ISSUANCE OF THIS COVERAGE

This endorsement may not be issued without the approval of the Company's underwriting advisor.

### MODIFICATION

In the event that modification of an endorsement is requested, it is necessary to consider your state regulatory requirements for filing and approval of forms. If the endorsement is modified, the endorsement is not an ALTA form and should not reference ALTA in the title. You must obtain the approval of the Company's underwriting adviser before complying with any request for a modification.

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**ENDORSEMENT**

Attached to Policy No. _____

**Issued By**
**[FNTG BRAND]**

1.    The Mezzanine Lender is: _____ and each successor in ownership of its loan ("Mezzanine Loan") reserving, however, all rights and defenses as to any successor that the Company would have had against the Mezzanine Lender, unless the successor acquired the Indebtedness as a purchaser for value without Knowledge of the asserted defect, lien, encumbrance, adverse claim, or other matter insured against by this policy as affecting Title.

2.    The Insured

      a.    assigns to the Mezzanine Lender the right to receive any amounts otherwise payable to the Insured under this policy, not to exceed the outstanding indebtedness under the Mezzanine Loan; and

      b.    agrees that no amendment of or endorsement to this policy can be made without the written consent of the Mezzanine Lender.

3.    The Company does not waive any defenses that it may have against the Insured, except as expressly stated in this endorsement.

4.    In the event of a loss under the policy, the Company agrees that it will not assert the provisions of Exclusions from Coverage 3(a), (b) or (e) to refuse payment to the Mezzanine Lender solely by reason of the action or inaction or Knowledge, as of Date of Policy, of the Insured, provided

      a.    the Mezzanine Lender had no actual Knowledge of the defect, lien, encumbrance or other matter creating or causing loss on Date of Policy.

      b.    this limitation on the application of Exclusions from Coverage 3(a), (b) and (e) shall

            i.    apply whether or not the Mezzanine Lender has acquired an interest (direct or indirect) in the Insured either on or after Date of Policy, and

            ii.    benefit the Mezzanine Lender only without benefiting any other individual or entity that holds an interest (direct or indirect) in the Insured or the Land.

5.    In the event of a loss under the Policy, the Company also agrees that it will not deny liability to the Mezzanine Lender on the ground that any or all of the ownership interests (direct or indirect) in the Insured have been transferred to or acquired by the Mezzanine Lender, either on or after the Date of Policy.

6.    The Mezzanine Lender acknowledges

      a.    that the amount of insurance under this policy shall be reduced by any amount the Company may pay under any policy insuring a mortgage to which exception is taken in Schedule B or to which the Insured has agreed, assumed, or taken subject, or which is hereafter executed by an Insured and which is a charge or

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

lien on the estate or interest described or referred to in Schedule A, and the amount so paid shall be deemed a payment under this policy; and

    b.    that the Company shall have the right to insure mortgages or other conveyances of an interest in the Land, without the consent of the Mezzanine Lender.

7.    If the Insured, the Mezzanine Lender or others have conflicting claims to all or part of the loss payable under the Policy, the Company may interplead the amount of the loss into Court.  The Insured and the Mezzanine Lender shall be jointly and severally liable for the Company's cost for the interpleader and subsequent proceedings, including attorneys' fees.  The Company shall be entitled to payment of the sums for which the Insured and Mezzanine Lender are liable under the preceding sentence from the funds deposited into Court, and it may apply to the Court for their payment.

8.    Whenever the Company has settled a claim and paid the Mezzanine Lender pursuant to this endorsement, the Company shall be subrogated and entitled to all rights and remedies that the Mezzanine Lender may have against any person or property arising from the Mezzanine Loan. However, the Company agrees with the Mezzanine Lender that it shall only exercise these rights, or any right of the Company to indemnification, against the Insured, the Mezzanine Loan borrower, or any guarantors of the Mezzanine Loan after the Mezzanine Lender has recovered its principal, interest, and costs of collection.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

AGREED AND CONSENTED TO:

*(Name of Insured)*                        *(Name of Mezzanine Lender)*

By: _____    By: _____

[Witness clause optional]

[FNTG BRAND]

BY: _____

ALTA Endorsement Form 16-06
(Mezzanine Financing) (6/17/06)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

[Return to Table of Contents](#)

**ACCESS**
**ALTA ENDORSEMENT - FORMS 17-06 (Access & Entry)**
**17.1-06 (Indirect Access & Entry)**
**and 17.2-06 (Utility Access)**
**PURPOSE**

These endorsements are designed to provide insurance against loss if the Land does not abut or have actual vehicular and pedestrian access to and from a specific open and publicly maintained street by way of existing curb cuts or entries. In addition, ALTA 17.1-06 provides the same coverage with respect to a specific easement insured in Schedule A which connects the Land to a specific public street. The ALTA 17.2-06 adopts a version of the generic "Utilities Facilities" endorsement which covers access to utility installations in a public street.

**SECTIONS OF POLICY AMENDED BY ENDORSEMENT**

The ALTA policies do not insure a particular means of access.  The policies do insure against loss or damage by reason of a lack of **"a right of access to and from the Land".** The policy, as written, does not address the extent of that access, nor the location or means by which that access is utilized.

The definition of "Land" contained in the policy specifically excludes property beyond the bounds of the area described in Schedule A.  Furthermore, Land is so defined as to not include any "right, title, interest, estate or easement in abutting streets".

These endorsements go quite a bit further.  They specifically address the location, use and quality of access. The ALTA 17.2-06 will be discussed separately.

**BASIS FOR PROVIDING COVERAGE (ALTA 17-06 and 17.1-06)**

These endorsements have more extensive requirements than the old "access" type endorsements, and include the need for a comprehensive survey. The examiner must verify:

1. The named street is in fact a **physically open** and **public** street;
2. The land **abuts** thereon; and

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

3.  There is nothing to prohibit access from the Land either **legally or physically** (i.e., not only is there access as a matter of law, at the currently existing points of access, but there is also no physical impediment to access).

4.  There are no limitations on access imposed at the local, county, state or federal levels, depending on who controls or maintains the street and how it was created.

> ***Example:*** A portion of Blackacre was condemned for an Interstate Highway. In the condemnation, the State also condemned all abutting rights of access. Because of the way the road was built, the owner of Blackacre can actually drive his car onto the highway at several points along this boundary.
>
> This is an example of a situation where there is a physical means of access, but **no legal right of access.** This endorsement could not be given in this situation.

The examiner must be very careful to determine which governmental authorities (which can include city, county, state and/or federal agencies) have jurisdiction over a particular street. The examiner must also check the surrounding land and the chain of title to determine if access was limited when the land was a part of a larger tract. If such a limitation exists, and all allowable curb cuts or points of access have been used in conjunction with other parts of the original tract, there may be no access for the land as it currently is described, even though it does abut an open and public street. A survey showing present, physically open access must be supplied to the Company. Any such request for any variation of the endorsement language or a request to issue the endorsement without a survey must be approved by the Company underwriting advisor.

In addition to compliance with items 1 through 4 above, in order to issue the ALTA 17.1-06, the examination and insurance of the easement in question must be undertaken pursuant to customary underwriting guidelines.

**CAUTION:** IF THE LAND ABUTS A PHYSICALLY OPEN PRIVATE STREET THIS COVERAGE MAY NOT BE GIVEN WITHOUT APPROVAL OF THE COMPANY'S UNDERWRITING ADVISOR.

### BASIS FOR PROVIDING COVERAGE for ALTA 17.2-06 (Utility Access)

What is commonly referred to as the "Utility Facility" endorsement requires us to do all of the following:

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

(1) Review the survey to ascertain that the Land adjoins the public way in which the utility lines are located with no gaps or gores in between.

(2) Determine the insurability of private easements (if any) providing services listed on the endorsement and verify they are shown on the survey and abut the property with no gaps or gores.

(3) Verify that the land is improved.

(4) Obtain an affidavit from the seller or borrower that the Land is serviced by all of the recited utilities.

Special attention should be paid to the possibility that although other utilities are in place and service is provided by a lateral connection to installations in the public right of way, a septic system is being utilized in lieu of connecting to a public sewer system, especially in newer industrial parks, large commercial tracts or rural residential properties. If that is the factual situation, or any other listed utility is provided via any type of private easement that would otherwise not be insurable, you must leave the box on the endorsement which corresponds to such utility **underlined**, thereby indicating that no access is being insured.

Even if you have not specifically insured the private easement rights in Schedule A, you must do the same search and analysis of the benefit to the Land as if you had insured them, including making sure they are still viable and have not been released or terminated either voluntarily or involuntarily through foreclosure or other process (i.e., tax sale, forfeiture, etc.) if you will be relying on a private easement to insure access to utilities.

### MODIFICATION

In the event that modification of an endorsement is requested, it is necessary to consider your state regulatory requirements for filing and approval of forms. If the endorsement is modified, the endorsement is not an ALTA form and should not reference ALTA in the title. You must obtain the approval of the Company's underwriting advisor before complying with any request for a modification.

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 17**

ENDORSEMENT

Attached to Policy No. _____

**Issued By**
**[FNTG BRAND]**


The Company insures against loss or damage sustained by the Insured if, at Date of Policy (i) the Land does not abut and have both actual vehicular and pedestrian access to and from FILL IN (the "Street"), (ii) the Street is not physically open and publicly maintained, or (iii) the Insured has no right to use existing curb cuts or entries along that portion of the Street abutting the Land.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.


[Witness clause optional]




[FNTG BRAND]

BY: _____


ALTA Endorsement Form 17-06
(Access and Entry) (6/17/06)
©American Land Title Association


© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 17**

ENDORSEMENT

Attached to Policy No. _____

**Issued By**
**[FNTG BRAND]**

The Company insures against loss or damage sustained by the Insured if, at Date of Policy (i) the easement identified as FILLIN in Schedule FILLIN (the "Easement") does not provide that portion of the Land identified as FILLIN in Schedule FILLIN both actual vehicular and pedestrian access to and from FILLIN (the "Street"), (ii) the Street is not physically open and publicly maintained, or (iii) the Insured has no right to use existing curb cuts or entries along that portion of the Street abutting the Easement.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

[FNTG BRAND]

BY: _____

ALTA Endorsement Form 17.1-06
(Indirect Access and Entry) (6/17/06)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT

Attached to Policy No. _____

**Issued By**
**[FNTG BRAND]**

The Company insures against loss or damage sustained by the Insured by reason of the lack of a right of access to the following utilities or services:  [CHECK ALL THAT APPLY]

☐ Water service              ☐ Natural gas service              ☐ Telephone service
☐ Electrical power service   ☐ Sanitary sewer                   ☐ Storm water drainage
☐ _____           ☐ _____                 ☐ _____

either over, under or upon rights-of-way or easements for the benefit of the Land because of:

(1) a gap or gore between the boundaries of the Land and the rights-of-way or easements;

(2)  a gap between the boundaries of the rights-of-way or easements; or

(3)  a termination by a grantor, or its successor, of the rights-of-way or easements.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

[FNTG BRAND]

BY: _____

ALTA Endorsement Form 17.2-06
(Utility Access)  (10/16/08)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 18**

**Return to Table of Contents**

<div align="center">

**TAX PARCEL**

**ALTA ENDORSEMENT - FORM 18-06 (Single)**

**AND 18.1 (Multiple) [with tax sale protection]**

</div>

<div align="center">

**PURPOSE**

</div>

These endorsements cover the tax parcel or tax identification numbers often included in the policy for informational purposes. Form 18-06 insures against loss if the tax number shown does not include all the Land described in the policy or includes land not described in the policy.  Form 18.1-06 is for use when there are multiple parcels and multiple numbers. In addition, Form 18.1-06 insures that any easement included as an insured parcel in Schedule A or C will not be wiped out by the subsequent foreclosure of taxes on the servient tenement.  This endorsement does not provide coverage for the Insured it the easement itself is separately assessed and the Insured fails to pay such taxes.

<div align="center">

**SECTIONS OF POLICY AMENDED BY ENDORSEMENT**

</div>

This endorsement for the Insured does not expressly amend any provisions of the Policy.  It does affect on paragraph 3(d) of the Exclusions from Coverage ("Defects, liens, encumbrances, adverse claims or other matters: ... attaching or created subsequent to Date of Policy...") in that the non-payment of real property taxes, or the foreclosure of the lien imposed by those taxes on the servient tenement over which the easement exists, will, in the majority of cases, be a post policy occurrence.

<div align="center">

**BASIS FOR PROVIDING COVERAGE**

</div>

To issue ALTA Form 18-06, the above the legal description in Schedule A or C must be carefully compared to the legal description on the tax rolls to verify that they cover the exact same property, that neither includes additional lands, and that all tax parcel numbers are correctly shown. If the Land includes only a portion of a tax description, these endorsements may not be given.

To issue ALTA Form 18.1-06, the above comparison should be made for each parcel included.  In addition, to give the easement coverage, if appropriate, the following matters must be taken into consideration:

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

The easement referred to in this endorsement must be shown in the Policy in Schedule A or C as an insured parcel. This will insure that a complete search of title to the servient parcel encumbered by the easement, along with a determination of the status of taxes and assessments, has been done.

An absolute essential element will be the existence of state statutes or binding case law that specifically protects the validity of any properly created easement from the effects of any non-payment of taxes or the foreclosure of the lien of such taxes as imposed on the servient tenement. This protection must exist no matter when the easement is created or when the taxes are imposed.

The most common factual scenarios are:

1.  Easement created.  Taxes for the year in which easement is created are all paid. Taxes for subsequent years go into foreclosure. State law provides purchaser at tax sale takes subject to easement.

2.  Same as 1, but state law provides purchaser at tax sale to get land free and clear of easement interest.

3.  Outstanding taxes owed.  Easement created. State law provides that foreclosure of taxes effectively forecloses easement rights. State law may not require notice of tax foreclosure to holder of easement rights.

4.  Easement created.  Taxes are assessed after the creation of the easement, but state law provides that the lien of the taxes dates back to a date preceding the creation of the easement. Again, state law provides that foreclosure of taxes effectively forecloses easement rights.

5.  Taxes or special assessments may be scheduled to be paid off over a number of years in the future. In many jurisdictions these are called "bonds" or "future assessments".  Even if the current year's liabilities are paid, the failure to pay any of the future bonds may result in a lien that dates back to the original creation of the liability which, if it predates the creation of the easement, could cause the easement to be foreclosed when those bond amounts are foreclosed.

Obviously, in examples 2, 3, 4 and 5 above we would not be able to issue this coverage.

If this coverage is requested by the Lender, the Insured Mortgage must be secured by the referenced easement.

**AUTHORITY FOR ISSUANCE OF ENDORSEMENT**

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 18**

If there is no binding authority in the state wherein the property lies, any request for this endorsement must be submitted to the Company's underwriting adviser for approval.

## MODIFICATION

In the event that modification of an endorsement is requested, it is necessary to consider your state regulatory requirements for filing and approval of forms.  If the endorsement is modified, the endorsement is not an ALTA form and should not reference ALTA in the title.  You must obtain the approval of the Company's underwriting adviser before complying with any request for a modification.

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 18**

**ENDORSEMENT**

Attached to Policy No. _____

**Issued By**
**[FNTG BRAND]**

The Company insures against loss or damage sustained by the Insured by reason of the Land being taxed as part of a larger parcel of land or failing to constitute a separate tax parcel for real estate taxes.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

[FNTG BRAND]

BY: _____

ALTA Endorsement Form 18-06
(Single Tax Parcel) (6/17/06)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 18**

## ENDORSEMENT

Attached to Policy No. _____

**Issued By**
**[FNTG BRAND]**

The Company insures against loss or damage sustained by the Insured by reason of:

1.      those portions of the Land identified below not being assessed for real estate taxes under the listed tax identification numbers or those tax identification numbers including any additional land:

|                              |             |
|------------------------------|-------------|
| Parcel:                      | PARCEL 1    |
| Tax Identification Number(s): | TAX ID 1    |
|                              |             |
| Parcel:                      | PARCEL 2    |
| Tax Identification Number(s): | TAX ID 2    |
|                              |             |
| Parcel:                      | PARCEL 3    |
| Tax Identification Number(s): | TAX ID 3    |

2.      the easements, if any, described in Schedule A being cut off or disturbed by the nonpayment of real estate taxes, assessments or other charges imposed on the servient estate by a governmental authority.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

[FNTG BRAND]

BY: _____

ALTA Endorsement Form 18.1-06
(Multiple Tax Parcel) (6/17/06)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**Return to Table of Contents**

**CONTIGUITY**

**ALTA ENDORSEMENT - FORM 19-06 (MULTIPLE PARCELS) [within Land]
AND FORM 19.1-06 (SINGLE PARCEL) [with property other than Land]**


**PURPOSE**

ALTA Form 19-06 is designed to provide insurance that (1) each parcel, in a policy which insures multiple parcels, is contiguous to at least one other parcel insured by the policy, or (2) if some parcels are not contiguous to at least one other parcel, that certain parcels are contiguous to certain other parcels. The ALTA Form 19.1-06 provides coverage that the Land in the policy is contiguous to some other specific parcel not insured in the policy.


**SECTION OF POLICY AMENDED BY ENDORSEMENT**


The ALTA policies do not insure contiguity. These endorsements add an insuring provision and additional liability.

**BASIS FOR PROVIDING COVERAGE**


A survey must be presented to the Company. The survey must adequately depict the absence of gaps, strips or gores insured against, and contain a statement by the surveyor that the parcels are contiguous. Providing the coverage on some other basis, for example because the parcels are adjacent lots in the same subdivision or because the line which separates them in a metes and bounds description has identical points of beginning and identical calls to describe that line, can only be done with the approval of your Company underwriting advisor.


The problem that often arises with the ALTA 19.1-06 is that there is not a single survey of both the Land included within the policy and the additional parcel as to which contiguity is being insured. Again, any request to issue this endorsement without a single survey showing both parcels with a certification by the surveyor that the parcels are contiguous must be referred to your Company underwriting advisor.

**MODIFICATION**

In the event that modification of an endorsement is requested, it is necessary to consider your state regulatory requirements for filing and approval of forms.  If the endorsement is modified, the endorsement is not an ALTA form and should not reference ALTA in the title.  You must obtain the approval of the Company's underwriting adviser before complying with any request for a modification.


© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**ENDORSEMENT**

Attached to Policy No. _____

**Issued By**
**[FNTG BRAND]**

The Company insures against loss or damage sustained by the Insured by reason of:

1.    The failure [of the _____ boundary line of Parcel A] of the Land to be contiguous to [the _____ boundary line of Parcel B] **[for more than two parcels, continue as follows: "; of [the _____ boundary line of Parcel B] of the Land to be contiguous to [the _____ boundary line of Parcel C] and so on until all contiguous parcels described in the policy have been accounted for]**; or

2.    The presence of any gaps, strips, or gores separating any of the contiguous boundary lines described above.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

[FNTG BRAND]

BY: _____

ALTA Endorsement Form 19-06
(Contiguity – Multiple Parcels) (6/17/06)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 19**

**ENDORSEMENT**

Attached to Policy No. _____

**Issued By**
**[FNTG BRAND]**

The Company insures against loss or damage sustained by the Insured by reason of:

1.    The failure of the Land to be contiguous to **[describe the land that is contiguous to the Land by its legal description or by reference to a recorded instrument – e.g. ". . . that certain parcel of real property legally described in the deed recorded as Instrument No. _____, records of _____ County, State of _____]** along the _____ boundary line[s]; or

2.    The presence of any gaps, strips, or gores separating the contiguous boundary lines described above.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

[FNTG BRAND]

BY: _____

ALTA Endorsement Form 19.1-06
(Contiguity – Single Parcel) (6/17/06)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                                    **SECTION 20**

Return to Table of Contents

## FIRST LOSS
## ALTA ENDORSEMENT FORM 20-06

### PURPOSE

This endorsement is designed to alter the established criteria for determining when a loss is recognized under a loan policy. Loss is normally the difference between the value of the property with or without the defect, lien or encumbrance insured against. Under normal circumstances, a loss would be difficult to determine until the land was sold after foreclosure.  If the sale was for an amount less than the debt, and the difference between the sales price and the indebtedness was caused by a matter covered by the policy, the lender could claim a loss.  Consequently, an insured lender would normally be required to foreclose to prove this loss before being able to make a claim. This endorsement, to be issued only when there is more than one insured parcel, allows a loss to be recognized whenever a title defect materially impairs the value of a parcel securing the loan without requiring acceleration of the debt and foreclosure against **any** of the parcels securing the loan. There was a technical correction of this endorsement by ALTA on 10/13/2011, but they did not change the ALTA adopted date.

### SECTION OF THE POLICY AMENDED BY THE ENDORSEMENT

This endorsement allows assertion of loss on the basis of impairment of security as if we had insured separate loans secured by separate parcels, even though the insured transaction is actually a single loan secured by multiple parcels. The Company and the courts have applied Condition 8 to the determination of what is a loss in such a way that "loss", as described in the endorsement, would be considered an interim situation, contingent upon the remaining property failing to provide adequate security for the unpaid debt. For that reason, this endorsement is often described as Contingent Loss (First Loss).

### BASIS FOR PROVIDING COVERAGE

While allowing the lender to claim a loss without foreclosing against any of the parcels, included in the endorsement form is an acknowledgement of the subrogation rights of the Company, which includes entitlement to reimbursement in a case where payment under the terms of this endorsement might result in a windfall for a lender who later was fully repaid from the remaining property.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**CAUTION:** YOU MUST CONFER WITH THE COMPANY'S UNDERWRITING ADVISOR TO DETERMINE THE COMPANY'S WILLINGNESS TO ISSUE THIS ENDORSEMENT IN A GIVEN STATE**.** A LENDER WHO IS ALERT TO THE ANTI-DEFICIENCY PROBLEM OF THIS COVERAGE MAY
DELIBERATELY HAVE THE BORROWER REMOVE WARRANTIES FROM THE SECURITY INSTRUMENT SO THAT ONLY PAYMENT DEFAULTS ARE ACTIONABLE. ADVISE THE COMPANY'S UNDERWRITING ADVISOR IF THIS IS THE CASE.

The coverage is not appropriate for loans with only one parcel.

<div align="center">

**MODIFICATION**

</div>

In the event that modification of an endorsement is requested, it is necessary to consider your state regulatory requirements for filing and approval of forms.  If the endorsement is modified, the endorsement is not an ALTA form and should not reference ALTA in the title.  You must obtain the approval of the Company's underwriting adviser before complying with any request for a modification.

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**ENDORSEMEN**T

Attached to Policy No. _____

**Issued By**
**[FNTG BRAND]**

This endorsement is effective only if the Collateral includes at least two parcels of real property.

1.      For the purposes of this endorsement

    a.      "Collateral" means all property, including the Land, given as security for the Indebtedness.
    b.      "Material Impairment Amount" means the amount by which any matter covered by the policy for which a claim is made diminishes the value of the Collateral below the Indebtedness.

2.      In the event of a claim resulting from a matter insured against by the policy, the Company agrees to pay that portion of the Material Impairment Amount that does not exceed the extent of liability imposed by Section 8 of the Conditions without requiring

    a.      maturity of the Indebtedness by acceleration or otherwise,
    b.      pursuit by the Insured of its remedies against the Collateral, or
    c.      pursuit by the Insured of its remedies under any guaranty, bond or other insurance policy.

3.      Nothing in this endorsement shall impair the Company's right of subrogation. However, the Company agrees that its right of subrogation shall be subordinate to the rights and remedies of the Insured. The Company's right of subrogation shall include the right to recover the amount paid to the Insured pursuant to Section 2 of this endorsement from any debtor or guarantor of the Indebtedness, after payment or other satisfaction of the remainder of the Indebtedness and other obligations secured by the lien of the Insured Mortgage. The Company shall have the right to recoup from the Insured Claimant any amount received by it in excess of the Indebtedness up to the amount of the payment under Section 2.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

[FNTG BRAND]

BY: _____

ALTA Endorsement Form 20-06
(First Loss – Multiple Parcel Transactions) (6/17/06)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 21**

Return to Table of Contents

**CREDITORS' RIGHTS**

**ALTA ENDORSEMENT FORM 21-06**

**This endorsement was decertified by ALTA on 2/8/10 and is no longer available.**

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**Return to Table of Contents**

<div align="center">

**LOCATION**

**ALTA ENDORSEMENT – FORM 22-06**

**AND Form 22.1-06 (with map)**

**PURPOSE**

</div>

These endorsements insure against loss or damage if an improvement of the type identified in the endorsement having the address set forth in the endorsement is not located on the Land. In addition, the 22.1-06 insures that a copy of a recorded plat or map that may be attached as an exhibit to the endorsement accurately reflects the location and dimensions of the Land as shown in the public records.

<div align="center">

**SECTIONS OF POLICY AMENDED BY ENDORSEMENT**

</div>

This endorsement does not expressly amend any provisions of the Policy.

<div align="center">

**BASIS FOR PROVIDING COVERAGE**

</div>

There must be some type of independent verification of the information requested, usually from a survey or an appraisal. The address should also be verified from the tax records, as should the fact that the property is being taxed as improved. The description of the type of improvement ["dwelling", "residence" etc.] should be taken from the appraisal or survey, or determined by a direct inspection of the premises.

The use of the 22.1-06, to which a copy of a recorded plat or map may be attached, is not universal.  The document to be attached as an exhibit to the endorsement should be limited to copies of instruments, such as plat maps, taken directly from the public records. The use of a survey or a sketch taken from other sources that includes more or different information than the recorded plat could expose the Company to increased liability.

<div align="center">

**AUTHORITY FOR ISSUANCE OF THIS COVERAGE**

</div>

The ALTA Form 22.1-06 endorsement may not be issued without the approval of the Company's underwriting advisor.

<div align="center">

**MODIFICATION**

</div>

In the event that modification of an endorsement is requested, it is necessary to consider your state regulatory requirements for filing and approval of forms.  If the endorsement is modified, the endorsement is not an ALTA form and should not reference ALTA in the title.  You must obtain the approval of the Company's underwriting adviser before complying with any request for a modification.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**ENDORSEMENT**

Attached to Policy No. _____

**Issued By**
**[FNTG BRAND]**


The Company insures against loss or damage sustained by the Insured by reason of the failure of a FILL IN, known as FILL IN, to be located on the Land at Date of Policy.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.


[Witness clause optional]




[FNTG BRAND]

BY: _____


ALTA Endorsement Form 22-06
(Location) (6/17/06)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 22**

**ENDORSEMENT**
Attached to Policy No. _____

**Issued By**
**[FNTG BRAND]**


The Company insures against loss or damage sustained by the Insured by reason of the failure of (i) a FILL IN, known as FILL IN, to be located on the Land at Date of Policy, or (ii) the map, if any, attached to this policy to correctly show the location and dimensions of the Land according to the Public Records.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.


[Witness clause optional]



[FNTG BRAND]

BY: _____


ALTA Endorsement Form 22.1-06
(Location and Map) (6/17/06)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                                        **SECTION 23**

**Return to Table of Contents**

<div align="center">

**CO-INSURANCE-SINGLE POLICY**

**ALTA ENDORSEMENT – FORM 23-06**


**PURPOSE**

</div>

This endorsement was designed to facilitate the delivery of a single policy when co-insurance with other underwriters is involved with allocation of liability by endorsement from each co-insurer.

<div align="center">

**SECTIONS OF POLICY AMENDED BY ENDORSEMENT**

</div>

It does not amend any section of the policy, but rather operates to incorporate the terms and conditions of another policy into our policy.

<div align="center">

**BASIS FOR PROVIDING COVERAGE**

</div>

Many large transactions use the concept of Co-insurance to spread the risk between underwriters. Basically, co-insurers each share a percentage or dollar amount of any claim. Each is primarily liable for their share of risk which means they share in the risk from the first dollar of loss. This is accomplished by each company issuing a separate policy in the amount of risk they have undertaken, and each policy would have an exception or a note to acknowledge that other policies share these same risks. This differs from *Reinsurance*, in which one company issues a policy and is primarily liable for the whole amount but purchases reinsurance from other underwriters to spread that risk to secondary (and other) levels of liability. In reinsurance, the ALTA policy issued by the primary insurer is the source of coverage to the Insured. The liability of the Reinsurers is to the Ceder (the one who purchased the Reinsurance) under the terms of the Reinsurance Agreement. The terms of that agreement may allow direct access to the Reinsurers, but that is a different topic, and will not be discussed in this section.

Instead of having multiple policies from multiple underwriters, each in a percentage or fractional dollar amount, which in a multi-site deal could result in tens or hundreds of policies, the Insured may want to have just one policy for each site that all underwriters agree will act as their policy in form and substance. This can be accomplished by use of this endorsement attached to the original or copies of the policy written by what is sometimes called the "lead underwriter" or "Issuing Co-insurer".

*To issue this endorsement to some other underwriter's policy (when we are NOT the lead underwriter) you must do the following:*

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

1.  Open a file and produce a policy with our policy number on it. That policy must agree in all aspects, except amount, with the policy written by the lead underwriter. If you do not agree with any of the provisions or coverages issued by the lead underwriter, you cannot issue this endorsement.

2.  Prepare and deliver this endorsement (not our underlying policy) to the Insured. Often the endorsement will be prepared by the "Issuing Co-Insurer", who has collected all of the policy amounts and file information. If that is the case, you can sign the endorsement after verifying:

- The Issuing Co-Insurer's policy number is in the first blank in the heading.
- In the chart we are shown as one of the Co-Insurers. The Amount of Insurance, Percentage of Liability, policy information and claims address must be checked. The lead underwriter (or "Issuing Co-insurer" in the endorsement) may fill in the Amounts and Percentages for the policies and send it to you for our policy number and signature. Keep a copy of the signed endorsement in our policy file.

3.  Report and remit premium on the amount of <u>our policy</u> that you produced for the file.

*To issue this endorsement where we are the lead underwriter ("Issuing Co-Insurer") you must do the following:*

1.  Open a file and produce a policy with our policy number on it. <u>THE AMOUNT OF THIS POLICY IS **NOT** THE AGGREGATE POLICY AMOUNT ON THE ENDORSMENT</u>. The Amount of Insurance on Schedule A of the Policy must be the Amount of Insurance allocated to us. It can be additionally shown as a percentage of the Aggregate Amount of Insurance amount reflected on the endorsement. The policy should contain a footnote similar to the following:

> "This policy is issued contemporaneously with the policies reflected on the Co-Insurance Endorsement attached hereto, which policies total the Aggregate Amount of Insurance as shown therein. It is understood and agreed that for all loss or aggregate losses against which said policies protect, the Company shall be liable only for the Percentage of Liability up to the Amount of Insurance as allocated to the Company therein. In no event shall the Company be liable for loss in excess of the Amount of Insurance as shown therein."

2.  Prepare a sample Endorsement with the information supplied by the other underwriters. Send to the other underwriters so they may fill in any of their missing policy information in the chart and execute.

3.  Report the policy.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**MODIFICATION**

In the event that modification of an endorsement is requested, it is necessary to consider your state regulatory requirements for filing and approval of forms.  If the endorsement is modified, the endorsement is not an ALTA form and should not reference ALTA in the title.  You must obtain the approval of the Company's underwriting adviser before complying with any request for a modification.

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**ENDORSEMENT**

Attached to Policy No.[*lead policy*]
Issued by
[*lead policy issuer*]**("Issuing Co-Insurer")**

CO-INSURANCE ENDORSEMENT

Attached to and made a part of Issuing Co-Insurer's Policy No. [*lead policy*] ("Co-Insurance Policy").  Each title insurance company executing this Co-Insurance Endorsement, other than the Issuing Co-Insurer, shall be referred to as "Co-Insurer."  Issuing Co-Insurer and each Co-Insurer are collectively referred to as "Co-Insuring Companies".

1.  By issuing this endorsement to the Co-Insurance Policy, each of the Co-Insuring Companies adopts the Co-Insurance Policy's Covered Risks, Exclusions, Conditions, Schedules and endorsements, subject to the limitations of this endorsement.

| Co-Insuring Companies | Name and Address | Policy Number [File Number] | Amount of Insurance | Percentage of Liability |
|---|---|---|---|---|
| Issuing Co-Insurer | | | $ | |
| Co-Insurer | | | $ | |
| Co-Insurer | | | $ | |
| Co-Insurer | | | $ | |
| Aggregate Amount of Insurance | | | $ | |

2. Each of the Co-Insuring Companies shall be liable to the Insured only for its Percentage of Liability of: (a) the total of the loss or damage under the Co-Insurance Policy, in no event greater than its respective Amount of Insurance set forth in this endorsement; and (b) costs, attorneys' fees and expenses provided for in the Conditions.

3. Any notice of claim and any other notice or statement in writing required to be given under the Co-Insurance Policy must be given to each of the Co-Insuring Companies at its address set forth above.

4. Any endorsement to the Co-Insurance Policy issued after the date of this Co-Insurance Endorsement must be signed on behalf of each Co-Insuring Company by its authorized officer or agent.

5. This Co-Insurance Endorsement is effective as of the Date of Policy of the Co-Insurance Policy.  This Co-Insurance Endorsement may be executed in counterparts.

This endorsement is issued as part of the Co-insurance Policy.  Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy or (iv) increase the Amount of Insurance.  To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls.  Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements to it.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

*ALTA 23-06 Continued*

[Witness Optional]

DATED:
Issuing Co-Insurer:

[lead underwriter]

BY: _____


Co-Insurer:

[BLANK] Title Insurance Company

By: _____


Co-Insurer:

[BLANK] Title Insurance Company

By: _____


Co-Insurer:

[BLANK] Title Insurance Company

By: _____




[Additional Co-Insurer signatures may be added if needed.]




ALTA Endorsement Form 23-06
(Co-Insurance - Single Policy) (Rev. 10/16/08)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 24**

**Return to Table of Contents**

**DOING BUSINESS**

**ALTA ENDORSEMENT - FORM 24-06**

**PURPOSE**

This endorsement for a loan policy provides coverage to the lender concerning the consequences of the failure to comply with state "doing business" laws.

**SECTIONS OF POLICY AMENDED BY ENDORSEMENT**

Exclusions from Coverage 4 of the Loan Policy excludes from coverage any loss from unenforceability of the lien of the insured mortgage resulting from the lender's failure to comply with any doing-business laws of the state where the Land is located.

**BASIS FOR PROVIDING COVERAGE**

Most states regulate the lending industry within the state. Many require lenders to be authorized to "do business" if they are chartered or incorporated in another state or jurisdiction. This type of regulation can be found in statutes or administrative/regulatory policies. The penalties for failure to follow these rules often include fines or the requirement to appoint a specific state agency (such as the secretary of state or financial regulatory agency) as agent of service of process, neither of which affects the priority or enforceability of the lien of the Insured Mortgage. HOWEVER, some states designate that the failure to comply with the regulations results in the mortgage or deed of trust being void or voidable. THEREFORE, you must ascertain that the state in which the Land is located does not have any statutory or regulatory policies or procedures that impact the priority or prohibit the enforcement of mortgages or deeds of trust held by lenders not authorized or licensed to do business in that state. Your Company underwriting advisor should be consulted for issuance within your state.

**MODIFICATION**

In the event that modification of an endorsement is requested, it is necessary to consider your state regulatory requirements for filing and approval of forms. If the endorsement is modified, the endorsement is not an ALTA form and should not reference ALTA in the title.  You must obtain the approval of the Company's underwriting adviser before complying with any request for a modification.

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 24**

**ENDORSEMENT**

Attached to Policy No._____

Issued by

[FNTG BRAND]

The Company insures against loss or damage sustained by the Insured by reason of the invalidity or unenforceability of the lien of the Insured Mortgage on the ground that making the loan secured by the Insured Mortgage constituted a violation of the "doing business" laws of the State where the Land is located because of the failure of the Insured to qualify to do business under those laws.

This endorsement is issued as part of the policy.  Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.  To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls.  Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements to it.

[Witness Optional]

DATED:

[FNTG BRAND]

BY: _____
        AUTHORIZED SIGNATORY

ALTA Endorsement Form 24-06
(Doing Business) (10/16/08)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 25**

**Return to Table of Contents**

**SAME AS SURVEY & SAME AS PORTION OF SURVEY**
**ALTA ENDORSEMENT – FORMS 25-06 AND 25.1-06**

**PURPOSE**

These endorsements expand policy coverage by specifying that the description on Schedule A (or C) is legally identical to a description contained in a survey which incorporates differing language.

**SECTIONS OF POLICY AMENDED BY ENDORSEMENT**

No specific section of the policy is amended by these endorsements. However, additional coverage is added.

**BASIS FOR PROVIDING COVERAGE**

These endorsements are available for owner's and loan policies. They insure that the Land as described in Schedule A is **legally** identical with the land as described in the survey identified in the endorsement, despite the fact that there is different language in each of the descriptions. The endorsement is usually requested for loan policies when the mortgage being insured contains a legal description which varies slightly when compared with Schedule A of the Policy or the survey submitted for the file.

This endorsement may be issued only after a careful review of the relevant legal descriptions and a determination that the legal descriptions are not ambiguous and, in fact, delineate the identical property, and are legally sufficient to convey title under state law. It is customary in some areas to require the surveyor to certify that the legal descriptions are one and the same.

The ALTA 25-06 is used when the entire legal description is identical to the entire legal description on the survey.

The ALTA 25.1-06 is used when the legal description in the Policy is one or more parcels on a survey that contains additional parcels besides the ones being insured. This is normally only an issue in a new development where we are being asked to rely on a survey of a larger development to insure less than all of that development. Care must be taken that the survey

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

correctly reflects any internal improvements and dimensions, and includes sufficient information to make this determination.

## MODIFICATION

In the event that modification of an endorsement is requested, it is necessary to consider your state regulatory requirements for filing and approval of forms. If the endorsement is modified, the endorsement is not an ALTA form and should not reference ALTA in the title.  You must obtain the approval of the Company's underwriting adviser before complying with any request for a modification.

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**ENDORSEMENT**
Attached to Policy No._____
Issued by
[FNTG BRAND]

The Company insures against loss or damage sustained by the Insured by reason of the failure of the Land as described in Schedule A to be the same as that identified on the survey made by _____ dated _____, and designated Job No. \_\_\_\_\_.

This endorsement is issued as part of the policy.  Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.  To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls.  Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements to it.

[Witness Optional]

DATED:

[FNTG BRAND]

BY: _____
        AUTHORIZED SIGNATORY

ALTA Endorsement Form 25-06
(Same as Survey) (10/16/08)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**ENDORSEMENT**
Attached to Policy No._____
Issued by
[FNTG BRAND]

The Company insures against loss or damage sustained by the Insured by reason of the failure of the Land as described in Schedule A to be the same as that identified as [Example:  Parcel A, B, C or Parcel 1, 2, 3] on the survey made by _____ dated _____, and designated Job No. \_\_\_\_\_.

This endorsement is issued as part of the policy.  Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy or (iv) increase the Amount of Insurance.  To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls.  Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements to it.

[Witness Optional]

DATED:

[FNTG BRAND]

BY: _____
          AUTHORIZED SIGNATORY

ALTA Endorsement Form 25.1-06
(Same as Portion of Survey) (10/16/08)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                          SECTION 26

**Return to Table of Contents**

**SUBDIVISION**

**ALTA ENDORSEMENT - FORM 26-06**

**PURPOSE**

The ALTA Form 26-06 insures against loss based upon the Land described in Schedule A (or Schedule C) not constituting a legally created parcel pursuant to applicable state statutes or local governmental regulations.

**SECTIONS OF POLICY AMENDED BY ENDORSEMENT**

This endorsement modifies exclusion 1(a)(iii) which excludes any law, ordinance, permit or governmental regulation which pertains to the subdivision of land.  Historically, the title policy and search did not address such restrictions on the subdivision of land since they did not constitute matters that affected title or the ability to convey. In some areas of the country (most notably on the west coast) there have been enacted statutes and ordinances which make it a criminal act to convey by or use a legal description not in conformance with subdivision laws.

**BASIS FOR PROVIDING COVERAGE**

The issuance of this coverage is extra hazardous, and not to be taken lightly. You must have approval of your Company underwriting advisor. It requires the analysis of both  state statutes and local building and use ordinances or laws. We are experiencing a rise in the number of counties across the country that are seeking ways to increase their fees, and have started to challenge legal descriptions that have been in use for, in one instance, over 70 years!  You will need to have the following information to be able to discuss the matter with your Company underwriting advisor:

Items to consider:

1.      State Statute:

        What are the provisions of the appropriate statute(s) regarding legally created parcels?

        Are there any penalties if a parcel of land does not conform to the statute(s)?

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

How severe are the penalties? Are documents using the non-conforming description void or not recordable? Even if recorded, are they held to be insufficient to give constructive notice to subsequent parties under the recording acts or statute of frauds in place in the state? Are mortgages which use a non-conforming description held to be unenforceable?

Does our parcel conform to the statute? If not, how not?

2.      Local governmental regulations:

What are the provisions of the appropriate regulations regarding legally created parcels? These could be contained in the zoning ordinances, building use or permitting ordinances or anywhere in between.

Are there any penalties if a parcel of land does not conform to the regulations?

How severe are the penalties? Will the owner be unable to get a permit to build, modify, or re-hab? Will they (or the title company) be subject to civil fines or criminal action?

Does our parcel conform to the regulations? If not, how not?

3.      Understand exactly what coverage the proposed Insured is expecting to obtain by this endorsement.

NOTE:  *Be careful, in modifying this endorsement pursuant to customer requests, not to Broaden the endorsement to provide coverage for other matters, such as development and zoning issues, that were not intended to be provided by this endorsement.*

**MODIFICATION**

In the event that modification of an endorsement is requested, it is necessary to consider your state regulatory requirements for filing and approval of forms. If the endorsement is modified, *as discussed in the Note above*, the endorsement is not an ALTA form and should not reference ALTA in the title.  You must obtain the approval of the Company's underwriting adviser before complying with any request for a modification.

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 26**

**ENDORSEMENT**
Attached to Policy No._____
Issued by
[FNTG BRAND]

The Company insures against loss or damage sustained by the Insured by reason of the failure of the Land to constitute a lawfully created parcel according to the subdivision statutes and local subdivision ordinances applicable to the Land.

This endorsement is issued as part of the policy.  Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy or (iv) increase the Amount of Insurance.  To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls.  Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements to it.

[Witness Optional]

DATED:

[FNTG BRAND]

BY: _____
        AUTHORIZED SIGNATORY

ALTA Endorsement Form 26-06
(Subdivision) (10/16/08)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 27**

Return to Table of Contents

**USURY ENDORSEMENT**

**ALTA Form 27-06**

**PURPOSE**

This endorsement is for use with an ALTA loan policy. It provides insurance against loss the Insured may suffer if the Insured Mortgage is determined to be usurious under state statute.

**NOTE: *STATES WHERE USURY COVERAGE CANNOT BE GIVEN*:** ARKANSAS, FLORIDA, KANSAS, MISSOURI, NEW JERSEY, NEW MEXICO, NEW YORK, OREGON, PENNSYLVANIA, TEXAS, AND WYOMING.

**SECTION OF THE POLICY AMENDED BY THE ENDORSEMENT**

This endorsement amends Exclusions 5 of the ALTA Loan Policy.

**BASIS FOR PROVING COVERAGE**

.

The term "usury" refers to the charging of an excessive rate of "interest" upon a loan or for the forbearance of collection.  The existence of usury depends entirely upon the specific wording of the applicable statute or constitutional provision. This endorsement should be issued **only** if a state statute exempts the specific type of lender, borrower or type transaction from its usury laws. The endorsement cannot be issued if the exemption is based upon some type of mathematical formulae or limit of interest rate. A court might designate other fees or charges as "interest" and the result could provide an amount of interest that exceeds the statutory amount. The issuance of usury coverage is extra-hazardous and you **must** confer with the Company's underwriting advisor for authority to issue this endorsement.

The endorsement can not be used in the following states without modification (which would no longer make it an ALTA form) : Colorado, Georgia, Massachusetts, Michigan, and North Carolina. These states impose a limitation on the interest that can be charged on loans that are otherwise exempt from usury statutes. The following is additional language which **must** be added to the endorsement:

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**Colorado:**  …excepting any of said loss or damage as may be caused as a result of a determination that the interest rate as calculated is in excess of forty-five percent (45%) per annum.

**Georgia**:  …excepting any of said loss or damage as may be caused as a result of a determination that the interest rate as calculated is in excess of five percent (5%) per month.

**Massachusetts:**  …excepting any of said loss or damage as may be caused as a result of a determination that the interest rate as calculated is in excess of twenty percent (20%) per annum; unless notification is made to the Massachusetts Attorney General as required by Chapter 271, Section 49, Massachusetts General Laws.

**Michigan:**  …excepting any of said loss or damage as may be caused as a result of a determination that the interest rate as calculated is in excess of twenty-five percent (25%) per annum.

**North Carolina:  …**excepting any of said loss or damage as may be caused as a result of provisions for the charging of or payment of late charges as provided in Section 24-10.1 North Carolina statutes.

## MODIFICATION

In the event that modification of an endorsement is requested, it is necessary to consider your state regulatory requirements for filing and approval of forms.  **If the endorsement is modified, as discussed above,  the endorsement is NOT an ALTA form and should not reference ALTA in the title**.  You must obtain the approval of the Company's underwriting adviser before complying with any request for a modification.

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 27**

## ENDORSEMENT

Attached to policy No. _____

**Issued by**
**[FNTG BRAND]**

The Company insures against loss or damage sustained by the Insured  by reason of the invalidity or unenforceability of the lien of the Insured Mortgage as security for the Indebtedness because the loan secured by the Insured Mortgage violates the usury law of the state where the Land is located.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

[FNTG BRAND]

BY: _____

ALTA Endorsement Form 27-06
(Usury) (10/16//08)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                                    **SECTION 28**

**Return to Table of Contents**

**EASEMENT - DAMAGE OR ENFORCED REMOVAL**
**ENCROACHMENTS - BOUNDARIES AND EASEMENTS**
**ALTA ENDORSEMENT FORMS 28-06; 28.1-06 and 28.2-06**

**PURPOSE**

**ALTA Endorsement Form 28-06 (Easement - Damage or Enforced Removal)**
Endorsement Form 28.06 was developed to insure against loss caused by the encroachment of a building located on the Land onto or over an easement shown as an exception in Schedule B, as disclosed by a survey or inspection of the Land. The loss must be based on an exercise of the easement and is only for damage to an existing building or enforced removal or alteration.

**ALTA Endorsement Form 28.1-06 (Encroachments - Boundaries and Easements)**
**ALTA Endorsement Form 28.2-06 (Encroachments - Boundaries and Easements-Described Improvements)**

Endorsement Forms 28.1-06 and 28.2 were developed to provide coverage with respect to certain boundary and easement encroachments. This coverage was previously included in the former ALTA 9 series. It is no longer contained within those endorsements other than the revised ALTA 9-06 and the new ALTA 9.7-06 and 9.10-06 (which additionally afford coverage as to violations of covenants, violations of setbacks, and damage to existing improvements because of development of minerals). The Endorsement Form 28.2-06 is used when the encroachment of a specific Improvement is meant to be covered and is specifically described at item 2. . You may have a situation when you are willing to give coverage over encroachments by one improvement and not another, perhaps because one has been in place without objection for a longer period of time.

The coverages in theses Endorsements include:
- The loss occasioned by the existence of an encroachment by an Improvement onto a neighboring property or onto an easement area within the insured Land, **other than as disclosed** in Schedule B exceptions.
- The loss occasioned by the existence of an encroachment by a neighboring Improvement onto the insured Land, **other than as disclosed** in Schedule B exceptions.
- Enforced removal of an insured Improvement based upon the encroachment into the easement area or onto neighboring property.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

These forms allow the exclusion of an encroachment raised as an exception in Schedule B from the enforced removal coverage by reference to the exception that describes it, if we choose not to include that encroachment within the coverage afforded by these endorsements.

## SECTIONS OF POLICY AMENDED BY ENDORSEMENT

No specific sections of the policy are amended by this endorsement; however additional coverages are added.

## BASIS FOR PROVIDING COVERAGE

### ALTA Form 28-06
**An accurate current survey or inspection of the Land is required for coverage**

The basis for giving these coverages can vary by local custom and law. You should always confer with your Company underwriting advisor to determine the appropriate risk. Some of the factors to take into consideration would be:

- Type and location of easement (Under ground? Overhead? Common utility? Residential or Commercial type of use [e.g., oil pipeline]?)
- Age of easement vs. age of improvement (Which came first?).  Age of improvement with no interference historically.
- Size or amount of encroachment (De minimis or substantial? Across small portion or entire width?).
- Can easement still be used with encroachment?  Are there other access points for maintenance?
- Cost of moving easement or improvement if the encroachment interferes with the maintenance and use of easement.

Note: The endorsement specifically covers only the "building" and not other improvements on the Land. Any request to expand this coverage must be discussed with your Company underwriting advisor.

### ALTA Form 28.1-06 and 28.2
**An accurate current survey of the Land is required for coverage on any policy other than a residential, 1-4 family Loan Policy.**

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

Coverage 3a may be given provided:

> For encroachments onto adjoining land
> - Any encroachments disclosed by inspection, survey or other means, are also expressly excepted by description of such matter in Schedule B.

> For encroachments onto easements located on the Land, either
> - there are no easements excepted in Schedule B; or
> - encroachments onto easements, disclosed by inspection, survey or other means, are also expressly excepted by description of such matter in Schedule B.

Coverage 3b may be provided if any of the following situations apply:

- for encroachments on the Land by a neighboring Improvement - any such encroachments disclosed by inspection, survey or other means, are expressly excepted by description of such matter in Schedule B.

Coverage 3c may be given if any of the following situations apply:

1. There are no easements excepted in Schedule B.
2. There are no encroachments onto easements excepted in Schedule B.
3. Encroachments shown are minor, would not interfere with maintenance of the easement and could not be forcibly removed under state law.

Coverage 3d may be given if any of the following situations apply:

1. There are no encroachments onto adjoining land excepted in Schedule B.
2. The encroachment is minor and could be removed at minimal cost.
3. The encroachment is minor; is not onto a parcel of vacant land; is not necessary to the support of the main structure; and your Company underwriting advisor is satisfied that a state court would not require its removal.

Note:

The Form 28.1-06 specifically covers only the "building" and not other improvements on the Land. Any request to expand this coverage must be discussed with your Company underwriting advisor.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

It allows all of the coverages to be denied for a specific named exception if you do not want to give coverage for that encroachment.

The Form 28.2-06 specifically covers only the Improvements described at item 2 of the endorsement. This allows you to choose which Improvements, and therefore which encroachments created by the specific improvement, for which you are granting coverage. Form 28.2 further varies in that it allows the coverage at 3.c and 3.d (enforced removal) only to be denied to matters specifically identified by exception numbers.

<center>**MODIFICATION**</center>

In the event that modification of an endorsement is requested, it is necessary to consider your state regulatory requirements for filing and approval of forms. If the endorsement is modified, *as discussed in the Note above, or for any other reason*, the endorsement is not an ALTA form and should not reference ALTA in the title.  You must obtain the approval of the Company's underwriting adviser before complying with any request for a modification.

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 28**

**ENDORSEMENT**

Attached to Policy No._____
Issued by
[FNTG BRAND]

The Company insures against loss or damage sustained by the Insured if the exercise of the granted or reserved rights to use or maintain the easement(s) referred to in Exception (s)_____ of Schedule B results in:

     (1)      damage to an existing building located on the Land, or

     (2)      enforced removal or alteration of an existing building located on the Land.

This endorsement is issued as part of the policy.  Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy or (iv) increase the Amount of Insurance.  To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls.  Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements to it.

[Witness Optional]

DATED:

[FNTG BRAND]

BY: _____
     AUTHORIZED SIGNATORY

ALTA Endorsement Form 28-06
(Easement-Damage or Enforced Removal) (rev. 02/03/10)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    SECTION 28

**ENDORSEMENT**

**Attached to Policy No. _____**

**Issued by**

*[FNTG BRAND]*

1. The insurance provided by this endorsement is subject to the exclusions in Section 4 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

2. For purposes of this endorsement only, "Improvement" means an existing building, located on either the Land or adjoining land at Date of Policy and that by law constitutes real property.

3. The Company insures against loss or damage sustained by the Insured by reason of:

   a. An encroachment of any Improvement located on the Land onto adjoining land or onto that portion of the Land subject to an easement, unless an exception in Schedule B of the policy identifies the encroachment;

   b. An encroachment of any Improvement located on adjoining land onto the Land at Date of Policy, unless an exception in Schedule B of the policy identifies the encroachment;

   c. Enforced removal of any Improvement located on the Land as a result of an encroachment by the Improvement onto any portion of the Land subject to any easement, in the event that the owners of the easement shall, for the purpose of exercising the right of use or maintenance of the easement, compel removal or relocation of the encroaching Improvement; or

   d. Enforced removal of any Improvement located on the Land that encroaches onto adjoining land.

4. This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from the encroachments listed as Exceptions _____ of Schedule B.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]


[FNTG BRAND]


By: _____
             Authorized Signatory




ALTA Endorsement Form 28.1-06
(Encroachments-Boundaries and Easements) (4/2/12)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 28**

**ENDORSEMENT**
**Attached to Policy No. _____**
**Issued by**
*[FNTG BRAND]*

1.    The insurance provided by this endorsement is subject to the exclusions in Section 4 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

2.    For purposes of this endorsement only, "Improvement" means each improvement  on the Land or adjoining land at Date of Policy , itemized below:

.

3.    The Company insures against loss or damage sustained by the Insured by reason of:

a. An encroachment of any Improvement located on the Land onto adjoining land or onto that portion of the Land subject to an easement, unless an exception in Schedule B of the policy identifies the encroachment;

b. An encroachment of any Improvement located on adjoining land onto the Land at Date of Policy, unless an exception in Schedule B of the policy identifies the encroachment;

c. Enforced removal of any Improvement located on the Land as a result of an encroachment by the Improvement onto any portion of the Land subject to any easement, in the event that the owners of the easement shall, for the purpose of exercising the right of use or maintenance of the easement, compel removal or relocation of the encroaching Improvement; or

d. Enforced removal of any Improvement located on the Land that encroaches onto adjoining land.

4.    Sections 3.c and 3.d. of this endorsement do not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from the following Exceptions, if any, listed in Schedule B:

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

[FNTG BRAND]

By: _____

       Authorized Signatory

ALTA Endorsement Form 28.2-06
(Encroachments-Boundaries and Easements-Described Improvements) (4/2/13)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 29**

**Return to Table of Contents**

**SWAP ENDORSEMENT**

**(INTEREST RATE EXCHANGE AGREEMENT SECURED BY**

**INSURED MORTGAGE)**

**ALTA ENDORSEMENT – FORMS 29-06, 29.1-06, 29.2-06 AND 29.3-06**

**PURPOSE**

Lenders occasionally request that the Loan Policy insure amounts which are described in an Interest Rate Exchange Agreement or Swap Agreement, the terms of which are contained in or referenced in the Insured Mortgage. Such agreements obligate the mortgagor for damages the lender may suffer under swap transactions it enters into on the borrower's behalf in order to achieve a favorable interest rate. If the borrower defaults on its loan, the lender becomes obligated itself under the swap loan for amounts known as breakage fees. This endorsement is designed to provide additional coverage for these amounts. These amounts are contingent and would accrue as an obligation of the borrower post-policy. Without an endorsement, it is questionable whether the definition of Indebtedness at Conditions number 1(d) would cover such obligations, whether they were characterized as additional principal or additional interest on the loan.

**SECTION OF POLICY AMENDED BY ENDORSEMENT**

Since the loan documents provide that the obligations described in the agreements may accrue in the future, this endorsement provides coverage for breakage fees paid by the insured lender post policy despite Exclusions from Coverage 3(d), which excludes "defects, liens, encumbrances, adverse claims, or other matters attaching or created subsequent to Date of Policy." That Exclusion expressly does not modify or limit the coverage provided under Covered Risk 11, 13, or 14, but none of those provisions would provide coverage for breakage fees. The definitions of Indebtedness at Condition 1(d) (ii) (principal disbursed subsequent to Date of Policy) and (iv) (interest on the loan) do not apply to those mortgages which provide that what is secured are amounts advanced to pay sums due under the agreements, which are neither principal disbursed nor additional interest. In states with a mortgage tax, these agreements are often structured so that the sums due are treated as additional interest, and in that case breakage fees might be treated as covered under Condition 1(d)(iv) for purposes of determining the **Amount of Insurance;** however, inclusion for such purpose would not result in coverage of the **validity, enforceability and priority** of  advances made to fund breakage fees.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

## BASIS FOR PROVIDING COVERAGE

1. **State Law – Obligatory advances; Incorporation by Reference.**

Many states have statutory or case law which provides that if the costs expended by the lender on behalf of the borrower under the swap agreement are obligatory, they may be afforded the same priority as if they had been expended at the date of the mortgage. For states in which this is the law, the loan documents must be reviewed to verify that the payment of breakage fees is obligatory.  For other states, the law must be reviewed by the Company's underwriting advisor to determine if the obligations of the lender will be afforded the same priority as if they had been expended at the date of the mortgage. Note that the endorsement specifically excludes coverage with respect to laws relating to bankruptcy, usury, unconscionability or unreasonableness. Further, the question of whether  a swap agreement referred to in a note, which itself is referred to in the Insured Mortgage,  is effectively incorporated by reference into the  Insured Mortgage so as to give notice to third parties, is a question of state law which must be referred to the Company's underwriting advisor.

2. **The mortgage must state the maximum amount secured by the agreement, in addition to the principal loan amount secured.**

The Insured Mortgage must state the additional amounts to be secured by reason of lender obligations under the swap or interest exchange agreements. Premium must be paid on these amounts.

3. **The swap or interest exchange agreement must be in place.**

State priority law will usually require either that the agreement be in place at the time of execution of the Insured Mortgage. The question of the sufficiency of a swap agreement not yet in place at Date of Policy should be referred to the Company's underwriting advisor.

4. **In states with a mortgage tax, swap enhanced loans may structure the swap obligations as additional interest. In such cases, provisions for treatment of the swap obligations as additional interest must be contained in the note and not merely in the interest rate exchange agreement.**

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

For a number of reasons, including the imposition of taxes, the swap obligations to be secured by the Insured Mortgage may be defined as additional interest. If this is the situation, the provisions for this treatment must be contained in the note so as to give notice to intervening parties that the mortgage secures such additional interest (see State Law - Incorporation by Reference above). New York is one such state which has a specific form which must be used. Since normal additional interest is included in the Amount of Indebtedness, the breakage fees thus characterized would be included. Consideration should be given to the position that these special types of "additional interest" were not contemplated as normal components of liability when assessing the premium to be charged for this endorsement. Therefore, the endorsement merits a charge notwithstanding that at the time of issuance of the policy the amount of exposure for loss under the endorsement may be minimal or non-existent.

**OBLIGATORY ADVANCE – FORMS 29-06 and 29.2-06**

These forms treat the swap obligation amounts as additional principal. Form 29-06 requires the Insured to include the amount of any breakage fees in the face amount of the Insured Mortgage to provide for coverage as to those amounts. Form 29.2-06 allows the additional amount of liability to be separately shown in the endorsment. Additional premium would be collected on the amounts shown in the endorsement.

**ADDITIONAL INTEREST - FORM 29.1-06 and 29.3-06**

Form 29.1-06 treats the swap obligation amounts as additional interest. While Conditions 1 (d) (iv) of the 2006 ALTA Loan Policy includes "interest on the loan" as part of the definition of Indebtedness, the endorsement is still necessary in order to insure the validity, priority and enforceability of post-policy interest. Form 29.3-06 allows the additional amount of liability to be separately shown in the endorsment. Additional premium would be collected on the amounts shown in the endorsement.

## MODIFICATION

In the event that modification of an endorsement is requested, it is necessary to consider your state regulatory requirements for filing and approval of forms.  If the endorsement is modified, the endorsement is not an ALTA form and should not reference ALTA in the title.  You must obtain the approval of the Company's underwriting adviser before complying with any request for a modification.

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT

Attached to Policy No._____

**Issued by**
**[FNTG BRAND]**

1.  The insurance provided by this endorsement is subject to the exclusions in Section 3 of this endorsement, the Exclusions from Coverage in the Policy, the Exceptions from Coverage contained in Schedule B, and the Conditions. As used in this endorsement:

    a.  The "Date of Endorsement" is _____; and

    b.  "Swap Obligation" means a monetary obligation under the interest rate exchange agreement dated _____, between _____ and the Insured existing at Date of Endorsement and secured by the Insured Mortgage. The Swap Obligation is included as a part of the Indebtedness.

2.  The Company insures against loss or damage sustained by the Insured by reason of the invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as security for the repayment of the Swap Obligation at Date of Endorsement.

3.  This endorsement does not insure against loss or damage, and the Company will not pay costs, attorneys' fees, or expenses that arise by reason of:

    a.  Rights or obligations set, created or confirmed after the Date of Endorsement under a master interest rate exchange agreement existing on or after Date of Endorsement;

    b.  The stay, rejection or avoidance of the lien of the Insured Mortgage as security for the Swap Obligation, or a court order providing some other remedy, by the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws;

    c.  The calculation of the amount, if any, determined by a court of competent jurisdiction as the amount of the Swap Obligation[; *or*]

    d.  [*The invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as security for repayment of the Swap Obligation because all applicable mortgage recording or similar intangible taxes  were not paid; or* ]

    e.  [*If Date of Endorsement is after Date of Policy, add any necessary additional exceptions here*].

This endorsement is issued as part of the policy.  Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy or (iv) increase the Amount of Insurance.  To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls.  Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements to it.

Dated:

By_____
        Authorized Signatory
ALTA Endorsement - Form 29 - 06
(Interest Rate Swap –Direct Obligations) (2/3/10)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT
Attached to Policy No. _____
**Issued by**
**[FNTG BRAND]**

1.  The insurance provided by this endorsement is subject to the exclusions in Section 3 of this endorsement, the Exclusions from Coverage in the Policy, the Exceptions from Coverage contained in Schedule B, and the Conditions. As used in this endorsement:

    a.  The "Date of Endorsement" is  _____; and

    b.  "Swap Obligation" means a monetary obligation under the interest rate exchange agreement dated _____, between _____and the Insured existing at Date of Endorsement and secured by the Insured Mortgage.

    c.  "Additional Interest" means the additional interest calculated pursuant to the formula provided in the loan documents secured by the Insured Mortgagee at Date of Endorsement.

2.  The Company insures against loss or damage sustained by the Insured by reason of the invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as security for the repayment of the Additional Interest at Date of Endorsement.

3.  This endorsement does not insure against loss or damage, and the Company will not pay costs, attorneys' fees, or expenses that arise by reason of:

    a.  Rights or obligations set, created or confirmed after the Date of Endorsement under a master interest rate exchange agreement existing on or after Date of Endorsement;

    b.  The stay, rejection or avoidance of the lien of the Insured Mortgage as security for the Swap Obligation, or a court order providing some other remedy, by the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws;

    c.  The calculation of the amount, if any, determined by a court of competent jurisdiction as the amount of the Additional Interest*[; or]*

    d.  [*The invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as security for repayment of the Swap Obligation because all applicable mortgage recording or similar intangible taxes were not paid; or* ]

    e.  [*If Date of Endorsement is after Date of Policy, add any necessary additional exceptions here].*

    This endorsement is issued as part of the policy.  Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy or (iv) increase the Amount of Insurance.  To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements to it.

Dated:

By_____
        Authorized Signatory

ALTA Endorsement - Form 29.1 - 06
(Interest Rate Swap – Additional Interest**)** (2/3/10)
©American Land Title Association

ENDORSEMENT

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 29**

Attached to Policy No._____

**Issued by**
**[FNTG BRAND]**

1.       The insurance provided by this endorsement is subject to the exclusions in Section 3 of this endorsement, the Exclusions from Coverage in the Policy, the Exceptions from    Coverage contained in Schedule B, and the Conditions. As used in this endorsement:

         a.       The "Date of Endorsement" is  _____; and

         b.       "Swap Obligation" means a monetary obligation under the interest rate exchange agreement dated _____, between _____ and the Insured existing at Date of Endorsement and secured by the Insured Mortgage.  The Swap Obligation is included as a part of the Indebtedness.

         c. "Additional Amount of Insurance" is $_____ that is in addition to the Amount of Insurance stated in Schedule A and is Applicable only to loss or damage under this endorsement.

2.       The Company insures against loss or damage sustained by the Insured by reason of the invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as security  for the repayment of the Swap Obligation at Date of Endorsement.

3        This endorsement does not insure against loss or damage, and the Company will not pay  costs, attorneys' fees, or expenses that arise by reason of:

         a.       Rights or obligations set, created or confirmed after the Date of Endorsement under a master interest rate exchange agreement existing on or after Date of Endorsement;

         b.       The stay, rejection or avoidance of the lien of the Insured Mortgage as security for the Swap Obligation, or a court order providing some other remedy, by the operation of        federal bankruptcy, state insolvency, or similar creditors' rights laws;

         c.       The calculation of the amount, if any, determined by a court of competent jurisdiction as the amount of the Swap Obligation[; or]

         d.       [*The invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as security for repayment of the Swap Obligation because all applicable mortgage recording  or similar intangible taxes  were not paid; or* ]

         e.       [*If Date of Endorsement is after Date of Policy, add any necessary additional exceptions here*].

This endorsement is issued as part of the policy.  Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy or (iv) increase the Amount of Insurance.  To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls.   Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements to it.

Dated:

By_____
         Authorized Signatory

ALTA Endorsement - Form 29 .2 - 06
(Interest Rate Swap –Direct Obligations-Defined Amount**)** (8/01/11)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 29**

ENDORSEMENT
Attached to Policy No. _____
**Issued by**
**[FNTG BRAND]**

1.  The insurance provided by this endorsement is subject to the exclusions in Section 3 of this endorsement, the Exclusions from Coverage in the Policy, the Exceptions from Coverage contained in Schedule B, and the Conditions. As used in this endorsement:

    a.   The "Date of Endorsement" is _____; and

    b.   "Swap Obligation" means a monetary obligation under the interest rate exchange agreement dated _____, between _____and the Insured existing at Date of Endorsement and secured by the Insured Mortgage.

    c.   "Additional Interest" means the additional interest calculated pursuant to the formula provided in the loan documents secured by the Insured Mortgagee at Date of Endorsement.

    d.   "Additional Amount of Insurance" is $ _____ that is in addition to the Amount of Insurance stated in Schedule A and is applicable  only to loss or damage under this endorsement.

2.  The Company insures against loss or damage sustained by the Insured by reason of the invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as security for the repayment of the Additional Interest at Date of Endorsement.

3.  This endorsement does not insure against loss or damage, and the Company will not pay costs, attorneys' fees, or expenses that arise by reason of:

    a.   Rights or obligations set, created or confirmed after the Date of Endorsement under a master interest rate exchange agreement existing on or after Date of Endorsement;

    b.   The stay, rejection or avoidance of the lien of the Insured Mortgage as security for the Swap Obligation, or a court order providing some other remedy, by the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws;

    c.   The calculation of the amount, if any, determined by a court of competent jurisdiction as the amount of the Additional Interest*[; or]*

    d.   [*The invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as security for repayment of the Swap Obligation because all applicable mortgage recording or similar intangible taxes were not paid; or* ]

    e.   [*If Date of Endorsement is after Date of Policy, add any necessary additional exceptions here*].

        This endorsement is issued as part of the policy.  Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy or (iv) increase the Amount of Insurance.  To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements to it.

Dated:

By_____
        Authorized Signatory

ALTA Endorsement - Form 29.3 - 06
(Interest Rate Swap – Additional Interest-Defined Amount**)** (8/01/11)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 30**

Return to Table of Contents

**ONE TO FOUR FAMILY SHARED APPRECIATION MORTGAGE ENDORSEMENT**

**COMMERCIAL PARTICIPATION INTEREST**

**ALTA ENDORSEMENT FORMS 30-06 and 30.1-06**


**PURPOSE**


These endorsements are designed to provide additional coverage to the lender when the loan documents provide that the lender will participate in the appreciation in value of the property or a share of the cash flow (as additional interest). The residential version (30-06) was developed for use with government programs that modified and reduced the outstanding debt of homeowners in the face of the downturn of the housing market. These programs allow the recapture of appreciation up to the amount of forgiveness of previously outstanding debt. The use of this endorsement for any other purpose must be approved by the Company's underwriting advisor.

The commercial version (30.1-06) is for use only with commercial transactions and includes, in addition to the increase in the value of the property (appreciation), a share of the cash flow from the property and any increase in the equity of the borrower in the property, and must be approved by the Company's underwriting advisor.  These endorsements provide coverage in the event of an attack on the validity, priority or enforceability of the Insured Mortgage based upon the provisions regarding shared appreciation and participation.


**SECTION OF POLICY AMENDED BY ENDORSEMENT**


Since any appreciation or additional interest will occur in the future, these endorsements specifically provide that the coverage is not subject to Section 3(d) of the Exclusions from Coverage which excludes "Defects, liens, encumbrances, adverse claims, or other matters . . . attaching or created subsequent to Date of Policy . . . ."


**BASIS FOR PROVIDING COVERAGE**


**ALTA Form 30-06: One To Four Family Shared Appreciation Mortgage Endorsement**

1. **State Law:**  Many states have passed legislation specifically authorizing the lender to share in the appreciation of the property.  The state statute must be examined for provisions setting specific limits and formulas, and the loan documents must be reviewed to verify that the loan complies with those limits and formulas.   If the statute has no such limits or formulas, consideration should be given to the possibility that (a) the method of calculation used in the

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

Insured Mortgage, or (b) the extent to which certain additional obligations might continue even after the principal is paid, might be so weighted in the lender's favor as to "shock the conscience" of the court and perhaps render the shared appreciation provisions of the Insured Mortgage invalid, or which could lead to a claim of "clogging" the equity of redemption in a bankruptcy or foreclosure situation.

2. **Insured Mortgage must include the formula for calculation:**  The Insured Mortgage must expressly state that it is a Shared Appreciation Mortgage **and** include the actual formula or calculation method used to determine the lender's share.   The formula or calculation method **cannot** simply be incorporated by reference to the provisions of the note or loan agreement.

3. **Loan is not a joint venture:**  Consideration must also be given to whether or not the loan is really a loan.  Could it be recharacterized as a joint venture arrangement with the borrower?  The terms and provisions of the loan documentation must be reviewed for a determination as to the nature and extent of control that the lender will have over the operations of the borrower.  If these controls are extensive and there is a risk that the loan will be recharacterized, then this endorsement should not be issued. Any such issues must be discussed with the Company underwriting advisor before this endorsement is offered.

This endorsement is designed for use with an ALTA Loan Policy issued in connection with a **residential** transaction. See Section 51 (Shared Appreciation Mortgage Endorsement-Commercial), Section 52 (Share of Cash Flow (Additional Interest) Endorsement) and the discussion of the ALTA 30.1-06 below for Commercial coverages.

**NOTE:**  THIS ENDORSEMENT MAY ONLY BE USED IN CONNECTION WITH LOANS ON ONE TO FOUR FAMILY RESIDENTIAL PROPERTIES.

**ALTA FORM 30.1-06: Commercial Participation Interest**

1. **State Law:**  Some states have passed legislation specifically authorizing the charge of "additional interest" which is how the participation interest is designated. These statutes must be examined for provisions setting specific limits and formulas, and the loan documents must be reviewed to verify that the loan complies with those limits and formulas.  If the statute has no such limits or formulas, consideration should be given to the possibility that (a) the method of calculation used in the Insured Mortgage, or (b) the extent to which certain additional obligations might continue even after the principal is paid, might be so weighted in the lender's favor as to

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

"shock the conscience" of the court and perhaps render the shared appreciation provisions of the Insured Mortgage invalid or which could lead to a claim of "clogging" the equity of redemption in a bankruptcy or foreclosure situation.

2. **Insured Mortgage must include the formula for calculation:**  The Insured Mortgage must expressly state that it is a Shared Appreciation Mortgage (if that is what the statutes require)  **and** include the actual formula or calculation method used to determine the lender's additional interest.   The formula or calculation method **cannot** simply be incorporated by reference to the provisions of the note or loan agreement.

3.  **Loan is not a joint venture:**  Consideration must also be given to whether or not the loan is really a loan.  Could it be recharacterized as a joint venture arrangement with the borrower?  The terms and provisions of the loan documentation must be reviewed for a determination as to the nature and extent of control that the lender will have over the operations of the borrower.  If these controls are extensive and there is a risk that the loan will be recharacterized, then this endorsement should not be issued. Any such issues must be discussed with the Company Underwriting advisor before this endorsement is offered.

4.  **Amount of Insurance:** The minimum Policy Amount should be the sum of the principal debt plus a reasonable estimate of the amount of "shared appreciation interest". Usury, consumer credit protection or truth in lending laws, and costs required to obtain a determination of the amount of additional interest due are specifically mentioned to reinforce the idea that the express insurance does not cover these matters.

This endorsement is designed for use with an ALTA Loan Policy issued in connection with a **commercial** transaction.


## MODIFICATION


In the event that modification of an endorsement is requested, it is necessary to consider your state regulatory requirements for filing and approval of forms. If the endorsement is modified, the endorsement is not an ALTA form and should not reference ALTA in the title.  You must obtain the approval of the Company's underwriting advisor before complying with any request for a modification.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT

Attached to Policy No.

**Issued by**

**[FNTG Brand]**

The insurance afforded by this endorsement is only effective if the Land is a one to four family residence.

For the purposes of this endorsement, "Shared Appreciation" shall mean increases in the Indebtedness secured by the Insured Mortgage by reason of shared equity or appreciation in the value of the Land.

The Company insures against loss or damage sustained by the Insured by reason of:

    (a)  The invalidity or unenforceability of the lien of the Insured Mortgage as security for the Indebtedness caused by the provisions for Shared Appreciation; or

    (b)  Loss of priority of the lien of the Insured Mortgage as security for the Indebtedness caused by the provisions for Shared Appreciation.

Nothing contained in this endorsement shall be construed as insuring against loss or damage sustained or incurred by reason of:

    (a)  usury;

    (b)  any consumer credit protection or truth in lending law;

    (c)  costs, expenses or attorney's fees required to obtain a determination, by judicial proceedings or otherwise, of the amount of the Shared Appreciation;

    (d)  failure to comply with applicable laws and regulations regarding Shared Appreciation;

    (e)  the stay, rejection or avoidance of the lien of the Insured Mortgage as security for the Shared Appreciation, or a court order providing some other remedy, by the operation of federal bankruptcy, state insolvency or similar creditors' rights laws; or

    (f)  the invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as security for the Indebtedness because all applicable mortgage recording or similar intangible taxes were not paid.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

Dated:

By_____

   Authorized Signatory

ALTA Endorsement Form 30-06
(One to Four Family Shared Appreciation Mortgage) (7/26/10)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                                    **SECTION 30**

ENDORSEMENT

Attached to Policy No.

**Issued by**

**[FNTG Brand]**

1.        This endorsement is subject to the exclusions in Section 4 of this endorsement, the Exclusions from Coverage in the policy, the Exceptions from Coverage contained in Schedule B, and the Conditions.

2.        As used in this endorsement,

a.    "Loan Documents" means those documents, as they exist at Date of Policy, creating the Indebtedness.

b.    "Participation Interest" means those elements of interest, established and calculated pursuant to the formula provided in the Loan Documents, that are payable or allocated to the Insured based upon:

         i.    the borrower's equity in the Title;
        ii.    the increase in value of the Title; or
       iii.    cash flow.

3.        The policy insures as of Date of Policy against loss or damage sustained by the Insured by reason of:

a.    The invalidity or unenforceability of the lien of the Insured Mortgage resulting from the provisions in the Insured Mortgage or in the Loan Documents which provide for Participation Interest.

b.    Lack of priority of the lien of the Insured Mortgage at Date of Policy as security for (i) the unpaid principal balance of the loan and (ii) the interest on the loan, including the Participation Interest, if any, which lack of priority is caused by the provisions in the Loan Documents for payment or allocation to the Insured of any Participation Interest.

4.        The policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees, or expenses that arise by reason of:

a.            usury; unconscionability; or any consumer credit protection or truth-in-lending law;
b.            disputes over the amount of Participation Interest;
c.            failure to comply with applicable laws and regulations regarding Participation Interest;
d.    the invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as security for the Participation Interest because all applicable mortgage recording or similar intangible taxes were not paid; or
e.    any  statutory lien for services provided, labor performed, or materials or equipment furnished arising after Date of Policy.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

Dated:

By_____

    Authorized Signatory

ALTA Endorsement Form 30.1-06
(Commercial Participation Interest) (8/1/12)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    SECTION 31

Return to Table of Contents

**SEVERABLE IMPROVEMENTS**
**ALTA ENDORSEMENT - FORM 31-06**

**PURPOSE**

This endorsement adds, as a part of the calculation of the Insured's loss, the diminution in value of the Insured's interest in any defined Severable Improvement affixed to the Land, as well as the reasonable cost of removal or relocation of these. Severable Improvements are defined as property that by law does not constitute real property. Land is defined in the policy as land and improvements that by law constitute real property.

**SECTIONS OF POLICY AMENDED BY ENDORSEMENT**

This endorsement amends Section 8 of the Conditions of the policy. However, it explicitly states that the calculation of loss under the endorsement shall not be in addition to valuations of the Title otherwise determined pursuant to Section 8 or any other endorsement to the Policy. For instance, ALTA Endorsements 13.0-06 and 13.1-06 already provide coverage for the reasonable costs of relocating personal property.

**BASIS FOR PROVIDING COVERAGE**

**CAUTION:** THE COMPANY'S UNDERWRITING ADVISOR SHOULD BE CONSULTED FOR INSURABILITY IN YOUR STATE.

While the endorsement clearly indicates at paragraph 3 that it is **not** providing insurance with respect to the title to personal property, nonetheless the question of compliance with state mono-line regulations must be considered before agreeing to issue. The Amount of Insurance on Schedule A should be in excess of the amount which would otherwise be applicable pursuant to Section 8 of the Conditions of the policy if the endorsement were not to be issued.

**MODIFICATION**

In the event that modification of an endorsement is requested, it is necessary to consider your state regulatory requirements for filing and approval of forms. If the endorsement is modified, the endorsement is not an ALTA form and should not reference ALTA in the title.  You must obtain the approval of the Company's underwriting adviser before complying with any request for a modification.

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                                    SECTION 31

**ENDORSEMENT**

Attached to Policy No._____
Issued by
[FNTG BRAND]

1.    As used in this endorsement, "Severable Improvement" means property affixed to the Land on or after Date of Policy that by law does not constitute real property because:

    a.    of its character and manner of attachment to the Land; and

    b.    it can be severed from the Land without causing material damage to it or to the Land.

2.    In the event of a loss by reason of a defect, lien, encumbrance, or other matter covered by this Policy ("Defect"), the calculation of the loss shall include (but not to the extent that these items of loss are included in the valuation of the Title determined pursuant to Section 8 of the Conditions or any other endorsement to the Policy):

    a.    the diminution in value of the Insured's interest in any Severable Improvement resulting from the Defect, reduced by the salvage value of the Severable Improvement; and

    b.    the reasonable cost actually incurred by the Insured in connection with the removal or relocation of the Severable Improvement resulting from the Defect and the cost of transportation of that Severable Improvement for the initial one hundred miles incurred in connection with the relocation.

3.    This endorsement relates solely to the calculation of the Insured's loss resulting from a claim based on a defect, lien, encumbrance or other matter otherwise insured against by the Policy. This Policy does not insure against loss or damage (and the Company will not pay any costs, attorneys' fees or expenses) relating to:

    a.    the attachment, perfection or priority of any security interest in the Severable Improvement;

    b.    the vesting or ownership of title to or rights in any Severable Improvement;

    c.    any defect in or lien or encumbrance on the title to any Severable Improvement; or

    d.    the determination of whether any specific property is real or personal in nature.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]
Dated:
[FNTG Brand]
BY: _____
          AUTHORIZED SIGNATORY

ALTA Endorsement Form 31-06
(Severable Improvements) (2-3-11)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 32**

**Return to Table of Contents**

**CONSTRUCTION LOAN**

**ALTA ENDORSEMENT – FORMS 32-06 (Construction Loan – Loss of Priority)**

**32.1-06 (Construction Loan – Loss of Priority-Direct Payment)**

**32.2-06 (Construction Loan –Loss of Priority- Insured's Direct Payment)**

**PURPOSE**

These endorsements, together with the 33-06 (Disbursement) replace the ALTA Construction Loan Policy and the Construction Loan Policy Endorsements A through D which have been decertified and are no longer available.

*The issuance of any construction lien or mechanic's lien coverage is extra-hazardous and all Company guidelines and authority limits must be strictly observed. The availability of these endorsements must be authorized by your Company underwriting advisor. Many states use state specific forms for these coverages and in all cases those state forms would be used unless directed to use this form by your Company underwriting advisor. This or similar coverage may not be available in your state.*

These endorsements were developed to give limited coverage where priority has been lost.  They only give coverage to the extent of work that the lender has paid for, with the ALTA 32-06 and the ALTA 32.1-06 further limited to liens filed by parties that have been identified on a draw request either paid by the Insured or the Company. They do not give coverage over other inchoate liens that can prime the construction mortgage. The 32-06 covers payment as disclosed by a draw request; the 32.1-06 is for use when payments are made directly to the sub-contractor or supplier, the 32.2 covers a lien filed for payment of previously paid amounts. Please see each section below for further guidance.

Each gives coverage over FILED mechanic's liens <u>if we have not disclosed them</u> in the policy or ALTA 33-06 (Disbursement) Endorsements which change the Date of Coverage as defined therein.

The issuance of these endorsements **requires** the following exception to be included in Schedule B of the policy in the place of the general mechanic's lien exception:

> *Any statutory lien or claim of lien, affecting the Title, that arises from services provided, labor performed, or materials or equipment furnished, except as insured by the attached ALTA 32-06 Endorsement [or 32.1-06 or 32.2-06 whichever is used] as it may be revised by ALTA 33-06 (Disbursement) Endorsements.*

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

You may modify this exception to use local terminology. The important thing is to raise the exception for all other mechanic's lien issues not covered by these limited endorsements but carve out the coverage that is afforded by them.

ALTA ENDORSEMENT – FORM 32-06 (Construction Loan – Loss of Priority)

This endorsement insures the priority of a construction loan disbursement where the Insured Mortgage does not have priority over Construction or Mechanic's Liens (hereafter referred to as "mechanic's lien") to the extent that the mechanic's lien arises from a misdisbursement of funds to pay for services, labor or material that "…were designated for payment in the documents supporting a Construction Loan Advance disbursed by or on behalf of the Insured on or before Date of Coverage."  This misdisbursement coverage does not require the names of the parties providing the services, labor or material being paid for and covers lower tier derivative liens such as material suppliers of a paid subcontractor.    Note that the misdisbursement risk includes the risk of inadequate descriptions of who is doing the work and how much they were paid.  This endorsement is similar in coverage to the old ALTA Endorsement A type mechanic lien coverage, which has been withdrawn (decertified).

**SECTIONS OF POLICY AMENDED BY ENDORSEMENT**

The endorsement deletes Covered Risk 11(a) of the policy.

**BASIS FOR PROVIDING COVERAGE**

Coverage is provided based upon a combination of

- disclosure of any filed or recorded liens on the Land
- evidence of sufficiency of funds to pay for the cost of construction;
- draw by draw documentation indicating who is to be paid or what is to be paid  or what services, labor or material is being paid for and how much is to be paid as disclosed in the lender approved draw request and as supplemented by lower tier documentation as is appropriate;
- evidence of payment (usually in the form of lien waivers indicating payment);  and
- indemnification to cover misdisbursement or non-payment by any party at any level, since funds may flow from the owner to the contractor to a subcontractor to a sub-subcontractor to a material supplier for the defined work.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

The Company has specific departments which specialize in construction disbursing and documentation review.  Their use to review construction documentation when issuing this endorsement will often be required by underwriting.

Consider the typical scenario where the lender pays the general contractor ("GC") $20,000 for electric work.  While we should strive for statements and lien waivers showing that $20,000 (at times less the GC's overhead and profit) went to an electrician and its suppliers or went to the electrician who paid its suppliers, the indemnity covers the risk of the GC not paying all to the electrician or the electrician not paying an undisclosed supplier.

The ALTA 32-06 is often issued in conjunction with an ALTA 33-06, which extends the Date of Coverage as defined therein but should not be used to extend the Date of Policy.
The form does not lend itself to delayed draws without further modification. You must consult with your Company Underwriting Advisor for any variations.

This is a generic endorsement that would customarily be used in states where the construction lender could have obtained statutory priority but did not and the company is unwilling to insure the lender without a mechanic lien exception.  **REMEMBER: Any use of this endorsement must be approved by your Company underwriting advisor.**

ALTA ENDORSEMENT – FORM 32.1-06 (Construction Loan – Loss of Priority – Direct Payment)

This endorsement insures the priority of a construction loan disbursement where the Insured Mortgage does not have priority over any mechanic lien to the extent that the mechanic's lien arises from a misdisbursement of funds to pay for services, labor or material "…to the extent that direct payment to the Mechanic's Lien claimant has been made by the Company or by the Insured with the Company's written approval." The effective coverage given is as to that portion of a mechanic's lien claim due to amounts that we acknowledge as having been directly paid to the claimant, either by the Company or under an agreement with a third party to pay directly.   This coverage does not cover lower tier derivative liens such as material suppliers of a paid subcontractor. The customary payment practice of many lenders is to pay the general contractor ("GC") directly, and such payments would not be covered under this endorsement for mechanic's lien claims filed by parties claiming by, through or under the GC since only the GC received direct payment.  Payment directly to the owner for disbursement to the trades gives no mechanic's lien coverage to the Insured either.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

## SECTIONS OF POLICY AMENDED BY ENDORSEMENT

The endorsement deletes Covered Risk 11(a) of the policy.

## BASIS FOR PROVIDING COVERAGE

Coverage is provided based upon draw by draw documentation indicating who is to be paid what amount directly by the Company or by the Insured, and the collection of evidence, such as lien waivers, to support such payment and coverage.

The ALTA 32.1-06 is often issued in conjunction with an ALTA 33-06, which extends the Date of Coverage as defined therein. The policy and any subsequent endorsements must disclose any filed or recorded liens.

Note that while the coverage to the Insured lender is limited to those funds the Company has either paid directly or has agreed to recognize as paid by the Insured, additional documentation and indemnification to cover misdisbursement or non-payment by any party at any level will likely be required if mechanic's lien coverage is given either to a third party purchaser, a purchaser's lender or a permanent lender who pays off the construction loan where those insureds do not have statutory protections and liens may still be filed which affect their interests.

This is a generic endorsement that would customarily be used in states where the construction lender could have obtained statutory priority but did not and the company is unwilling to insure the lender without a mechanic lien exception. **REMEMBER: Any use of this endorsement must be approved by your Company underwriting advisor.**

ALTA ENDORSEMENT – FORM 32.2-06 (Construction Loan – Loss of Priority – Insured's Direct Payment)

This endorsement insures the priority of a construction loan disbursement where the Insured Mortgage does not have priority over any mechanic's lien to the extent that the mechanic's lien arises from a disbursement of funds to pay for services, labor or material "…to the extent that direct payment to the Mechanic's Lien claimant has been made by the Insured or on the Insured's behalf". The effective coverage given is as to that portion of a mechanic's lien claim due to amounts that that the Insured actually paid directly to the claimant,  or actual payments made on behalf of the Insured  by a third party.   This coverage does not cover lower tier derivative liens such as material suppliers of a paid subcontractor. The customary payment practice of many

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

lenders is to pay the general contractor ("GC") directly, and such payments would <u>not</u> be covered under this endorsement for mechanic lien claims filed by parties claiming by, through or under the GC since only the GC received direct payment.  Payment directly to the owner for disbursement to the trades gives no mechanics lien coverage to the Insured either.

## SECTIONS OF POLICY AMENDED BY ENDORSEMENT

The endorsement deletes Covered Risk 11(a) of the policy.

## BASIS FOR PROVIDING COVERAGE

Coverage is provided based upon the a check of the Public Records for each extension of time under the issuance of an ALTA 33-06, which extends the Date of Coverage as defined therein. Any recorded liens would be raised in the ALTA 33-06.

Note that while the coverage to the Insured lender is limited to those funds the Insured has either paid directly or has had paid directly to the lien claimant on its behalf, additional documentation and indemnification to cover misdisbursement or non-payment by any party at any level will likely be required if mechanic's lien coverage is given either to a third party purchaser, a purchaser's lender or a permanent lender who pays off the construction loan where those insureds do not have statutory protections and liens may still be filed which affect their interests.

This is a generic endorsement that would customarily be used in states where the construction lender could have obtained statutory priority but did not and the company is unwilling to insure the lender without a mechanic lien exception.  **REMEMBER: Any use of this endorsement must be approved by your Company underwriting advisor.**

## MODIFICATION

In the event that modification of an endorsement is requested, it is necessary to consider your state regulatory requirements for filing and approval of forms. The ALTA has provided that the title underwriters "are free to use these endorsements, [32-06, 32.1-06 and 32.2-06] subject to any changes or limitations they …consider appropriate." You must obtain the approval of the Company's underwriting advisor before complying with any request for a modification.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 32**

**ENDORSEMENT**

**Attached to Policy No. _____**

**Issued by [FNTG BRAND]**

1.  Covered Risk 11(a) of this policy is deleted.

2.  The insurance [for Construction Loan Advances] added by Section 3 of this endorsement is subject to the exclusions in Section 4 of this endorsement and the Exclusions from Coverage in the Policy, the provisions of the Conditions, and the exceptions contained in Schedule B. For the purposes of this endorsement and each subsequent Disbursement Endorsement:

    a.  "Date of Coverage" is _____ unless the Company sets a different Date of Coverage by an ALTA 33-06 Disbursement Endorsement issued at the discretion of the Company.

    b.  "Construction Loan Advance" shall mean an advance that constitutes Indebtedness made on or before Date of Coverage for the purpose of financing in whole or in part the construction of improvements on the Land.

    c.  "Mechanic's Lien" shall mean any statutory lien or claim of lien, affecting the Title, that arises from services provided, labor performed, or materials or equipment furnished.

3.  The Company insures against loss or damage sustained by the Insured by reason of:

    a.  The invalidity or unenforceability of the lien of the Insured Mortgage as security for each Construction Loan Advance made on or before the Date of Coverage;

    b.  The lack of priority of the lien of the Insured Mortgage as security for each Construction Loan Advance made on or before the Date of Coverage, over any lien or encumbrance on the Title recorded in the Public Records and not shown in Schedule B: and

    c.  The lack of priority of the lien of the Insured Mortgage, as security for each Construction Loan Advance made on or before the Date of Coverage over any Mechanic's Lien, if notice of the Mechanic's Lien is not filed or recorded in the Public Records, but only to the extent that the charges for the services, labor, materials or equipment for which the Mechanic's Lien is claimed were designated for payment in the documents supporting a Construction Loan Advance disbursed by or on behalf of the Insured on or before Date of Coverage.

4   This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) by reason of any Mechanic's Lien arising from services, labor, material or equipment:
    a.  furnished after Date of Coverage: or
    b.  not designated for payment in the documents supporting a Construction Loan Advance disbursed by or on behalf of the Insured on or before Date of Coverage.

This endorsement is issued as part of the policy.  Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.  To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls.  Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

[Bracketed material optional]

 [FNTG BRAND]

BY: _____
            Authorized Signatory

ALTA Endorsement Form 32-06
(Construction Loan-Loss of Priority) (2-3-11)
© American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    SECTION 32

**ENDORSEMENT**

**Attached to Policy No. _____**

**Issued by [FNTG BRAND]**

1.  Covered Risk 11(a) of this policy is deleted.

2.  The insurance [for Construction Loan Advances] added by Section 3 of this endorsement is subject to the exclusions in Section 4 of this endorsement and the Exclusions from Coverage in the Policy, the provisions of the Conditions, and the exceptions contained in Schedule B. For the purposes of this endorsement and each subsequent Disbursement Endorsement:

    a.  "Date of Coverage" is_____ unless the Company sets a different Date of Coverage by an ALTA 33-06 Disbursement Endorsement issued at the discretion of the Company.

    b.  "Construction Loan Advance" shall mean an advance that constitutes Indebtedness made on or before Date of Coverage for the purpose of financing in whole or in part the construction of improvements on the Land.

    c.  "Mechanic's Lien" shall mean any statutory lien or claim of lien, affecting the Title, that arises from services provided, labor performed, or materials or equipment furnished.

3.  The Company insures against loss or damage sustained by the Insured by reason of:

    a.  The invalidity or unenforceability of the lien of the Insured Mortgage as security for each Construction Loan Advance made on or before the Date of Coverage;

    b.  The lack of priority of the lien of the Insured Mortgage as security for each Construction Loan Advance made on or before the Date of Coverage, over any lien or encumbrance on the Title recorded in the Public Records and not shown in Schedule B; and

    c.  The lack of priority of the lien of the Insured Mortgage as security for each Construction Loan Advance made on or before the Date of Coverage over any Mechanic's Lien if notice of the Mechanic's Lien is not filed or recorded in the Public Records, but only to the extent that direct payment to the Mechanic's Lien claimant for the charges for the services, labor, materials or equipment  for which the Mechanic's Lien is claimed  has been made by the Company or by the Insured with the Company's written approval.

4.  This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) by reason of any Mechanic's Lien arising from services, labor, material or equipment:
    a.  furnished after Date of Coverage; or
    b.  to the extent that the Mechanic's Lien claimant was not directly paid by the Company or by the Insured with the Company's written approval.

This endorsement is issued as part of the policy.  Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.  To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls.  Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

 [Witness clause optional]

[Bracketed material optional]

[FNTG BRAND]

By: _____

ALTA Endorsement Form 32.1-06
(Construction Loan-Loss of Priority-Direct Payment) (rev. 4-2-13)
 American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                                            **SECTION 32**

**ENDORSEMENT**

**Attached to Policy No. _____**

**Issued by [FNTG BRAND]**

1.   Covered Risk 11(a) of this policy is deleted.

2.   The insurance [for Construction Loan Advances] added by Section 3 of this endorsement is subject to the exclusions in Section 4 of this endorsement and the Exclusions from Coverage in the Policy, the provisions of the Conditions, and the exceptions contained in Schedule B. For the purposes of this endorsement and each subsequent Disbursement Endorsement:

   a.   "Date of Coverage" is[_____ unless the Company sets a different Date of Coverage by an ALTA 33-06 Disbursement Endorsement issued at the discretion of the Company.

   b.   "Construction Loan Advance" shall mean an advance that constitutes Indebtedness made on or before Date of Coverage for the purpose of financing in whole or in part the construction of improvements on the Land.

   c.   "Mechanic's Lien" shall mean any statutory lien or claim of lien, affecting the Title, that arises from services provided, labor performed, or materials or equipment furnished.

3.   The Company insures against loss or damage sustained by the Insured by reason of:

   a.   The invalidity or unenforceability of the lien of the Insured Mortgage as security for each Construction Loan Advance made on or before the Date of Coverage;

   b.   The lack of priority of the lien of the Insured Mortgage as security for each Construction Loan Advance made on or before the Date of Coverage, over any lien or encumbrance on the Title recorded in the Public Records and not shown in Schedule B; and

   c.   The lack of priority of the lien of the Insured Mortgage, as security for each Construction Loan Advance made on or before the Date of Coverage over any Mechanic's Lien, if notice of the Mechanic's Lien is not filed or recorded in the Public Records, but only to the extent that a direct payment to the Mechanic's Lien claimant  for the charges for the services, labor, materials or equipment  for which the Mechanic's Lien is claimed  has been made by the Insured  or on the Insured's behalf on or before Date of Coverage.

4    This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) by reason of any Mechanic's Lien arising from services, labor, material or equipment:
   a.   furnished after Date of Coverage: or
   b.   To the extent that the Mechanic's lien claimant was not directly paid by the Insured  or on the Insured's behalf.

This endorsement is issued as part of the policy.  Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.  To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls.  Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

[Bracketed material optional]

 [FNTG BRAND]

BY: _____
            Authorized Signatory

ALTA Endorsement Form 32.2-06
(Construction Loan-Loss of Priority-Insured's Direct Payment) (rev. 4/2/13)
© American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 33**

**Return to Table of Contents**

### CONSTRUCTION LOAN DISBURSEMENT
### ALTA ENDORSEMENT - FORM 33-06

#### PURPOSE

This endorsement is used in conjunction with ALTA Form 32-06 or 32.1-06 when the Date of Coverage to be extended.

*The issuance of any construction lien or mechanic lien coverage is extra-hazardous and all Company guidelines and authority limits must be strictly observed. The availability of this endorsement must be authorized by your Company underwriting advisor. Many states use state specific forms for this coverage and in all cases those forms would be used unless directed to use this form by your Company underwriting advisor.*

#### SECTIONS OF POLICY AMENDED BY ENDORSEMENT

As used with the Construction Loan forms discussed in Section 32, this endorsement modifies the Date of Coverage originally indicated in those forms.

#### BASIS FOR PROVIDING COVERAGE

A search of the Public Records according to state underwriting guidelines should be done before each draw and any matters disclosed by such a search should be added to the endorsement in the appropriate place. The Date of Coverage is the date through which we are willing to extend the liability for mechanic liens as discussed in Section 32. It may be the date of the draw request, but in all cases the title search must cover that date. It is especially important to verify that any ML notices or other instruments of that nature have been found and disclosed. If matters are added to Schedule A and B of the policy, care should be taken that all matters are shown appropriately.

**REMEMBER: Any use of this endorsement must be approved by your Company underwriting advisor.**

#### MODIFICATION

In the event that modification of an endorsement is requested, it is necessary to consider your state regulatory requirements for filing and approval of forms. The ALTA has provided that the title underwriters "are free to use [Form 33-06], subject to any changes or limitations they …consider appropriate." You must obtain the approval of the Company's underwriting advisor before complying with any request for a modification.

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**ENDORSEMENT**

Attached to Policy No._____
Issued by
[FNTG BRAND]


1.   The Date of Coverage is amended to _____.

    [a.   The current disbursement is: $ _____ ]

    [b.   The aggregate amount, including the current disbursement, recognized by the Company
        as disbursed by the Insured is: $_____]

2.   Schedule A is amended as follows:



3.   Schedule B is amended as follows:

    [Part I]

    [Part II]


This endorsement is issued as part of the policy.  Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy or (iv) increase the Amount of Insurance.  To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls.  Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements to it.


[Witness Optional]
[Bracketed material optional]

DATED:

[FNTG BRAND]

BY: _____
        AUTHORIZED SIGNATORY

ALTA Endorsement Form 33-06
(Disbursement) (2-3-11)
© American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    SECTION 34

**Return to Table of Contents**

**IDENTIFIED RISK COVERAGE**

**ALTA ENDORSEMENT – FORM 34-06**


**PURPOSE**


      This endorsement should be used whenever we decide to assume a specific risk or "Identified Risk" as defined therein. Sometime this is referred to as "insuring over", especially when we have raised that risk in a commitment or policy. It may also be referred to as "affirmative coverage".  There are many ways for the Company to assume the risk of a known title issue, and they vary in clarity and scope. Any such coverage should be granted in conformance with the structure of the commitment or policy, using indemnity language and limiting the scope to expressly identify the quantity of risk undertaken. Our willingness to give additional coverage is a matter to be discussed with your Company underwriting advisor.  Once we have decided what specific risks we will cover, the use of this endorsement is strongly recommended. The Company would like to standardize the format for the granting of this type of coverage. The use of the endorsement clarifies the impact of the coverage on the general marketability coverage afforded by the policy. It also clarifies that although we require a final court decree before loss can be determined, it does not relieve us of the duty to defend. If we are unwilling to include defense costs in our coverage, additional language and modifications must be made to the endorsement.


**SECTIONS OF POLICY AMENDED BY ENDORSEMENT**

The endorsement modifies the referenced exception, or Identified Risk. It modifies the definition of Covered Risk 3 (Unmarketable Title) to provide that, for the Identified Risk, only insurable title is being offered. In other words, loss can only be occasioned upon the refusal to subsequently insure with the limited coverage granted.


**BASIS FOR PROVIDING COVERAGE**

The underwriting for the granting of any type of additional coverage in reference to a specific exception must be according to Company guidelines and approved at the proper levels. Your Company underwriting advisor must be consulted. Typically, the description of the "Identified Risk" required in Item 1 of the endorsement would be the same as the exception shown in Schedule  B – "Mortgage from---to---…." or "Violation of Restriction …." Occasionally, such as with an encroachment, we should limit the Identified Risk to the enforced removal of that encroachment only, or consider the use of the ALTA Form 28-06 if the encroachment is onto an easement.  We don't intend to assume liability for any other type of loss that could be imposed by an encroachment, such as money damages, other rights imposed in lieu of enforced removal or

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

zoning issues. In the case of any type of encroachment that is being shown as an exception, we should describe the Identified Risk as the "enforced removal of the improvement" shown as the encroachment described in the exception.

<div align="center">

**MODIFICATION**

</div>

In the event that modification of an endorsement is requested, it is necessary to consider your state regulatory requirements for filing and approval of forms. If the endorsement is modified, the endorsement is not an ALTA form and should not reference ALTA in the title.  You must obtain the approval of the Company's underwriting adviser before complying with any request for a modification.

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                                    **SECTION 34**

**ENDORSEMENT**

Attached to Policy No._____
Issued by
[FNTG BRAND]

1.  As used in this endorsement "Identified Risk" means: [*insert description of the title defect, restriction encumbrance or other matter*] described in Exception _____ of Schedule B.

2.  The Company insures against loss or damage sustained by the Insured by reason of:

    a.  A final order or decree enforcing the Identified Risk in favor of an adverse party; or

    b.  The release of a prospective purchaser or lessee of the Title or lender on the Title from the obligation to purchase, lease, or lend as a result of the Identified Risk, but only if

        i.   there is a contractual condition requiring the delivery of marketable title, and

        ii.  neither the Company nor any other title insurance company is willing to insure over the Identified Risk with the same conditions as in this endorsement.

3.  The Company will also pay the costs, attorneys' fees, and expenses incurred in defense of the Title by reason of the Identified Risk insured against by Paragraph 2 of this endorsement, but only to the extent provided in the Conditions.

4.  This endorsement does not obligate the Company to establish the Title free of the Identified Risk or to remove the Identified Risk, but if the Company does establish the Title free of the Identified Risk or removes it, Section 9(a) of the Conditions applies.

This endorsement is issued as part of the policy.  Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy or (iv) increase the Amount of Insurance.  To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls.  Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements to it.

[Witness Optional]

DATED:

[FNTG BRAND]

BY: _____
        AUTHORIZED SIGNATORY

ALTA Endorsement Form 34-06
(Identified Risk Coverage) (8-1-11)
© American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

Return to Table of Contents

## MINERALS AND OTHER SUBSURFACE SUBSTANCES

## ALTA ENDORSEMENT – FORMS 35-06, 35.1-06, 35.2-06, 35.3-06

### PURPOSE

These endorsement forms were originally  developed to provide coverage to lenders with respect to the enforced removal or alteration of improvements resulting from the extraction or development of minerals or other subsurface substances. This coverage was previously included in the former ALTA 9 series. It is no longer contained within those endorsements other than the revised ALTA 9-06 and the new ALTA 9.7-06. This coverage may be available in some areas for owners policies also.

### SECTIONS OF POLICY AMENDED BY ENDORSEMENT

No specific sections of the policy are amended by this endorsement; however additional coverages are added.

### BASIS FOR PROVIDING COVERAGE

These endorsements differ only in the definitions of "Improvement".

- Form 35-06 - "Improvement" means a building on the Land at Date of Policy.
- Form 35.1-06 -  "Improvement" means a building, structure located on the surface of the Land, and any paved road, walkway, parking area, driveway, or curb, affixed to the Land at Date of Policy and that by law constitutes real property, but excluding any crops, landscaping, lawn, shrubbery, or trees.
- Form 35.2-06 - "Improvement" means each improvement on the Land at Date of Policy specifically described and itemized on the exhibit attached to the endorsement.
- Form 35.3-06 - "Improvement" and "Future Improvement" are included in the coverage.
  - o  "Improvement" means a building, structure located on the surface of the Land, and any paved road, walkway, parking area, driveway, or curb, affixed to the Land at Date of Policy and that by law constitutes real property, but excluding any crops, landscaping, lawn, shrubbery, or trees.
  - o   "Future Improvement" means a building, structure, and any paved road, walkway, parking area, driveway, or curb to be constructed on or affixed to the Land in the locations according to certain Plans identified in the endorsement and that by law will constitute real property, but excluding any crops, landscaping, lawn, shrubbery, or trees.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

The insurance is afforded only for damage caused by the enforced removal based up the right to use the surface of the land to extract or develop mineral interests. It is not appropriate for other mineral interests. Coverage may be given provided:

- There is no separation of minerals from the surface estate by deed, lease or otherwise; or
- There is a separate mineral estate but it does not include any rights of surface entry; or
- Mineral rights, with rights of surface entry either expressed or implied, have been severed from the surface estate.  However, the land and surrounding area is entirely improved with residential development.  Under these circumstances, submit the request for coverage to the Company's underwriting advisor who will consider the risk based upon such things as the size of the parcel, use (proposed or current), local zoning, ownership of minerals and the possibility of waiver of mineral rights. The Company's underwriting advisor will review appropriate surveys, or site and elevations plans; or
- The instrument containing the rights includes the obligation of the mineral owner to not damage any existing buildings. Care must be taken to verify the current improvements were in existence at the time of the creation of the mineral interest. Form 35.3-06 would not be available in this instance.

The form allows you to identify any specific grants or reservations of mineral rights that you do NOT wish to give coverage over.


**MODIFICATION**


In the event that modification of an endorsement is requested, it is necessary to consider your state regulatory requirements for filing and approval of forms. If the endorsement is modified, the endorsement is not an ALTA form and should not reference ALTA in the title.  You must obtain the approval of the Company's underwriting adviser before complying with any request for a modification.

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**ENDORSEMENT**

**Attached to Policy No. _____**

**Issued by**

*[FNTG BRAND]*

1.  The insurance provided by this endorsement is subject to the exclusion in Section 4 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

2.  For purposes of this endorsement only, "Improvement" means a building on the Land at Date of Policy.

3.  The Company insures against loss or damage sustained by the Insured by reason of the enforced removal or alteration of any Improvement resulting from the future exercise of any right existing at Date of Policy to use the surface of the Land for the extraction or development of minerals or any other subsurface substances excepted from the description of the Land or excepted in Schedule B.

4.  This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from:

    a.  contamination, explosion, fire, vibration, fracturing, earthquake or subsidence; [or]

    b.  negligence by a person or an Entity exercising a right to extract or develop minerals or other subsurface substances[; or

    c.  the exercise of the rights described in (                    )]. *

        * Instructional note:  identify the interest excepted from the description of the Land in Schedule A or excepted in Schedule B that you intend to exclude from this coverage.


This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.


[Witness clause optional]


[FNTG BRAND]


By: _____

        Authorized Signatory

ALTA Endorsement Form 35-06
(Minerals and other Subsurface Substances-Buildings) (4/2/12)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                                    SECTION 35

**ENDORSEMENT**

**Attached to Policy No. _____**

**Issued by**

*[FNTG BRAND]*

1.  The insurance provided by this endorsement is subject to the exclusion in Section 4 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

2.  For purposes of this endorsement only, "Improvement" means a building, structure located on the surface of the Land, and any paved road, walkway, parking area, driveway, or curb, affixed to the Land at Date of Policy and that by law constitutes real property, but excluding any crops, landscaping, lawn, shrubbery, or trees.

3.  The Company insures against loss or damage sustained by the Insured by reason of the enforced removal or alteration of any Improvement, resulting from the future exercise of any right existing at Date of Policy to use the surface of the Land for the extraction or development of minerals or any other subsurface substances excepted from the description of the Land or excepted in Schedule B.

4.  This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from:

    a.  contamination, explosion, fire, vibration, fracturing, earthquake or subsidence; [or]

    b.  negligence by a person or an Entity exercising a right to extract or develop minerals or other subsurface substances[; or

    c.  the exercise of the rights described in (                    )]. *

        * Instructional note:  identify the interest excepted from the description of the Land in Schedule A or excepted in Schedule B that you intend to exclude from this coverage.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

[FNTG BRAND]

By: _____
            Authorized Signatory

ALTA Endorsement Form 35.1-06
(Minerals and other Subsurface Substances-Improvements) (4/2/12)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**ENDORSEMENT**

**Attached to Policy No. _____**

**Issued by**

*[FNTG BRAND]*


1.  The insurance provided by this endorsement is subject to the exclusion in Section 4 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

2.  For purposes of this endorsement only, "Improvement" means each improvement on the Land at Date of Policy itemized [on the exhibit attached to this endorsement] [below:]

3.  The Company insures against loss or damage sustained by the Insured by reason of the enforced removal or alteration of any Improvement resulting from the future exercise of any right existing at Date of Policy to use the surface of the Land for the extraction or development of minerals or any other subsurface substances excepted from the description of the Land or excepted in Schedule B.

4.  This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from:

    a.  contamination, explosion, fire, vibration, fracturing, earthquake or subsidence; [or]

    b.  negligence by a person or an Entity exercising a right to extract or develop minerals or other subsurface substances[; or

    c.  the exercise of the rights described in (                )]. *

        * Instructional note:  identify the interest excepted from the description of the Land in Schedule A or excepted in Schedule B that you intend to exclude from this coverage.


This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.


[Witness clause optional]


**[FNTG BRAND]**


By: _____
            Authorized Signatory


ALTA Endorsement Form 35.2-06
(Minerals and other Subsurface Substances-Described Improvements) (4/2/12)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                                      **SECTION 35**

**ENDORSEMENT**

**Attached to Policy No. _____**

**Issued by**

*[FNTG BRAND]*

3.   The insurance provided by this endorsement is subject to the exclusion in Section 4 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

4.   For purposes of this endorsement only:

   a.   "Improvement" means a building, structure located on the surface of the Land, and any paved road, walkway, parking area, driveway, or curb, affixed to the Land at Date of Policy and that by law constitutes real property, but excluding any crops, landscaping, lawn, shrubbery, or trees.

   b.   "Future Improvement" means a building, structure, and any paved road, walkway, parking area, driveway, or curb to be constructed on or affixed to the Land in the locations according to the Plans and that by law will constitute real property, but excluding any crops, landscaping, lawn, shrubbery, or trees.

   c.   "Plans" means the survey, site and elevation plans or other depictions or drawings prepared by *(insert name of architect or engineer)* dated _____, last revised _____, designated as *(insert name of project or project number)* consisting of ___ sheets.

3.   The Company insures against loss or damage sustained by the Insured by reason of the enforced removal or alteration of an Improvement or a Future Improvement, resulting from the future exercise of any right existing at Date of Policy to use the surface of the Land for the extraction or development of minerals or any other subsurface substances excepted from the description of the Land or excepted in Schedule B.

4.   This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from:

   a.   contamination, explosion, fire, vibration, fracturing, earthquake or subsidence; [or]

   b.   negligence by a person or an Entity exercising a right to extract or develop minerals or other subsurface substances[; or

   c.   the exercise of the rights described in (                    )]. *

        * Instructional note:  identify the interest excepted from the description of the Land in Schedule A or excepted in Schedule B that you intend to exclude from this coverage.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.


[Witness clause optional]

**[FNTG BRAND]**


By: _____
            Authorized Signatory



ALTA Endorsement Form 35.3-06
(Minerals and other Subsurface Substances-Land Under Development) (4/2/12)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    SECTION 36

**Return to Table of Contents**

**ENERGY PROJECT Series**

**ALTA ENDORSEMENT – FORMS**
**36.06, 36.1-06, 36.2-06, 36.3-06, 36.4-06, 36.5-06, 36.6-06**

**PURPOSE**

The ALTA 36 series of endorsement forms were developed to provide coverages to energy project owners and lenders which use a leasehold or easement rights structure. Examples of such projects would include solar or wind farms.

**SECTIONS OF POLICY AMENDED BY ENDORSEMENT**

Forms 36.06 (Energy Project-Leasehold/Easement-Owners)

Form 36.1-06 (Energy Project-Leasehold/Easement-Loan)

 These endorsement forms provide coverage to an owner or a lender on an energy project which uses a leasehold **and** easement rights structure. They are similar to the ALTA 13-06 (Leasehold Owner's) and 13.1-06 (Leasehold-Loan) endorsements. In addition, these endorsement forms:

- Add specific energy project definitions
- Add coverage for insured easement interests that are a common component of energy projects
- Expand the "Valuation of Title" to clarify that loss on a single parcel shall include resulting loss to the integrated project as a whole
- Add coverage for "Severable Improvements" which is separately available with the previously filed ALTA 31-06 (Severable Improvements) form
- Modify the "Additional items of loss" section to include items appropriate to the energy project transaction
- Add a limitation that the coverage does not include loss resulting from environmental damage or contamination, to conform to policy provisions.

Form 36.2-06 (Energy Project-Leasehold-Owner's)

Form 36.3-06 (Energy Project-Leasehold-Loan)

These endorsement forms provide coverage to an owner or a lender on an energy project which uses only a leasehold structure. They are similar to the ALTA 13-06 (Leasehold Owner's) and 13.1-06 (Leasehold-Loan) endorsements. In addition, these endorsement forms:

- Add specific energy project definitions

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

- Expand the "Valuation of title" to clarify that loss on a single parcel shall include resulting loss to the integrated project as a whole
- Add coverage for "Severable Improvements" which is separately available with the previously filed ALTA 31-06 (Severable Improvements)
- Modify the "Additional items of loss" section to include items appropriate to the energy project transaction
- Add a limitation that the coverage does not include loss resulting from environmental damage or contamination, to conform to policy provisions.

Form 36.4-06 (Energy Project-Covenants, Conditions and Restrictions-Land Under Development-Owners)

Form 36.5-06(Energy Project-Covenants, Conditions and Restrictions-Land Under Development-Loan)

These endorsement forms provide coverage to an owner or a lender on an energy project which is under development, with respect to covenants, conditions and restrictions. These forms are similar to the ALTA 9.8-06 (Covenants, Conditions and Restrictions – Land Under Development-Owners) and the ALTA 9.7-06 (Covenants, Conditions and Restrictions – Land Under Development-Loan) endorsement forms. In addition, these endorsement forms:

- Add specific energy project definitions

- Add coverage for violation of an enforceable Covenant unless shown in Schedule B

- Add coverage for enforced removal as a result of a building setback encroachment not shown as an exception on Schedule B

- Add coverage for loss occasioned by a recorded notice of a violation of a Covenant relating to environmental protection if not shown as an exception on Schedule B

- Include a limitation that the coverage does not include loss resulting from Covenants contained in an easement or lease, any obligation to perform maintenance, or any covenant pertaining to environmental damage or contamination.

Endorsement Form 36.6-06 (Energy Project-Encroachments): This endorsement form provides coverage to an owner or a lender on an energy project, such as a solar or wind farm, with respect to boundary line and easement encroachments. This form is similar to the ALTA 28.1-06 (Encroachments-Boundaries and Easements) endorsement form. This endorsement form:

- Adds specific energy project definitions

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

- Provides coverage for the loss occasioned by the existence of an encroachment by improvements onto a neighboring property or onto an easement area within the insured Land, other than as disclosed in Schedule B exceptions

- Provides coverage for the loss occasioned by the existence of an encroachment by a neighboring improvement onto the insured Land, other than as disclosed in Schedule B exceptions

- Provides coverage for the enforced removal of or damage to insured Improvements based upon an encroachment into the easement area or onto neighboring property.

This form also allows the exclusion of a listed encroachment from the enforced removal and damage coverage.

## BASIS FOR PROVIDING COVERAGE

Endorsements 36.06, 36.1-06, 36.2-06 and 36.3-06 [Leasehold/ Easement and Leasehold]  are to be issued when the customer is seeking the additional coverages provided therein and the Land consists of leasehold interests only, or leasehold and easement interests. The searching and examining procedures for insuring leaseholds as discussed under Section 13 of this manual remain the same, as does the modification of Schedule A. In Forms 36.2-06 and 36.3-06, the estate or interest in the Land is not a Fee, but rather the Leasehold Estate created by and between the parties, with a reference to the underlying lease information. That is correct for Forms 36-06 and 36.1-06 also, which additionally have the easement interests as part of the Land. For all of these forms, the entire lease must be examined, and many states require any short form lease or memorandum of the lease (if the full lease is not recorded) to contain the signatures of both parties to give effective constructive notice on the record of the tenants' rights and interests. Additionally all underwriting guidelines for the search, examination and insurance of easement interests must be followed for Forms 36-06 and 36.1-06.

Consult your Company underwriting advisor for instructions on how to correctly modify the fee policies for use with these endorsements.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

Form 36.4-06 [CCR-Land under development-Owners]

**An accurate current survey of the Land and the Plans as defined therein is required for coverage. The survey may be incorporated into the Plans, if appropriate.**

Coverage 3.a. may be given provided:

- There are no covenants, conditions or restrictions, or
- it has been determined that either there are no violations that are enforceable, or
- all enforceable violations that have been disclosed by inspection, survey, or other means are identified and excepted by description of such matter in Schedule B.

Coverage 3.b. may be given provided:

- There are no building setback lines shown on a recorded or filed plat of subdivision, or
- It has been determined that either there are no violations that are enforceable, or
- All enforceable violations that have been disclosed by inspection, survey or other means are identified and excepted in Schedule B.

Coverage 3.c. may be given provided:

- Either there are no notices of violations of covenants, conditions and restrictions relating to environmental protection recorded or filed in the public records, or
- the notices of violations are identified and excepted in Schedule B.

Form36.5-06 [CCR-Land Under Development-Loan]

**An accurate current survey of the Land and the Plans as defined therein is required for coverage. The survey may be incorporated into the Plans, if appropriate.**

Coverage 3.a. may be given if any of the following situations apply:

- There are no covenants, conditions or restrictions.
- The covenants, conditions or restrictions are not enforceable under state or federal law.
- The restrictions contain a clause protecting the lien of a mortgage made in good faith and for value against a violation.
- Rights to enforce the restrictions have been waived or are subordinated to the Insured Mortgage.

Coverage 3.b. may be given provided:

- There are no covenants, conditions or restrictions, or

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

- it has been determined that either there are no violations that are enforceable, or
- all enforceable violations that have been disclosed by inspection, survey or other means are identified and excepted in Schedule B.

Coverage 3.c. may be given provided:

- There are no building setback lines shown on a recorded or filed plat of subdivision, or
- it has been determined that either there are no violations that are enforceable, or
- all enforceable violations that have been disclosed by inspection, survey or other means are identified and excepted in Schedule B.

Coverage 3 (d) may be given provided:

- Either there are no notices of violation of covenants, conditions and restrictions relating to environmental protection recorded or filed in the public records, or
- the notices of violations are identified and excepted in Schedule B.

Endorsement 36.6-06[Encroachments]:

**An accurate current survey of the Land and the Plans as defined therein is required for coverage.**

Coverage 3.a. may be given provided:

For encroachments onto adjoining land
- Any encroachments disclosed by inspection, survey or other means, are also expressly excepted by description of such matter in Schedule B.

For encroachments onto easements located on the Land, either
- there are no easements excepted in Schedule B; or
- encroachments onto easements, disclosed by inspection, survey or other means, are also expressly excepted by description of such matter in Schedule B.

Coverage 3.b. may be provided if any of the following situations apply:

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

- for encroachments on the Land by a neighboring improvement- any such encroachments disclosed by inspection, survey or other means, are expressly excepted by description of such matter in Schedule B.

Coverage 3.c. may be given if any of the following situations apply:

- There are no easements excepted in Schedule B.
- There are no encroachments onto easements excepted in Schedule B.
- Encroachments shown are minor, would not interfere with the use or maintenance of the easement and your Company underwriting advisor is satisfied that the Electricity Facility or Severable Improvement could not be forcibly removed under state law.

Coverage 3.d. may be given if any of the following situations apply:

- There are no easements excepted in Schedule B.
- There are no encroachments onto easements excepted in Schedule B.
- The encroachment is minor; would not interfere with the maintenance of the easement and your Company underwriting advisor is satisfied that a state court would not require its removal.

The form allows you to list the encroachments for which you do not wish to give coverage.

**MODIFICATION**

In the event that modification of an endorsement is requested, it is necessary to consider your state regulatory requirements for filing and approval of forms. If the endorsement is modified, the endorsement is not an ALTA form and should not reference ALTA in the title. You must obtain the approval of the Company's underwriting adviser before complying with any request for a modification.

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**ENDORSEMENT**

**Attached to Policy No. _____**

**Issued by**

*[FNTG BRAND]*

5.  The insurance provided by this endorsement is subject to the exclusions in Section 6 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

2.  For purposes of this endorsement only:

   a.  "Constituent Parcel" means one of the parcels of Land described in Schedule A that together constitute one integrated project.

   b.  "Easement" means each easement described in Schedule A.

   c.  "Easement Interest" means the right of use granted in the Easement for the Easement Term.

   d.  "Easement Term" means the duration of the Easement Interest, as set forth in the Easement, including any renewal or extended term if a valid option to renew or extend is contained in the Easement.

   e.  "Electricity Facility" means an electricity generating facility which may include one or more of the following: a substation; a transmission, distribution or collector line; an interconnection, inverter, transformer, generator, turbine, array, solar panel, or module; a circuit breaker, footing, tower, pole, cross-arm, guy line, anchor, wire, control system, communications or radio relay system, safety protection facility, road, and other building, structure, fixture, machinery, equipment, appliance and item associated with or incidental to the generation, conversion, storage, switching, metering, step-up, step-down, inversion, transmission, conducting, wheeling, sale or other use or conveyance of electricity, on the Land at Date of Policy or to be built or constructed on the Land in the locations according to the Plans, that by law constitutes real property.

   f.  "Evicted" or "Eviction" means (a) the lawful deprivation, in whole or in part, of the right of possession or use insured by this policy, contrary to the terms of any Lease or Easement or (b) the lawful prevention of the use of the Land or any Electricity Facility or Severable Improvement for the purposes permitted by the Lease or the Easement, as applicable, in either case as a result of a matter covered by this policy.

   g.  "Lease" means each lease described in Schedule A.

   h.  "Leasehold Estate" means the right of possession granted in the Lease for the Lease Term.

   i.  "Lease Term" means the duration of the Leasehold Estate, as set forth in the Lease, including any renewal or extended term if a valid option to renew or extend is contained in the Lease.

   j.  "Plans" means the survey, site and elevation plans or other depictions or drawings prepared by *(insert name of architect or engineer)* dated _____, last revised _____ ,designated as *(insert name of project or project number)* consisting of ___sheets.

   k.  "Remaining Term" means the portion of the Easement Term or the Lease Term remaining after the Insured has been Evicted.

   l.  "Severable Improvement" means property affixed to the Land at Date of Policy or to be affixed in the locations according to the Plans, that would constitute an Electricity Facility but for its characterization as personal property, and that by law does not constitute real property because (a) of its character and manner of attachment to the Land and (b) the property can be severed from the Land without causing material damage to the property or to the Land.

3.  Valuation of Title as an Integrated Project:

   a.  If in computing loss or damage it becomes necessary to value the Title, or any portion of it, as the result of an Eviction, then, as to that portion of the Land from which the Insured is Evicted, that value shall consist of (i) the value of (A) the Leasehold Estate or the Easement Interest for the Remaining Term, as applicable, (B) any Electricity Facility existing on the date of the Eviction, and, if applicable, (ii) any reduction in value of another insured Lease or Easement as computed in Section 3(b) below.

   b.  A computation of loss or damage resulting from an Eviction affecting any Constituent Parcel shall include loss or damage to the integrated project caused by the covered matter affecting the Constituent Parcel from which the Insured is Evicted.

   c.  The Insured Claimant shall have the right to have the Leasehold Estate, the Easement Interest, and any Electricity Facility affected by a defect insured against by this policy valued either as a whole or separately.  In either event, this determination of value shall take into account any rent or use payments no longer required to be paid for the Remaining Term.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                                   SECTION 36

    d.   The provisions of this Section 3 shall not diminish the Insured's rights under any other endorsement to the policy; however, the calculation of loss or damage pursuant to this endorsement shall not allow duplication of recovery for loss or damage calculated pursuant to Section 8 of the Conditions or any other endorsement to the policy.

4.   Valuation of Severable Improvements:

    a.   In the event of an Eviction, the calculation of the loss shall include (but not to the extent that these items of loss are included in the valuation of the Title determined pursuant to Section 8 of the Conditions or any other provision of this or any other endorsement) the diminution in value of the Insured's interest in any Severable Improvement resulting from the Eviction, reduced by the salvage value of the Severable Improvement.

    b.   The policy does not insure against loss or damage (and the Company will not pay any costs, attorneys' fees or expenses) relating to:

        i.   the attachment, perfection or priority of any security interest in any Severable Improvement;

        ii.   the vesting or ownership of title to or rights in any Severable Improvement;

        iii.   any defect in or lien or encumbrance on the title to any Severable Improvement; or

        iv.   the determination of whether any specific property is real or personal in nature.

5.   Additional items of loss covered by this endorsement:

If the Insured is Evicted, the following items of loss, if applicable to that portion of the Land from which the Insured is Evicted, shall be included, without duplication, in computing loss or damage incurred by the Insured, but not to the extent that the same are included in the valuation of the Title determined pursuant to Section 3 of this endorsement, the valuation of Severable Improvements pursuant to Section 4 of this endorsement, or Section 8(a)(ii) of the Conditions.

    a.   The reasonable cost of: (i) disassembling, removing, relocating and reassembling any Severable Improvement that the Insured has the right to remove and relocate, situated on the Land at the time of Eviction, to the extent necessary to restore and make functional the integrated project; (ii) transportation of that Severable Improvement for the initial one hundred miles incurred in connection with the restoration or relocation; and (iii) restoring the Land to the extent damaged as a result of the disassembly, removal and relocation of the Severable Improvement and required of the Insured solely because of the Eviction.

    b.   Rent, easement payments or damages for use and occupancy of the Land prior to the Eviction that the Insured as owner of the Leasehold Estate or the Easement Interest, as applicable, may be obligated to pay to any person having paramount title to that of the lessor in the Lease or the grantor in the Easement, as applicable.

    c.   The amount of rent, easement payments or damages that, by the terms of the Lease or the Easement, as applicable, the Insured must continue to pay to the lessor or grantor after Eviction with respect to the portion of the Leasehold Estate or Easement Interest, as applicable, from which the Insured has been Evicted.

    d.   The fair market value, at the time of the Eviction, of the estate or interest of the Insured in any lease, sublease or easement specifically permitted by the Lease or Easement, as applicable, and made by the Insured as lessor or grantor of all or part of the Leasehold Estate or Easement Interest, as applicable.

    e.   Damages caused by the Eviction that the Insured is obligated to pay to lessees or sublessees or easement or subeasement grantees on account of the breach of any lease or sublease or easement or subeasement specifically permitted by the Lease or the Easement, as applicable, and made by the Insured as lessor or grantor of all or part of the Leasehold Estate or Easement Interest, as applicable.

    f.   The reasonable cost to obtain land use, zoning, building and occupancy permits, architectural and engineering services and environmental testing and reviews for a replacement leasehold reasonably equivalent to the Leasehold Estate or a replacement easement reasonably equivalent to the Easement Interest, as applicable.

    g.   If any Electricity Facility is not substantially completed at the time of Eviction, the actual cost incurred by the Insured up to the time of Eviction, less the salvage value, for the Electricity Facility located on that portion of the Land from which the Insured is Evicted.  Those costs include costs incurred to construct and fabricate the Electricity Facility, obtain land use, zoning, building and occupancy permits, architectural and engineering services, construction management services, environmental testing and reviews, and landscaping, and cancellation fees related to the foregoing.

6.   This endorsement does not insure against loss, damage or costs of remediation (and the Company will not pay costs, attorneys' fees, or expenses) resulting from environmental damage or contamination.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 36**

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

**[FNTG BRAND]**

By: _____
                Authorized Signatory

ALTA Endorsement Form 36-06
(Energy Project –Leasehold/Easement-Owners) (4/2/12)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                                    **SECTION 36**

**ENDORSEMENT**

**Attached to Policy No. _____**

**Issued by**

*[FNTG BRAND]*

1.  The insurance provided by this endorsement is subject to the exclusions in Section 6 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

2.  For purposes of this endorsement only:

    a.  "Constituent Parcel" means one of the parcels of Land described in Schedule A that together constitute one integrated project.

    b.  "Easement" means each easement described in Schedule A.

    c.  "Easement Interest" means the right of use granted in the Easement for the Easement Term.

    d.  "Easement Term" means the duration of the Easement Interest, as set forth in the Easement, including any renewal or extended term if a valid option to renew or extend is contained in the Easement.

    e.  "Electricity Facility" means an electricity generating facility which may include one or more of the following: a substation; a transmission, distribution or collector line; an interconnection, inverter, transformer, generator, turbine, array, solar panel, or module; a circuit breaker, footing, tower, pole, cross-arm, guy line, anchor, wire, control system, communications or radio relay system, safety protection facility, road, and other building, structure, fixture, machinery, equipment, appliance and item associated with or incidental to the generation, conversion, storage, switching, metering, step-up, step-down, inversion, transmission, conducting, wheeling, sale or other use or conveyance of electricity, on the Land at Date of Policy or to be built or constructed on the Land in the locations according to the Plans, that by law constitutes real property.

    f.  "Evicted" or "Eviction" means (a) the lawful deprivation, in whole or in part, of the right of possession or use insured by this policy, contrary to the terms of any Lease or Easement or (b) the lawful prevention of the use of the Land or any Electricity Facility or Severable Improvement for the purposes permitted by the Lease or the Easement, as applicable, in either case as a result of a matter covered by this policy.

    g.  "Lease" means each lease described in Schedule A.

    h.  "Leasehold Estate" means the right of possession granted in the Lease for the Lease Term.

    i.  "Lease Term" means the duration of the Leasehold Estate, as set forth in the Lease, including any renewal or extended term if a valid option to renew or extend is contained in the Lease.

    j.  "Plans" means the survey, site and elevation plans or other depictions or drawings prepared by _(insert name of architect or engineer)_ dated _____, last revised _____ ,designated as _(insert name of project or project number)_ consisting of ___sheets.

    k.  "Remaining Term" means the portion of the Easement Term or the Lease Term remaining after the Insured has been Evicted.

    l.  "Severable Improvement" means property affixed to the Land at Date of Policy or to be affixed in the locations according to the Plans, that would constitute an Electricity Facility but for its characterization as personal property, and that by law does not constitute real property because (a) of its character and manner of attachment to the Land and (b) the property can be severed from the Land without causing material damage to the property or to the Land.

    m.  "Tenant" means the tenant under the Lease or a grantee under the Easement, as applicable, and, after acquisition of all or any part of the Title in accordance with the provisions of Section 2 of the Conditions of the policy, the Insured Claimant.

3.  Valuation of Title as an Integrated Project:

    a.  If in computing loss or damage it becomes necessary to value the Title, or any portion of it, as the result of an Eviction, then, as to that portion of the Land from which the Tenant is Evicted, that value shall consist of (i) the value of (A) the Leasehold Estate or the Easement Interest for the Remaining Term, as applicable, (B) any Electricity Facility existing on the date of the Eviction, and, if applicable, (ii) any reduction in value of another insured Lease or Easement as computed in Section 3(b) below.

    b.  A computation of loss or damage resulting from an Eviction affecting any Constituent Parcel shall include loss or damage to the integrated project caused by the covered matter affecting the Constituent Parcel from which the Insured is Evicted.

    c.  The Insured Claimant shall have the right to have the Leasehold Estate, the Easement Interest, and any Electricity Facility affected by a defect insured against by the policy valued either as a whole or separately.  In

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

either event, this determination of value shall take into account any rent or use payments no longer required to be paid for the Remaining Term.

    d.   The provisions of this Section 3 shall not diminish the Insured's rights under any other endorsement to the policy; however, the calculation of loss or damage pursuant to this endorsement shall not allow duplication of recovery for loss or damage calculated pursuant to Section 8 of the Conditions or any other endorsement to the policy.

4.   Valuation of Severable Improvements:

    a.   In the event of an Eviction, the calculation of the loss shall include (but not to the extent that these items of loss are included in the valuation of the Title determined pursuant to Section 3 of this endorsement or any other provision of this or any other endorsement) the diminution in value of the Insured's interest in any Severable Improvement resulting from the Eviction, reduced by the salvage value of the Severable Improvement.

    b.   The policy does not insure against loss or damage (and the Company will not pay any costs, attorneys' fees or expenses) relating to:

        i.   the attachment, perfection or priority of any security interest in any Severable Improvement;

        ii.   the vesting or ownership of title to or rights in any Severable Improvement;

        iii.   any defect in or lien or encumbrance on the title to any Severable Improvement; or

        iv.   the determination of whether any specific property is real or personal in nature.

5.   Additional items of loss covered by this endorsement:

If the Insured acquires all or any part of the Title in accordance with the provisions of Section 2 of the Conditions of the policy and thereafter is Evicted, the following items of loss, if applicable to that portion of the Land from which the Insured is Evicted shall be included, without duplication, in computing loss or damage incurred by the Insured, but not to the extent that the same are included in the valuation of the Title determined pursuant to Section 3 of this endorsement, the valuation of Severable Improvements pursuant to Section 4 of this endorsement, or Section 8(a)(iii) of the Conditions:

    a.   The reasonable cost of: (i) disassembling, removing, relocating and reassembling any Severable Improvement that the Insured has the right to remove and relocate, situated on the Land at the time of Eviction, to the extent necessary to restore and make functional the integrated project; (ii) transportation of that Severable Improvement for the initial one hundred miles incurred in connection with the restoration or relocation; and (iii) restoring the Land to the extent damaged as a result of the disassembly, removal and relocation of the Severable Improvement and required of the Insured solely because of the Eviction.

    b.   Rent, easement payments or damages for use and occupancy of the Land prior to the Eviction that the Insured as owner of the Leasehold Estate or the Easement Interest, as applicable, may be obligated to pay to any person having paramount title to that of the lessor in the Lease or the grantor in the Easement, as applicable.

    c.   The amount of rent, easement payments or damages that, by the terms of the Lease or the Easement, as applicable, the Insured must continue to pay to the lessor or grantor after Eviction with respect to the portion of the Leasehold Estate or Easement Interest, as applicable, from which the Insured has been Evicted.

    d.   The fair market value, at the time of the Eviction, of the estate or interest of the Insured in any lease, sublease or easement specifically permitted by the Lease or Easement, as applicable, and made by the Tenant as lessor or grantor of all or part of the Leasehold Estate or Easement Interest, as applicable.

    e.   Damages caused by the Eviction that the Insured is obligated to pay to lessees or sublessees or easement or subeasement grantees on account of the breach of any lease or sublease or easement or subeasement specifically permitted by the Lease or the Easement, as applicable, and made by the Tenant as lessor or grantor of all or part of the Leasehold Estate or Easement Interest, as applicable.

    f.   The reasonable cost to obtain land use, zoning, building and occupancy permits, architectural and engineering services and environmental testing and reviews for a replacement leasehold reasonably equivalent to the Leasehold Estate or a replacement easement reasonably equivalent to the Easement Interest, as applicable.

    g.   If any Electricity Facility is not substantially completed at the time of Eviction, the actual cost incurred by the Insured up to the time of Eviction, less the salvage value, for the Electricity Facility located on that portion of the Land from which the Insured is Evicted. Those costs include costs incurred to construct and fabricate the Electricity Facility, obtain land use, zoning, building and occupancy permits, architectural and engineering services, construction management services, environmental testing and reviews, and landscaping, and cancellation fees related to the foregoing.

6.   This endorsement does not insure against loss, damage or costs of remediation (and the Company will not pay costs, attorneys' fees, or expenses) resulting from environmental damage or contamination.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                          **SECTION 36**

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

[FNTG BRAND]

By: _____
          Authorized Signatory

ALTA Endorsement Form 36.1-06
(Energy Project –Leasehold/Easement-Loan) (4/2/12)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**ENDORSEMENT**

**Attached to Policy No. _____**

**Issued by**

*[FNTG BRAND]*

1.  The insurance provided by this endorsement is subject to the exclusions in Section 6 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

2.  For purposes of this endorsement only:

    a.  "Constituent Parcel" means one of the parcels of Land described in Schedule A that together constitute one integrated project.

    b.  "Electricity Facility" means an electricity generating facility which may include one or more of the following: a substation; a transmission, distribution or collector line; an interconnection, inverter, transformer, generator, turbine, array, solar panel, or module; a circuit breaker, footing, tower, pole, cross-arm, guy line, anchor, wire, control system, communications or radio relay system, safety protection facility, road, and other building, structure, fixture, machinery, equipment, appliance and item associated with or incidental to the generation, conversion, storage, switching, metering, step-up, step-down, inversion, transmission, conducting, wheeling, sale or other use or conveyance of electricity, on the Land at Date of Policy or to be built or constructed on the Land in the locations according to the Plans, that by law constitutes real property.

    c.  "Evicted" or "Eviction" means (a) the lawful deprivation, in whole or in part, of the right of possession insured by this policy, contrary to the terms of any Lease or (b) the lawful prevention of the use of the Land or any Electricity Facility or Severable Improvement for the purposes permitted by the Lease, in either case as a result of a matter covered by this policy.

    d.  "Lease" means each lease described in Schedule A.

    e.  "Leasehold Estate" means the right of possession granted in the Lease for the Lease Term.

    f.  "Lease Term" means the duration of the Leasehold Estate, as set forth in the Lease, including any renewal or extended term if a valid option to renew or extend is contained in the Lease.

    g.  "Plans" means the survey, site and elevation plans or other depictions or drawings prepared by _(insert name of architect or engineer)_ dated ____, last revised _____ ,designated as _(insert name of project or project number)_ consisting of ___sheets.

    h.  "Remaining Term" means the portion of the Lease Term remaining after the Insured has been Evicted.

    i.  "Severable Improvement" means property affixed to the Land at Date of Policy or to be affixed in the locations according to the Plans, that would constitute an Electricity Facility but for its characterization as personal property, and that by law does not constitute real property because (a) of its character and manner of attachment to the Land and (b) the property can be severed from the Land without causing material damage to the property or to the Land.

3.  Valuation of Title as an Integrated Project:

    a.  If in computing loss or damage it becomes necessary to value the Title, or any portion of it, as the result of an Eviction, then, as to that portion of the Land from which the Insured is Evicted, that value shall consist of (i) the value of (A) the Leasehold Estate for the Remaining Term, (B) any Electricity Facility existing on the date of the Eviction, and, if applicable, (ii) any reduction in value of another insured Lease as computed in Section 3(b) below.

    b.  A computation of loss or damage resulting from an Eviction affecting any Constituent Parcel shall include loss or damage to the integrated project caused by the covered matter affecting the Constituent Parcel from which the Insured is Evicted.

    c.  The Insured Claimant shall have the right to have the Leasehold Estate and any Electricity Facility affected by a defect insured against by this policy valued either as a whole or separately.  In either event, this determination of value shall take into account any rent no longer required to be paid for the Remaining Term.

    d.  The provisions of this Section 3 shall not diminish the Insured's rights under any other endorsement to the policy; however, the calculation of loss or damage pursuant to this endorsement shall not allow duplication of recovery for loss or damage calculated pursuant to Section 8 of the Conditions or any other endorsement to the policy.

4.  Valuation of Severable Improvements:

    b.  In the event of an Eviction, the calculation of the loss shall include (but not to the extent that these items of loss are included in the valuation of the Title determined pursuant to Section 8 of the Conditions or any other provision of this or any other endorsement) the diminution in value of the Insured's interest in any Severable Improvement resulting from the Eviction, reduced by the salvage value of the Severable Improvement.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                                    **SECTION 36**

      b.    The policy does not insure against loss or damage (and the Company will not pay any costs, attorneys' fees or expenses) relating to:

          i.    the attachment, perfection or priority of any security interest in any Severable Improvement;

          ii.    the vesting or ownership of title to or rights in any Severable Improvement;

          iii.    any defect in or lien or encumbrance on the title to any Severable Improvement; or

          iv.    the determination of whether any specific property is real or personal in nature.

5.    Additional items of loss covered by this endorsement:

If the Insured is Evicted, the following items of loss, if applicable to that portion of the Land from which the Insured is Evicted shall be included, without duplication, in computing loss or damage incurred by the Insured, but not to the extent that the same are included in the valuation of the Title determined pursuant to Section 3 of this endorsement, the valuation of Severable Improvements pursuant to Section 4 of this endorsement, or Section 8(a)(ii) of the Conditions.

      a.    The reasonable cost of: (i) disassembling, removing, relocating and reassembling any Severable Improvement that the Insured has the right to remove and relocate, situated on the Land at the time of Eviction, to the extent necessary to restore and make functional the integrated project; (ii) transportation of that Severable Improvement for the initial one hundred miles incurred in connection with the restoration or relocation; and (iii) restoring the Land to the extent damaged as a result of the disassembly, removal and relocation of the Severable Improvement and required of the Insured solely because of the Eviction.

      b.    Rent or damages for use and occupancy of the Land prior to the Eviction that the Insured as owner of the Leasehold Estate  may be obligated to pay to any person having paramount title to that of the lessor in the Lease.

      c.    The amount of rent or damages that, by the terms of the Lease , the Insured must continue to pay to the lessor after Eviction with respect to the portion of the Leasehold Estate from which the Insured has been Evicted.

      d.    The fair market value, at the time of the Eviction, of the estate or interest of the Insured in any lease or sublease specifically permitted by the Lease and made by the Insured as lessor of all or part of the Leasehold Estate.

      e.    Damages caused by the Eviction that the Insured is obligated to pay to lessees or sublessees on account of the breach of any lease or sublease specifically permitted by the Lease and made by the Insured as lessor of all or part of the Leasehold Estate.

      f.    The reasonable cost to obtain land use, zoning, building and occupancy permits, architectural and engineering services and environmental testing and reviews for a replacement leasehold reasonably equivalent to the Leasehold Estate.

      g.    If any Electricity Facility is not substantially completed at the time of Eviction, the actual cost incurred by the Insured up to the time of Eviction, less the salvage value, for the Electricity Facility located on that portion of the Land from which the Insured is Evicted.  Those costs include costs incurred to construct and fabricate the Electricity Facility, obtain land use, zoning, building and occupancy permits, architectural and engineering services, construction management services, environmental testing and reviews, and landscaping, and cancellation fees related to the foregoing.

6.    This endorsement does not insure against loss, damage or costs of remediation (and the Company will not pay costs, attorneys' fees, or expenses) resulting from environmental damage or contamination.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

[FNTG BRAND]

By: _____
          Authorized Signatory

ALTA Endorsement Form 36.2-06
(Energy Project –Leasehold-Owners) (4/2/12)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    SECTION 36

ENDORSEMENT

**Attached to Policy No. _____**

**Issued by**

*[FNTG BRAND]*

1.  The insurance provided by this endorsement is subject to the exclusions in Section 6 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

2.  For purposes of this endorsement only:

    a.  "Constituent Parcel" means one of the parcels of Land described in Schedule A that together constitute one integrated project.

    b.  "Electricity Facility" means an electricity generating facility which may include one or more of the following: a substation; a transmission, distribution or collector line; an interconnection, inverter, transformer, generator, turbine, array, solar panel, or module; a circuit breaker, footing, tower, pole, cross-arm, guy line, anchor, wire, control system, communications or radio relay system, safety protection facility, road, and other building, structure, fixture, machinery, equipment, appliance and item associated with or incidental to the generation, conversion, storage, switching, metering, step-up, step-down, inversion, transmission, conducting, wheeling, sale or other use or conveyance of electricity, on the Land at Date of Policy or to be built or constructed on the Land in the locations according to the Plans, that by law constitutes real property.

    c.  "Evicted" or "Eviction" means (a) the lawful deprivation, in whole or in part, of the right of possession insured by this policy, contrary to the terms of any Lease or (b) the lawful prevention of the use of the Land or any Electricity Facility or Severable Improvement for the purposes permitted by the Lease, in either case as a result of a matter covered by this policy.

    d.  "Lease" means each lease described in Schedule A.

    e.  "Leasehold Estate" means the right of possession granted in the Lease for the Lease Term.

    f.  "Lease Term" means the duration of the Leasehold Estate, as set forth in the Lease, including any renewal or extended term if a valid option to renew or extend is contained in the Lease.

    g.  "Plans" means the survey, site and elevation plans or other depictions or drawings prepared by  (insert name of architect or engineer)  dated ____, last revised _____ ,designated as  (insert name of project or project number)  consisting of ___sheets.

    h.  "Remaining Term" means the portion of the Lease Term remaining after the Insured has been Evicted.

    i.  "Severable Improvement" means property affixed to the Land at Date of Policy or to be affixed in the locations according to the Plans, that would constitute an Electricity Facility but for its characterization as personal property, and that by law does not constitute real property because (a) of its character and manner of attachment to the Land and (b) the property can be severed from the Land without causing material damage to the property or to the Land.

    j.  "Tenant" means the tenant under the Lease  and, after acquisition of all or any part of the Title in accordance with the provisions of Section 2 of the Conditions of the policy, the Insured Claimant.

3.  Valuation of Title as an Integrated Project:

    a.  If in computing loss or damage it becomes necessary to value the Title, or any portion of it, as the result of an Eviction, then, as to that portion of the Land from which the Tenant is Evicted, that value shall consist of (i) the value of (A) the Leasehold Estate  for the Remaining Term,  (B) any Electricity Facility existing on the date of the Eviction, and, if applicable, (ii) any reduction in value of another insured Lease as computed in Section 3(b) below.

    b.  A computation of loss or damage resulting from an Eviction affecting any Constituent Parcel shall include loss or damage to the integrated project caused by the covered matter affecting the Constituent Parcel from which the Insured is Evicted.

    c.  The Insured Claimant shall have the right to have the Leasehold Estate and any Electricity Facility affected by a defect insured against by the policy valued either as a whole or separately.  In either event, this determination of value shall take into account any rent no longer required to be paid for the Remaining Term.

    d.  The provisions of this Section 3 shall not diminish the Insured's rights under any other endorsement to the policy; however, the calculation of loss or damage pursuant to this endorsement shall not allow duplication of recovery for loss or damage calculated pursuant to Section 8 of the Conditions or any other endorsement to the policy.

4.  Valuation of Severable Improvements:

    c.  In the event of an Eviction, the calculation of the loss shall include (but not to the extent that these items of loss are included in the valuation of the Title determined pursuant to Section 8 of the Conditions or any other

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    SECTION 36

provision of this or any other endorsement) the diminution in value of the Insured's interest in any Severable Improvement resulting from the Eviction, reduced by the salvage value of the Severable Improvement.

b.    The policy does not insure against loss or damage (and the Company will not pay any costs, attorneys' fees or expenses) relating to:

i.    the attachment, perfection or priority of any security interest in any Severable Improvement;

ii.   the vesting or ownership of title to or rights in any Severable Improvement;

iii.  any defect in or lien or encumbrance on the title to any Severable Improvement; or

iv.   the determination of whether any specific property is real or personal in nature.

5.    Additional items of loss covered by this endorsement:
If the Insured acquires all or any part of the Title in accordance with the provisions of Section 2 of the Conditions of the policy and thereafter is Evicted, the following items of loss, if applicable to that portion of the Land from which the Insured is Evicted shall be included, without duplication, in computing loss or damage incurred by the Insured, but not to the extent that the same are included in the valuation of the Title determined pursuant to Section 3 of this endorsement, the valuation of Severable Improvements pursuant to Section 4 of this endorsement, or Section 8(a)(iii) of the Conditions:

a.    The reasonable cost of: (i) disassembling, removing, relocating and reassembling any Severable Improvement that the Insured has the right to remove and relocate, situated on the Land at the time of Eviction, to the extent necessary to restore and make functional the integrated project; (ii) transportation of that Severable Improvement for the initial one hundred miles incurred in connection with the restoration or relocation; and (iii) restoring the Land to the extent damaged as a result of the disassembly, removal and relocation of the Severable Improvement and required of the Insured solely because of the Eviction.

b.    Rent or damages for use and occupancy of the Land prior to the Eviction that the Insured as owner of the Leasehold Estate may be obligated to pay to any person having paramount title to that of the lessor in the Lease.

c.    The amount of rent or damages that, by the terms of the Lease , the Insured must continue to pay to the lessor after Eviction with respect to the portion of the Leasehold Estate  from which the Insured has been Evicted.

d.    The fair market value, at the time of the Eviction, of the estate or interest of the Insured in any lease or sublease specifically permitted by the Lease and made by the Tenant as lessor of all or part of the Leasehold Estate.

e.    Damages caused by the Eviction that the Insured is obligated to pay to lessees or sublessees on account of the breach of any lease or sublease specifically permitted by the Lease and made by the Tenant as lessor of all or part of the Leasehold Estate.

f.    The reasonable cost to obtain land use, zoning, building and occupancy permits, architectural and engineering services and environmental testing and reviews for a replacement leasehold reasonably equivalent to the Leasehold Estate.

g.    If any Electricity Facility is not substantially completed at the time of Eviction, the actual cost incurred by the Insured up to the time of Eviction, less the salvage value, for the Electricity Facility located on that portion of the Land from which the Insured is Evicted.  Those costs include costs incurred to construct and fabricate the Electricity Facility, obtain land use, zoning, building and occupancy permits, architectural and engineering services, construction management services, environmental testing and reviews, and landscaping, and cancellation fees related to the foregoing.

6.    This endorsement does not insure against loss, damage or costs of remediation (and the Company will not pay costs, attorneys' fees, or expenses) resulting from environmental damage or contamination.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

[FNTG BRAND]

By: _____
            Authorized Signatory

ALTA Endorsement Form 36.3-06
(Energy Project –Leasehold-Loan) (4/2/12)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                                    SECTION 36

**ENDORSEMENT**

**Attached to Policy No. _____**

**Issued by**

**[FNTG BRAND]**

iii.     The insurance provided by this endorsement is subject to the exclusions in Section 4 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

iv.     For purposes of this endorsement only:

    a.    "Covenant" means a covenant, condition, limitation or restriction in a document or instrument in effect at Date of Policy.

    b.    "Electricity Facility" means an electricity generating facility that may include one or more of the following:  a substation; a transmission, distribution or collector line; an interconnection, inverter, transformer, generator, turbine, array, solar panel, or module; a circuit breaker, footing, tower, pole, cross-arm, guy line, anchor, wire, control system, communications or radio relay system, safety protection facility, road, and other building, structure, fixture, machinery, equipment, appliance and item associated with or incidental to the generation, conversion, storage, switching, metering, step-up, step-down, inversion, transmission, conducting, wheeling, sale or other use or conveyance of electricity, on the Land at Date of Policy or to be built or constructed on the Land in the locations according to the Plans, that by law constitutes real property.

    c.    "Plans" means the survey, site and elevation plans or other depictions or drawings prepared by *(insert name of architect or engineer)* dated ____, last revised _____, designated as *(insert name of project or project number)* consisting of ___ sheets.

    d.    "Severable Improvement" means property affixed to the Land at Date of Policy or to be affixed to the Land in the locations according to the Plans, that would constitute an Electricity Facility but for its characterization as personal property, and that by law does not constitute real property because (a) of its character and manner of attachment to the Land and (b) the property can be severed from the Land without causing material damage to the property or to the Land.

v.     The Company insures against loss or damage sustained by the Insured by reason of:

    i.    A violation of an enforceable Covenant by any Electricity Facility or Severable Improvement, unless an exception in Schedule B of the policy identifies  the violation;

    ii.    Enforced removal of any Electricity Facility or Severable Improvement as a result of a violation of a building setback line shown on a plat of subdivision recorded or filed in the Public Records, unless an exception in Schedule B of the policy identifies the violation; or

    iii.    A notice of a violation, recorded in the Public Records at Date of Policy, of an enforceable Covenant relating to environmental protection, describing any part of the Land and referring to that Covenant, but only to the extent of the violation of the Covenant referred to in that notice, unless an exception in Schedule B of the policy identifies the notice of the violation.

4.     This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from:

    a.    any Covenant contained in an instrument creating a lease or easement;

    b.    any Covenant relating to obligations of any type to perform maintenance, repair, or remediation on the Land; or

    c.    except as provided in Section 3.c., any Covenant pertaining to environmental protection of any kind or nature, including hazardous or toxic matters, conditions, or substances.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

[FNTG BRAND]

By: _____
            Authorized Signatory

ALTA Endorsement Form 36.4-06
(Energy Project –Covenants, Conditions and Restrictions-Land Under Development-Owners) (4/2/12)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**ENDORSEMENT**

**Attached to Policy No. _____**

**Issued by**

*[FNTG BRAND]*

1. The insurance provided by this endorsement is subject to the exclusions in Section 4 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

6. For purposes of this endorsement only:

   a. "Covenant" means a covenant, condition, limitation or restriction in a document or instrument in effect at Date of Policy.

   b. "Electricity Facility" means an electricity generating facility that may include one or more of the following: a substation; a transmission, distribution or collector line; an interconnection, inverter, transformer, generator, turbine, array, solar panel, or module; a circuit breaker, footing, tower, pole, cross-arm, guy line, anchor, wire, control system, communications or radio relay system, safety protection facility, road, and other building, structure, fixture, machinery, equipment, appliance and item associated with or incidental to the generation, conversion, storage, switching, metering, step-up, step-down, inversion, transmission, conducting, wheeling, sale or other use or conveyance of electricity, on the Land at Date of Policy or to be built or constructed on the Land in the locations according to the Plans, that by law constitutes real property.

   c. "Plans" means the survey, site and elevation plans or other depictions or drawings prepared by
      (*insert name of architect or engineer*)  dated _____, last revised _____ ,designated as (*insert name of project or project number*)  consisting of ___sheets.

   d. "Severable Improvement" means property affixed to the Land at Date of Policy or to be affixed to the Land in the locations according to the Plans, that would constitute an Electricity Facility but for its characterization as personal property, and that by law does not constitute real property because (a) of its character and manner of attachment to the Land and (b) the property can be severed from the Land without causing material damage to the property or to the Land.

7. The Company insures against loss or damage sustained by the Insured by reason of:

   a. A violation of a Covenant that:

      i. divests, subordinates, or extinguishes the lien of the Insured Mortgage;

      ii. results in the invalidity, unenforceability, or lack of priority of the lien of the Insured Mortgage; or

      iii. causes a loss of the Insured's Title acquired in satisfaction or partial satisfaction of the Indebtedness.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

    b.   A violation of an enforceable Covenant by any Electricity Facility or Severable Improvement, unless an exception in Schedule B of the policy identifies the violation;

    c.   Enforced removal of any Electricity Facility or Severable Improvement, as a result of a violation of a building setback line shown on a plat of subdivision recorded or filed in the Public Records, unless an exception in Schedule B of the policy identifies the violation; or

    d.   A notice of a violation, recorded in the Public Records at Date of Policy, of an enforceable Covenant relating to environmental protection, describing any part of the Land and referring to that Covenant, but only to the extent of the violation of the Covenant referred to in that notice, unless an exception in Schedule B of the policy identifies the notice of the violation.

8.   This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from:

    a.   any Covenant contained in an instrument creating a lease or easement;

    b.   any Covenant relating to obligations of any type to perform maintenance, repair, or remediation on the Land; or

    c.   except as provided in Section 3.d., any Covenant pertaining to environmental protection of any kind or nature, including hazardous or toxic matters, conditions, or substances.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

**[FNTG BRAND]**

By: _____
        Authorized Signatory

ALTA Endorsement Form 36.5-06
(Energy Project –Covenants, Conditions and Restrictions-Land Under Development-Loan) (4/2/12)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**ENDORSEMENT**

**Attached to Policy No. _____**

**Issued by**

**BLANK TITLE INSURANCE COMPANY**

1. The insurance provided by this endorsement is subject to the exclusions in Section 4 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

2. For purposes of this endorsement only:

   a. "Electricity Facility" means an electricity generating facility that may include one or more of the following:  a substation; a transmission, distribution or collector line; an interconnection, inverter,  transformer, generator, turbine, array, solar panel, or module; a circuit breaker, footing, tower, pole, cross-arm, guy line, anchor, wire, control system, communications or radio relay system, safety protection facility, road, and other building, structure, fixture, machinery, equipment, appliance and item associated with or incidental to the generation, conversion, storage, switching, metering, step-up, step-down, inversion, transmission, conducting, wheeling, sale or other use or conveyance of electricity, on the Land at Date of Policy or to be built or constructed on the Land in the locations according to the Plans, that by law constitutes real property.

   b. "Plans" means the survey, site and elevation plans or other depictions or drawings prepared by
    (*insert name of architect or engineer*)  dated _____, last revised _____ ,designated as (*insert name of project or project number*)  consisting of ___sheets.

   c. "Severable Improvement" means property affixed to the Land at Date of Policy or to be affixed to the Land in the locations according to the Plans, that would constitute an Electricity Facility but for its characterization as personal property, and that by law does not constitute real property because (a) of its character and manner of attachment to the Land and (b) the property can be severed from the Land without causing material damage to the property or to the Land.

3. The Company insures against loss or damage sustained by the Insured by reason of:

   a. An encroachment of any Electricity Facility or Severable Improvement located on the Land onto adjoining land or onto that portion of the Land subject to an easement, unless an exception in Schedule B of the policy identifies the encroachment;

   b. An encroachment of an improvement located on adjoining land onto the Land at Date of Policy, unless an exception in Schedule B of the policy identifies the encroachment;

   c. Enforced removal of any Electricity Facility or Severable Improvement, as a result of an encroachment by the Electricity Facility or Severable Improvement onto any portion of the Land subject to any easement, in the event that the owners of the easement shall, for the purpose of exercising the right of use or maintenance of the easement, compel removal or relocation of the encroaching Electricity Facility or Severable Improvement; [or]

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 36**

     d.   Damage to any Electricity Facility or Severable Improvement that is located on or encroaches onto that portion of the Land subject to an easement excepted in Schedule B, which damage results from the exercise of the right to maintain the easement for the purpose for which it was granted or reserved [; or]

     [e.   The coverage of Sections 3.c. and 3.d. shall not apply to the encroachments listed in Exception(s) _____ of Schedule B].

4    This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from contamination, explosion, fire, vibration, fracturing, earthquake or subsidence.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

**BLANK TITLE INSURANCE COMPANY**

By: _____
       Authorized Signatory

ALTA Endorsement Form 36.6-06
(Energy Project –Encroachments) (4/2/12)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                                    **SECTION 37**

**Return to Table of Contents**

## ASSIGNMENT OF RENTS OR LEASES ENDORSEMENT

## ALTA ENDORSEMENT FORM 37-06

### PURPOSE

Lenders occasionally request that the loan policy insure certain recorded interests that are taken as additional security for the loan primarily secured by the Insured Mortgage. The most common additional security, other than a security interest under the Uniform Commercial Code, is an assignment of rents or leases This endorsement is issued to provide certain coverages with respect to a separate assignment of rents or leases shown in Schedule B, Part II of the policy. This endorsement provides insurance that the assignment of rents or leases is properly executed, and that the Public Records do not disclose any prior assignments of these same rents or leases.

If you are asked to issue an endorsement to provide the above described coverages with respect to an assignment of rents or leases that is contained *within* the Insured Mortgage, please see **Section 56.**

### SECTIONS OF POLICY AMENDED BY ENDORSEMENT

These endorsements do not amend or modify any specific policy provisions, but add additional coverage to the terms of the policy.

### BASIS FOR PROVIDING COVERAGE

The assignment of rents or leases must be properly executed by the owner of the estate or interest covered by the Insured Mortgage, and there must not be any prior assignment of rents or leases of record. If a previously recorded assignment of rents or leases is found, it must be raised as an exception in Schedule B of the policy.

**NOTE: PRIOR MORTGAGES OR DEEDS OF TRUST MUST BE EXAMINED TO DETERMINE IF THEY CONTAIN ASSIGNMENTS OF RENTS OR LEASES. SEPARATE SCHEDULE B EXCEPTIONS SHOULD BE MADE FOR SUCH ASSIGNMENTS.**

### MODIFICATION

In the event that modification of this endorsement is requested, it is necessary to consider your state regulatory requirements for filing and approval of forms. If the endorsement is modified, the endorsement is not an ALTA form and should not reference ALTA in the title.  You must obtain the approval of the Company's underwriting adviser before complying with any request for a modification.   Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                              **SECTION 37**

ENDORSEMENT

Attached to Policy No. _____

**Issued By**

**[FNTG BRAND]**

1.  The insurance provided by this endorsement is subject to the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

2.  The Company insures against loss or damage sustained by the Insured by reason of:

    a. any defect in the execution of the [*Insert Title of Assignment of Rents or Leases Document*] referred to in paragraph ____ [*of Part II*] of Schedule B; or

    b. any assignment of the lessor's interest in any lease or leases or any assignment of rents affecting the Title and recorded in the Public Records at Date of Policy other than as set forth in any instrument referred to in Schedule B.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

[FNTG BRAND]
BY: _____

ALTA Endorsement Form 37-06
(Assignment of Rents or Leases) (12/03/12)
©American Land Title Association

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 38**

**Return to Table of Contents**

**MORTGAGE TAX**

**ALTA ENDORSEMENT - FORM 38-06**

**PURPOSE**

This endorsement provides coverage to the insured lender if there is a deficiency in the recordation tax paid at the time the Insured Mortgage is recorded that is subsequently paid. The endorsement provides that, if the deficiency is paid, the Company will provide coverage against the invalidity or unenforceability of the Insured Mortgage or the lack of priority of the Insured Mortgage, from the failure to pay at the time of recording any portion of the recording tax. The Company does not provide coverage if the insured lender fails to pay the recordation tax deficiency.

**SECTIONS OF POLICY AMENDED BY ENDORSEMENT**

This endorsement for the insured lender does not expressly amend or modify any provisions of the Policy. It adds additional coverage to the terms of the policy.

**BASIS FOR PROVIDING COVERAGE**

To issue ALTA Form 38-06, you must confirm that there is no law or regulation in the state where the property lies that would adversely affect the lien of the Insured Mortgage by reason of the failure to correctly pay a recordation, registration, or related tax or charge required to be paid when the Insured Mortgage is recorded in the Public Records. If there is no binding authority in the state wherein the property lies, any request for this endorsement must be submitted to the Company's underwriting advisor for approval. If there is no law or regulation in the state in which the Land is located that contemplates a "Mortgage Tax" as defined in the endorsement, you may issue the endorsement if not regulatorily prohibited.

**MODIFICATION**

In the event that modification of an endorsement is requested, it is necessary to consider your state regulatory requirements for filing and approval of forms. If the endorsement is modified, the endorsement is not an ALTA form and should not reference ALTA in the title.  You must obtain the approval of the Company's underwriting adviser before complying with any request for a modification.

**Return to Table of Contents**

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 38**

ENDORSEMENT
Attached to Policy No. _____
Issued By
[FNTG BRAND]

1.  The insurance provided by this endorsement is subject to the exclusions in Sections 4 and 5 of this endorsement, the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.

2.  For the purposes of this endorsement only, "Mortgage Tax" means a recordation, registration or related tax or charge required to be paid when the Insured Mortgage is recorded in the Public Records.

3.  Upon payment of any deficiency in the Mortgage Tax, including interest and penalties, by the Insured, the Company insures against loss or damage sustained by the Insured by reason of:

    a.  the invalidity or unenforceability of the lien of the Insured Mortgage as security for the Indebtedness resulting from the failure to pay, at the time of recording, any portion of the Mortgage Tax; or

    b.  the lack of priority of the lien of the Insured Mortgage as security for the Indebtedness resulting from the failure to pay, at the time of recording, any portion of the Mortgage Tax.

4.  The Company does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from the failure of the Insured to pay the Mortgage Tax deficiency, together with interest and penalties.

5.  The Company is not liable for the payment of any portion of the Mortgage Tax, including interest or penalties

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]

[FNTG BRAND]
BY: _____

ALTA Endorsement Form 38-06
(Mortgage Tax) (12/3/12)
©American Land Title

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 39**

**Return to Table of Contents**

**POLICY AUTHENTICATION**

**ALTA ENDORSEMENT - FORM 39-06**

**PURPOSE**

This endorsement provides coverage to the insured lender if a policy is issued electronically, or does not have a signature which may be required by the form of policy cover used.

**SECTIONS OF POLICY AMENDED BY ENDORSEMENT**

This endorsement for the insured lender modifies the cover and Conditions 14 (c) of the Policy which requires an authentication by an authorized person. This typically would be the signature of a licensed (as necessary) employee or agent.

**BASIS FOR PROVIDING COVERAGE**

If the policy is issued electronically, it will not contain a "wet" signature, which is normally required by the language contained in the contract of insurance as indicated on the cover of the policy. The policy itself must be issued properly and all agency contract and Company underwriting guidelines must be followed before this endorsement can be issued. It is not the intent of the Company to include fraudulent or forged policies within this coverage.

**MODIFICATION**

In the event that modification of an endorsement is requested, it is necessary to consider your state regulatory requirements for filing and approval of forms. If the endorsement is modified, the endorsement is not an ALTA form and should not reference ALTA in the title.  You must obtain the approval of the Company's underwriting adviser before complying with any request for a modification.

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 39**

ENDORSEMENT
Attached to Policy No. _____
Issued By
**[FNTG BRAND]**


When the policy is issued by the Company with a policy number and Date of Policy, the Company will not deny liability under the policy or any endorsements issued with the policy solely on the grounds that the policy or endorsements were issued electronically or lack signatures in accordance with the Conditions.


This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

[Witness clause optional]




[FNTG BRAND]
BY: _____



ALTA Endorsement Form 39-06
(Policy Authentication) (4/3/13)
©American Land Title


© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 50**

**Return to Table of Contents**

**CLTA ENDORSEMENT 100-06**

**(SIMILAR TO ALTA FORM 9 Series)**

**PURPOSE**

***THIS ENDORSEMENT IS NO LONGER AVAILABLE IN THIS FORMAT***

In certain parts of the country, this endorsement is used quite frequently with the ALTA loan policies on both residential and commercial transactions.  In other parts of the country its use is limited to large commercial transactions. Similar in scope to the ALTA Form 9 series of endorsements, this endorsement is designed to afford the lender protection with respect to violations of private property restrictions which could impair the lien of the Insured Mortgage or the marketability of the Title.  It also insures against damage to improvements which could result from encroachments onto easements or adjacent property or because of development of minerals.  This endorsement is **not** suitable for use in policies insuring unimproved land.

**SECTIONS OF POLICY AMENDED BY ENDORSEMENT**

This endorsement expands policy coverage by reducing the risk to the Insured with respect to certain Exclusions or Schedule B Exceptions.

**BASIS FOR PROVIDING COVERAGE**

*Coverage 1(a) may be given if any of the following situations apply:*

1.      There are no covenants, conditions and restrictions.

2.      The covenants, conditions or restrictions are not enforceable under state law.

3.      The restrictions contain provisions that provide protections against impairment or loss of the mortgage lien where the lender is a good faith lender without knowledge of a violation.

4.      Rights to enforce the restrictions have been waived or are subordinate to the Insured Mortgage.

*Coverage 1(b) may be given if any of the following situations apply:*

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

1.        There are no covenants, conditions and restrictions.

2.        It has been determined that there are no violations of the covenants, conditions or restrictions.

3.        The statutory period for enforcement of restrictions has run or rights of enforcement of any violation have been properly waived.

*Coverage 1(c) may be given provided:*

        Encroachments, if any, disclosed by survey, affidavit, inspection or otherwise are shown on Schedule B.

*Coverage 2(a) may be given if any of the following situations apply:*

        Same as Items 1 through 4, under coverage 1(a)

*Coverage 2(b) may be given if any of the following situations apply:*

        Same as Items 1 through 4, under coverage 1(a)

**CAUTION:**   IF ANY RESTRICTIONS ON SCHEDULE B CONTAIN PROVISION FOR FORFEITURE OR REVERSION OF TITLE ON THE OCCURRENCE OF A SPECIFIED CONDITION,   THE AFFIRMATIVE INSURANCE  GIVEN  UNDER **1(a) and (b) AND 2(a) and (b)** CANNOT BE GIVEN**.**   THOSE SECTIONS WILL HAVE TO BE DELETED FROM THE ENDORSEMENT.

*Coverage 3(a) may be given if any of the following situations apply:*

1.        No easements are shown in Schedule B.

2.        A survey or other reliable information confirms that existing improvements do not encroach upon any Schedule B easements.

3.        There is a minor encroachment of improvements onto a Schedule B easement, but after consulting with the Company's underwriting advisor, it is determined that the

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

encroachment would not interfere with maintenance of the easement and could not result in the forced removal of the improvements under state law.

*Coverage 3(b) may be given if any of the following situations apply:*

1.      There is no separation of minerals from the surface estate by either deed or lease.

2.      There is a separate mineral estate but it does not include any rights of surface entry.

**CAUTION:**    IF MINERAL RIGHTS WITH RIGHTS OF SURFACE ENTRY HAVE BEEN SEVERED FROM THE SURFACE ESTATE, BUT THE LAND AND SURROUNDING AREA IS ENTIRELY IMPROVED WITH RESIDENTIAL DEVELOPMENT, YOU MUST SUBMIT THESE FACTS TO THE COMPANY'S UNDERWRITING ADVISER TO CONSIDER THE RISK BEFORE GIVING ANY COVERAGE UNDER 3(b).

*Coverage 4 may be given if any of the following situations apply:*

1.      There are no encroachments onto adjoining land shown in Schedule B.

2.      The encroachment is not onto vacant land, or is minor and could be removed at minimal cost.

3.      The encroachment is minor; is not onto vacant land; is not necessary to the support of the main structure; and the Company's underwriting advisor, being so advised by you, is satisfied that a state court would not require its removal.

**MODIFICATION**

This form is a uniform form in California.  In the event that modification of this endorsement or your state form is requested, it is necessary to consider the state regulatory requirements for filing and approval of forms.  You must obtain the approval of the Company's underwriting advisor before complying with any request for modification.

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT

Attached to Policy No._____

**Issued By**
**[FNTG Brand]**

The Company insures against loss or damage sustained by reason of:

1.      The existence, at Date of Policy, of any of the following:

      (a)      Covenants, conditions or restrictions under which the lien of the Insured Mortgage can be cut off, subordinated, or otherwise impaired;

      (b)      Present violations on the Land of any enforceable covenants, conditions or restrictions;

      (c)      Except as shown in Schedule B, encroachments of buildings, structures or improvements located on the Land onto adjoining lands, or any encroachments onto the Land of buildings, structures or improvements located on adjoining lands.

2.      (a)      Any future violations on the Land of any covenants, conditions or restrictions occurring prior to acquisition of the Title by the Insured, provided such violations result in impairment or loss of the lien of the Insured Mortgage, or result in impairment or loss of the Title if the Insured shall acquire the Title in satisfaction of the Indebtedness;

      (b)      Unmarketability of the Title by reason of any violations on the Land, occurring prior to acquisition of the Title by the Insured, of any covenants, conditions or restrictions.

3.      Damage to existing improvements, including lawns, shrubbery or trees

      (a)      That are located or encroach upon that portion of the Land subject to any easement shown in Schedule B, which damage results from the exercise of the right to use or maintain such easement for the purposes for which the same was granted or reserved;

      (b)      Resulting from the exercise of any right to use the surface of the Land for the extraction or development of the minerals excepted from the description of the Land or shown as a reservation in Schedule B.

4.      Any final court order or judgment requiring removal from any land adjoining the Land of any encroachment shown in Schedule B.

As used in this endorsement, the words "covenants, conditions or restrictions" do not refer to or include the terms, covenants, conditions or restrictions contained in any lease.

As used in this endorsement, the words "covenants, conditions or restrictions" do not refer to or

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

include any covenant, condition or restriction  (a) relating to obligations of any type to perform maintenance, repair or remediation on the Land, or (b) pertaining to environmental protection of any kind or nature, including hazardous or toxic matters, conditions or substances except to the extent that a notice of a violation or alleged violation affecting the Land has been recorded in the Public Records at Date of Policy and is not excepted in Schedule B.

This endorsement is issued as part of the policy.  Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.  To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls.  Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.


DATED:


BY:  _____
              AUTHORIZED SIGNATURE




CLTA Form 100-06 (03-09-07)
ALTA – Loan Policy

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                           SECTION 51

Return to Table of Contents

**SHARED APPRECIATION MORTGAGE ENDORSEMENT - COMMERCIAL**

**PURPOSE**

This endorsement is designed to provide additional coverage to the lender when the loan documents provide that the lender will participate in the appreciation in value of the property. This endorsement provides coverage in the event of an attack on the validity, priority or enforceability of the Insured Mortgage based upon the provisions regarding shared appreciation. The coverage also includes the value of the shared appreciation pursuant to the formula contained in the loan documentation.

***NOTE:*** *THIS ENDORSEMENT SHOULD NOT BE USED IN CONNECTION WITH LOANS ON ONE TO FOUR FAMILY RESIDENTIAL PROPERTIES. (See Section 30 for a form to be used with residential mortgage programs.)*

**SECTION OF POLICY AMENDED BY ENDORSEMENT**

Since any appreciation will occur in the future, this endorsement specifically provides that the coverage is not subject to Section 3(d) of the Exclusions from Coverage which excludes "Defects, liens, encumbrances, adverse claims or other matters . . . attaching or created subsequent to Date of Policy . . . ."

**BASIS FOR PROVIDING COVERAGE**

1. **State Law:**  Many states have passed legislation specifically authorizing the lender to share in the appreciation of the property.  The state statute must be examined for provisions setting specific limits and formulas, and the loan documents must be reviewed to verify that the loan complies with those limits and formulas.  If the statute has no such limits or formulas, consideration should be given to the possibility that (a) the method of calculation used in the Insured Mortgage, or (b) the extent to which certain additional obligations might continue even after the principal is paid, might be so weighted in the lender's favor as to "shock the conscience" of the court and perhaps render the shared appreciation provisions of the Insured Mortgage invalid, or which could lead to a claim of "clogging" the equity of redemption in a bankruptcy or foreclosure situation.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

2. **Insured Mortgage must include the formula for calculation:**  The Insured Mortgage must expressly state that it is a Shared Appreciation Mortgage **and** include the actual formula or calculation method used to determine the lender's share.   The formula or calculation method **cannot** simply be incorporated by reference to the provisions of the note or loan agreement.

3.  **Loan is not a joint venture:**  Consideration must also be given to whether or not the loan is really a loan.  Could it be recharacterized as a joint venture arrangement with the borrower?  The terms and provisions of the loan documentation must be reviewed for a determination as to the nature and extent of control that the lender will have over the operations of the borrower.  If these controls are extensive and there is a risk that the loan will be recharacterized, then this endorsement should not be issued. Any such issues must be discussed with the Company Underwriting advisor before this endorsement is offered.

This endorsement is designed for use with an ALTA Loan Policy issued in connection with a **commercial** transaction.

### FORM A

When this form is provided, the minimum amount of insurance as stated in the policy shall be the sum of the principal debt plus a reasonable estimate of the amount of "shared appreciation interest".

### FORM B

When this form is provided, a reasonable estimation of the amount of "shared appreciation interest" is added in the second paragraph as additional insurance.  Usury, consumer credit protection or truth in lending laws, and costs required to obtain a determination of the amount of additional interest due are specifically mentioned to reinforce the idea that the express insurance does not cover these matters.

### MODIFICATION

These forms are not uniform forms.  In the event that modification of one or more of these forms or your state form is requested, it is necessary to consider the state regulatory requirements for filing and approval of forms.  You must obtain the approval of the Company's underwriting adviser before complying with any request for modification.

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**Form A – Appreciation amounts included within Amount of Insurance**

<div align="center">

ENDORSEMENT

Attached to Policy No._____

**Issued by**

**[FNTG BRAND]**

</div>

The Company insures the Insured against loss or damage by reason of:

1.        The invalidity or unenforceability of the lien of the Insured Mortgage resulting from the provisions therein which provide for a Shared Appreciation Interest in the increase in value of the Land subsequent to Date of Policy.

2.        Loss of priority of the lien of the Insured Mortgage as security for (i) the unpaid principal balance of the loan; (ii) the Stated Interest; and (iii) the Shared Appreciation Interest, which loss of priority is caused by the provisions in the Insured Mortgage for payment or allocation to the Insured Mortgage for payment or allocation to the Insured of any Shared Appreciation Interest.

"Stated Interest" as used in this endorsement, shall mean only the fixed percent per annum interest on the unpaid principal balance of the loan provided in the Insured Mortgage at Date of Policy.

"Shared Appreciation Interest", as used in this endorsement shall mean only those amounts (calculated pursuant to the formula provided in the Insured Mortgage) payable or allocated to the Insured, out of the amount, if any, by which the Land has appreciated in value as established pursuant to the provisions of the Insured Mortgage at Date of Policy.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

Date:

By _____
     Authorized Signatory

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**Form B- Appreciation amounts added by endorsement**

<div align="center">

ENDORSEMENT

Attached to Policy No.

**Issued by**

**[FNTG Brand]**

</div>

The Company insures the Insured against loss or damage that the Insured shall sustain by reason of the entry of a final, non-appealable order or judgment finding that the lien of the Insured Mortgage as security for the additional interest based on appreciated value of the Land:

        (a)     is invalid or unenforceable, or

        (b)     does not, at the Date of Policy, share the same priority in relation to any other claims or liens against the Land as is afforded the principal of the loan secured by the Insured Mortgage.

In the event of a loss compensable under this endorsement, the coverage afforded hereunder is in addition to and not included in the Amount of Insurance stated in Schedule A of the policy. Such additional insurance shall not exceed the sum of $_____ (amount to be agreed upon prior to issue.)

Nothing contained in this endorsement shall be construed as insuring against loss or damage sustained or incurred by reason of:

        (a)     usury,

        (b)     any consumer credit protection or truth in lending law, or

        (c)     costs, expenses or attorney's fees required to obtain a determination, by judicial proceedings or otherwise, of the amount of any additional interest due.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

Dated:

By_____

  Authorized Signatory

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                                    **SECTION 52**

**Return to Table of Contents**

### SHARE OF CASH FLOW (ADDITIONAL INTEREST) ENDORSEMENT
### PURPOSE

This endorsement is designed to provide additional coverage to the lender when the loan documents provide that the lender is entitled to a share of the cash flow or income (net of normal expenses) from the property or business of the borrower as "Additional Interest". The term "Additional Interest" refers to a charge for the use of money other than the percentage rate that is applied to the principal indebtedness. Like the Shared Appreciation Endorsement, it provides not only for monetary loss protection to the lender, but also for the cost of defense against an attack on the validity, priority or enforceability of the lien of the Insured Mortgage upon the net cash flow. The coverage also includes the value of the share of cash flow pursuant to the formula contained in the loan documentation.

### SECTION OF POLICY AMENDED BY ENDORSEMENT

Since the loan documents provide that the additional interest will accrue in the future, the coverage provided by this endorsement is not subject to Section 3(d) of the Exclusions from Coverage which excludes "Defects, liens, encumbrances, adverse claims or other matters ... attaching or created subsequent to Date of Policy...."

### BASIS FOR PROVIDING COVERAGE

1. **State Law**

Some states have passed statutes specifically providing for the charging of "Additional Interest". These statutes must be examined for specific requirements with regard to limits and authorized formulas. If the statute has no such limits or formulas, consideration should be given to the possibility that (a) the method of calculation used in the Insured Mortgage, or (b) the extent to which certain additional obligations might continue even after the principal is paid, might be so weighted in the lender's favor as to "shock the conscience" of the court and perhaps render the shared cash flow provisions of the Insured Mortgage invalid, or which could lead to a claim of "clogging" the equity of redemption in a bankruptcy or foreclosure situation.

2. **Insured Mortgage Must Include The Formula for Calculation**

The Insured Mortgage must state that it secures the payment of the lenders share of cash flow as "Additional Interest" and it must contain the formula for calculation. These requirements **cannot**

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

be accomplished simply by incorporation by reference to the provisions of the note or loan agreement.

3. **Loan is Not a Joint Venture**

Consideration must be given to whether or not the loan is really a loan. Could it be recharacterized as a joint venture arrangement with the borrower? The terms and provisions of the loan documentation must be reviewed for a determination as to the nature and extent of control that the lender will have over the operations of the borrower. If these controls are extensive and there is a risk that the loan will be recharacterized, then this endorsement should not be issued.

Instructions for use

This endorsement is designed for use with the 2006 ALTA Loan Policy insuring mortgages on **commercial** transactions.

**NOTE:** THIS ENDORSEMENT SHOULD NOT BE USED IN CONNECTION WITH LOANS ON ONE TO FOUR FAMILY RESIDENTIAL PROPERTIES.

When this coverage is provided, the minimum Amount of Insurance as stated in the policy shall be the sum of the principal debt plus a reasonable estimate of the amount of additional interest which will be due to the Insured. Some forms of this endorsement may be filed which add the insurance incrementally as the additional interest accrues with a capping amount of additional insurance. Such an endorsement would contain language substantially as follows:

*In the event of loss compensable under this endorsement, the coverage afforded hereunder is in addition to and not included in the Amount of Insurance stated in Schedule A of the policy. Such additional insurance shall not exceed the sum of $_____ (amount to be agreed upon prior to issue).*

**MODIFICATION**

This form is not a uniform form. In the event that modification of this endorsement or your state form is requested, it is necessary to consider the state regulatory requirements for filing and approval of forms. You must obtain the approval of the Company's underwriting advisor before complying with any request for modification.

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 52**

**Share of cash flow (additional interest)**

ENDORSEMENT
Attached to Policy No. _____

**Issued by**
**[FNTG BRAND]**

The Company insures the Insured against loss or damage that the Insured shall sustain by
reason of the entry of a final, non-appealable order or judgment finding that the lien of the Insured
Mortgage as security for the additional interest based on a share of cash flow as described in
paragraph _____ of the Insured Mortgage:

     (a)     is invalid or unenforceable, or

     (b)     does not, at the Date of Policy, share the same priority in relation to other claims
or liens against the Land as is afforded the principal of the loan secured by the Insured
Mortgage.

  Nothing contained in this endorsement shall be construed as insuring against loss or damage
sustained or incurred by reason of:

     (a)     Usury,

     (b)     Any consumer credit protection or truth in lending law, or

     (c)     Costs, expenses or attorney's fees required to obtain a determination, by judicial
proceedings or otherwise, of the amount of any additional Interest due.

This endorsement is issued as part of the policy. Except as it expressly states, it does not
(i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements,
(iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision
of the policy or a previous endorsement is inconsistent with an express provision of this
endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the
terms and provisions of the policy and of any prior endorsements.

Dated:

By_____
     Authorized Signatory

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    SECTION 53

**Return to Table of Contents**

**ENDORSEMENT INSURING THE INTEREST OF INCOMING PARTNER**

**Form A - for use with 2006 Policy**

**Form B – for use with Former ALTA 1970 (rev. 84) Policy**

**PURPOSE**

This endorsement is to be used when providing coverage to a person or entity that is acquiring an interest as a general partner in a general partnership.  The incoming partner wishes to secure title insurance in its favor to the extent of its investment in the partnership.  This endorsement limits liability for loss to the percentage interest being acquired by the incoming partner in the partnership.

**SECTION OF POLICY AMENDED BY ENDORSEMENT**

This endorsement amends Condition 8(a) of the ALTA Owner's Policy (2006) to limit the liability of the Company with regard to payment of loss.

**CAUTION:** PLEASE REFER TO FORM B FOR THE ENDORSEMENT TO BE USED WITH THE FORMER ALTA 1970 (rev. 84) OWNER'S POLICY.

**BASIS FOR PROVIDING COVERAGE**

Coverage in favor of the new partner may only be given when a full copy of the original partnership agreement and any and all amendments have been reviewed to determine that the partnership was  originally formed in compliance with local law, and the agreement provides  for the substitution and addition of new partners.  Any procedures required by the agreement and local law must be observed.  Also, the addition of new partners cannot cause a dissolution of the partnership under local law.

This endorsement does not increase coverage but limits the payment of loss.  The issuance of this endorsement is a condition to the issuance of the Policy. The Amount of Insurance is to be the proportionate interest in the partnership being acquired by the incoming partner and the Policy should be written observing the following guidelines:

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 53**

    a.   The Amount of Insurance would be the market value of the percentage interest being acquired by the new general partner.

    b.   The Insured would be shown as "[*new partner*], owner of a [   ]% interest in the partnership shown as the vestee in this Policy".

    c.   The partnership would be shown as the vestee.

    d.   Schedule B and the legal description would be shown in the normal manner.

This endorsement may not be issued without the approval of the Company's underwriting advisor.
.

## MODIFICATION

These forms are not uniform forms. In the event that modification of one or more of these forms or your state form is requested, it is necessary to consider the state regulatory requirements for filing and approval of forms. You must obtain the approval of the Company's underwriting advisor before complying with any request for modification.

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 53**

<u>**Form A – For use with the ALTA  Owners Policy (2006)**</u>

ENDORSEMENT
Attached to Policy No. _____

**Issued by**
**[FNTG BRAND]**

Section 8(a) of the Conditions is amended to read as follows:

The extent of liability of the Company for loss or damage under this Policy shall not exceed the least of:

(i)    _____% of the actual loss of _____ (of which the Insured Claimant is a partner), or if the interest of the Insured in said partnership is reduced below _____%, such lesser proportion of the actual loss of said partnership; or

(ii)   The Amount of Insurance; or

(iii)   _____% of the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

Date:

BY:_____

Authorized Signatory

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**Form B- For use with Policy Formerly known as  ALTA 1970 (rev. 84) Policy Form**

<div align="center">

ENDORSEMENT

Attached to Policy No. _____

**Issued by**

[**FNTG BRAND**]

</div>

Section 6(a) of the Conditions and Stipulations is amended to read as follows:

The liability of the Company under this policy shall not exceed the least of:

(i)   _____% of the actual loss of _____ (of which the insured claimant is a partner), or if the interest of the insured in said partnership is reduced below _____%, such lesser proportion of the actual loss of said partnership; or

(ii)  The amount of insurance stated in Schedule A.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

Date:

BY:_____

         Authorized Signatory

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                                          **SECTION 54**

**Return to Table of Contents**

## EXCESS INSURANCE ENDORSEMENT FOR USE IN INSURING EXISTING PARTNERSHIP OR INTEREST OF NEW PARTNER IN EXISTING PARTNERSHIP

### PURPOSE

This endorsement is to be used in situations where there is an existing policy in favor of a partnership which was issued by another company or brand. We are being asked to insure either the partnership currently in title at present market value upon acquisition of a new partnership interest by a new partner *or* the interest of the new partner. In either event the new Insured is willing to let the Company treat the previous insurance as primary coverage making the new coverage "excess insurance". This endorsement is designed to accomplish this result.

### SECTION OF POLICY AMENDED BY ENDORSEMENT

This endorsement modifies the policy to provide that loss is recoverable under the policy only to the extent that it exceeds the Insured's recovery under a prior policy.

### BASIS FOR PROVIDING COVERAGE

This endorsement must be made a part of all owners policies insuring continuing partnerships or new partners in continuing partnerships when the Company is accepting the risk under a new policy as an "excess insurer". The examiner must be satisfied that the partnership was properly formed originally, that the partnership agreement provides for the substitution and/or addition of new partners and that the documentation intended to accomplish the change complies with the requirements of applicable law. A copy of the primary policy must be obtained and examined, and a determination must be made that there are no claims pending based upon the coverage granted thereunder.

### MODIFICATION

This form is not a uniform form. In the event that modification of this endorsement or your state form is requested, it is necessary to consider the state regulatory requirements for filing and approval of forms. You must obtain the approval of the Company's underwriting advisor before complying with any request for modification.

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 54**

**Excess Insurance**

ENDORSEMENT

Attached to Policy No. _____

**Issued by**
**[FNTG BRAND]**

The following paragraph 1A is added to the Conditions of this policy:

1A.     THIS IS INSURANCE COVERAGE IN EXCESS OF PREVIOUSLY ISSUED TITLE
POLICY OR POLICIES COVERING THE SAME INSURANCE RISK

      (a)     The Title is insured by the following prior title policy or policies:

           1.     Type of policy (owner's-loan) and Date of Policy:_____
                Insurer:
                Insured:
                Policy No.:
                Amount of Insurance:

           2.     [*Continue same format if more than one prior policy issued.*]

      (b)     It is understood and agreed between the Company and the Insured that the title
policy (or policies) referred to in paragraph 1A (a) of these Conditions is primary
insurance coverage and that this policy constitutes "excess insurance".  Insurance
coverage under this policy which insures a risk insured under any prior policy shall only
be available to the Insured for loss in excess of the Insured's recovery under such prior
policy.

      (c)     Nothing contained herein shall be construed to preclude the filing of a claim of
loss under this policy prior to recovery under a prior policy referred to in Paragraph 1A (a)
of these Conditions nor to relieve the Company of its obligations under this policy.

This endorsement is issued as part of the policy. Except as it expressly states, it does not
(i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements,
(iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision
of the policy or a previous endorsement is inconsistent with an express provision of this
endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the
terms and provisions of the policy and of any prior endorsements.

Dated:

By: _____
          Authorized Signatory

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                     **SECTION 55**

Return to Table of Contents

**OPTION TO PURCHASE ENDORSEMENT**
**FORM A – Option primed by intervening matters**
**FORM B – Option priority relates back**

**PURPOSE**

Form A of this endorsement is designed to provide insurance that **at the date of the endorsement** the option to purchase the Land is valid and that the rights of the optionee thereunder are vested in the Insured, subject to the terms of the option agreement. As explained more fully below, Form A provides no coverage for the priority of the option.

Form B of this  endorsement is designed to provide insurance as to the priority, validity and enforceability  of an option to purchase the Land and that the rights of the optionee thereunder are vested in the Insured as of the date of the endorsement, subject to the terms of the option agreement.

**SECTION OF POLICY AMENDED BY ENDORSEMENT**

Form A does not specifically amend any portion of the policy, although it does provide limited coverage to the optionee as to the validity of the option.

Form B of this endorsement does not specifically amend any portion of the policy. It does provide additional coverage to the optionee as to the validity, priority and enforceability of the option, and also provides for payment of costs and attorneys' fees incurred in defending against an attack on the validity, priority or enforceability of the option.  However, this endorsement excludes coverage for costs and attorneys' fees incurred in connection with exercising the option.

**BASIS FOR PROVIDING COVERAGE**

*Considerations*

For Form A: This endorsement is designed to be issued in those states where (1) it is uncertain as to whether Title received at the time of the exercise of the option will relate back to the granting of the option or (2) it is clear that it will **not** relate back.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

<u>For Form B</u>: This endorsement is designed to be issued in those states where it is clear that the option is a recordable instrument and that upon conveyance of the Land pursuant to the option, Title will relate back to the recording of the option.

<u>For Both Forms</u>

The option document must be recorded.

An option to purchase land may be subject to the Rule Against Perpetuities.  Some jurisdictions have exceptions for certain types of options to purchase, such as an option contained in a lease where the option can be exercised during the term of the lease.  However, the majority rule is that an option to purchase is subject to the rule.  This endorsement should **only** be given when it is clear that the option does not violate the rule.

When an option is obtained by a lender as part of a loan transaction, consideration must be given to state law prohibitions against clogging of the equity of redemption.  This should include considering whether the option itself is void or whether, when coupled with the option, the lien of the mortgage might be rendered void or voidable.

Consideration must also be given to whether a lease containing an option to purchase is in fact what it appears to be.  The land records may disclose that the optionee is the previous owner of the Land and the transaction is in fact a sale/leaseback with option to purchase.  Care must be taken to make sure the lease states that it is a true lease and the relationship between the parties is as lessor and lessee only.  Any concern over provisions of the lease must be discussed with the Company underwriting advisor.

*Instructions for Use*

This endorsement may be issued in connection with an ALTA Owner's Policy or an ALTA Owner's Policy with the ALTA 13-06 Leasehold endorsement attached insuring a lessee's interest under a lease.  When used with an ALTA Owner's Policy, the Insured will be the optionee but Title to the fee estate will be shown as being vested in the present owner.  You should **not** describe the option interest as being the estate or interest insured.  In the case of coverage by use of an ALTA Owner's Policy modified to insure a lease, the estate insured will be the Leasehold and Title will be shown as being vested in the name of the lessee of the leasehold estate, which normally will be the same entity that is the optionee.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 55**

**AUTHORITY FOR ISSUANCE OF THIS ENDORSEMENT**

This endorsement may not be issued without the approval of the Company's underwriting advisor, who will consider the issues, including the recharacterization and the clogging problems mentioned above.

**MODIFICATION**

This form is not a uniform form.  In the event that modification of this endorsement or your state form is requested, it is necessary to consider the state regulatory requirements for filing and approval of forms.  You must obtain the approval of the Company's underwriting advisor before complying with any request for modification.

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

<u>**Option Form A**</u>

<div align="center">

ENDORSEMENT

Attached to Policy No. _____

**Issued by**
**[FNTG BRAND]**

</div>

The Company insures the Insured against loss or damage that the Insured shall sustain by reason of the entry of a final, non-appealable order or judgment finding that the rights of the Insured in the Option described in paragraph ___of Schedule B ("Option") are at the date hereof invalid, and that the rights of the optionee under the Option are not vested in the Insured subject to the terms and provisions thereof.

The insurance contained herein and in the policy of which this endorsement is a part shall cease and terminate upon the exercise of the Option or on _____, whichever occurs first.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

Dated:

By:_____

    Authorized Signatory

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 55**

**Option Form B**

<div align="center">

ENDORSEMENT

Attached to Policy No. _____

**Issued by**
**[FNTG BRAND]**

</div>

The Company insures the Insured against loss or damage that the Insured shall sustain by reason of the entry of a final, non-appealable order or judgment finding that  the rights of the Insured in the Option described in paragraph ___of Schedule B ("Option") are not vested in the Insured subject to the terms and provisions thereof.

The Company further insures against loss or damage which the Insured shall sustain by reason of:

1. The unenforceability of the right to exercise the Option except to the extent that such unenforceability or claim thereof is based on the failure of the Insured to have fulfilled the terms and conditions of the Option.

2. The priority over the Option of any conveyance made of the fee simple estate in the Land or of any liens or encumbrances created thereon after the Date of Policy, excepting such liens or encumbrances that would affect the Insured had the Insured been the owner of the fee simple Title instead of an Option as of Date of Policy, including, without limitation, real estate taxes, special assessments, demolition liens, drainage liens and water liens.

3. The entry of a final non-appealable order or judgment that requires the Insured, as condition to receiving specific performance of the Option, to pay a sum in excess of the Option price, other than attorneys' fees and costs of litigation.

Nothing contained in this endorsement shall be construed as insuring the Insured against loss or damage sustained or incurred by reason of:

(a)    Rejection of the Option under the provisions of the Federal Bankruptcy Code or state insolvency laws.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

(b)    The failure of the Insured to receive all or part of an award entered in a condemnation proceeding unless failure to share in said award stems solely by reason of the entry of a final, non-appealable order or judgment that finds the option invalid or incapable of specific performance.

(c)    The failure of the Insured at the time of payment of the Option price either to have obtained proper conveyances and releases from all persons then having an interest in said Land or a lien or encumbrance thereon (the determination as to the identity of such persons and the nature of the interest, lien or encumbrance owned or claimed to be at the expense of the Insured) or to have obtained a final, non-appealable order or judgment that finds those persons and interests entitled to receive the option price.

(d)    Attorneys' fees and costs in connection with the proceedings mentioned in subparagraph (c) immediately above or in connection with an action to enforce the Option, excluding attorneys' fees incurred to defend an attack on the validity or enforceability of said Option.

(e)    Any lien, or right to a lien, for services, labor or material heretofore or hereafter furnished and imposed by law.


This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.


Dated:


By: _____
          Authorized Signatory

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                              **SECTION 56**

**Return to Table of Contents**

**ASSIGNMENT OF RENTS ENDORSEMENT-**

**CONTAINED WITHIN INSURED MORTGAGE**

**PURPOSE**

Lenders occasionally request that the loan policy insure certain recorded interests that are taken as additional security for the loan primarily secured by the Insured Mortgage. The most common additional security, other than a security interest under the Uniform Commercial Code, is an assignment of rents (leases).

This endorsement is to be issued to provide certain coverages with respect to an assignment of rents (leases) that is contained within the Insured Mortgage. This endorsement provides insurance that the Public Records do not disclose any prior assignments of these same rents (leases). Please see Section **37** for the issuance of an endorsement insuring a separately recorded assignment of rents (leases).

**SECTION OF POLICY AMENDED BY ENDORSEMENT**

This endorsement does not amend or modify any specific policy provisions, but adds additional coverage to the terms of the policy.

**BASIS FOR PROVIDING COVERAGE**

Verify that the Public Records do not disclose any prior assignments of rents (leases). If a previously recorded assignment of rents (leases) is found, it must be raised as an exception in Schedule B of the policy.

**NOTE:** PRIOR MORTGAGES OR DEEDS OF TRUST MUST BE EXAMINED TO DETERMINE IF THEY CONTAIN ASSIGNMENTS OF RENTS (LEASES) WITHIN THEM. SEPARATE SCHEDULE B EXCEPTIONS SHOULD BE MADE FOR SUCH ASSIGNMENTS.

**MODIFICATION**

This form is not a uniform form. In the event that modification of this endorsement or your state form is requested, it is necessary to consider the state regulatory requirements for filing and approval of forms. You must obtain the approval of the Company's underwriting advisor before complying with any request for modification.

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**Assignment of rents (leases) contained in Mortgage**

**ENDORSEMENT**

Attached to Policy No. _____

**Issued by**
**[FNTG BRAND]**

The Company insures the Insured against loss which said Insured shall sustain by reason of the existence, as shown by the Public Records, of any assignment of the rents (leases) prior to the assignment of rents (leases) contained in the Insured Mortgage, other than as set forth in Schedule B.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**Return to Table of Contents**

## ISSUANCE OF FUTURE INSURANCE

### PURPOSE

This endorsement is designed to provide assurance that within a stipulated period of time we will increase the Amount of Insurance under the current policy or issue a new policy to a party designated by the Insured, subject only to then current underwriting practices and subsequent matters of record, and only if there are no claims or adverse title matters pending.

### SECTION OF POLICY AMENDED BY THE ENDORSEMENT

This endorsement does not amend or modify any section of the policy.

### BASIS FOR PROVIDING COVERAGE

This endorsement may be issued when the Insured will be acquiring a new interest or entering into a new security arrangement at a later date.  It is **not** to be used as a substitute for a binder or commitment.  Application for this endorsement **must** state the subsequent transaction for which the Insured desires insurance.  This endorsement **must** contain a time limitation on the right of the insured to request the issuance of a new policy.

### FORM A

This form does **not** obligate the Company to increase the amount of insurance in the face of a previously existing unknown defect in title, and is the **preferred form** for use in other than new construction.

### FORM B

This form obligates the Company to increase the Amount of Insurance and is to be used only in new construction situations where the original Amount of Insurance represents the value of the raw land and there is no construction loan to be insured. The new policy or endorsement should raise any matters which were created, first appeared in the Public Records, attached or  became Known to either the Insured or the Company subsequent to the date of the original policy, which could include pending claim matters. The form also obligates the Insured to apply for an increase in the Amount of Insurance either upon completion of the construction or within five years from the Date of Policy, whichever first occurs.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 57**

**MODIFICATION**

These forms are not uniform forms.  In the event that modification of one or more of these forms or your state form is requested, it is necessary to consider the state regulatory requirements for filing and approval of forms.  You must obtain the approval of the Company's underwriting advisor before complying with any request for modification.

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**FORM A**

## ENDORSEMENT

Attached to Policy No. \_\_\_\_\_

**Issued by**
**[FNTG BRAND]**

The Company agrees that if, within _____ years after the Date of  Policy, application is made to increase the Amount of Insurance or to issue a new policy, it will issue additional title insurance policies, or increase the Amount of Insurance of this policy insuring such Title or interest as may then exist in the Insured or the Insured's designee.  The Amount of Insurance to be issued will not exceed the amount of the mortgage to be placed on the Land or the fair market value of the Land at the date of the application.  In the event a claim has been made or is pending against the Company, or a defect in Title has been discovered, the Company shall not be required to issue insurance for an amount greater than the face amount of this policy as to the defect discovered or resulting in said claim.  Upon receipt of the application to issue a subsequent policy or increase the Amount of Insurance of this policy, the Company will extend its examination of the Title to the then current date, and will then issue its policy or increase the Amount of Insurance of this policy, subject to such matters created, first appearing in the Public Records, or attaching subsequent to the effective date of this policy, or which have become Known to either the Insured or the Company.

The insurance to be issued shall be subject to underwriting practices, rules, regulations and rates in effect at the date the subsequent insurance coverage is issued.  The Company shall not be obligated to issue additional insurance coverage which would exceed the amount of the usual reinsurance retention of the Company if, after the exercise of reasonable effort, the Company is unable to obtain reinsurance or coinsurance as may be required in order for it to issue the full amount of additional insurance for which application is made.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                                              **SECTION 57**

**FORM B**

<div align="center">

**ENDORSEMENT**

Attached to Policy No. _____

**Issued by**
[**FNTG BRAND**]

</div>

The Insured agrees to apply for an increase in the Amount of Insurance to cover the value of the actual improvements constructed on the Land and pay the charges then applicable for such increased insurance upon completion of construction of such improvements or within 5 years after the Date of Policy, whichever first occurs.  The Company agrees that when such application is made to increase the Amount of Insurance  and/or to issue a new policy to the then Insured under the policy, and/or to issue a policy to such mortgagee(s), trustee(s) under deed(s) of trust, beneficiary(s) of deed(s) of trust, parties to sales and leasebacks or other types of financial transactions (hereinafter severally and collectively, as indicated by the context, referred to as "Lending Institution(s)") as may be designated by the present Insured or the then Insured under the policy, it will issue additional title insurance coverage insuring such Title and/or interest as may then exist in the Insured and/or Lending Institution in and to said premises in an amount equal to the value of the Land on the date of said application; provided the Company may then extend its examination of the Title to the then current date and, subject to such matters, if any, created, first appearing in the Public Records, attaching and/or which have become Known to either the Insured or the Company subsequent to the effective date of this policy, will increase its liability to the requested amount upon payment of its usual charges for such additional insurance coverage; and further provided, however, that the Company shall not be obligated to issue additional insurance coverage which would exceed the amount of the usual reinsurance retention of the Company if, after the exercise of its reasonable efforts, it is unable to obtain such reinsurance or coinsurance as may be required in order for it to issue the full amount of additional insurance for which application is made. The insurance to be issued shall be subject to underwriting practices, rules, regulations and rates in effect at the date the subsequent insurance coverage is issued.

This endorsement is issued as part of the policy. Except as it expressly states, it does not
(i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements,
(iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision
of the policy or a previous endorsement is inconsistent with an express provision of this
endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the
terms and provisions of the policy and of any prior endorsements.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 58**

Return to Table of Contents

## COVENANTS RUNNING WITH THE LAND
## (CLTA ENDORSEMENT NO. 124.1)

### PURPOSE

This endorsement is sometimes called a "shopping center endorsement" or CLTA 124.1 and is typically requested in connection with multiple owner shopping center developments.  Normally, the owners of the various parcels of property within a shopping center will enter into an agreement under which covenants will be made for each other's benefit to do or not to do certain acts with regard to the use, repair, maintenance or improvement of, or payment of taxes and assessments on the property of the respective covenantors. This endorsement provides assurance that conforming covenants will be binding upon the covenantors and their successors in ownership, subject to the limitations contained in the endorsement. In other words, the instrument containing the covenants will give constructive notice to subsequent owners and lenders of the other parcels that there are burdens on their parcels. It does NOT insure the enforceability of those covenants, and any request for that type of coverage should be refused.

### SECTION OF POLICY AMENDED BY ENDORSEMENT

This endorsement does not amend any section of the title policy.  It expands the coverage of the policy by insuring the binding effect of both negative and affirmative covenants benefiting the insured Land and burdening other lands **not** included within the insured Land.

### BASIS FOR PROVIDING COVERAGE

This endorsement is only available in those states which have sufficient legal precedent establishing criteria essential for creation of covenants that run with the land and are binding upon subsequent owners.  Counsel must tailor insurance requirements including the form of insurance coverage to fit state law requirements.

### AUTHORITY FOR ISSUANCE OF THIS COVERAGE

This endorsement shall not be issued without approval by the Company's underwriting advisor.

**No insurance shall be issued in a form which would insure enforceability or compliance with any such covenants.**

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 58**

## MODIFICATION

This form is not a uniform form.  In the event that modification of this endorsement or your state form is requested, it is necessary to consider the state regulatory requirements for filing and approval of forms.  You must obtain the approval of the Company's underwriting advisor before complying with any request for modification.

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT

Attached to Policy No.____

**Issued By**

**[FNTG BRAND]**

The Company insures against loss or damage sustained by reason of the failure of the covenants of the covenantor in favor of the covenantee set out in Section(s) _____ of the instrument recorded _____ to do or refrain from doing some act relating to the use, repair or maintenance of the improvements , or payment of taxes and assessments on the real property, or some part thereof, described as (description of burdened land of covenantor) to be binding upon the covenantor and each successive owner, during his ownership of any portion of such real property, and upon each person having any interest therein derived from the covenantor or through any such successive owner thereof, except a mortgagee of a mortgage, or the trustee or beneficiary of a deed of trust, while not in possession of such real property in such capacity.

Provided, however, that no insurance coverage is provided by this Endorsement should such covenants fail to bind a successive owner who derives Title through: a) a tax deed; b) a foreclosure of a bond or assessment; c) enforcement of a federal tax lien; d) a bankruptcy, as trustee or otherwise; e) a right or lien existing prior to the date of recording of the instrument containing said covenants.

This endorsement does not insure against loss or damage which the Insured may sustain by reason of the non-performance of any said covenants.

This endorsement is issued as part of the policy.  Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.  To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls.  Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

DATED:

BY: _____
          AUTHORIZED SIGNATURE

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

CLTA FORM 124.1-06 (03-09-07)

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 59**

Return to Table of Contents

## REVOLVING CREDIT MORTGAGE ENDORSEMENTS

### PURPOSE

These endorsements provide coverage for the enforceability and priority of the lien of the Insured Mortgage as security for revolving credit loan advances.  There are four endorsements.  Each is designed to apply to one of the four general legal patterns for future advance mortgages in the United States. See also Section 14 for ALTA endorsements that may be used, if appropriate, to insure the priority of advances made under a revolving credit facility.

### SECTION OF THE POLICY AMENDED BY ENDORSEMENT

Each endorsement modifies Exclusions from Coverage No. 3(d) and Conditions No. 1 (d)(ii). They also expand the coverage granted by Covered Risks 9 and 10 to those amounts included within the definition of Indebtedness at Condition 1(d) by using and defining the term "Advances" to include those amounts.

### BASIS FOR PROVIDING COVERAGE

**Preliminary Considerations**

*Security*

To secure repayment of *future advances* of funds by the lender, the mortgage or deed of trust must provide for such future advances.  The mortgage does not need to provide for revolving credit unless the principal balance could be paid down to zero and then funds could be re-advanced under the note. If that happens (which is not unusual in a revolving line of credit) the security instrument may not secure subsequent future advances (or re-advances) unless the parties agree that it will.

Under Section 549 of the Bankruptcy Code, the bankruptcy trustee of a borrower may have the power to avoid the lien of a mortgage or trust deed to the extent it secures advances made after the lender has notice of the bankruptcy.  The recording or filing of a copy of the petition, or a notice that the petition has been filed, is sufficient to give the lender that notice. The courts have construed notice very broadly. Therefore, draws against a revolving credit line and other loan advances which are funded after a bankruptcy filing may be in jeopardy of being unsecured.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

*Priority*

The priority of the mortgage or deed of trust as security for future advances depends upon the factors discussed below.  The problems arise where a lien or encumbrance is created or attaches after recording of the mortgage or trust deed but prior to a future advance.

**Ordinary Liens and Encumbrances**

*Notice*

In order for a future advance to have priority over an intervening matter, the mortgage or trust deed must have given notice at the time it was originally recorded that it would secure future advances. For purposes of this coverage, which deals with future advances, repayment and re-advances, the Insured Mortgage must contain whatever language about future advances or revolving credit that may be required under state law to give constructive notice and establish priority.

*Obligation to Advance*

Whether the lender is obligated to make the advance at the time the intervening party's lien or encumbrance attaches to the borrower's Title is important to priority in most states.  If the lender is legally obligated to make the advance at the time ("**obligatory advance**"), the lien securing it is prior to the lien or encumbrance of the intervening party.  An advance is obligatory if the lender could be successfully sued for damages if it did not make it. The obligation to advance may have some conditions ("the borrower must be alive", "the borrower must still own the property"), but these conditions must be objective and not subjective on the part of the lender.  Therefore, any conditions on the lender's obligation to fund must <u>not</u> be under the lender's control. If the lender is not obligated to fund after any lien or encumbrance attaches to the Title, advances made after the attachment of such a lien are optional ("optional advance").  An advance can start as obligatory, but if a lender chooses to advance when a condition has not been met the advance becomes optional. The rule differs among the states as to the priority of an optional advance over an intervening matter:

<u>Majority Rule</u>:  A future advance mortgage lien is prior if the lender does not have **actual** notice of the intervening matter at the time of the advance. Thus the advance will have priority over intervening matters even if recorded so long as the lender does not have actual knowledge of them.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

_Minority Rule_:   A future advance mortgage lien is prior if the lender has neither **actual** nor **constructive** notice of the intervening matter at the time of the advance. A future advance will lose priority to either an unrecorded intervening matter of which the lender has knowledge or an intervening matter which has been recorded which is not known to the lender.

Unless the agreement between the lender and borrower provides for a cure by the borrower, any advance made after a default by the borrower is an optional advance.  Where an obligatory advance agreement contains a cure provision, advances made after cure are again obligatory. Therefore they would be entitled to priority over encumbrances attaching after cure but before the advance.  Advances made after default and before cure would be treated as optional advances.

**Special Cases:  Federal Tax Liens, Mechanics' Liens and Environmental Protection Liens**

_Federal Tax Liens_

There is some argument about the priority of federal tax liens with respect to the security for disbursements under a construction loan.  Under the worst case view, the construction loan mortgage lien has the same priority over federal tax liens as it would have over a judgment lien under state law.

However, **no advance** made under an ordinary future advance mortgage is protected against a federal tax lien recorded after the mortgage where the advance is made (1) more than 45 days after the recording of the tax lien notice or (2) after **actual** notice of the tax lien, whichever occurs first.  Whether the advance is optional or obligatory is immaterial.

_Mechanics' Liens (Construction Liens)_

The law of many states would give mechanics' liens priority over the lien of the Insured Mortgage. In some states, this is limited to those mortgages or trust deeds which finance the construction out of which the liens arise.  Other states may treat mechanic's liens like other types of liens with respect to future advance mortgages if the mortgage was recorded before the visible commencement of construction. The effect of mechanics' liens on the priority of future advances must always be considered.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

*Environmental Protection Liens*

Currently, federal law and the laws of many states create governmental liens to secure repayment for the cost of cleaning the environment of toxic or hazardous waste. These liens may also secure repayment for the damage done to the environment. Under some state laws, these liens have priority over existing liens. It is possible for them to be created without recording or filing in the local real estate records. The impact of such liens on the priority of future advances is uncertain.

**Forms of Coverage**

Subject to any state regulatory requirements which may exist, the following endorsements are preferred for providing of revolving credit advances:

For *obligatory* advance loans:
>    Revolving Credit Endorsement A
>    Revolving Credit Endorsement B

For *optional* advance loans:
>    Revolving Credit Endorsement C
>    Revolving Credit Endorsement D

**Effect of the Endorsements**

*Common features*

All of the endorsements relax the limitation of liability imposed by the Conditions and Exclusions from Coverage noted above, to the extent of the insurance they provide. However, they do not cover disbursements made after the borrower no longer has Title to the Land. All of these forms eliminate coverage for advances made after notice that the borrower has become a debtor in a bankruptcy case.

*Differences*

*These endorsements differ only in the scope of the exclusion from coverage in* **Paragraph e**. *of the Endorsement.*

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

<u>Endorsements A and B cover obligatory advance agreements.</u>

**Paragraph e**. excludes from priority only those advances made after the lender is no longer obligated to fund them. After that point, the law will treat advances as optional.    The endorsements differ from each other in their treatment of advances made after default or some other event excusing the lender from its funding obligations.

Endorsement A is for use in the majority law states. (Lender must have actual knowledge of intervening matter).

Endorsement B is tailored for the minority view. (Lender has actual or constructive knowledge of intervening matter).

<u>Endorsements C and D cover optional advance agreements.</u>

Endorsement C is for optional advance loans in those states applying the majority rule.  It gives no insurance of priority over matters Known (which under the policy means *actually known*) to the insured before the advance of funds.

Endorsement D is for optional advance loans in those states adopting the minority position.  It denies priority coverage against intervening encumbrances either actually or constructively known to the Insured before the advance of funds. In other words, it does not insure priority over subsequently recorded liens.

*Instructions for Issuance*

**You must check with the Company's underwriting advisor to see which forms are available in your state and whether any modification of these instructions is necessary.**  While the forms here should be sufficient for the majority of states, there may be statutes or court decisions in some states which have not been considered.   If no modification is required, you are authorized to proceed as follows:

1.    Determine that the Insured Mortgage clearly states that it secures future advances.  The statement that it secures a revolving line of credit or a revolving credit agreement is sufficient.  You must not issue any of these endorsements if the Insured Mortgage is not clear on this point.

2.    Determine whether or not it is possible for the lender to make advances after the loan balance is paid down to zero ("zero balance").  If it is, then either the Insured Mortgage must stipulate that advances made thereafter are secured or the law in your state must

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

so provide.  If neither is the case, you must either require that the Insured Mortgage be modified to provide for this or decline to issue the endorsement.

3.      Determine whether the state where the land lies applies the majority or minority rule on priority of **optional** advances.  **Consult the Company's underwriting advisor when making this determination.**

**If the minority rule is applied, you must not issue Endorsements A or C.**  If there is no law on which rule will be applied, then you may issue Endorsements A or C **only to loan policies insuring second or lower priority mortgages or deeds of trust on individual single family residential houses or condominiums.**  However, Endorsement A may only be issued if the lender is obligated to make the future advances.  (See No. 4, below)

4.      Determine whether the advances are initially obligatory or optional.  **If they are optional, neither Endorsement A nor Endorsement B may be issued.**  Agreements ("insecurity clauses,") which provide that lender is not obligated to fund if, at any point, it believes the borrower has become incapable of repaying the loan, should be considered optional advance agreements.  If in doubt, advances should be treated as optional.

If advances are initially obligatory, Endorsements A or B may be issued.  Endorsement A should be issued in states which apply the majority law on optional advances.  Endorsement B should be used in those states applying the minority law.  However, if one or more events other than a default by the borrower excuses the lender's obligation to make a further advance, those events must be added at the end of paragraph **e**. in these endorsements. If the agreement characterizes the only events relieving the lender's obligation as events of default, then no additional language is necessary in the endorsement.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**Selection of endorsement-summary table**

| State law on **optional** advances | **Nature of Advances** | |
|---|---|---|
| | Obligatory | Optional |
| Majority Law | A, B*, C*, D* | C,D* |
| Minority Law | B, D* | D |
| Law unsettled | A**, B | C**, D |

\* Provides less than the maximum coverage available.

\*\*For use only with second or lower priority mortgages on single family residences (see instructions, above.)

5.      You are authorized to delete the exception for mechanic's liens (paragraph **d.**) from any of these endorsements issued to loan policies covering second or lower priority mortgages on single family residence, where advances are obligatory.   **Contact the Company's underwriting advisor to determine if deletion of this exception is appropriate under any other circumstances.**

6.      If you are asked to extend the coverage of Endorsements A or B to disbursements made after a cure of a default or other event which excused the lender's obligation to fund, you may add the following language to the end of **Paragraph e**. after you have made the determination stated below:

> **but prior to a cure of said default [or other event eliminating lender's obligation to fund (if applicable)].**

To do this, you must determine that either the note or the revolving credit agreement <u>reobligates</u> the lender to fund after the occurrence of some stated event which cures the default.  The most usual event would be the borrower bringing his account current within a certain period of time.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 59**

**Any questions you may have about these instructions should be directed to the Company's underwriting advisor.**

### MODIFICATION

These forms are not uniform forms.  In the event that modification of one or more of these forms or your state form is requested, it is necessary to consider the state regulatory requirements for filing and approval of forms.  You must obtain the approval of the Company's underwriting advisor before complying with any request for modification.

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**Revolving Credit Endorsement A - Obligatory Advances – [Majority Law]**

**ENDORSEMENT**

Attached to Policy No. _____

**Issued by**
**[FNTG BRAND]**

Any advance made by the Insured after Date of Policy is included within the coverage of this policy if:

1.      The advance is made pursuant to [name of future agreement], according to its terms at Date of Policy, and

2.      The party shown in Schedule A as vested in Title is so vested at the time of the advance and is not at that time a debtor in a bankruptcy case of which the Insured has actual or constructive notice.

The Company insures the Insured against loss the Insured shall sustain by reason of the priority of any lien or encumbrance over the lien of the Insured Mortgage as security for any such advance, except for any of the following:

        a.      Any lien or encumbrance which appears in Schedule B.

        b       Any tax or assessment which becomes a lien after Date of Policy.

        c.      Federal tax liens of which the Insured has actual or constructive notice arising subsequent to Date of Policy and prior to the making of the advance.

        d.      Any lien, or right to a lien, which is imposed by law to secure payment for labor, services or materials supplied after Date of Policy.

        e.      Any lien or encumbrance, arising after Date of Policy and prior to the making of the advance, of which the Insured has actual notice at the time the advance is made, if the advance is made after an event of default by the borrower or after [indicate other event eliminating lender's obligation to fund].

        f.      Any environmental protection lien arising after Date of Policy.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                                    **SECTION 59**

<u>**Revolving Credit Endorsement B - Obligatory Advances – [Minority Law]**</u>

**ENDORSEMENT**

Attached to Policy No. _____

**Issued by**
**[FNTG BRAND]**

Any advance made by the Insured after Date of Policy is included within the coverage of this policy if:

1.      The advance is made pursuant to [name of future agreement], according to its terms at Date of Policy, and

2.      The party shown in Schedule A as vested in Title is so vested at the time of the advance and is not at that time a debtor in a bankruptcy case of which the Insured has actual or constructive notice.

The Company insures the Insured against loss the Insured shall sustain by reason of the priority of any lien or encumbrance over the lien of the Insured Mortgage as security for any such advance, except for any of the following:

a.      Any lien or encumbrance which appears in Schedule B.

b.      Any tax or assessment which becomes a lien after Date of Policy.

c.      Federal tax liens of which the Insured has actual or constructive notice arising subsequent to Date of Policy and prior to the making of the advance.

d.      Any lien, or right to a lien, which is imposed by law to secure payment for labor, services or materials supplied after Date of Policy.

e.      Any lien or encumbrance, arising after Date of Policy and prior to the making of the advance, of which the Insured has actual or constructive notice at the time the advance is made, if the advance is made after an event of default by the borrower or after [indicate other event eliminating lender's obligation to fund].

f.      Any environmental protection lien arising after Date of Policy.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**Revolving Credit Endorsement C - Optional Advances -[Majority Law]**

**ENDORSEMENT**

Attached to Policy No. _____

**Issued by**
**[FNTG BRAND]**

Any advance made by the Insured after Date of Policy is included within the coverage of this policy if:

1.      The advance is made pursuant to [name of future agreement], according to its terms at Date of Policy, and

2.      The party shown in Schedule A as vested in Title is so vested at the time of the advance and is not at that time a debtor in a bankruptcy case of which the Insured has actual or constructive notice.

The Company insures the Insured against loss the Insured shall sustain by reason of the priority of any lien or encumbrance over the lien of the Insured Mortgage as security for any such advance, except for any of the following:

      a.      Any lien or encumbrance which appears in Schedule B.

      b.      Any tax or assessment which becomes a lien after Date of Policy.

      c.      Federal tax liens of which the Insured has actual or constructive notice arising subsequent to Date of Policy and prior to the making of the advance.

      d.      Any lien, or right to a lien, which is imposed by law to secure payment for labor, services or materials supplied after Date of Policy.

      e.      Any lien or encumbrance, arising after Date of Policy and prior to the making of the advance, of which the Insured has actual notice at the time the advance is made.

      f.      Any environmental protection lien arising after Date of Policy.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**<u>Revolving Credit Endorsement D - Optional Advances – [Minority Law]</u>**

**ENDORSEMENT**

Attached to Policy No. _____

**Issued by**
**[FNTG BRAND]**

Any advance made by the Insured after Date of Policy is included within the coverage of this policy if:

1.      The advance is made pursuant to [name of future agreement], according to its terms at Date of Policy, and

2.      The party shown in Schedule A as vested in Title is so vested at the time of the advance and is not at that time a debtor in a bankruptcy case of which the Insured has actual or constructive notice.

The Company insures the Insured against loss the Insured shall sustain by reason of the priority of any lien or encumbrance over the lien of the Insured Mortgage as security for any such advance, except for any of the following:

        a.      Any lien or encumbrance which appears in Schedule B.

        b.      Any tax or assessment which becomes a lien after Date of Policy.

        c.      Federal tax liens of which the Insured has actual or constructive notice arising subsequent to Date of Policy and prior to the making of the advance.

        d.      Any lien, or right to a lien, which is imposed by law to secure payment for labor, services or materials supplied after Date of Policy.

        e.      Any lien or encumbrance, arising after Date of Policy and prior to the making of the advance, of which the Insured has actual or constructive notice at the time the advance is made.

        f.      Any environmental protection lien arising after Date of Policy.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**Return to Table of Contents**

<div align="center">

**LAST DOLLAR ENDORSEMENT**

**(FOR USE WITH POLICY FORMS OTHER THAN THE ALTA 2006 LOAN POLICY)**

**PURPOSE**

</div>

This endorsement is designed to provide coverage to the lender in a situation where the loan amount exceeds the value of the real property.  This situation commonly occurs, for example, in the financing of an ongoing business.  The real property is often only a small part of the purchase price that is being borrowed. [Without this coverage, the liability under the policy could be reduced to zero by the repayment of the principal long before the entire debt is retired.]

<div align="center">

**SECTION OF POLICY AMENDED BY ENDORSEMENT**

</div>

Condition and Stipulation 9 REDUCTION OF INSURANCE of the 1987, 1990 and 1992 ALTA Loan Policy (Section 8 in 1970 version) provides for the reduction of liability by the repayment of the principal of the indebtedness.  Condition and Stipulation 7 DETERMINATION AND EXTENT OF LIABILITY (Section 6 in 1970 version) defines the loss under the loan policy as the unpaid principal indebtedness as reduced under the Condition and Stipulation 9 (Section 8 in the 1970 version).  This endorsement amends these two sections to provide that the repayment of the debt will first be applied to reduce the amount of the indebtedness **in excess** of the liability under the policy.  This would result in the insurance provided under the policy not being reduced by repayment until the outstanding balance of the debt equals the amount of liability under the policy.  At that point, the liability would be reduced, *pro tanto* (or dollar for dollar), by subsequent repayment of the debt.  The policy would then provide coverage to the *last dollar* of indebtedness.

ALTA structured the 2006 Loan Policy in such a way that this endorsement is no longer needed.  Condition 9. LIMITATION OF LIABILITY no longer contains the provision that the Amount of Insurance is reduced by the repayment of principal *pro tanto*.  Rather, the definition of Indebtedness under Conditions 1. (d) provides that the amount of the Indebtedness (not the Amount of Insurance)  is reduced by the total of all payments and by any amount forgiven. The result is that as long as the Indebtedness does not fall below the Amount of Insurance, coverage will not be reduced by repayment of principal.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**BASIS FOR PROVIDING COVERAGE**

**This endorsement cannot be used with the ALTA 2006 Policy Form.**

Care must be taken to make sure that the form and/or rate is filed in those states that require filing.

If the mortgage collateralizes a revolving line of credit, this endorsement should be modified to reflect that it covers money paid and repaid under the revolving credit agreement.

**MODIFICATION**

This form is not a uniform form.  In the event that modification of this endorsement or your state form is requested, it is necessary to consider the state regulatory requirements for filing and approval of forms.  You must obtain the approval of the Company's underwriting advisor before complying with any request for modification.

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**Last Dollar Endorsement (For 1987, 1990 and 1992 versions)**

**ENDORSEMENT**

Attached to Policy No. _____

**Issued by**

**[FNTG Brand]**

The Company has been advised by the insured that the mortgage insured herein secures an indebtedness to the insured in an amount in excess of the amount of this policy.  The Company agrees that in calculating the amount of indebtedness secured by the insured mortgage under paragraphs 7 and 9 of the Conditions and Stipulations of this policy, payments made to reduce the amount of said indebtedness (except payments made by the Company pursuant to provisions of this policy) shall be deemed applied first to the portion of said indebtedness that is in excess of the amount of insurance stated in Schedule A.

Furthermore, it is agreed that the books and records of the insured with respect to the payment of the indebtedness secured by the mortgage shall be conclusive evidence of the application of payments of the indebtedness.  Said books and records shall be kept according to any proper and recognized method of accounting for payment of secured obligations.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

Dated:

By:_____

        Authorized Signatory

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    SECTION 61

**Return to Table of Contents**

## TAX CREDIT BENEFIT ENDORSEMENT

### PURPOSE

These endorsements are often requested in conjunction with the issuance of an Owners Policy covering Land that has been developed in such a way as to afford the owners or the investors certain tax credits, such as Low Income Housing Tax Credits, under the IRS Code.

### SECTIONS OF POLICY AMENDED BY ENDORSEMENT

These endorsements indirectly modify Condition 8 of the Owners Policy by recognizing the value of the loss of the tax benefit as a basis for loss under the policy. Without these endorsements, the value of the Title may not take into consideration any value of the Tax Benefit that was lost due to a title issue. The market value of the Land may be enhanced by the special tax treatment that the owner enjoys.

### BASIS FOR PROVIDING COVERAGE

There are 3 forms of Endorsement attached.

- The Tax Benefit Endorsement-Insured which runs to the benefit of the named Insured
- The Tax Benefit Endorsement [*limited partner/member*] which runs to the benefit of a specific investor in the Insured.
- The Tax Benefit Endorsement – No Increase in Amount of Insurance benefits the named Insured

The first two endorsements shown contain a separate amount of insurance which is in addition to the Amount of Insurance afforded under the Policy and for which a separate premium based on the specific increased amount of liability  needs to be charged and collected at the current rates. The third endorsement expands the basis for loss under the policy generally, and should have a risk premium attached to it, even though the Amount of Insurance is not increased, since this is additional coverage that would not be afforded by the policy without the endorsement.

The Tax Benefit Endorsement-[*limited partner/member*] should be customized to name the investor  and describe the specific type of investor (member or limited partner) and then name the entity that is being insured in the underlying Policy. The Additional Insured under this endorsement is different party than the Insured under the Policy.

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**MODIFICATION**

This form is not a uniform form.  In the event that modification of this endorsement or your state form is requested, it is necessary to consider the state regulatory requirements for filing and approval of forms.  You must obtain the approval of the Company's underwriting advisor before complying with any request for modification, including the referencing of other sections of the Tax Code.

Return to Table of Contents

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                                    SECTION 61

**Tax Benefit Endorsement-Insured**

**ENDORSEMENT**
Attached to Policy No._____

**Issued by**
**[FNTG BRAND]**

**Amount of Insurance: $**_____

For purposes of this Endorsement, the following general provisions shall apply:

(a)     The term "Tax Benefit" shall mean the Low Income Housing Credit pursuant to Section 42 of the Internal Revenue Code of 1986, as amended (the "Low Income Housing Credit"). The Company acknowledges that Improvements constructed upon the land described in Schedule A may be treated by the Insured as low-income buildings pursuant to said Section 42.

(b)     The term "Tax Benefit Loss" shall mean that, as a result of a matter falling within the insuring provisions of the Policy, subject to the Exclusions, Exceptions and Conditions of the Policy, the Insured is not able to claim the Low Income Housing Tax Credit or is required to recapture all or any portion of the Low Income Housing Tax Credit.

If a defect in the Title insured against in the Policy results in a Tax Benefit Loss, the Company agrees to pay to the Insured the amount which the Insured is required to pay, and does pay, or which the Insured is unable to claim, by reason of the application of the Internal Revenue Code of 1986, as amended, now and hereafter in effect.  The Company's obligations to pay the Insured under this Endorsement: (a) does not affect or modify and is in addition to the Company's obligations to pay the Insured under the Policy for any loss or damage incurred by the Insured under the Policy: (b) does not reduce the Amount of Insurance of the Policy; and (c) is limited to the amount of insurance stated above on this Endorsement. Any payment under this Endorsement shall reduce the Company's liability hereunder and the amount of insurance under this Endorsement shall be reduced by a corresponding amount.

The Company shall not be obligated for any costs, attorneys' fees or expenses incurred by any Insured under the Policy or this Endorsement in defending or establishing the Tax Benefit.

This endorsement is issued as part of the policy.  Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy or (iv) increase the Amount of Insurance.  To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls.  Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements to it.

[Witness Optional]

DATED:

[FNTG BRAND]

BY: _____
        AUTHORIZED SIGNATORY

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

**Tax Benefit Endorsement- [*limited partner/ member*]**

<div align="center">

**ENDORSEMENT**
Attached to Policy No._____
**Issued by**
**[FNTG BRAND]**

</div>

**Amount of Insurance: $**_____

The Company acknowledges that _____, which is the [*limited partner/member*] of _____ (the ["*Partnership or "LLC*™]), is an Additional Insured ("Additional Insured") under this Policy but only for and limited to the specific dollar amount of coverage expressed above in this Endorsement.

For purposes of this Endorsement, the following general provisions shall apply:

(a)  The term "Tax Benefit" shall mean the Low Income Housing Credit pursuant to Section 42 of the Internal Revenue Code of 1986, as amended (the "Low Income Housing Credit"). The Company acknowledges that Improvements constructed upon the land described in Schedule A may be treated by the Additional Insureds as low-income buildings pursuant to said Section 42.

(b)  The term "Tax Benefit Loss" shall mean that, as a result of a matter falling within the insuring provisions of the policy, subject to the Exclusions, Exceptions and Conditions of the Policy, the [*Partnership/LLC*] is not able to claim the Low Income Housing Tax Credit or is required to recapture all or any portion of the Low Income Housing Tax Credit.

Except to the extent of reimbursement received by them from the [*Partnership/LLC*], if a defect in the Title insured against in the Policy results in a Tax Benefit Loss, the Company agrees to pay, to the Additional Insured named in this Endorsement,  the amount which they, or any of them are required to pay, and do pay, or which they, or any of them, are unable to claim, by reason of the application of the Internal Revenue Code of 1986, as amended, now and hereafter in effect.  The Company's obligations to pay the Additional Insured named herein to and under this Endorsement: (a) does not affect or modify and is in addition to the Company's obligations to pay the Insured under the Policy for any loss or damage incurred by the Insured under the Policy; (b) does not reduce the Amount of Insurance of the Policy; and (c) is limited to the amount of insurance stated above on this Endorsement. Any payment under this Endorsement shall reduce the Company's liability hereunder and the amount of insurance under this Endorsement shall be reduced by a corresponding amount.

The Company shall not be obligated for any costs, attorneys' fees or expenses incurred by any Insured under the Policy or this Endorsement in defending or establishing the Tax Benefit.

This endorsement is issued as part of the policy.  Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy or (iv) increase the Amount of Insurance.  To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls.  Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements to it.

[Witness Optional]

DATED:

[FNTG BRAND]

BY: _____
         AUTHORIZED SIGNATORY

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

ENDORSEMENT MANUAL – Fidelity National Title Group, Inc.                    **SECTION 61**

**Tax Benefit Endorsement – no increase in Amount of Insurance**

**ENDORSEMENT**
Attached to Policy No._____

**Issued by**
**[FNTG BRAND]**

The Company hereby insures the Insured that in the event of any occurrence, defect, lien or encumbrance otherwise insured against by this policy, the loss or damage incurred by the Insured shall be deemed to be the difference between (1) the value of the Title as insured under this policy taking into consideration the tax credit status of the Insured pursuant to applicable sections of the Internal Revenue Code in effect at the Date of Policy (the "Value of the Title") prior to such occurrence, defect, lien or encumbrance, and (2) the Value of the Title after such defect, occurrence, lien or encumbrance.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements to it.

[Witness Optional]

DATED:

[FNTG BRAND]

BY: _____
       AUTHORIZED SIGNATORY

© 1999-2013 Fidelity National Title Group, Inc. All Rights Reserved

# EXHIBIT 7

# EXHIBIT 7

# Bulletin : NV2014002

**Date:** November 06, 2014

**To:** All Nevada Issuing Offices

**RE:** RATES AND/OR FORMS UPDATE - Use of the ALTA 9.10, the ALTA 4.1, and the ALTA 5.1

_____

Dear Associates:

Due to the recent decision by the Nevada Supreme Court in the case of SFR Investments Pool 1 LLC vs. US Bank, questions have arisen regarding the issuance of loan policies and endorsements to lenders making loans secured by condominiums, planned unit developments, or other common interest developments with a homeowners association. At this time, the only changes to our underwriting procedures are that 1) in lieu of issuing an ALTA 9 (or a CLTA 100) for a lender's policy, issue the ALTA 9.10; 2) in lieu of issuing an ALTA 4 for a lender's policy, issue the ALTA 4.1, and; 3) in lieu of issuing an ALTA 5 for a lender's policy, issue the ALTA 5.1.

If you have any questions relating to this or other bulletins, please contact a Stewart Title Guaranty Company underwriter.

For on-line viewing of this and other bulletins, please log onto www.vuwriter.com.

# References

**Bulletins Replaced :** None

**Related Bulletins :** None

**Underwriting Manual :** None

**Exceptions Manual :** None

**Forms :** None

# EXHIBIT 8

# EXHIBIT 8

**Loan Policy of Title Insurance**

*Fidelity National Title Insurance Company*

A Stock Company

**Policy Number
27-042-92-** 3589421

## LOAN POLICY OF TITLE INSURANCE

*SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, FIDELITY NATIONAL TITLE INSURANCE COMPANY, a California corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:*

1. *Title to the estate or interest described in Schedule A bein*

   **009201835    SUK    HS**

2. *Any defect in or lien or encumbrance on the title;*
3. *Unmarketability of the title;*
4. *Lack of a right of access to and from the land;*

   **610  145333545  D1  001  001**

5. *The invalidity or unenforceability of the lien of the insured*
6. *The priority of any lien or encumbrance over the lien of the insured mortgage;*
7. *Lack of priority of the lien of the insured mortgage over any statutory lien for services, labor or material:*
   (a) *arising from an improvement or work related to the land which is contracted for or commenced prior to Date of Policy; or*
   (b) *arising from an improvement or work related to the land which is contracted for or commenced subsequent to Date of Policy and which is financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance;*
8. *Any assessments for street improvements under construction or completed at Date of Policy, which now have gained or hereafter may gain priority over the lien of the insured mortgage;*
9. *The invalidity or unenforceability of any assignment of the insured mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the insured mortgage in the named insured assignee free and clear of all liens.*

*The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.*

*IN WITNESS WHEREOF, FIDELITY NATIONAL TITLE INSURANCE COMPANY has caused this policy to be signed and sealed by its duly authorized officers as of Date of Policy shown in Schedule A.*

*Fidelity National Title Insurance Company*

By: _____ President

ATTEST _____ Secretary

**SEAL**

Countersigned _____
Authorized Signature

Form 27-042-92 (Reprinted 12/98)

ALTA Loan Policy (10-17-92)
With ALTA Endorsement Form 1 Coverage

# SCHEDULE A

Order No.: 06-18-187297-MD

Policy No.:                27-042-92 3589421
Amount of Insurance:       $ 128,000.00
Premium Amount:            $ 309.00

Date of Policy: September 21, 2006 at 03:11 p.m

1.      Name of Insured:

        **Countrywide Home Loans, Inc. its successors and/or assigns**

2.      The estate or interest in the land which is encumbered by the insured mortgage is:

        A CONDOMINIUM, as defined in Chapters 116 and 117, as applicable of Nevada Revised Statutes, in fee

3.      Title to the estate or interest in the land is vested in:

        Hye Sun Suk an unmarried woman

4.      The insured mortgage and assignments thereof, if any, are described as follows.

        **A deed of trust** to secure an indebtedness in the amount shown below, and any other obligations secured thereby

        | | |
        |---|---|
        | Amount: | $128,000.00 |
        | Dated: | September 18, 2006 |
        | Trustor: | Hye Sun Suk an unmarried woman |
        | Trustee: | Recontrust Company, N.A. |
        | Beneficiary: | Countrywide Home Loans, Inc. |
        | Loan No.: | |
        | Recorded: | September 21, 2006, Instrument No. 05552, Book 20060921, of Official Records |

5.      The land referred to in this policy is situated City of Henderson, County of Clark, State of Nevada, and is described as follows:

        SEE EXHIBIT "ONE" ATTACHED HERETO AND MADE A PART HEREOF

THIS POLICY VALID ONLY IF SCHEDULE B IS ATTACHED                Page 1

ALTA Form Policy (10-17-92) with Form 1 Cov.

Order No. 06-18-187297-MD
Policy No. 27-042-92 3589421

# EXHIBIT "ONE"

Parcel One (1):

One (1) allocated interest (accept Association Property) as tenant-in-common in the Common Elements, sometimes Common Areas, within Phase 2 of Horizon Hills, as shown by map thereof on file in Book 104 of Plats, Page 32, in the Office of the County Recorder of Clark County, Nevada. The allocated interest for each Unit will be a fraction, the numerator of which will be One (1), and the denominator of which will be the total of all Units in the Project that become subject to the Declaration.

Excepting therefrom all Living Units and Association Property in Phase 2 of Horizon Hills Condominiums.

And Reserving Therefrom the right to possession of all those areas designated as Limited Common Elements, sometimes Exclusive Use Areas, within the Common Elements, as shown on the Condominium Plat referred to above.

And Further Reserving Therefrom for the benefit of the Owners of Condominiums in subsequent phases, a non-exclusive easement on, over and across the Private Drives and Recreational Areas as defined and shown upon the Plat referred to above for ingress, egress and recreational use, subject to the Declaration of Covenants, Conditions and Restrictions for Horizon Hills, a Condominium Development, recorded July 13, 2001 in Book 20010713 as Document No. 01027, and Amendment to Declaration of Covenants, Conditions and Restrictions for Horizon Hills, a Condominium Development, recorded May 9, 2002 in Book 20020509 as Document No. 01898, of Official Records, to which reference is hereafter made.

Parcel Two (2):

Living Unit 14 in Building 15 of Horizon Hills, as shown by map referred to above.

Parcel Three (3):

The exclusive right to use, possession and occupancy of those portions of the Limited Common Elements, sometimes Exclusive Use Areas, within the Common Elements, described upon the plat and as referred to in Section 9.6 (b) of the Declaration, which are appurtenant to and for the exclusive use of Parcel Two (2).

Parcel Four (4):

A non-exclusive easement for ingress, egress and recreational use on and over the Private Drives and Recreational Areas of Horizon Hills, as shown by map referred to above, and future units which easement is appurtenant to Parcels One (1), Two (2) and Three (3) described above.

Assessor's Parcel No: 178-30-810-116

ALTA Form Policy (10-17-92) with Form 1 Cov.

Order No. 06-18-187297-MD
Policy No. 27-042-92 3589421

# SCHEDULE B

### EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay cost attorneys' fees or expenses) which arise by reason of:

### PART I

1.  General and special State, County and/or City **property taxes** and any assessments collected with taxes, for the fiscal year 2006-2007, payable in 4 quarterly installments (3rd Monday in August and the 1st Monday in October, January and March, respectively) as follows:

    | | |
    |---|---|
    | Assessor's Parcel No.: | 178-30-810-116 |
    | District Number: | 505 |
    | Total: | $1,171.27 |
    | First Installment: | $292.81, paid |
    | Second Installment: | $292.82, paid |
    | Third Installment: | $292.82, not paid |
    | Fourth Installment: | $292.82, not paid |

2.  **The lien of supplemental taxes,** if any, assessed pursuant to the provisions of Section 361.260 of the Nevada Revised Statutes.

    Paid Current

3.  **Any possible delinquent** or outstanding **municipal city liens** or assessments for contract service provided to said land by reason of being located within the incorporated boundaries of in the City of Henderson, Nevada which subjects the same to its City Charter and mandatory rules and regulations.

    Paid Current

4.  **Water rights, claims or title to water,** whether or not disclosed by the public records.

5.  **Easement(s)** for the purpose(s) shown below and rights incidental thereto as granted in a document;

    | | |
    |---|---|
    | Granted to: | Nevada Power Company |
    | Purpose: | Public Utilities |
    | Recorded: | January 2, 1970, Instrument No. 204, Book 1, of Official Records |

6.  **Mineral rights,** reservations, easements and exclusions as contained in the Patent from the United States of America recorded December 1, 1971, Instrument No. 148466, Book 186, of Official Records

Page 3

ALTA Form Policy (10-17-92) with Form 1 Cov.

Order No. 06-18-187297-MD
Policy No. 27-042-92 3589421

7.  Any discrepancy in boundaries, area or any other facts which are disclosed by the **Record of Survey:**
    File:                          26 of Surveys, Page 60
    Recorded:            August 13, 1973, Instrument No. 313437, Book 354, of Official Records.

8.  **Covenants, conditions and restrictions** (deleting therefrom any restrictions indicating any preference, limitation or discrimination based on race, color, religion, sex, handicap, familial status or national origin) as set forth in the document

    Recorded:            March 8, 1976, Instrument No. 560263, Book 601, of Official Records

    Modification(s) of said covenants, conditions and restrictions

    Recorded:            April 17, 1995, Instrument No. 00061, Book 950417, of Official Records

9.  **Easement(s)** for the purpose(s) shown below and rights incidental thereto as delineated or as offered for dedication on the map of said subdivision,
    Recorded:            Book 8 of Parcel Maps, Page 47, of Official Records

10. **Easement(s)** for the purpose(s) shown below and rights incidental thereto as granted in a document;

    Granted to:        Nevada Power Company
    Purpose:            Public Utilities
    Recorded:           October 18, 1990, Instrument No. 00523, Book 901018, of Official Records

11. **Easement(s)** for the purpose(s) shown below and rights incidental thereto as granted in a document;

    Granted to:        Southern Nevada Water Authority
    Purpose:            Public Utilities
    Recorded:           June 26, 1996, Instrument No. 00316, Book 960626, of Official Records

    and Recorded:      November 27, 1996, Instrument No. 00791, Book 961127, of Official Records

ALTA Form Policy (10-17-92) with Form 1 Cov.

Order No. 06-18-187297-MD
Policy No. 27-042-92 3589421

12.     **Covenants, conditions and restrictions** (deleting therefrom any restrictions indicating any preference, limitation or discrimination based on race, color, religion, sex, handicap, familial status or national origin) as set forth in the document

Recorded:              July 13, 2001, Instrument No. 01027, Book 20010713, of Official Records

Said instrument also provides for the levy of assessments, the lien of which are stated to be subordinate to the lien of a first mortgage or first deed of trust made in good faith and for value.

Amended and Restated Declaration of Covenants, Conditions and Restrictions recorded May 22, 2003 in Book 20020522 as Document No. 01212, Official Records.

**Liens and charges** for upkeep and maintenance as set forth in the above mentioned declaration, payable to Horizon Hills Homeowners Association, A Nevada Non-Profit Corporation.

Modification(s) of said covenants, conditions and restrictions

Recorded:              May 9, 2002, Instrument No. 01898, Book 20020509, of Official Records

Modification(s) of said covenants, conditions and restrictions

Recorded:              July 15, 2003, Instrument No. 01121, Book 20030715, of Official Records

13.     **Easement(s)** for the purpose(s) shown below and rights incidental thereto as delineated or as offered for dedication on the map of said subdivision,
Recorded:              Book 104 of Plats, Page 32, of Official Records

ALTA Form Policy (10-17-92) with Form 1 Cov.

Order No. 06-18-187297-MD
Policy No. 27-042-92 3589421

# SCHEDULE B

### PART II

In addition to the matters set forth in Part I of this Schedule, the title to the estate or interest in the land described or referred to in Schedule A is subject to the following matters, if any be shown, but the Company insures that these matters are subordinate to the lien or charge of the insured mortgage upon the estate or interest:

**NONE**

Order No.: 06-18-187297-MD

ENDORSEMENT
Attached to Policy No. 27-042-92 3589421
Issued By
Fidelity National Title Agency of Nevada, Inc.

The Company hereby insures the owner of the indebtedness secured by the insured mortgage against loss or damage which the insured shall sustain by reason of:

1.  The existence of any of the following:

    (a)  Covenants, conditions or restrictions under which the lien of the mortgage referred to in Schedule A can be cut off, subordinated, or otherwise impaired;

    (b)  Present violations on the land of any enforceable covenants, conditions or restrictions;

    (c)  Except as shown in Schedule B, encroachments of buildings, structures or improvements located on the land onto adjoining lands, or any encroachments onto the land of buildings, structures or improvements located on adjoining lands.

2.  (a)  Any future violations on the land of any covenants, conditions or restrictions occurring prior to acquisition of title to the estate or interest referred to in Schedule A by the insured, provided such violations result in impairment or loss of the lien of the mortgage referred to in Schedule A, or result in impairment or loss of the title to the estate or interest referred to in Schedule A if the insured shall acquire such title in satisfaction of the indebtedness secured by the insured mortgage;

    (b)  Unmarketability of the title to the estate or interest referred to in Schedule A by reason of any violations on the land, occurring prior to acquisition of title to the estate or interest referred to in Schedule A by the insured, of any covenants, conditions or restrictions.

3.  Damage to existing improvements, including lawns, shrubbery or trees

    (a)  Which are located or encroach upon that portion of the land subject to any easement shown in Schedule B, which damage results from the exercise of the right to use or maintain such easement for the purposes for which the same was granted or reserved;

CLTA Form 100 (Rev. 6-14-96)
ALTA - Lender

(b)     Resulting from the exercise of any right to use the surface of the land for the extraction or development of the minerals excepted from the description of the land or shown as a reservation in Schedule B.

4.     Any final court order or judgment requiring removal from any land adjoining the land of any encroachment shown in Schedule B.

Wherever in this endorsement any or all the words "covenants", "conditions" or "restrictions" appear, they shall not be deemed to refer to or include the terms, covenants, and conditions or restrictions contained in any lease.

For purposes of this endorsement, the words "covenants," "conditions" or "restrictions" shall not be deemed to refer to or include any covenants, conditions or restrictions relating to environmental protection, except to the extent that a notice of a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy and is not excepted in Schedule B.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

Dated:  September 21, 2006

**Fidelity National Title**
INSURANCE COMPANY

Countersigned

CLTA Form 100 (Rev. 6-14-96)
ALTA - Lender

Order No.: 06-18-187297-MD

### ENDORSEMENT
Attached to Policy No. 27-042-92 3589421
Issued by
Fidelity National Title Agency of Nevada, Inc.

The Company insures the Insured against loss or damage sustained by reason of:

1.     The failure of the unit identified in Schedule A and its common elements to be part of a condominium within the meaning of the condominium statutes of the jurisdiction in which the unit and its common elements are located.

2.     The failure of the documents required by the condominium statutes to comply with the requirements of the statutes to the extent that such failure affects the title to the unit and its common elements.

3.     Present violations of any restrictive covenants which restrict the use of the unit and its common elements and which are contained in the condominium documents, except violations relating to environmental protection unless a notice of a violation thereof has been recorded or filed in the public records and is not excepted in Schedule B.  The restrictive covenants do not contain any provisions which will cause a forfeiture or reversion to title.

4.     The priority of any lien for charges and assessments at Date of Policy provided for in the condominium statutes and condominium documents over the lien of any insured mortgage identified in Schedule A.

5.     The failure of the unit and its common elements to be entitled by law to be assessed for real property taxes as a separate parcel.

6.     Any obligation to remove any improvements which exist at Date of Policy because of any present encroachments or because of any future unintentional encroachment of the common elements upon any unit or of any unit upon the common elements or another unit.

7.     The failure of title by reason of a right of first refusal to purchase the unit and its common elements which was exercised or could have been exercised at date of policy.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto.  Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

Dated:  September 21, 2006

Fidelity National Title
INSURANCE COMPANY

Countersigned

CLTA Form 115.1 (3-27-92)
ALTA Endorsement Form 4 - Condominium

Order No.:  06-18-187297-MD

ENDORSEMENT
Attached to Policy No. 27-042-92 3589421
Issued by
Fidelity National Title Agency of Nevada, Inc.

The insurance afforded by this endorsement is only effective if the land is used or is to be used primarily for residential purposes.

The Company insures the Insured against loss or damage sustained by reason of lack of priority of the lien of the Insured mortgage over:

(a)    Any environmental protection lien which, at Date of Policy, is recorded in those records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge, or filed in the records of the clerk of the United States district court for the district in which the land is located, except as set forth in schedule B; or

(b)    Any environmental protection lien provided for by any state statute in effect at Date of Policy, except environmental protection liens provided for by the following state statutes:

None

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto.  Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

Dated:  September 21, 2006

Fidelity National Title
INSURANCE COMPANY

_____
Countersigned

CLTA Form 110.9 (3-13-87)
(ALTA Endorsement Form 8.1 (3-27-87))
Environmental Protection Lien

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

   (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3. Defects, liens, encumbrances, adverse claims or other matters:

   (a) created, suffered, assumed or agreed to by the insured claimant;

   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

   (c) resulting in no loss or damage to the insured claimant;

   (d) attaching or created subsequent to Date of Policy (except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or material); or

   (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage.

4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable doing business laws of the state in which the land is situated.

5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6. Any statutory lien for services, labor or materials (or the claim of priority of any statutory lien for services, labor or materials over the lien of the insured mortgage) arising from an improvement or work related to the land which is contracted for and commenced subsequent to Date of Policy and is not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance.

7. Any claim which arises out of the transaction creating the interest of the mortgagee insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:

   (i) the transaction creating the interest of the insured mortgagee being deemed a fraudulent conveyance or fraudulent transfer; or

   (ii) the subordination of the interest of the insured mortgagee as a result of the application of the doctrine of equitable subordination; or

   (iii) the transaction creating the interest of the insured mortgagee being deemed a preferential transfer except where the preferential transfer results from the failure:

   (a) to timely record the instrument of transfer; or

   (b) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

## CONDITIONS AND STIPULATIONS

### 1. DEFINITION OF TERMS

The following terms when used in this policy mean:

(a) "insured": the insured named in Schedule A. The term "insured" also includes

(i) the owner of the indebtedness secured by the insured mortgage and each successor in ownership of the indebtedness except a successor who is an obligor under the provisions of Section 12(c) of these Conditions and Stipulations (reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor insured, unless the successor acquired the indebtedness as a purchaser for value without knowledge of the asserted defect, lien, encumbrance, adverse claim or other matter insured against by this policy as affecting title to the estate or interest in the land);

(ii) any governmental agency or governmental instrumentality which is an insurer or guarantor under an insurance contract or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage, or any part thereof, whether named as an insured herein or not;

(iii) the parties designated in Section 2(a) of these Conditions and Stipulations.

(b) "insured claimant": an insured claiming loss or damage.

(c) "knowledge" or "known": actual knowledge, not constructive knowledge or notice which may be imputed to an insured by reason of the public records as defined in this policy or any other records which impart constructive notice of matters affecting the land.

(d) "land": the land described or referred to in Schedule A, and improvements affixed thereto which by law constitute real property. The term "land" does not include any property beyond the lines of the area described or referred to in Schedule A, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways, but nothing herein shall modify or limit the extent to which a right of access to and from the land is insured by this policy.

(e) "mortgage": mortgage, deed of trust, trust deed, or other security instrument.

(f) "public records": records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge. With respect to Section 1(a)(iv) of the Exclusions From Coverage, "public records" shall also include environmental protection liens filed in the records of the clerk of the United States district court for the district in which the land is located.

(g) "unmarketability of the title": an alleged or apparent matter affecting the title to the land, not excluded or excepted from coverage, which would entitle a purchaser of the estate or interest described in Schedule A or the insured mortgage to be released from the obligation to purchase by virtue of a contractual condition requiring the delivery of marketable title.

### 2. CONTINUATION OF INSURANCE

(a) After Acquisition of Title. The coverage of this policy shall continue in force as of Date of Policy in favor of (i) an insured who acquires all or any part of the estate or interest in the land by foreclosure, trustee's sale, conveyance in lieu of foreclosure, or other legal manner which discharges the lien of the insured mortgage; (ii) a transferee of the estate or interest so acquired from an insured corporation, provided the transferee is the parent or wholly-owned subsidiary of the insured corporation, and their corporate successors by operation of law and not by purchase, subject to any rights or defenses the Company may have against any predecessor insureds; and (iii) any governmental agency or governmental instrumentality which acquires all or any part of the estate or interest pursuant to a contract of insurance or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage.

(b) After Conveyance of Title. The coverage of this policy shall continue in force as of Date of Policy in favor of an insured only so long as the insured retains an estate or interest in the land, or holds an indebtedness secured by a purchase money mortgage given by a purchaser from the insured, or only so long as the insured shall have liability by reason of covenants of warranty made by the insured in any transfer or conveyance of the estate or interest. This policy shall not continue in force in favor of any purchaser from the insured of either (i) an estate or interest in the land, or (ii) an indebtedness secured by a purchase money mortgage given to the insured.

(c) Amount of Insurance. The amount of insurance after the acquisition or after the conveyance shall in neither event exceed the least of:

(i) the Amount of Insurance stated in Schedule A;

(ii) the amount of the principal of the indebtedness secured by the insured mortgage as of Date of Policy, interest thereon, expenses of foreclosure, amounts advanced pursuant to the insured mortgage to assure compliance with laws or to protect the lien of the insured mortgage prior to the time of acquisition of the estate or interest in the land and secured thereby and reasonable amounts expended to prevent deterioration of improvements, but reduced by the amount of all payments made; or

(iii) the amount paid by any governmental agency or governmental instrumentality, if the agency or instrumentality is the insured claimant, in the acquisition of the estate or interest in satisfaction of its insurance contract or guaranty.

### 3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT

The insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 4(a) below, (ii) in case knowledge shall come to an insured hereunder of any claim of title or interest which is adverse to the title to the estate or interest or the lien of the insured mortgage, as insured, and which might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if title to the estate or interest or the lien of the insured mortgage, as insured, is rejected as unmarketable. If prompt notice shall not be given to the Company, then as to the insured all liability of the Company shall terminate with regard to the matter or matters for which prompt notice is required; provided, however, that failure to notify the Company shall in no case prejudice the rights of any insured under this policy unless the Company shall be prejudiced by the failure and then only to the extent of the prejudice.

CONDITIONS AND STIPULATIONS - ( Continued from Reverse Side of Policy Face )

## 4. DEFENSE AND PROSECUTION OF ACTIONS; DUTY OF INSURED CLAIMANT TO COOPERATE

(a) Upon written request by the insured and subject to the options contained in Section 6 of these Conditions and Stipulations, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the insured to object for reasonable cause) to represent the insured as to those stated causes of action and shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs or expenses incurred by the insured in the defense of those causes of action which allege matters not insured against by this policy.

(b) The Company shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured, or to prevent or reduce loss or damage to the insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this policy. If the Company shall exercise its rights under this paragraph, it shall do so diligently.

(c) Whenever the Company shall have brought an action or interposed a defense as required or permitted by the provisions of this policy, the Company may pursue any litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from any adverse judgment or order.

(d) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding, the insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, and all appeals therein, and permit the Company to use, at its option, the name of the insured for this purpose. Whenever requested by the Company, the insured, at the Company's expense, shall give the Company all reasonable aid (i) in any action or proceeding, securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act which in the opinion of the Company may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured. If the Company is prejudiced by the failure of the insured to furnish the required cooperation, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

## 5. PROOF OF LOSS OR DAMAGE

In addition to and after the notices required under Section 3 of these Conditions and Stipulations have been provided the Company, a proof of loss or damage signed and sworn to by the insured claimant shall be furnished to the Company within 90 days after the insured claimant shall ascertain the facts giving rise to the loss or damage. The proof of loss or damage shall describe the defect in, or lien or encumbrance on the title, or other matter insured against by this policy which constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage. If the Company is prejudiced by the failure of the insured claimant to provide the required proof of loss or damage, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such proof of loss or damage.

In addition, the insured claimant may reasonably be required to submit to examination under oath by any authorized representative of the Company and shall produce for examination, inspection and copying, at such reasonable times and places as may be designated by any authorized representative of the Company, all records, books, ledgers, checks, correspondence and memoranda, whether bearing a date before or after Date of Policy, which reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the insured claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect and copy all records, books, ledgers, checks, correspondence and memoranda in the custody or control of a third party, which reasonably pertain to the loss or damage. All information designated as confidential by the insured claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the insured claimant to submit for examination under oath, produce other reasonably requested information or grant permission to secure reasonably necessary information from third parties as required in the above paragraph, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

## 6. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY

In case of a claim under this policy, the Company shall have the following additional options:

(a) To Pay or Tender Payment of the Amount of Insurance or to Purchase the Indebtedness.

(i) to pay or tender payment of the amount of insurance under this policy together with any costs, attorneys' fees and expenses incurred by the insured claimant, which were authorized by the Company, up to the time of payment or tender of payment and which the Company is obligated to pay; or

(ii) to purchase the indebtedness secured by the insured mortgage for the amount owing thereon together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of purchase and which the Company is obligated to pay.

If the Company offers to purchase the indebtedness as herein provided, the owner

of the indebtedness shall transfer, assign, and convey the indebtedness and the insured mortgage, together with any collateral security, to the Company upon payment therefor.

Upon the exercise by the Company of either of the options provided for in paragraphs a (i) or (ii), all liability and obligations to the insured under this policy, other than to make the payment required in those paragraphs, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, and the policy shall be surrendered to the Company for cancellation.

(b) To Pay or Otherwise Settle With Parties Other than the Insured or With the Insured Claimant.

(i) to pay or otherwise settle with other parties for or in the name of an insured claimant any claim insured against under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay; or

(ii) to pay or otherwise settle with the insured claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in paragraphs b(i) or (ii), the Company's obligations to the insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

## 7. DETERMINATION AND EXTENT OF LIABILITY

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.

(a) The liability of the Company under this policy shall not exceed the least of:

(i) the Amount of Insurance stated in Schedule A, or, if applicable, the amount of insurance as defined in Section 2 (c) of these Conditions and Stipulations;

(ii) the amount of the unpaid principal indebtedness secured by the insured mortgage as limited or provided under Section 8 of these Conditions and Stipulations or as reduced under Section 9 of these Conditions and Stipulations, at the time the loss or damage insured against by this policy occurs, together with interest thereon; or

(iii) the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy.

(b) In the event the insured has acquired the estate or interest in the manner described in Section 2(a) of these Conditions and Stipulations or has conveyed the title, then the liability of the Company shall continue as set forth in Section 7(a) of these Conditions and Stipulations.

(c) The Company will pay only those costs, attorneys' fees and expenses incurred in accordance with Section 4 of these Conditions and Stipulations.

## 8. LIMITATION OF LIABILITY

(a) If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the land, or cures the claim of unmarketability of title, or otherwise establishes the lien of the insured mortgage, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title or to the lien of the insured mortgage, as insured.

(c) The Company shall not be liable for loss or damage to any insured for liability voluntarily assumed by the insured in settling any claim or suit without the prior written consent of the Company.

(d) The Company shall not be liable for: (i) any indebtedness created subsequent to Date of Policy except for advances made to protect the lien of the insured mortgage and secured thereby and reasonable amounts expended to prevent deterioration of improvements; or (ii) construction loan advances made subsequent to Date of Policy, except construction loan advances made subsequent to Date of Policy for the purpose of financing in whole or in part the construction of an improvement to the land which at Date of Policy were secured by the insured mortgage and which the insured was and continued to be obligated to advance at and after Date of Policy.

## 9. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY

(a) All payments under this policy, except payments made for costs, attorneys' fees and expenses, shall reduce the amount of the insurance pro tanto. However, any payments made prior to the acquisition of title to the estate or interest as provided in Section 2(a) of these Conditions and Stipulations shall not reduce pro tanto the amount of the insurance afforded under this policy except to the extent that the payments reduce the amount of the indebtedness secured by the insured mortgage.

(b) Payment in part by any person of the principal of the indebtedness, or any other obligation secured by the insured mortgage, or any voluntary partial satisfaction or release of the insured mortgage, to the extent of the payment, partial satisfaction or release, shall reduce the amount of insurance pro tanto. The amount of insurance may thereafter be increased by accruing interest and advances made to protect the lien of the insured mortgage and secured thereby, with interest thereon, provided in no event shall the amount of insurance be greater than the Amount of Insurance stated in Schedule A.

(c) Payment in full by any person or the voluntary satisfaction or release of the insured mortgage shall terminate all liability of the Company except as provided in Section 2(a) of these Conditions and Stipulations.

CONDITIONS AND STIPULATIONS · ( Continued and Concluded From Reverse Side )

**10. LIABILITY NONCUMULATIVE**

If the insured acquires title to the estate or interest in satisfaction of the indebtedness secured by the insured mortgage, or any part thereof, it is expressly understood that the amount of insurance under this policy shall be reduced by any amount the Company may pay under any policy insuring a mortgage to which exception is taken in Schedule B or to which the insured has agreed, assumed, or taken subject, or which is hereafter executed by an insured and which is a charge or lien on the estate or interest described or referred to in Schedule A, and the amount so paid shall be deemed a payment under this policy.

**11. PAYMENT OF LOSS**

(a) No payment shall be made without producing this policy for endorsement of the payment unless the policy has been lost or destroyed, in which case proof of loss or destruction shall be furnished to the satisfaction of the Company.

(b) When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions and Stipulations, the loss or damage shall be payable within 30 days thereafter.

**12. SUBROGATION UPON PAYMENT OR SETTLEMENT**

**(a) The Company's Right of Subrogation.**

Whenever the Company shall have settled and paid a claim under this policy, all right of subrogation shall vest in the Company unaffected by any act of the insured claimant.

The Company shall be subrogated to and be entitled to all rights and remedies which the insured claimant would have had against any person or property in respect to the claim had this policy not been issued. If requested by the Company, the insured claimant shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect this right of subrogation. The insured claimant shall permit the Company to sue, compromise or settle in the name of the insured claimant and to use the name of the insured claimant in any transaction or litigation involving these rights or remedies.

If a payment on account of a claim does not fully cover the loss of the insured claimant, the Company shall be subrogated to all rights and remedies of the insured claimant after the insured claimant shall have recovered its principal, interest, and costs of collection.

**(b) The Insured's Rights and Limitations.**

Notwithstanding the foregoing, the owner of the indebtedness secured by the insured mortgage, provided the priority of the lien of the insured mortgage or its enforceability is not affected, may release or substitute the personal liability of any debtor or guarantor, or extend or otherwise modify the terms of payment, or release a portion of the estate or interest from the lien of the insured mortgage, or release any collateral security for the indebtedness.

When the permitted acts of the insured claimant occur and the insured has knowledge of any claim of title or interest adverse to the title to the estate or interest or the priority or enforceability of the lien of the insured mortgage, as insured, the Company shall be required to pay only that part of any losses insured against by this policy which shall exceed the amount, if any, lost to the Company by reason of the impairment by the insured claimant of the Company's right of subrogation.

**(c) The Company's Rights Against Non-insured Obligors.**

The Company's right of subrogation against non-insured obligors shall exist and shall include, without limitation, the rights of the insured to indemnities, guaranties, other policies of insurance or bonds, notwithstanding any terms or conditions contained in those instruments which provide for subrogation rights by reason of this policy.

The Company's right of subrogation shall not be avoided by acquisition of the insured mortgage by an obligor (except an obligor described in Section I(a)(ii) of these Conditions and Stipulations) who acquires the insured mortgage as a result of an indemnity, guarantee, other policy of insurance, or bond and the obligor will not be an insured under this policy, notwithstanding Section I(a)(i) of these Conditions and Stipulations.

**13. ARBITRATION**

Unless prohibited by applicable law, either the Company or the insured may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. All arbitrable matters when the Amount of Insurance is $1,000,000 or less shall be arbitrated at the option of either the Company or the insured. All arbitrable matters when the Amount of Insurance is in excess of $1,000,000 shall be arbitrated only when agreed to by both the Company and the insured. Arbitration pursuant to this policy and under the Rules in effect on the date the demand for arbitration is made or, at the option of the insured, the Rules in effect at Date of Policy shall be binding upon the parties. The award may include attorneys' fees only if the laws of the state in which the land is located permit a court to award attorneys' fees to a prevailing party. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

The law of the situs of the land shall apply to an arbitration under the Title Insurance Arbitration Rules.

A copy of the Rules may be obtained from the Company upon request.

**14. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT**

(a) This policy together with all endorsements, if any, attached hereto by the Company is the entire policy and contract between the insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage, whether or not based on negligence, and which arises out of the status of the lien of the insured mortgage or of the title to the estate or interest covered hereby or by any action asserting such claim, shall be restricted to this policy.

(c) No amendment of or endorsement to this policy can be made except by a writing endorsed hereon or attached hereto signed by either the President, a Vice President, the Secretary, an Assistant Secretary, or validating officer or authorized signatory of the Company.

**15. SEVERABILITY**

In the event any provision of this policy is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision and all other provisions shall remain in full force and effect.

**16. NOTICES, WHERE SENT**

All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this policy and shall be addressed to the Company at:

Fidelity National Title Insurance Company
National Claims Administration
P.O. Box 45023
Jacksonville, Florida 32232-5023

Fidelity National Title Insurance Company
P.O. Box 45023
Jacksonville, Florida 32232-5023

FIDELITY NATIONAL TITLE INSURANCE COMPANY